## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

|  |  |
|---|---|
| JAIME FAITH EDMONDSON, ANA CHERI (MORELAND), CARRIE MINTER, CIELO JEAN GIBSON, CORA SKINNER, DANIELLE RUIZ, EVA PEPAJ, HEATHER DEPRIEST, IRINA VORONINA, JESSE GOLDEN, JESSICA BURCIAGA, JESSICA HINTON, JOANNA KRUPA, JORDAN CARVER, KATERINA VAN DERHAM, KIM COZZENS, LAURIE FETTER (JACOBS), LINA POSADA, MARIA ZYRIANOVA, MARKETA KAZDOVA, MASHA LUND, MAYSA QUY, PAOLA CANAS, RACHEL BERNSTEIN (KOREN), SANDRA VALENCIA, SARA UNDERWOOD, TIFFANY TOTH, VIVIAN KINDLE, MELANIE IGLESIAS, BRENDA LYNN GEIGER, HEATHER RAE YOUNG, and ROSA ACOSTA, | Civil Action No. 8:15-CV_____ |
|  |  |
|  | **COMPLAINT** |
|  | **INJUNCTIVE RELIEF SOUGHT** |
|  | (Jury Trial Demanded) |
| Plaintiffs, |  |
|  |  |
| - against - |  |
|  |  |
| VELVET LIFESTYLES, LLC, f/k/a VELVET LIFESTYLES, INC., d/b/a MIAMI VELVET, JOY DORFMAN, a/k/a JOY ZIPPER, PRESIDENT OF VELVET LIFESTYLES, LLC, and MY THREE YORKIES, LLC, |  |
|  |  |
| Defendants. |  |

## COMPLAINT

COME NOW Plaintiffs JAIME FAITH EDMONDSON, ANA CHERI (MORELAND),

CARRIE MINTER, CIELO JEAN GIBSON, CORA SKINNER, DANIELLE RUIZ, EVA

PEPAJ, HEATHER DEPRIEST, IRINA VORONINA, JESSE GOLDEN, JESSICA

BURCIAGA, JESSICA HINTON, JOANNA KRUPA, JORDAN CARVER, KATERINA VAN

DERHAM, KIM COZZENS, LAURIE FETTER (JACOBS), LINA POSADA, MARIA

ZYRIANOVA, MARKETA KAZDOVA, MASHA LUND, MAYSA QUY, PAOLA CANAS, RACHEL BERNSTEIN (KOREN), SANDRA VALENCIA, SARA UNDERWOOD, TIFFANY TOTH, VIVIAN KINDLE, MELANIE IGLESIAS, BRENDA LYNN GEIGER, HEATHER RAE YOUNG, and ROSA ACOSTA (collectively, "Plaintiffs"), by and through undersigned counsel, and for their Complaint against Defendants VELVET LIFESTYLES, LLC, f/k/a VELVET LIFESTYLES, INC., d/b/a MIAMI VELVET, JOY DORFMAN, a/k/a JOY ZIPPER, PRESIDENT OF VELVET LIFESTYLES, LLC, and MY THREE YORKIES, LLC (collectively, "Defendants") state as follows:

## INTRODUCTION

1.      Defendants have pirated and altered the images, likeness and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote and market Defendants' own business interests on websites and social media accounts owned, operated, hosted, or controlled by Defendants.

2.      Defendants are unapologetic, chronic and habitual infringers.

3.      Defendants never negotiated for or purchased the images.

4.      Defendants never sought consent or authority through appropriate channels to use any of the Plaintiffs' images for any purpose.

5.      No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendants' use of her image, likeness and/or identity.

6.      Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image, each Plaintiff would have promptly and unequivocally declined.

7.      Defendants' conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendants Velvet Lifestyles LLC or Miami Velvet Club ("the Club"), has contracted to perform at and/or participate in events at the Club, has been hired to promote, advertise, market or endorse its "swinger" or alternative lifestyle events and other activities offered at the Club, and/or that each Plaintiff depicted in the advertisements has attended or will attend each event and has participated in or intends to participate in the activities advertised.

8.      Defendants' conduct is also injurious to each Plaintiff.

9.      Defendants circumvented the typical arms-length negotiation process entirely and pirated the images. In doing so, **Defendants have utterly deprived each Plaintiff the right and ability to say "no."**

10.      Defendants have prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely. In short, Defendants deprived each Plaintiff the ability to protect her image, brand and reputation.

11.      In the end, Defendants gain an economic windfall by using and altering the images of professional and successful models for Defendants' own commercial purposes, luring and enticing patrons worldwide to view the images and visit the Club, without having to compensate the models a single penny for such usage.  Plaintiffs, however, sustain injury to their images, brands and marketability by shear affiliation with Defendants and the type of club operated by Defendants.

12.     As if the economic piracy – the lost commercial opportunity to bargain for and decline Defendants' proposed usage – was not damaging enough, Defendants posted the Plaintiffs' misappropriated and altered images on the miamivelvet.com website and social media outlets owned, hosted, or controlled by Defendants next to or in very close proximity to photos reflecting images of explicit, hardcore pornography – too obscene and offensive, in fact, to even include as an exhibit to this publicly-filed complaint.

13.     Such explicit, hardcore images purport to reflect sex acts performed at the Club by Club patrons.   The explicit, hardcore pornographic images strategically positioned by Defendants in proximity to the infringing images, likeness or identity reflect unhealthy and unsanitary acts and conditions, including "gang bangs," roving group sex, explicit simultaneous 3-on-1 anal, oral and vaginal penetration, alternating anal penetration, and anal penetration using inanimate objects – in one case, anal penetration using a cluster of 14 Sharpie markers where the consent of the individual depicted in the photo is itself in question.

14.     The explicit, hardcore images are, standing alone, unsettling and disturbing.  But, when posted and presented in conjunction and in close proximity with the unauthorized use of Plaintiffs' images, they are offensive, insulting, humiliating, demeaning, erroneously suggestive of Plaintiffs' participation in the still-photo, film or streaming online hardcore pornographic film industry, and damaging to each model's reputation, marketability and brand.

15.     Having operated a business in the adult entertainment and "swingers" club industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

4

16.     Moreover, Defendants are no strangers to litigation over the protection of marks, image, and reputation.  Velvet Lifestyles, Inc., the predecessor entity to Velvet Lifestyles, LLC filed an action in this Court on July 19, 2004, styled *Velvete Lifestyles, Inc. v. SDC Media, Inc., et al*, 1:04-cv-21800-FAM (SD Florida 2004), seeking money damages and injunctive relief from SDC [Swingers Dating Club] for SDC's misappropriation of Velvet Lifestyle's marks, cybersquatting and cyberpiracy, trademark infringement, unfair competition, and, ironically, *injury to business reputation and dilution*.  The facts of the above-referenced case are sufficiently symmetrical to raise a fair presumption that Defendants knew at the time they pirated and altered each Plaintiff's image, likeness and identity for Defendants' own commercial use, and failed to engage in an arms length negotiation, seek consent, or compensate Plaintiffs for the use of such images, Defendants were violating the law.

17.     Even after receiving a demand and cease & desist letter from Plaintiffs' counsel, enclosed herewith as **Exhibit A** (October 16, 2015 Letter)**,** Defendants failed and refused to remove the infringing imagery from one or more social media sites controlled by them.  More egregious is that Defendants have posted *additional* infringing images without any effort to obtain the consent from the model depicted in the posted image.

18.     Knowing Plaintiffs' objections thereto, Defendants continue to use the images without authority.  Much more than merely a misuse in connection with an innocuous brand or event, Defendants' have defamed and embarrassed Plaintiffs by associating their images with Defendants and the Club.

19.     Each Plaintiff seeks, among other relief, an Order immediately and permanently enjoining Defendants' illegal activities, and compelling Defendants to appropriately compensate each Plaintiff for the theft and piracy of her image.

## PARTIES

**A. Plaintiffs**

20.     Given the multitude of violations harming numerous models, and the similarity of misconduct from Defendants harming all models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models.

21.     Plaintiff Jaime Faith Edmondson ("Edmondson") is, and at all times relevant to this action was, a professional model and a resident of Saint Petersburg, Florida.

22.     Plaintiff Ana Cheri (Moreland) ("Cheri") is, and at all times relevant to this action was, a professional model and a resident of Westminster, California.

23.     Plaintiff Carrie Minter ("Minter") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

24.     Plaintiff Cielo Jean Gibson ("Gibson") is, and at all times relevant to this action was, a professional model and a resident of Santa Monica, California.

25.     Plaintiff Cora Skinner ("Skinner") is, and at all times relevant to this action was, a professional model and a resident of Santa Monica, California.

26.     Plaintiff Danielle Ruiz ("Ruiz") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

27.     Plaintiff Eva Pepaj ("Pepaj") is, and at all times relevant to this action was, a professional model and a resident of North Hollywood, California.

28.     Plaintiff Heather Depriest ("Depriest") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

29.     Plaintiff Irina Voronina ("Voronina") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

30.     Plaintiff Jesse Golden ("Golden") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

31.     Plaintiff Jessica Burciaga ("Burciaga") is, and at all times relevant to this action was, a professional model and a resident of Whittier, California.

32.     Plaintiff Jessica (Jessa) Hinton ("Hinton") is, and at all times relevant to this action was, a professional model and a resident of Sherman Oaks, California.

33.     Plaintiff Joanna Krupa ("Krupa") is, and at all times relevant to this action was, a professional model and a resident of Studio City, California.

34.     Plaintiff Jordan Carver ("Carver") is, and at all times relevant to this action was, a professional model and a resident of Las Vegas, Nevada.

35.     Plaintiff Katerina Van Derham ("Van Derham") is, and at all times relevant to this action was, a professional model and a resident of North Hollywood, California.

36.     Plaintiff Kim Cozzens ("Cozzens") is, and at all times relevant to this action was, a professional model and a resident of San Jose, California.

37.     Plaintiff Laurie Fetter Jacobs ("Fetter") is, and at all times relevant to this action was, a professional model and a resident of Rye, New York.

38.     Plaintiff Lina Posada ("Posada") is, and at all times relevant to this action was, a professional model and a resident of San Gabriel, California.

39.     Plaintiff Maria Zyrianova ("Zyrianova") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

40.     Plaintiff Marketa Kazdova ("Kazdova") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

41.     Plaintiff Masha Lund ("Lund") is, and at all times relevant to this action was, a professional model and a resident of New York, New York.

42.     Plaintiff Maysa Quy ("Quy") is, and at all times relevant to this action was, a professional model and a resident of Las Vegas, Nevada.

43.     Plaintiff Paola Canas ("Canas") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

44.     Plaintiff Rachel Bernstein Koren ("Bernstein") is, and at all times relevant to this action was, a professional model and a Los Angeles, California.

45.     Plaintiff Sandra Valencia ("Valencia") is, and at all times relevant to this action was, a professional model and a resident of San Gabriel, California.

46.     Plaintiff Sara Underwood ("Underwood") is, and at all times relevant to this action was, a professional model and a resident of Scappoose, Oregon.

47.     Plaintiff Tiffany Toth ("Toth") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

48.     Plaintiff Vivian Kindle ("Kindle") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

49.     Plaintiff Melanie Iglesias ("Iglesias") is, and at all times relevant to this action was, a professional model and a resident of Toluca Lake, California.

50.     Plaintiff Brenda Lynn Geiger ("Geiger") is, and at all times relevant to this action was, a professional model and a resident of Brewerton, New York.

8

51.     Plaintiff Heather Rae Young ("Young") is, and at all times relevant to this action was, a professional model and a resident of Beverly Hills, California.

52.     Plaintiff Rosa Acosta ("Acosta") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

**B.   Velvet Lifestyles, LLC, f/k/a Velvet Lifestyles, Inc. d/b/a Miami Velvet**

53.     Based on publicly available records, and further upon information and belief, Velvet Lifestyles, LLC, f/k/a Velvet Lifestyles, Inc., (collectively, "Velvet Lifestyles") is a limited liability corporation organized and existing under the laws of the State of Florida with a principal place of business at 3901 NW 77th Avenue, Miami, Florida 33180.  Velvet Lifestyles is, and during all times relevant to the allegations in this Complaint was, operating and doing business as "Miami Velvet" (as defined above, "the Club").

54.     The Club is a private, members-only club marketing and catering to individuals engaging in "swinger," "spouse swapping" or open relationship lifestyle events.

55.     Defendants own and/or operate miamivelvet.com as well as other social media accounts and websites through which they advertise their business which frequently and continuously posts explicit, hardcore pornography to depict actual sex acts performed at the Club.

56.     Miami Velvet claims to have "members from all over the world" and to hold multiple "swinger" or "spouse swapping" events throughout each month.  For many of these events, Images of one or more of the Models are used to market and promote the events.

57.     Upon information and belief, the Club coordinates its advertising, marketing and promotional activities through, among other things, active and dynamic use of its website

miamivelvet.com, among others, and various coordinated social media promotions through Facebook, Twitter, Instagram and Tumblr, among others.

58.    Online, Velvet Lifestyles describes the Club as:

> Florida's largest on premise Swingers Club! Swingers throughout South Florida, from Miami, Fort Lauderdale, West Palm Beach, and the Florida Keys, as well as across the world come to enjoy the best adult fantasy swinger's club nightclub around. Miami Velvet puts style in the lifestyle. Miami Velvet is open Wednesday, Friday and Saturday nights and hosts monthly themed parties. It also hosts parties from some of the biggest names in the Lifestyle.[1]

## C.  Defendant Joy Dorfman, a/k/a Joy Zipper

59.    Based on publicly available records, and upon information and belief, Joy Dorfman ("Dorfman"), a/k/a Joy Zipper, is an individual who works and/or resides in Broward County, Florida.

60.    Based upon publicly available records, and upon information and belief, Dorfman presently serves, and during all times relevant to the allegations raised herein served, as the President of Defendant Velvet Lifestyles, LLC.

61.    Based upon publicly available records, and upon information and belief, Dorfman serves, and during all time relevant to the allegations raised herein served, as Managing Member of Defendant My Three Yorkies, LLC.

62.    As President of Defendant Velvet Lifestyles, LLC, and Managing Member of Defendant My Three Yorkies, LLC, Dorfman has, and during all times relevant to the allegations raised herein had, operational and managerial control and responsibility over the business operations of, and decision-making authority for, Velvet Lifestyles and the Club, including decisions relating to Miami Velvet's promotional, advertising, marketing and endorsement activities such as those detailed in this Complaint.

---

[1] http://miamivelvet.com.

### D.  Defendant "My Three Yorkies, LLC"

63.     Based on publicly available records, and upon information and belief, My Three Yorkies, LLC ("Yorkies") is a limited liability corporation organized and existing under the laws of the State of Florida with a principal place of business at 6070 N. Federal Highway, Boca Raton, Florida 33487.

64.     Based upon publicly available records, and upon information and belief, Yorkies presently serves, and during all times relevant to the allegations raised herein served, as the Managing Member of Velvet Lifestyles.  As Managing Member, Yorkies has, and during all times relevant to the allegations raised herein had, operational and managerial control and responsibility over the business operations of and decision-making authority for Velvet Lifestyles and the Club, including decisions relating to Miami Velvet's promotional, advertising, marketing and endorsement activities such as those detailed in this Complaint.

### E.  The Miami Velvet Websites and Business Model

65.     Upon information and belief, Defendants have a unified business structure, through which Defendants advertise events at the Club and offers members of the Club to attend those events through payment of a discounted fee.

66.     Based on publicly available ifnformation, miamivelvet.com is registered to Velvet Lifestyles, LLC, f/k/a Velvet Lifestyles, Inc.

67.     The exhibits hereto reflect that the infringing images which form the basis for the claims raised herein were jointly advertised and/or promoted by the Defendants for the benefit of all Defendants.

## JURISDICTION AND VENUE

68.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).  This Court has supplemental jurisdiction over the Florida state law claims alleged herein pursuant to 28 U.S.C. § 1367.

69.     The Court has personal jurisdiction over Defendants Velvet Lifestyles, LLC and My Three Yorkies, LLC based on their contacts with the State of Florida, including but not limited to each Defendant's registration to conduct business in Florida, each has its physical location and principal place of business in Florida, and each, upon information and belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

70.     The Court has personal jurisdiction over Defendant Dorfman.   Defendant Dorfman lives and works in the State of Florida, operates the Club as its president in the State of Florida, and, upon information and belief, is ultimately responsible for the decisions and business choices for the Club and My Three Yorkies, LLC that give rise to the allegations in the Complaint.

71.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because all Defendants reside in the Southern District of Florida and have their principal place of business in either Broward or Miami-Dade County, Florida and all acts giving rise to the claims set forth herein occurred or originated in either Broward or Miami-Dade County, both of which are in the Southern District of Florida.

## FACTUAL BACKGROUND

A. **Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images**

72.     In the modeling industry, reputation is critical.  Begin vigilant and proactive about protecting one's reputation is therefore of paramount importance.

73.     Each Plaintiff is a professional model who earns a living by promoting her image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on her reputation and own brand for modeling, acting, hosting, and other opportunities.

74.     Not one Plaintiff has ever participated in the hardcore pornography industry, whether magazine, film or streaming online media.  On the contrary, each Plaintiff's career in modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

75.     Each Plaintiff has worked to establish herself as reliable, reputable and professional.

76.     Each Plaintiff must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution.

77.     Any improper or unauthorized use of an image, likeness or identity could substantially injure the career and career opportunities of each Plaintiff.

78.     In the modeling industry, models such as Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities.

79.     Each Plaintiff is a responsible professional in the ordinary course.  Each Plaintiff seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

80.     A model's vetting and selection of a professional engagement involves a multi-tiered assessment, to wit:

    a.   determine whether the individual or entity seeking a license and release of a model's image, likeness or identity is reputable, has reputable products or services, and, through affiliation therewith, would enhance or harm a model's stature or reputation;

    b.   this reputational information is used in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel and how her image is going to be used (among other variables);

    c.   to protect her reputation and livelihood, a model or agent carefully and expressly defines the terms and conditions of use;

    d.   the entire negotiated deal is reduced to and memorialized in an integrated, written agreement which defines the parties' relationship.  The terms and conditions of the Agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that Agreement.

81.     Endorsing, promoting, advertising or marketing the "wrong" product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.  Conversely, association with high-end companies, products, or magazines can

enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

82.     For these reasons, *even if* a model chose to jeopardize her career for a compromising engagement – such as appearing in an advertisement for a "swingers" club that posts boastful images of group sex, 3-in-1 "gang bangs" and anal penetration with clustered Sharpie markers – the fee she would charge would necessarily far exceed the fee typically charged for more mainstream and reputable work.

**B.   Defendants Have Misappropriated and Altered Each Plaintiff's Image, Likeness and Identity Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

83.     As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of the Defendants.  Defendants' conduct creates the false and misleading appearance and impression that each Plaintiff either works for Defendants, has appeared and participated or will appear and participate in Defendants' activities or events at the Club, and/or has agreed and consented to advertise, promote, market or endorse Defendants' business, the Club or one or more Club events or activities.

*Plaintiff Jaime Faith Edmondson*

84.     Edmondson is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.  After graduating from Florida Atlantic University with a degree in Criminal Justice in 2002, Edmondson worked as a police officer in Boca Raton, Florida for two years.  She then became a cheerleader for the Miami Dolphins.  Edmondson, along with a fellow Miami Dolphins cheerleader, participated in "The Amazing Race 14" reality TV series.  As a model, Edmondson was a *Playboy* Playmate.  She is also a sports blogger for *Playboy* online and co-host of Sirius Fantasy Sports Radio.  Edmondson

appeared on "The Bunny House" documentary, and in the Trace Adkins video for "This Aint No Love Song," among others.

85.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Edmondson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

86.     Edmondson's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit B** to the Complaint, which has been used at least two times and altered to create the false perception that Edmondson has consented or agreed to promote, advertise, market and/or endorse the Club's events to benefit Defendants' commercial interests.

87.     Even after Edmondson's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Edmondson's demands.

88.     Edmondson's image, likeness and identity in **Exhibit B** are being used as advertising.

89.     Edmondson's image, likeness and identity in **Exhibit B** are being used on social media.

90.     Edmondson has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

91.     Edmondson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

92.     Defendants never sought permission or authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

93.     Edmondson never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

94.     Defendants neither offered nor paid any remuneration to Edmondson for the unauthorized use and self-serving alteration of her image, likeness or identity.

95.     Defendants' use of Edmondson's image, likeness and identity in connection with the Club's "swinger" events impugns Edmondson's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

96.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Edmondson's images in their market activities and business. In doing so, Defendants have further damaged Edmondson.

### Plaintiff Ana Cheri (Moreland)

97.     Cheri is, and at all times relevant to this action was, a successful professional model, spokeswoman, businesswoman and actress with numerous accomplishments.  As a model and spokeswoman, Cheri was a *Playboy* Playmate and also works Shredz Supplements as a model, brand Ambassador and motivational speaker representing strength, positivity and healthy lifestyles.  Cheri is contracted to appear at events and seminars and has worked with many big name companies and charities around the world.  As a businesswoman, Cheri recently launched a new gym, "Be More Athletics" in Santa Ana, California and debuted in *Muscle & Fitness* Magazine.

98.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Cheri negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

99.     Cheri's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit C** to the Complaint, which has been used at least four times and altered to create the false perception that Cheri has consented or agreed to promote, advertise, market and/or endorse the Club and the Club's events to benefit Defendants' commercial interests.

100.    Even after Cheri's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Cheri's demands.

101.    Cheri's image, likeness and identity in **Exhibit C** are being used as advertising.

102.    Cheri's image, likeness and identity in **Exhibit C** are being used on social media.

103.    Cheri's image, likeness and identity in **Exhibit C** are tagged with "#swingersclub" and "#swingersparty" and are being used for branding purposes.

104.    Cheri's image, likeness and identity in **Exhibit C** have an additional usage, having been tagged with "Rate her . . . 1<2<3>4,. . . ."

105.    Cheri has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

106.    Cheri has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

107.    Defendants never sought permission or authority to use or alter Cheri's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

108.   Cheri never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

109.   Defendants neither offered nor paid any remuneration to Cheri for the unauthorized use and self-serving alteration of her image, likeness or identity.

110.   Defendants' use of Cheri's image, likeness and identity in connection with the Club's "swinger" events impugns Cheri's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

111.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Cheri's images in their market activities and business.  In doing so, Defendants have further damaged Cheri.

### *Plaintiff Carrie Minter*

112.   Minter is, and at all times relevant to this action was, a successful professional model, actress and businesswoman with numerous accomplishments.  As a model, Minter was a Playboy Playmate, and has appeared in such other magazines as GQ, Maxim, FHM, Seventeen, Aroos Bridal Magazine, Apparel News.  Minter has also been featured in advertising campaigns for Harley Davidson, Dreamgirl International, Elegant Moments Lingerie, Benchwarmer Trading Cards, JC Penney, Women's Wear Daily, Simin Couture, the Beverly Hills Hotel, Ferrari, Renaissance Hotel & Spa, Gillette, Love FiFi Lingerie, Music Legs, Linder Sport/Sexy Shapewear, Have Faith Swimgerie, Wendy Griffin Jewelry, Shirley of Hollywood, and many

other companies.  Minter has also been featured in commercials, television series, music videos, and films.  Minter's business ventures include her ownership of "Carrie's Pilates Plus."

113.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Minter negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

114.    Minter's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which has been used at least four times and altered to create the false perception that Minter has consented or agreed to promote, advertise, market and/or endorse the Club's "Nothing But Net" event to benefit Defendants' commercial interests.

115.    Even after Minter's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Minter's demands.

116.    Minter's image, likeness and identity in **Exhibit D** are being used as advertising.

117.    Minter's image, likeness and identity in **Exhibit D** are being used on social media.

118.    Minter's image, likeness and identity in **Exhibit D** are being used as a "coupon", offering "Single Ladies wearing fishnets Free Entry."

119.    Minter's image, likeness and identity in **Exhibit D** are tagged with "It's going to get erotic fast" and are being used for branding purposes.

120.    Minter has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

121.    Minter has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

122.    Defendants never sought permission or authority to use or alter Minter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

123.    Minter never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants business, the Club or any Club event.

124.    Defendants neither offered nor paid any remuneration to Minter for the unauthorized use or self-serving alteration of her image, likeness or identity.

125.    Defendants' use of Minter's image, likeness and identity in connection with the Club's "swinger" events impugns Minter's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

126.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Minter's images in their market activities and business.   In doing so, Defendants have further damaged Minter.

### *Plaintiff Cielo Jean Gibson*

127.    Gibson is, and at all times relevant to this action was, a successful businesswoman and professional model with numerous accomplishments.  Gibson's business ventures include developing her own line of health supplements and fitness clothing.  As a model, Gibson was the *Import Tuner* magazine Model Search winner, is a model for the Falken Drift Team, and has appeared in magazines such as *FHM*, *American Curves* as a cover model, *Supreme*, *MuscleMag*

*International*, *Muscle & Fitness*, *Teeze*, and in a *Bowflex* ad.  Gibson has also modeled for Short Block Technologies (SBT, Inc.), and appeared in a home workout video called ENVY.

128.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Gibson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

129.    Gibson's image, likeness and identity are depicted in at least five photographs, enclosed as **Exhibit E** to the Complaint, one of which has been used at least four times and altered to create the false perception that Gibson has consented or agreed to promote, advertise, market and/or endorse the Club's "Genie in a Bottle Party," and the four remaining images having been similarly misused and altered to create the false impression that Gibson has consented or agreed to promote, advertise, market and/or endorse the Club and its other events to benefit Defendants' commercial interests.

130.    Even after Gibson's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Gibson's demands.

131.    Gibson's image, likeness and identity in **Exhibit E** are being used as advertising.

132.    Gibson's image, likeness and identity in **Exhibit E** are being used on social media.

133.    Gibson's image, likeness and identity in **Exhibit E** are being used as a "coupon", having been tagged with "Entry is Free."

134.    Gibson's image, likeness and identity in **Exhibit E** are tagged with "members.miamivelvet" and are being used for branding purposes.

135.    Gibson has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

136.    Gibson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

137.    Defendants never sought permission or authority to use or alter Gibson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

138.    Gibson never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

139.    Defendants neither offered nor paid any remuneration to Gibson for the unauthorized use and self-serving alteration of her image, likeness or identity.

140.    Defendants' use of Gibson's image, likeness and identity in connection with the Club's "swinger" events impugns Gibson's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

141.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Gibson's images in their market activities and business.  In doing so, Defendants have further damaged Gibson.

### Plaintiff Cora Skinner

142.    Skinner is, and at all times relevant to this action was, a successful professional model, brand spokesperson, and actress with numerous accomplishments.  As a model, Skinner has appeared in pictorials and features in *Maxim* (USA), *Maxim* (Spain), *FHM* (USA), *Maxim* (Belgium), *Muscle & Fitness*, and *Playboy's* lingerie catalog.  Skinner has also been featured on her own set of Bench Warmer model trading cards and was a contract model of *Hot Bike* and *Import Tuner*.  As a brand spokesperson, Skinner has featured in campaigns for Sketchers, Aether Apparel, Monari Clothing, GUESS, Sears, Palm's Casino, Nordstrom's and many others. As an actress, Skinner has presented trophies at the Emmys, dressed up like a superhero for Spike TV's Scream Awards and has done several live skits on Jay Leno's *Tonight Show*.  She has also been featured on such shows as *Las Vegas, Shark, Deal or No Deal, Chuck, Rules of Engagement, CSI: Miami* and *The Office*.  Skinner also starred in the "Nine Lives" video by Def Leopard, and "Just Go" by Lionel Richie.

143.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Skinner negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

144.    Skinner's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit F** to the Complaint, which has been used at least three times and altered to create the false perception that Skinner has consented or agreed to promote, advertise, market and/or endorse the Club's "Veteran's Day Crazy Camo Party" event to benefit Defendants' commercial interests.

145.    Even after Skinner's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Skinner's demands.

146.    Skinner's image, likeness and identity in **Exhibit F** are being used as advertising.

147.    Skinner's image, likeness and identity in **Exhibit F** are being used on social media.

148.    Skinner's image, likeness and identity in **Exhibit F** are tagged with ". . . pure erotic fun . . ." and are being used for branding purposes.

149.    Skinner has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

150.    Skinner has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

151.    Defendants never sought permission or authority to use or alter Skininer's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

152.    Skinner never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

153.    Defendants neither offered nor paid any remuneration to Skinner for the unauthorized use and self-serving alteration of her image, likeness or identity.

154.    Defendants' use of Skinner's image, likeness and identity in connection with the Club's "swinger" events impugns Skinner's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

155.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Skinner's images in their market activities and business.   In doing so, Defendants have further damaged Skinner.

### *Plaintiff Danielle Ruiz*

156.    Ruiz is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host and actress with numerous accomplishments.  As a model, Ruiz has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY shoes.  She was a contract model for Frederick's of Hollywood and L*Space and has appeared in many magazines and on the covers of *Maxim* and *Elegant*.  As a brand spokesperson, Ruiz was Rockstar Energy's "Miss Motocross" and Monster Energy Dime Squad Girl.  As a host and actress, Ruiz has appeared on *The New Girl*, *The Finder*, *Breaking In*, *Cougar Town*, *CSI*, *Entourage*, *Miami Trauma*, *Dark Blue*, *Love Bites*, *Friends With Benefits*, *Battle LA: The Ex's* and hosted the series *World Poker Tour (WPT): Royal Flush*.

157.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Ruiz negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

158.    Ruiz's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit G** to the Complaint, one of which has been used at least four times and altered to create the false perception that Ruiz has consented or agreed to promote, advertise, market and/or endorse the Club's "Bunny Bash" and the second of which has been used and

26

similar altered to create the false impresssion that Ruiz has consented or agreed to promote, advertise, market and/or endorse the Club's "animal print" themed event to benefit Defendants' commercial interests.

159.    Even after Ruiz's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Ruiz's demands.

160.    Ruiz's image, likeness and identity in **Exhibit G** are being used as advertising.

161.    Ruiz's image, likeness and identity in **Exhibit G** are being used on social media.

162.    Ruiz's image, likeness and identity in **Exhibit G** are tagged with "SDC" for "Swingers Date Club" and "#swingersclub" and are being used for branding purposes.

163.    Ruiz's image, likeness and identity in **Exhibit G** have also been tagged "#flipagram" and used on a video and flipagram.

164.    Ruiz's image, likeness and identity in **Exhibit G** have been used for an additional, foreseeable use by *Xcitement* magazine.

165.    Ruiz has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

166.    Defendants never sought permission or authority to use or alter Ruiz's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

167.    Ruiz never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

168.   Defendants neither offered nor paid any remuneration to Ruiz for the unauthorized use and self-serving alteration of her image, likeness or identity.

169.   Defendants' use of Ruiz's image, likeness and identity in connection with the Club's "swinger" events impugns Ruiz's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

170.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Ruiz's images in their market activities and business.  In doing so, Defendants have further damaged Ruiz.

### Plaintiff Eva Pepaj

171.   Pepaj is, and at all times relevant to this action was, a successful professional model, brand spokesperson, and actress with numerous accomplishments.  Pepaj has appeared in numerous print and media advertisements, including a national Diet Coke TV commercial and in advertisemens for Oil of Olay, Fruit of the Loom, Kohler and Coca Cola.  As an actress, Pepaj has had a lead role in *The Hand Off, Interior, Leather Bar,* and *The Romp.*

172.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Pepaj negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

173.   Pepaj's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit H** to the Complaint, which has been used at least four times and altered to create the false perception that Pepaj has consented or agreed to promote, advertise, market

and/or endorse the Club's "St Patty's Day Meet & Greet" event to benefit Defendants' commercial interests.

174.    Even after Pepaj's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Pepaj's demands.

175.    Pepaj's image, likeness and identity in **Exhibit H** are being used as advertising.

176.    Pepaj's image, likeness and identity in **Exhibit H** are being used on social media.

177.    Pepaj's image, likeness and identity in **Exhibit H** are tagged with "SDC" for "Swingers Date Club" and "the premier swing club" and are being used for branding purposes.

178.    Pepaj's image, likeness and identity in **Exhibit H** are also being used as a "coupon", offering "the earlier you arrive, the less your admission price."

179.    Pepaj has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

180.    Defendants never sought permission or authority to use or alter Pepaj's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

181.    Pepaj never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

182.    Defendants neither offered nor paid any remuneration to Pepaj for the unauthorized use and self-serving alteration of her image, likeness or identity.

183.    Defendants' use of Pepaj's image, likeness and identity in connection with the Club's "swinger" events impugns Pepaj's character, embarrasses her, and suggests – falsely – her

support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

184.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Pepaj's images in their market activities and business.  In doing so, Defendants have further damaged Pepaj.

### Plaintiff Heather Depriest

185.    Depriest is, and at all times relevant to this action was, a successful professional model and brand spokesperson with numerous accomplishments.  Depriest has made multiple appears in national GUESS campaigns and her image has been used repeatedly in magazines, on posters, billboards and in store displays for GUESS.  Depriest is the September 2015 *Playboy* cover girl, and has appeared in multiple other magazines including *L'official*, *Hudson Hawaii* magazine, *Kode* magazine and *Latch*.  Depriest has also been a national brand model for products such as Sexy Hair, Faces by Lena and Alfaparf products.

186.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Depriest negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

187.    Depriest's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit I** to the Complaint, one of which has been used at least four times and altered to create the false perception that Depriest has consented or agreed to promote, advertise, market and/or endorse the Club's ""Shake Your Tailfeather Booty Shaking Context for Cash" event and the other of which has been used as least three times and similarly altered to create the

false perception that Depriest has consented or agreed to promote, advertise, market and/or endorse a wild "animal print" party at the Club to benefit Defendants' commercial interests.

188.    Even after Depriest's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Depriest's demands.

189.    Depriest's image, likeness and identity in **Exhibit I** are being used as advertising.

190.    Depriest's image, likeness and identity in **Exhibit I** are being used on social media.

191.    Depriest's image, likeness and identity in **Exhibit I** are tagged with "#swingers" and "#swingersclub" and are being used for branding purposes.

192.    Depriest's image, likeness and identity in **Exhibit I** are also being used as a "coupon", advertising cash prizes for participation in the "Shake Your Tailfeather" contest.

193.    Depriest has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

194.    Defendants never sought permission or authority to use or alter Depriest's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

195.    Depriest never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

196.    Defendants neither offered nor paid any remuneration to Depriest for the unauthorized use and self-serving alteration of her image, likeness or identity.

197.    Defendants' use of Depriest's image, likeness and identity in connection with the Club's "swinger" events impugns Depriest's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

198.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Depriest's images in their market activities and business.  In doing so, Defendants have further damaged Depriest.

### Plaintiff Irina Voronina

199.    Voronina is, and at all times relevant to this action was, a successful professional model, spokesmodel and actress with numerous accomplishments.  As a model, Voronina has modeled internationally for more than 14 years, was a Playboy "Playmate of the Month" and has been named "Model Of the Year" by *Kandy* Magazine based on the highest number of digital issue downloads on iPad and iPhone.  Voronina has also modeled for international brands such as SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour, among others.  Additionally, Voronina has appeared in numerous magazines including *FHM*, *Maxim*, *Maxim* (Italy), *Ocean*, *Shape, 944, Knockout, Q (UK)*, and *People* (Australia).  Voronina was a St Pauli Girl Beer spokes model, led a year-long public relations tour across the United States for the beer brand, and became first ever St. Pauli Girl to ring the NYSE closing bell.  As a spokesmodel, Voronina was the main host of Playboy Radio's weekly shows "Playmate Club" and interviewed hundreds of celebrities live on air.  As an actress, Voronina has appeared in *Reno 911, Balls of*

*Fury, Towelhead*, and *Piranha 3DD,* as well as television shows *Svetlana*, on the live action show *Saul of the Mole Men*, and as a guest star on Nickelodeon's *iCarly.*

200.    Voronina has more than 2 million Facebook fans.

201.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Voronina negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

202.    Voronina's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit J** to the Complaint, one of which has been used at least three times and altered to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse the Club's "Horny as Hell" Halloween party and the other of which has been used and similarly altered to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse the Club's "sexiest fairy taie princess" themed event to benefit Defendants' commercial interests.

203.    Even after Voronina's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Voronina's demands.

204.    Voronina's image, likeness and identity in **Exhibit J** are being used as advertising.

205.    Voronina's image, likeness and identity in **Exhibit J** are being used on social media.

206.    Voronina's Image, likeness and identity in **Exhibit J** are tagged with "horny as hell," "sexual gratification," and "Youngest Swingers Club" and are being used for branding purposes.

207.    Voronina's Image, likeness and identity in **Exhibit J** are also being used as a "coupon", offering new members "Free One Month Membership."

208.    Voronina has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

209.    Voronina has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

210.    Defendants never sought permission or authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

211.    Voronina never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

212.    Defendants neither offered nor paid any remuneration to Voronina for the unauthorized use and self-serving alteration of her image, likeness or identity.

213.    Defendants' use of Voronina's image, likeness and identity in connection with the Club's "swinger" events impugns Voronina's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

214.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Voronina's images in their market activities and business.  In doing so, Defendants have further damaged Voronina.

### *Plaintiff Jesse Golden*

215.    Golden is, and at all times relevant to this action was, a successful professional model, brand spokesperson and businesswoman with numerous accomplishments.  Her business ventures include being a Holistic Health Practitioner and is a certified Hatha Yoga instructor.  As a model and brand spokesperson, Golden has worked with national and international brands such as Abercrombie & Fitch, Victoria Secret, Speedo, Lucy Sport, Coca Cola, Gap, Nike.  She has also appeared on the covers of the *New York Times* Magazine, *Fitness* Magazine, *Newport Beach* Magazine, and *Yoga International*, among others.

216.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Golden negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

217.    Golden's image, likeness and identity are depicted in at least four photographs, enclosed as **Exhibit K** to the Complaint, one of which has been used at least three times and altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's Toga Part themed event, another of which was used at least three times and similarly altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's "Moulin Rouge" event, a third of which was used and similarly altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's "Polka Dot Paradize" party, and a fourth of which was used and similarly altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's "Candy Cane Martini Cocktail party" to benefit Defendants' commercial interests.

218.    Even after Golden's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Golden's demands.

219.    Golden's image, likeness and identity in **Exhibit K** are being used as advertising.

220.    Golden's image, likeness and identity in **Exhibit K** are being used on social media.

221.    Golden's image, likeness and identity in **Exhibit K** are tagged with "SDC" for Swingers Date Club and "very arousing night" and are being used for branding purposes.

222.    Golden has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

223.    Defendants never sought permission or authority to use or alter Golden's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

224.    Golden never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

225.    Defendants neither offered nor paid any remuneration to Golden for the unauthorized use and self-serving alteration of her image, likeness or identity.

226.    Defendants' use of Golden's image, likeness and identity in connection with the Club's "swinger" events impugns Golden's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

36

227.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Golden's images in their market activities and business.  In doing so, Defendants have further damaged Golden.

### Plaintiff Jessica Burciaga

228.    Burciaga is, and at all times relevant to this action was, a successful businesswoman, professional model and actress with numerous accomplishments.  Burciaga's business ventures include a women's online clothing boutique, www.SailorandSaint.com.  As a model, Burciaga won *Stuff* Magazine's "Neighborhood Knockout" contest, appeared as a ring girl in EA Sports Fight Night Round 3 video game, was a *Playboy* Playmate, and was featured in *Maxim*, *Import Tuner*, *Modified Magazine*, *Performance Auto & Sound*, *Show Latina*, and *Lowrider* Magazine, among others.  As an actress, Burciaga has appeared as herself in several episodes of "The Girls Next Door" reality TV series.

229.    Burciaga has over 1.2 million Instagram followers and 200,000 Twitter subscribers.

230.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

231.    Burciaga's image, likeness and identity are depicted in at least four photos, enclosed as **Exhibit L** to the Complaint, one of which has been used at least four times and altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's blue-themed event, another of which was used at least four times and similarly altered to create the false perception that Burciaga has consented or agreed to

promote, advertise, market and/or endorse the Club's "SEXY Latin weekend" events, a third of which was used at least four times and similarly altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's "Wine-O" wine & cheese event, and the fourth of which was used at least three times and similarly altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's wild animal print-themed event to benefit Defendants' commercial interests.

232.   Even after Golden's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Golden's demands.

233.   Burciaga's image, likeness and identity in **Exhibit L** are being used as advertising.

234.   Burciaga's image, likeness and identity in **Exhibit L** are being used on social media.

235.   Burciaga's image, likeness and identity in **Exhibit L** are tagged with "#swingersclub" and are being used for branding purposes.

236.   Burciaga's image, likeness and identity in **Exhibit L** are being used for the additional purposes as a video and flipagram.

237.   Burciaga has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

238.   Burciaga has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

239.     Defendants never sought permission or authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants, the Club, or any Club event.

240.     Burciaga never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

241.     Defendants neither offered or paid any remuneration to Burciaga for the unauthorized use or self-serving alteration of her image, likeness or identity.

242.     Defendants' use of Burciaga's image, likeness and identity in connection with the Club's "swinger" events impugns Burciaga's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

243.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Burciaga's images in their market activities and business.  In doing so, Defendants have further damaged Burciaga.

### Plaintiff Jessica Hinton

244.     Hinton is, and at all times relevant to this action was, a successful businesswoman, professional model, host, actress and television personality with numerous accomplishments.  Hinton's business ventures include being named Creative Director for MAJR Media and given part ownership for her role with the company.  As a model, Hinton has been the Palms Hotel & Casino's ad campaign spokesmodel, a *Playboy* "Playmate of the Month," has

been featured as the front cover model for magazines such as *FHM, Kandy* Magazine, *MMA Sports* Magazine, *Guitar World* and *Muscle & Fitness* Magazine.  She served as the spokesmodel for Milwaukee's Best Beer in conjunction with Playboy Enterprises, the spokesmodel for Affliction Clothing, Enzo Milano Hair Products, REVIV Wellness Spa, Protein World and has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media.  As an actress, Hinton has appeared in multiple national television commercials, on "Baywatch" and "7th Heaven."  Hinton has also been the host of Victory Poker interviewing poker players and celebrities and as an interview personality for Top Rank Boxing, interviewing Manny Pacquiao and Shane Mosley.  Hinton has also been a guest host for Los Angeles television station KTLA.

245.    Hinton has 1 million Instagram followers.

246.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Hinton negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

247.    Hinton's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit M** to the Complaint, one of which has been used at least three times and altered to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse the Club's "Nuts & Bolts" meet and greet event, and another of which has been used at least three times to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse another non-descript Club event to benefit Defendants' commercial interests.

248.     Even after Hinton's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Hinton's demands.

249.     Hinton's image, likeness and identity in **Exhibit M** are being used as advertising.

250.     Hinton's image, likeness and identity in **Exhibit M** are being used on social media.

251.     Hinton's image, likeness and identity in **Exhibit M** are tagged with  "sexiest meet and greet," "#swingersclub" and "#swingers" and are being used for branding purposes.

252.     Hinton has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

253.     Hinton has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

254.     Defendants never sought permission or authority to use or alter Hinton's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

255.     Hinton never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

256.     Defendants neither offered nor paid any remuneration to Hinton for the unauthorized use and self-serving alteration of her image, likeness or identity.

257.     Defendants' use of Hinton's image, likeness and identity in connection with the Club's "swinger" events impugns Hinton's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

41

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

258.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hinton's images in their market activities and business.  In doing so, Defendants have further damaged Hinton.

### *Plaintiff Joanna Krupa*

259.   Krupa is, and at all times relevant to this action was, a successful professional model, actress and television personality, and spokesperson with numerous accomplishments. As a model, Krupa has appeared twice on the cover of *Playboy*, is a lingerie model for Frederick's of Hollywood, and appeared on the covers of such magazines as *Envy*, *FHM*, *Personal*, *Inside Sport*, *Stuff*, *Steppin' Out*, *Teeze*, *Shape* and *Maxim*, in which she was named the "Sexiest Swimsuit Model in the World."  As an actress and television personality, Krupa has appeared in the film *Max Havoc: Curse of the Dragon*, the television show *Superstars*, made multiple appearances on the CSI and Las Vegas television series, and appeared as a contestant on Season 9 of ABC's *Dancing with the Stars*.  Additionally, since 2010 Krupa has been head judge of *Poland's Next Top Model*, and is a cast member of Bravo's *The Real Housewives of Miami*. She has also appeared as a guest on *Jimmy Kimmel*, *Chelsea Lately*, *Jenny Jones*, *Guys Choice*, Howard Stern's *On Demand*, *The View*, *Poker 2 night*, *The Wendy Williams Show*.

260.   Krupa has nearly 500,000 Instagram followers and over eight hundred thousand Facebook followers.

261.   Krupa is a spokeswoman for People for the Ethical Treatment of Animals ("PETA") worldwide.

262.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Krupa negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

263.     Krupa's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit N** to the Complaint, one of which has been used at least five times and altered to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse the Club's "FCUK ME FRIDAY" event (with the patently revealing too-cute-by-half "disclaimer" that "[w]e're not disguising the purpose of this party at all . . . (ok, maybe a little bit)"), and another of which has been used at least four times to create the false perception that Krupa has consented or agreed to promote, advertise, market and/or endorse the Club's "Woman Crush Wednesday: *Joanna Krupa* is a hottie.  Who is your #WCW [Woman Crush Wednesday]?" (emphasis added) to benefit Defendants' commercial interests.

264.     Even after Krupa's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Krupa's demands.

265.     Krupa's image, likeness and identity in **Exhibit N** are being used as advertising.

266.     Krupa's image, likeness and identity in **Exhibit N** are being used on social media.

267.     Krupa's image, likeness and identity in **Exhibit N** are tagged with "FCUK ME FRIDAY," "SDC.com," and "#swingersclub" and are being used for branding purposes.

268.     Krupa's image, likeness and identity in **Exhibit N** have an additional use which includes identifying the internationally known star Krupa by name in Defendants' advertisements.

269.     Krupa has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

270.     Krupa has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

271.     Defendants never sought permission or authority to use or alter Krupa's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

272.     Krupa never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

273.     Defendants neither offered nor paid any remuneration to Krupa for the unauthorized use and self-serving alteration of her image, likeness or identity.

274.     Defendants' use of Krupa's image, likeness and identity in connection with the Club's "swinger" events impugns Krupa's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

275.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Krupa's images in their market activities and business.  In doing so, Defendants have further damaged Krupa.

### *Plaintiff Jordan Carver*

276.    Carver is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host, actress and businesswoman with numerous accomplishments. Her career started with the launch of her own Facebook page in 2010 and her own website, www.jordancarver.com, posting fashion modeling photos Her business successes include a widely released "Yoga for Beginners" DVD and the launch of her very own YouTube channel after partnering with the world's largest television production company, Endemol, and featuring reality-style episodes uploaded regularly.  Carver has also hosted the 2013 PBR Rock Bar's NYE Bash in Planet Hollywood Las Vegas.  As a model and brand spokesperson, Carver won second place on the Top 100 Internet Model Newcomer of the Year, and has appeared on the cover of such magazines as *Digital, Maxim, Like.*  She was also a commercial spokeswoman for online German consumer electronics giant Redcoon, and was the spokesmodel for Cobra racing sport seat production company, among others.  As an actress, Ms.Carver appeared in the German-American comedy *Who Killed Johnny*, and participated for two years in the German reality show *Wild Girls, 'Auf High Heels durch Afrika'* ("Wild Girls - In High Heels Through Africa"), in which she along with other participants lived in the deserts of Namibia with the indigenous people.

277.    Carver has four (4) million Facebook followers, one million Instagram followers and 172,500 Twitter followers.

278.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Carver negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

279.    Carver's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit O** to the Complaint, which has been used at least three times and altered to create the false perception that Carver has consented or agreed to promote, advertise, market and/or endorse the Club, which referenced Carver by name, to wit: "wow, looks like Jordon Carver  is ready for swim suit season!" to benefit Defendants' commercial interests.

280.    Even after Carver's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Carver's demands.

281.    Carver's image, likeness and identity in **Exhibit O** are being used as advertising.

282.    Carver's image, likeness and identity in **Exhibit O** are being used on social media.

283.    Carver's image, likeness and identity in **Exhibit O** have an additional use which includes identifying the internationally known star Carver by name in Defendants' advertisements.

284.    Carver has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

285.    Carver has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

286.    Defendants never sought permission or authority to use or alter Carver's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

287.    Carver never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

46

288.    Defendants neither offered nor paid any remuneration to Carver for the unauthorized use and self-serving alteration of her image, likeness or identity.

289.    Defendants' use of Carver's image, likeness and identity in connection with the Club's "swinger" events impugns Carver's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

290.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Carver's images in their market activities and business.   In doing so, Defendants have further damaged Carver.

### Plaintiff Katerina Van Derham

291.    Van Derham is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host, actress and businesswoman with numerous accomplishments.  Her business successes include being the Founder, CEO and Editor-in-Chief of VIVA GLAM, established in 2012, as a classic glamour lifestyle magazine.  VIVA GLAM offers alternative approaches to traditional lifestyle, with a strong focus on vegan, organic and cruelty free brands.  She has developed and and manufactures a line of cruelty-free, 100% human hair eyelashes, Kat Lash.  As a model and brand spokesperson, Van Derham has appeared on over 60 magazine covers world-wide and appeared in over 600 major media outlets including the Times Square Jumbotron, CNN, FOX, and NBC.  She is the longest reigning St. Pauli Girl spokesmodel and, as the national spokesmodel, has appeared in hundreds of medial outlets.  As an actress and spokesmodel, Van Derham has appeared in 17 television commercials, had guest

spots on *Entourage*, *CSI* and *Monk*, has appeared in the movies *Redline, Unbelievable* and *15 Minutes Alone*, and can be seen in music videos with Bobby Brown, Ja Rule, 50 Cent, Andy, and Big & Rich.

292.    Van Derham is active, passionate and outspoken about charities, such SCIL (an animal care company), Peace4Animals and PETA.   She has also worked with RedLightChildren.org to help end child slavery and exploitation, and has teamed up with Leah Remini, WorldVentures Foundation and the Nancy Lieberman Foundation on the DreamCourt project to build the first high quality basketball court at the Freeman E. Fairfield/Westside Boys & Girls Club.

293.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Van Derham negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

294.    Van Derham's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit P** to the Complaint, which has been used at least twice and altered to create the false perception that Van Derham has consented or agreed to promote, advertise, market and/or endorse the Club to benefit Defendants' commercial interests.

295.    Even after Van Derham's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Van Derham's demands.

296.    Van Derham's image, likeness and identity in **Exhibit P** are being used as advertising.

297.    Van Derham's image, likeness and identity in **Exhibit P** are being used on social media.

48

298.    Van Derham has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

299.    Van Derham has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

300.    Defendants never sought permission or authority to use or alter Van Derham's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

301.    Van Derham never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

302.    Defendants neither offered nor paid any remuneration to Van Derham for the unauthorized use and self-serving alteration of her image, likeness or identity.

303.    Defendants' use of Van Derham's image, likeness and identity in connection with the Club's "swinger" events impugns Van Derham's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

304.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Van Derham's images in their market activities and business. In doing so, Defendants have further damaged Van Derham.

*Plaintiff Kim Cozzens*

305.    Cozzens is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host, and actress with numerous accomplishments.  As a model and brand spokesperson, Cozzens has appeared in dozens of international commercials and campaigns.  She was featured in an "Old Spice" commercial with a full speaking role that was one of the most highly sought after roles cast nationally.   Cozzens has been featured in Sketchers advertising, appeared in a worldwide New Amsterdam vodka campaign, was the spokesmodel for La Z Boy furniture galleries, was the spokesmodel for a Martini Rossi liquor campaign in which George Clooney appeared, and for Dodge automotive.  The Martini Rossi liquor campaign featured Cozzens with George Clooney.  Adweek rated the Dodge commercial featuring Cozzens as one of the best of the year.  Cozzens has also appeareed on the cover of *VIVA GLAM* magazine, *Rangoni* magazine, in *Maxim*, and others.

306.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Cozzens negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

307.    Cozzens' image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit Q** to the Complaint, which has been used at least four times and altered to create the false perception that Cozzens has consented or agreed to promote, advertise, market and/or endorse the Club's purple-themed event to benefit Defendants' commercial interests and included an obscene posting appearing to be attributed to Cozzens "I want to fuck so hard" and "Let's Party!"

308.    Even after Cozzens' objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Cozzens' demands.

309.    Cozzens' image, likeness and identity in **Exhibit Q** are being used as advertising.

310.    Cozzens' image, likeness and identity in **Exhibit Q** are being used on social media.

311.    Cozzens' image, likeness and identity in **Exhibit Q** are tagged with "#swingersclub" and are being used for branding purposes.

312.    Cozzens' image, likeness and identity in **Exhibit Q** are additionally being used in a video by the Club.

313.    Cozzens has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

314.    Cozzens has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

315.    Defendants never sought permission or authority to use or alter Cozzens' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

316.    Cozzens never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

317.    Defendants neither offered nor paid any remuneration to Cozzens for the unauthorized use and self-serving alteration of her image, likeness or identity.

51

318.    Defendants' use of Cozzens' image, likeness and identity in connection with the Club's "swinger" events impugns Cozzens' character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

319.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Cozzens' images in their market activities and business.  In doing so, Defendants have further damaged Cozzens.

### *Plaintiff Laurie Fetter (Jacobs)*

320.    Fetter is, and at all times relevant to this action was, a successful professional model, brand spokesperson and actress with numerous accomplishments.  As a model, Fetter was *Playboy* "Playmate of the Month" and also appeared in *Maxim, FHM,* and *Vanity Fair* magazines.  Fetter also was a brand spokesperson for Kohl's, Macy's, McDonalds, Sunglass Hut, and Leg Avenue.  As an actress, Fetter appeared in the indie thriller "Hitters," has appeared on CSI, and had a starring role in the movie "A Guy Named Rick" where she played God's wife.

321.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Fetter negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

322.    Fetter'ss image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit R** to the Complaint, which has been used at least three times and altered to create the false perception that Fetter has consented or agreed to promote, advertise, market

and/or endorse the Club's "hot fairy tale princess" themed event to benefit Defendants' commercial interests.

323.    Even after Fetter'ss objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Fetter'ss demands.

324.    Fetter'ss image, likeness and identity in **Exhibit R** are being used as advertising.

325.    Fetter'ss image, likeness and identity in **Exhibit R** are being used on social media.

326.    Fetter'ss image, likeness and identity in **Exhibit R** are tagged with "#swingersparty" and are being used for branding purposes.

327.    Fetter has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

328.    Fetter has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

329.    Defendants never sought permission or authority to use or alter Fetter'ss image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

330.    Fetter never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

331.    Defendants neither offered nor paid any remuneration to Fetter for the unauthorized use and self-serving alteration of her image, likeness or identity.

332.    Defendants' use of Fetter'ss image, likeness and identity in connection with the Club's "swinger" events impugns Fetter'ss character, embarrasses her, and suggests – falsely –

her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

333.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Fetter'ss images in their market activities and business.   In doing so, Defendants have further damaged Fetter.

### *Plaintiff Lina Posada*

334.   Posada is, and at all times relevant to this action was, a successful professional model, brand spokesperson and fashion designer with numerous accomplishments.   As a model and brand spokesperson, Posada is the face of the lingerie brands *Besame* and *Espiral*.   She has also appeared in advertisements for Babalu' Swimwear, JSN, UJeans, T.T. Blues, Irgus Swimwear, and Paradizia.

335.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

336.   Posada'ss image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit S** to the Complaint, one of which has been used at least three times and altered to create the false perception that Posada has consented or agreed to promote, advertise, market and/or endorse the Club's "Happy Halloween" event, and another of which was used at least twice and similarly altered to create the false perception that Posada has consented or agreed to promote, advertise, market and/or endorse the Club's "Black and White" party to benefit Defendants' commercial interests.

54

337.   Even after Posada'ss objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Posada'ss demands.

338.   Posada'ss image, likeness and identity in **Exhibit S** are being used as advertising.

339.   Posada'ss image, likeness and identity in **Exhibit S** are being used on social media.

340.   Posada'ss image, likeness and identity in **Exhibit S** are tagged with "Youngest Swingers Club" and are being used for branding purposes.

341.   Posada has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

342.   Posada has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

343.   Defendants never sought permission or authority to use or alter Posada'ss image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

344.   Posada never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

345.   Defendants neither offered nor paid any remuneration to Posada for the unauthorized use and self-serving alteration of her image, likeness or identity.

346.   Defendants' use of Posada'ss image, likeness and identity in connection with the Club's "swinger" events impugns Posada'ss character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

347.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada'ss images in their market activities and business.  In doing so, Defendants have further damaged Posada.

### *Plaintiff Maria Zyrianova*

348.     Zyrianova is, and at all times relevant to this action was, a successful professional model, brand spokesperson, actress and stand-up comedian with numerous accomplishments.  As a model and brand spokesperson, Zyrianova has been featured in countless advertising and editorial bookings, including *Vogue, Elle* and *Cosmopolitan* magazines, as well as national advertising campaign for L'oreal, Avon, Coca-Cola and Samsung.  Zyrianova was also chosen to be the face of and represent Ardell Lashes in an international beauty campaign.  Zyrianova has been featured in a national television advertising campaign for Progressive insurance.  As an actress and stand-up comedian, Zyrianova has made guest appearances on HBO's *Entourage*, STARZ *Party Down*, SHOWTIME's *Dexter*, FX's *Always Sunny In Philadelphia*, ABC FAMILY's *Baby Daddy* and on the primetime networks hit *Two and a Half Men* and *NCIS: Los Angeles*.  Zyrianova played "Masha" in 3 SISTERS by Chekov, the role of "Nastasya" in IDIOT by Dostoevsky, and regularly performs stand-up comedy at Los Angeles' premier comedy venues such as Hollywood's famous Comedy Store.

349.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Zyrianova negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

350.    Zyrianova's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit T** to the Complaint, which has been used at least four times and altered to create the false perception that Zyrianova has consented or agreed to promote, advertise, market and/or endorse the Club's "Sex Therapy Friday" event to benefit Defendants' commercial interests.

351.    Even after Zyrianova's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Zyrianova's demands.

352.    Zyrianova's image, likeness and identity in **Exhibit T** are being used as advertising.

353.    Zyrianova's image, likeness and identity in **Exhibit T** are being used on social media.

354.    Zyrianova's image, likeness and identity in **Exhibit T** are tagged with "Sex Therapy Friday" and "best place to start your sex fund this weekend" and are being used for branding purposes.

355.    Zyrianova has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

356.    Zyrianova has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

357.    Defendants never sought permission or authority to use or alter Zyrianova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

358. Zyrianova never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

359. Defendants neither offered nor paid any remuneration to Zyrianova for the unauthorized use and self-serving alteration of her image, likeness or identity.

360. Defendants' use of Zyrianova's image, likeness and identity in connection with the Club's "swinger" events impugns Zyrianova's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

361. Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Zyrianova's images in their market activities and business.  In doing so, Defendants have further damaged Zyrianova.

### Plaintiff Marketa Kazdova

362. Kazdova is, and at all times relevant to this action was, a successful professional model, brand spokesperson and actress with numerous accomplishments.  As a model and brand spokesperson, Kazdova has appeared in magazines such as *Elle, Style, Cosmo Girl, Dolce Vita, Nylon, Prestige Paris, Fiasco, Composure, Formen, Modern Salon, Viva Glam* and many others.  Kazdova has also appeared in advertisements and promotional material for Nordstrom, Macy's, Tadashi Shoji, Nike, Anthony Franco, Alicia Estrada, Mirabella beauty, MAC, Level 99, Dreamgirl lingerie, Erka Mare Swimwear, House of Pink Lemonaid Swimwear, Hautelook and Patagonia.  Most recently, Kazdova has appeared on billboards in a national advertising

campaign for Mello Yello. Kazdova also has appeared in commercials for McDonalds' McFlurry for worldwide use, as well as Soysh. As an actress, she has appeared in a number of music videos and worked with stars such as Kanye West and Jay Z.

363. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Kazdova negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

364. Kazdova's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit U** to the Complaint, one of which has been used at least three times and altered to create the false perception that Kazdova has consented or agreed to promote, advertise, market and/or endorse the Club's activities, and another of which has been used at least four times and similarly altered to create the false perception that Kazdova has consented or agreed to promote, advertise, market and/or endorse the Club's "Fantastic 80's" event to benefit Defendants' commercial interests.

365. Even after Kazdova's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Kazdova's demands.

366. Kazdova's image, likeness and identity in **Exhibit U** are being used as advertising.

367. Kazdova's image, likeness and identity in **Exhibit U** are being used on social media.

368. Kazdova's image, likeness and identity in **Exhibit U** are tagged with "Now THIS is what I call a cleaning service!", "#swingers," "#swingersclub," and "Youngest Swingers Club" and are being used for branding purposes.

369.   Kazdova's image, likeness and identity in **Exhibit U** are being used as a "coupon", offering new members "Free one month membership."

370.   Kazdova has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

371.   Kazdova has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

372.   Defendants never sought permission or authority to use or alter Kazdova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

373.   Kazdova never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

374.   Defendants neither offered nor paid any remuneration to Kazdova for the unauthorized use and self-serving alteration of her image, likeness or identity.

375.   Defendants' use of Kazdova's image, likeness and identity in connection with the Club's "swinger" events impugns Kazdova's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

376.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Kazdova's images in their market activities and business.  In doing so, Defendants have further damaged Kazdova.

### *Plaintiff Masha Lund*

377.    Lund is, and at all times relevant to this action was, a successful professional model, brand spokesperson and actress with numerous accomplishments.  As a model and brand spokesperson, Lund appeared in a national billboard campaign for Rockstar Energy Drink, Ikeka, and E-Trade Denmark.  She has appeared on the covers of such magazines as *FHM, Maxim, Ralph, Dreamgirl, Gear, Exposed* and the popular Danish magazine *M!*, and appeared in national commercials for Corona, Rolling Rock Beer, and Saturn.  Lund is also the spokesperson for the "Dreamgirl" lingerie line and Celebrity jewelry line "Nialaya."  As an actress, Lund has appeared in popular films such as "The Pick of Destiny" with Jack Black and "Epic Movie" with Carmen Electra.  She has appeared in music videos with Lady Gaga, Beyonce, Eminem and D12, has appeared on E!, Jay Leno, Spike TV, Jimmy Kimmel Live, The Late Late Show, and is one of the stars on a popular European Reality Show "Danske Hollywood Fruer."  She has a business degree and is fluent in three languages.

378.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Lund negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

379.    Lund's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit V** to the Complaint, one of which has been used at least three times and altered to create the false perception that Lund has consented or agreed to promote, advertise, market and/or endorse the Club's "Sexy Week at the Office" event, and another of which has been used at least four times and similarly altered to create the false perception that Lund has consented or agreed to promote, advertise, market and/or endorse the Club's "Oktoberfest: Boobs & Beer Jugs" event to benefit Defendants' commercial interests.

380.     Even after Lund's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Lund's demands.

381.     Lund's image, likeness and identity in **Exhibit V** are being used as advertising.

382.     Lund's image, likeness and identity in **Exhibit V** are being used on social media.

383.     Lund's image, likeness and identity in **Exhibit V** are tagged with "Let it be a sexy week at the office," "#swingersclub," "Boobs & Beer Jugs," and "SDC.com" and are being used for branding purposes.

384.     Lund has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

385.     Lund has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

386.     Defendants never sought permission or authority to use or alter Lund's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

387.     Lund never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

388.     Defendants neither offered nor paid any remuneration to Lund for the unauthorized use and self-serving alteration of her image, likeness or identity.

389.     Defendants' use of Lund's image, likeness and identity in connection with the Club's "swinger" events impugns Lund's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

390. Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Lund's images in their market activities and business. In doing so, Defendants have further damaged Lund.

### *Plaintiff Maysa Quy*

391. Quy is, and at all times relevant to this action was, a successful professional model, brand spokesperson, pro body builder, ring girl, martial artist, fitness trainer and nutritionist with numerous accomplishments. As a model and brand spokesperson, Quy modeled and appeared in numerous magazines, catalogues and advertising campaigns for national and international brands including Skechers Shoes, Benefit Cosmetics, CoverFX cosmetics, Dreamgirl International Lingerie, Mini Cooper USA, T-Mobile, Apple, Nike, Microsoft, and Davids Bridal. Quy was a presenter at the People's Choice Awards and wss a Strike Force/Ring Card Model. She was also a featured performer in the National Microsoft "Stay Connected" television commercial.

392. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Quy negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

393. Quy's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit W** to the Complaint, which has been used at least three times and altered to create the false perception that Quy has consented or agreed to promote, advertise, market and/or endorse the Club's "Annual White Party" event to benefit Defendants' commercial interests.

394.    Even after Quy's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Quy's demands.

395.    Quy's image, likeness and identity in **Exhibit W** are being used as advertising.

396.    Quy's image, likeness and identity in **Exhibit W** are being used on social media.

397.    Quy's image, likeness and identity in **Exhibit W** are tagged with "wear your sexiest white outfit" and are being used for branding purposes.

398.    Quy has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

399.    Quy has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

400.    Defendants never sought permission or authority to use or alter Quy's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

401.    Quy never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

402.    Defendants neither offered nor paid any remuneration to Quy for the unauthorized use and self-serving alteration of her image, likeness or identity.

403.    Defendants' use of Quy's image, likeness and identity in connection with the Club's "swinger" events impugns Quy's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

64

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

404.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Quy's images in their market activities and business.  In doing so, Defendants have further damaged Quy.

### *Plaintiff Paola Canas*

405.    Canas is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host and actress with numerous accomplishments.  As a model and brand spokesperson, Canas worked for international brands and labels such as, Soho, Kiss Underwear, Salon International, Zona Rosa and Esteban Escobar.  Canas has also has worked runway shows in her native Colombia, Mexico, the United States, Ecuador and Paris, France. Canas was a contracted model for Curve and their worldwide lingerie line and features in Curve's international ad campaign. In Dubai, Canas was chosen as the face of the Masters Golf tournament.  In Orlando, Florida, she was the face for the "International Surf and Sport Expo." Canas has appeared on FOX Sports, Telemundo and TV Azteca.

406.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Canas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

407.    Canas' image, likeness and identity are depicted in at least five photographs, enclosed as **Exhibit X** to the Complaint, one of which has been used at least two times and altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "Black & White" event, another of which was used at least four

times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "Ultimate Couples Only Experience in BLUE" event, another of which was used at least four times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "SEXY in blue" event, another of which was used at least three times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "Libra Party," and a fifth of which was used at least four times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "SEXY in blue" event to benefit Defendants' commercial interests.

408.    Even after Canas' objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Canas' demands.

409.    Canas' image, likeness and identity in **Exhibit X** are being used as advertising.

410.    Canas' image, likeness and identity in **Exhibit X** are being used on social media.

411.    Canas' image, likeness and identity in **Exhibit X** are tagged with "members.miamivelvet," "Yorkies.com," "The ultimate Couples Only experience in Blue Tonight," "#swingersclub", and "We are getting SEXY in blue," and are being used for branding purposes.

412.    Canas' image, likeness and identity in **Exhibit X** are being used as a "coupon" offering "Prepay and Save" and "Anyone born under the sign of Libra Free Entry. . . ."

413.    Canas' image, likeness and identity in **Exhibit X** are being used for an additoinal purpose in a video and flipagram.

66

414.   Canas has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

415.   Canas has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

416.   Defendants never sought permission or authority to use or alter Canas' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

417.   Canas never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

418.   Defendants neither offered nor paid any remuneration to Canas' for the unauthorized use and self-serving alteration of her image, likeness or identity.

419.   Defendants' use of Canas' image, likeness and identity in connection with the Club's "swinger" events impugns Canas' character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

420.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Canas' images in their market activities and business.  In doing so, Defendants have further damaged Canas.

### Plaintiff Rachel Bernstein (Koren)

421.     Bernstein is, and at all times relevant to this action was, a successful professional model, brand spokesperson, actress and businesswoman with numerous accomplishments.  As a model and brand spokesperson, Bernstein has walked runways for fashion shows in Miami's "Mercedes Benz Fashion Week," and has been featured in The Midori Campaign in both print and billboards.  Bernstein has appeared in such magazines *as Esquire, Vogue, Modern Salon, Kandy, Vibra, Launch Pad, Cut & Dry, Hairdo, Rebel X, Maxim, Viva Glam*, and *Swim*. Bernstein has modeled brands by Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, No Fear, Axe Body Spray, Skinit, Paul Mitchell, Styleget, Bijoli, Sunset Tan, Divine Boutique, True Religion, Jessica Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, SNI Swimwear Calendars, Tommy Bahama, Sunsets Inc, B Swim, Love Culture, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, American Honey and Have Faith Swimwear.  Bernstein's other business ventures include being a part owner of Cashmere hair products.  She has appeared on television shows such as Shark Tank.

422.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Bernstein negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

423.     Bernstein's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit Y** to the Complaint, which has been used at least four times and altered to create the false perception that Bernstein has consented or agreed to promote, advertise, market and/or endorse the Club's "Black OR White" event to benefit Defendants' commercial interests.

424.     Even after Bernstein's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Bernstein's demands.

425.     Bernstein's image, likeness and identity in **Exhibit Y** are being used as advertising.

426.     Bernstein's image, likeness and identity in **Exhibit Y** are being used on social media.

427.     Bernstein's image, likeness and identity in **Exhibit Y** are tagged with "#swingersclub" and are being used for branding purposes.

428.     Bernstein's image, likeness and identity in **Exhibit Y** are being used as a ""coupon"" offering new members "FREE ONE MONTH MEMBERSHIP."

429.     Bernstein has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

430.     Bernstein has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

431.     Defendants never sought permission or authority to use or alter Bernstein's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

432.     Bernstein never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

433.     Defendants neither offered nor paid any remuneration to Bernstein for the unauthorized use and self-serving alteration of her image, likeness or identity.

434.    Defendants' use of Bernstein's image, likeness and identity in connection with the Club's "swinger" events impugns Bernstein's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

435.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Bernstein's images in their market activities and business.  In doing so, Defendants have further damaged Bernstein.

### *Plaintiff Sandra Valencia*

436.    Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments.  She is regarded as one of the top models in her home country of Colombia.  Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela.  She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of BESAME lingerie.

437.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Valencia negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

438.    Valencia's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit Z** to the Complaint, one of which has been used at least four times and altered to create the false perception that Valencia has consented or agreed to promote, advertise, market and/or endorse the Club's upcoming event, and the other of which has been used at least three times and altered to create the false perception that Valencia has consented or agreed to

promote, advertise, market and/or endorse the Club generally to benefit Defendants' commercial interests.

439.    Even after Valencia's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Valencia's demands.

440.    Valencia's image, likeness and identity in **Exhibit Z** are being used as advertising.

441.    Valencia's image, likeness and identity in **Exhibit Z** are being used on social media.

442.    Valencia's image, likeness and identity in **Exhibit Z** are tagged with "Youngest Swingers Club . . . " and "Some sweet booty" and are being used for branding purposes.

443.    Valencia's image, likeness and identity in **Exhibit Z** are being used as a "coupon" offering new members "FREE ONE MONTH MEMBERSHIP."

444.    Valencia has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

445.    Valencia has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

446.    Defendants never sought permission or authority to use or alter Valencia's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

447.    Valencia never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

448.    Defendants neither offered nor paid any remuneration to Valencia for the unauthorized use and self-serving alteration of her image, likeness or identity.

449.    Defendants' use of Valencia's image, likeness and identity in connection with the Club's "swinger" events impugns Valencia's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

450.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Valencia's images in their market activities and business.  In doing so, Defendants have further damaged Valencia.

### Plaintiff Sara Underwood

451.    Underwood is, and at all times relevant to this action was, a successful professional model, actress, television personality, host and spokeswoman with numerous accomplishments.  As a model, Underwood was featured in *Playboy's* "Girls of the Pac-10," was a *Playboy* "Playmate of the Month," and *Playboy* "Playmate of the Year."  As an actress, Underwood worked as a "fight jock" announcer for the Blackbelt TV cable network, she co-hosted G4's *Attack of the Show*, has hosted *The Feed*, and has starred in numerous commercials.

452.    Underwood has more than one million Instagram followers.

453.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

454.     Underwood's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit AA** to the Complaint, which has been used at least three times and was altered to create the false perception that Underwood has consented or agreed to promote, advertise, market and/or endorse the Club's Birthday Bash to benefit Defendants' commercial interests.

455.     Even after Underwood's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Underwood's demands.

456.     Underwood's image, likeness and identity in **Exhibit AA** are being used as advertising.

457.     Underwood's image, likeness and identity in **Exhibit AA** are being used on social media.

458.     Underwood's image, likeness and identity in **Exhibit AA** are tagged with "don't miss this sexy night!" and are being used for branding purposes.

459.     Underwood has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

460.     Underwood has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

461.     Defendants never sought permission or authority to use or alter Underwood's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

462.    Underwood never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

463.    Defendants neither offered nor paid any remuneration to Underwood for the unauthorized use and self-serving alteration of her image, likeness or identity.

464.    Defendants' use of Underwood's image, likeness and identity in connection with the Club's "swinger" events impugns Underwood's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

465.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Underwood's images in their market activities and business.  In doing so, Defendants have further damaged Underwood.

### Plaintiff Tiffany Toth

466.    Toth is, and at all times relevant to this action was, a successful professional model with numerous accomplishments.  As a model, Toth has been a *Playboy* "Playmate of the Month," a *Playboy* "Cyber Girl of the Week" and *Playboy* "Cyber Girl of the Month."  She has also been featured in such magazines as *Maxim, Super Street Bike, Import Tuner, Sport Truck, Iron Man,* and *Seventeen*.

467.    Toth has more than 370,000 Instagram followers, over one million Facebook followers, and is paid for social media product endorsements.

468.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Toth negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

469.     Toth's image, likeness and identity are depicted in at least three photographs, enclosed as **Exhibit BB** to the Complaint, one of which has been used at least three times and altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Club's wild animal print-themed event, a second of which has been used at least three times and was similarly altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Club's "Unicorn Party," and a third of which has been used at least twice and was similarly altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Club's "Corset & Heels" event, to benefit Defendants' commercial interests.

470.     Even after Toth's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Toth's demands.

471.     Toth's image, likeness and identity in **Exhibit BB** are being used as advertising.

472.     Toth's image, likeness and identity in **Exhibit BB** are being used on social media.

473.     Toth's image, likeness and identity in **Exhibit BB** are tagged with "#swingersClub" and "SDC.com" and are being used for branding purposes.

474.     Toth has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

475.     Toth has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

476.    Defendants never sought permission or authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

477.    Toth never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

478.    Defendants neither offered nor paid any remuneration to Toth for the unauthorized use or self-serving alteration of her image, likeness or identity.

479.    Defendants' use of Toth's image, likeness and identity in connection with the Club's "swinger" events impugns Toth's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

480.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Toth's images in their market activities and business.  In doing so, Defendants have further damaged Toth.

### Plaintiff Vivian Kindle

481.    Kindle is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.  As a model, Kindle published in such magazines such as *Maxim, FHM, American Curves, Push, Esquire, GQ,* and *World Physique*.  As an actress, Kindle appeared as the teacher "Mrs. Johnson" in the movie "School Dance," written, produced and directed by Nick Cannon.  She also appeared on MTV2 as a official

Wild'N'Out girl for season 5-7 and had a recurring role on the CBS soap opera "The Bold & Beautiful."

482.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Kindle negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

483.    Kindle's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit CC** to the Complaint, one of which has been used at least three times and altered to create the false perception that Kindle has consented or agreed to promote, advertise, market and/or endorse the Club's "Fill 'er up" event, and a second of which has been used at least three times and was similarly altered to create the false perception that Kindle has consented or agreed to promote, advertise, market and/or endorse the Club's "Cocktail Party" with SDC [Swingers Date Club], to benefit Defendants' commercial interests.

484.    Even after Kindle's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Kindle's demands.

485.    Kindle's image, likeness and identity in **Exhibit CC** are being used as advertising.

486.    Kindle's image, likeness and identity in **Exhibit CC** are being used on social media.

487.    Kindle's image, likeness and identity in **Exhibit CC** are tagged with "#swingersClub" and "SDC" and are being used for branding purposes.

488.    Kindle has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

489.    Kindle has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

490.    Defendants never sought permission or authority to use or alter Kindle's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

491.    Kindle never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

492.    Defendants neither offered nor paid any remuneration to Kindle for the unauthorized use or self-serving alteration of her image, likeness or identity.

493.    Defendants' use of Kindle's image, likeness and identity in connection with the Club's "swinger" events impugns Kindle's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

494.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Kindle's images in their market activities and business.  In doing so, Defendants have further damaged Kindle.

### Plaintiff Melanie Iglesias

495.    Iglesias is, and at all times relevant to this action was, a successful professional model, host and actress with numerous accomplishments.  As a model, Iglelsias has been featured in such magazines as *Maxim, World's Most Beautiful, Esquire,* and *Vibe.*  As a host and

actress, Iglesias has hosted the MLB Fan Cave, has appeared in the World Poker Tour series, has appeared as herself on all seasons of MTV's *Guy Code* and *Girl Code*, as well as the spin-off series *Guy Cour*t, and as a guest on the Ellen DeGeneres show.  Iglesias also has a starring role in the feature film "Abnormal Attraction" set to be released in 2016.

496.    Iglesias has more nearly four million follows on Instragram, Facebook and Twitter combined.

497.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Iglesias negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

498.    Iglesias' image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit DD** to the Complaint, one of which has been used at least three times and altered to create the false perception that Iglesias has consented or agreed to promote, advertise, market and/or endorse the Club's 2013 "Noche Latina" event and explicitly attributing Iglesias' name to the image and attribution, and a second of which has been used at least four times and was similarly altered to create the false perception that Iglesias has consented or agreed to promote, advertise, market and/or endorse the Club's 2014 "Noche Latina" event to benefit Defendants' commercial interests.

499.    Iglesias' image, likeness and identity in **Exhibit DD** are being used as advertising.

500.    Iglesias' image, likeness and identity in **Exhibit DD** are being used on social media.

501.    Iglesias' image, likeness and identity in **Exhibit DD** are tagged with Iglesias' name and attribution as well as "Youngest Swingers Club on the East Coast" and are being used for branding purposes.

502.     Iglesias' image, likeness and identity in **Exhibit DD** are being used as a "coupon" offering "Free one month membership when you mention #instaswing at the door."

503.     Iglesias has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

504.     Iglesias has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

505.     Defendants never sought permission or authority to use or alter Iglesias' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

506.     Iglesias' never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

507.     Defendants neither offered nor paid any remuneration to Iglesias' for the unauthorized use or self-serving alteration of her image, likeness or identity.

508.     Defendants' use of Iglesias' image, likeness and identity in connection with the Club's "swinger" events impugns Iglesias' character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

509.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Iglesias' images in their market activities and business.  In doing so, Defendants have further damaged Iglesias.

### *Plaintiff Brenda Lynn Geiger*

510.    Geiger is, and at all times relevant to this action was, a successful professional model, television personality, and actress with numerous accomplishments.  As a model, Geiger has been featured in numerous magazines such as *Show, Maxim, Glamour,* and *Raw,* as well as product and brand campaigns such as Primitive Clothing.  Geiger has also appeared on the Howard Stern Show in a "Miss HTV" contest and in music videos including Keri Hilton's video "Ms. Officer."

511.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Geiger negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

512.    Geiger's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit EE** to the Complaint, one of which has been used at least three times and altered to create the false perception that Geiger has consented or agreed to promote, advertise, market and/or endorse the Club's "Girls Night Out" event, and a second of which has been used at least three times and similarly altered to create the false perception that Geiger has consented or agreed to promote, advertise, market and/or endorse the Club's prior year "Girls Night Out" event, to benefit Defendants' commercial interests.

513.    Geiger's image, likeness and identity in **Exhibit EE** are being used as advertising.

514.    Geiger's image, likeness and identity in **Exhibit EE** are being used on social media.

515.    Geiger's image, likeness and identity in **Exhibit EE** are tagged with "Sex Drive" and "experience the lifestyle at it's finest" and are being used for branding purposes.

516.   Geiger's image, likeness and identity in **Exhibit EE** are being used as a "coupon" offering "Single ladies in free all night."

517.   Geiger has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

518.   Geiger has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

519.   Defendants never sought permission or authority to use or alter Geiger's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

520.   Geiger never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

521.   Defendants neither offered nor paid any remuneration to Geiger for the unauthorized use or self-serving alteration of her image, likeness or identity.

522.   Defendants' use of Geiger's image, likeness and identity in connection with the Club's "swinger" events impugns Geiger's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

523.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Geiger's images in their market activities and business.  In doing so, Defendants have further damaged Geiger.

### *Plaintiff Heather Rae Young*

524.    Young is, and at all times relevant to this action was, a successful professional model, brand spokesperson, businesswoman and actress with numerous accomplishments. Young's business successes have been in real estate.   As a model, Young was a *Playboy "*Playmate of the Month."   She has also appeared in countless swimwear, lingerie, and fashion catalogs such as *Super Star Swimwear*, *Calao Swimwear*, *Carrie Amber Lingerie*, *Trashy Lingerie*, *7 Till Midnight*, *Foreplay*, and *Affliction Clothing Campaign*.   Young has also been featured in numerous car and motorcycle enthusiast magazine features and covers such as *Import Tuner*, *Hot Rod Deluxe*, *Super Street Bike*, *Low Rider* and *Sport Truck*.   As a brand spokesperson and actress, Young has appeared in commercials for KIA Motors, Shake Weight, and Blue Mountain State, as well as television shows such as *Entourage,  The Tonight Show w/ Jay Leno,* and *Til Death,* and in the movie trailer for *Mafia.*

525.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Young negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

526.    Young's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit FF** to the Complaint, which has been used at least three times and altered to create the false perception that Young has consented or agreed to promote, advertise, market and/or endorse the Club's "wild" animal print themed party to benefit Defendants' commercial interests.

527.    Young's image, likeness and identity in **Exhibit FF** are being used as advertising.

528.    Young's image, likeness and identity in **Exhibit FF** are being used on social media.

529.     Young's image, likeness and identity in **Exhibit FF** are tagged with "#swingers" and "#swingersclub" and are being used for branding purposes.

530.     Young has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

531.     Defendants never sought permission or authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

532.     Young never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

533.     Defendants neither offered nor paid any remuneration to Young for the unauthorized use and self-serving alteration of her image, likeness or identity.

534.     Defendants' use of Young's image, likeness and identity in connection with the Club's "swinger" events impugns Young's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

535.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Young's images in their market activities and business.  In doing so, Defendants have further damaged Young.

### Plaintiff Rosa Acosta

536.    Acosta is, and at all times relevant to this action was, a successful professional model, brand spokesperson, actress, and classical ballet dancer with numerous accomplishments. Acosta's classical ballet training from the age of four in the Dominican Republic through graduating with honors fropm the ICA and  Ballet School of Norma Garcia led her to became the youngest soloist member of the Dominican Nacional Ballet in 2002.  As a model, Acosta has appeared in magazines such as *Show, King, Black Lingerie,* and *Maxim.*   Acosta has also appeared on numerous radio and television programs, commercials, and music videos.  As s brand spokesperson, Acosta was the face of Nine5 Eyewear and was featured in *Supreme* Magazine.

537.    Acosta has over two million Facebook followers, nearly one million Instagram followers, and more than 300,000 Twitter subscribers.

538.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Acosta negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

539.    Acosta's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit GG** to the Complaint, which has been used at least three times and altered to create the false perception that Acosta has consented or agreed to promote, advertise, market and/or endorse the Club's "Noche Latina" event to benefit Defendants' commercial interests.

540.    Acosta's image, likeness and identity in **Exhibit GG** are being used as advertising.

541.    Acosta's image, likeness and identity in **Exhibit GG** are being used on social media.

542.   Acosta's image, likeness and identity in **Exhibit GG** are tagged with "hottest Spanish beats" and are being used for branding purposes.

543.   Acosta has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

544.   Defendants never sought permission or authority to use or alter Acosta's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

545.   Acosta never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

546.   Defendants neither offered nor paid any remuneration to Acosta for the unauthorized use and self-serving alteration of her image, likeness or identity.

547.   Defendants' use of Acosta's image, likeness and identity in connection with the Club's "swinger" events impugns Acosta's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

548.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Acosta's images in their market activities and business.  In doing so, Defendants have further damaged Acosta.

**C. Defendants Ignored Plaintiffs' Demand Letter that Directed Defendants to Cease and Desist Unauthorized Use of Plaintiffs' Images and Notified Defendants of the Potential Claims Should Defendants Fail or Refuse to Comply**

549.    As referenced and discussed above, on October 16, 2015 Plaintiffs, through counsel, sent Defendants a demand and cease/desist letter ( the "Demand Letter").

550.    The Demand Letter provided Defendants with notice of their wrongful actions and demanded that Defendants immediately "cease and desist any further use of the Models' Image(s) . . . ." (**Exhibit A**, at 15).  Appended to the Demand Letter was a "Preliminary Expert Report Regarding Image Infringement by Velvet Lifestyles LLC., d/b/a Miami Velvet, and My Three Yorkies LLC" which provided illustrative examples of the offending images.

551.    The Demand Letter further demanded that "Miami Velvet and Yorkies provide written disclaimers of its misuse and written acknowledgement of its intention to permanently comply with this cease and desist demand." *Id.*

552.    The Demand Letter further demanded that "Miami Velvet and Yorkies immediately remove any and all unauthorized images from a Deefendants-owned, hosted, controlled or contributed website as well as any social media outlet (Facebook, Twitter, Instagram, YouTube, Tumblr, etc)." *Id.*

553.    The Demand Letter further demanded that "Miami Velvet and Yorkies each pay **$5,405,000** in aggregate compensatory, or actual, single damages to compensate the Models for the theft and unauthorized use of the Images . . . ." *Id* at 2.  The amount demanded was a significantly smaller figure than actual damages, and was equivalent to the valuation of the infringed images *known to Plaintiffs at the time* of the Demand Letter.  It did not include any demand fee for the tortious damages to the Plaintiffs themselves.

554.    The Demand Letter further demanded that "Miami Velvet and Yorkies disclose, pursuant to Section 627.4137, Florida Statutes, all insurance policy coverage information. . . ." *Id.*

555.    The Demand Letter further demanded that "Miami Velvet and Yorkies preserve all records (electronic and hard copy) relevant to the matters raised herein for use in litigation pursuant to the Document Preservation Demand," and appended a separate, detailed document preservation demand.  *Id.*

556.    The Demand Letter outlined, among other things, the values for each infringed image and some (but not all) of the potential legal claims Plaintiffs would pursue absent Defendants' full compliance with the demands.

557.    Defendants were given thirty (30) days to satisfy the conditions set forth in the Demand Letter. *Id.*

558.    Defendants certified receipt of the Demand Letter October 17, 2015.

559.    Defendants provided no response to the Demand Letter and, upon information and belief, made no effort to comply with the demands therein.

560.    Defendants failed and refused to "cease and desist" use and dissemination of the infringing images.

561.    Defendants failed and refused to "provide written disclosures of its misuse and written acknowledgement of its intention to permanently comply with [the] cease and desist demand."

562.    Defendants failed and refused to remove the infringing images from one or more social media sites owned, operated, leased, hosted, contributed or supported by Defendants.  The infringing images continue to be accessible.

563.     Defendants failed and refused to compensate Plaintiffs for the unauthorized use of their images.

564.     Defendants failed and refused to disclose their insurance policy coverage information.

565.     Upon information and belief, Defendants have failed and refused to preserve relevant records.

566.     Upon further investigation, Plaintiffs, through counsel, learned of additional misappropriated and altered images posted by Defendants to the same sites and social media outlets as the initial infringing images.  In particular, counsel discovered after submission of the Demand Letter that Defendants had posted photos reflecting the images of models Melanie Iglesias, Brenda Lynn Geiger, Heather Rae Young, and Rosa Acosta.

567.     In the interest of judicial economy and efficiency, those *new* images have been included withing this Complaint, as detailed above.

## CAUSES OF ACTION

### *Plaintiff Jaime Faith Edmondson's Causes of Action*

### EDMONDSON COUNT I
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a):
False Advertising against all Defendants**)

568.     Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

569.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Edmondson from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

570.    Defendants used and altered Edmondson's image, likeness and/or identity as described herein without authority in order to create the perception that Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

571.    Defendants' use and alteration of Edmondson's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

572.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Edmondson would participate in or appear at the specific events promoted in the advertisement.

573.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's

usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

574.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Edmondson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

575.    Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

576.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

91

577.    Defendants knew or should have known that their unauthorized use and alteration of Edmondson's image, likeness and identity would cause consumer confusion as described in this Complaint.

578.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

579.    Defendants wrongful conduct as described herein was willful.

580.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

581.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

582.    The method and manner in which Defendants used the images of Edmondson further evinces that Defendants were aware of or consciously disregarded the fact that Edmondson did not consent to Defendants' use of the images to advertise Defendants' business.

583.    Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

584.    Defendants' unauthorized use of Edmondson's image, likeness and identity directly and proximately caused and continue to cause damage to Edmondson in an amount to be determined at trial.

585.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits,

disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### EDMONDSON COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

586.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

587.    Edmondson has a statutory right of publicity under Section 540.08, Florida Statutes.

588.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

589.    Despite the clear language of Section 540.08, Defendants published Edmondson's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

590.    Edmondson's image, likeness or identity are recognizable in the photos identified in **Exhibit B.**

591.    Defendants never sought permission nor authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

592.    Edmondson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

593.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Edmondson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

594.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Edmondson of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

595.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Edmondson of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

596.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

597.    Alternatively, Defendants acted negligently towards Edmondson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

598.     Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

599.     Defendants also have damaged Edmondson as a direct and proximate result of their unauthorized use and alteration of Edmondson's image, likeness and/or identity without compensating Edmondson.

600.     WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### EDMONDSON COUNT III
(**Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants**)

601.     Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

602.     Edmondson has a common law right of publicity.

603.     Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Edmondson without express written or oral consent to such use.

604.     Defendants published, printed, displayed and/or publicly used Edmondson's image, likeness or identity on their website and social media outlets, among others, for purposes

of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

605.    Edmondson's image, likeness or identity are recognizable in the photos identified in **Exhibit B.**

606.    Defendants took these actions without Edmondson's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

607.    Edmondson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

608.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Edmondson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

609.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Edmondson of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

610.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Edmondson of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

611.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

612.     Alternatively, Defendants acted negligently towards Edmondson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

613.     Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

614.     Defendants also have damaged Edmondson as a direct and proximate result of their unauthorized use and alteration of Edmondson's image, likeness and/or identity without compensating Edmondson.

615.     WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### EDMONDSON COUNT IV
(Violation of Fla. Stat. § 501.204:
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

616.     Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

617.     Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

618.     Defendants are direct and active participants in market dealings with Edmondson by using the images to advertise and promote Edmondson's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

619.      Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

620.     Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Edmondson prior to promoting Defendants' business by and through the misappropriation, use and alteration of Edmondson's image, likeness and/or identity;

b.      failing to obtain authorization from Edmondson prior to the publication of Edmondson's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Edmondson for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Edmondson endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Edmondson sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

621.     Defendants' conduct described herein was misleading.

622.    Defendants knew their unauthorized use and alteration of Edmondson's image, likeness and/or identity was misleading.

623.    Defendants' unauthorized use and alteration of Edmondson's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

624.    Defendants' wrongful conduct as detailed herein was willful and malicious.

625.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

626.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

627.    Alternatively, the method and manner in which Defendants used Edmondson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Edmondson did not consent to Defendants' use to advertise Defendants' business.

628.    Defendants have caused and will continue to cause irreparable harm to Edmondson, her reputation and brand by attributing to Edmondson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

629.    Defendants' unauthorized use of Edmondson's image, likeness and identity directly and proximately caused and continues to cause damage to Edmondson in an amount to be determined at trial.

630. WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## EDMONDSON COUNT V
(**Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants**)

631. Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

632. Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

633. Defendants knowingly appropriated, altered, used and disseminated Edmondson's image, likeness and/or identity without authorization or consent.

634. Defendants misappropriation of Edmondson's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Edmondson of certain rights.

635. Defendants' misconduct detailed in this Complaint denied Edmondson the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

636.    Defendants' appropriation and alteration of Edmondson's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

637.    Defendants' wrongful conduct as detailed herein was willful and malicious.

638.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Edmondson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson.

639.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Edmondson's rights.

640.    Alternatively, the method and manner in which Defendants used Edmondson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Edmondson did not consent to Defendants' use in order to advertise Defendants' business.

641.    Defendants' appropriation, use and alteration of Edmondson's image, likeness and identity without authority directly and proximately caused damage to Edmondson in an amount to be determined at trial.

642.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## EDMONDSON COUNT VI
### (Defamation against all Defendants)

643.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

644.    As described herein, Defendants have used, altered and published Edmondson's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

645.    Defendants' unauthorized use and publication of Edmondson's altered images, likeness and/or identity constitutes false representations or statements by implication about Edmondson's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

646.    Defendants' representations or statements by implication were knowingly false.

647.    At all times relevant to matters raised in this Complaint, Defendants knew Edmondson was not affiliated with or employed by the Club, knew that Edmondson would not participate in the events at the Club, knew that Edmondson did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

648.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Edmondson's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

649.    Defendants' unauthorized use and publication of such altered Edmondson's images were defamatory.

650. Defendants' unauthorized use and publication of such altered Edmondson's images and knowingly false representations and/or statements by implication about Edmondson were made with actual malice.

651. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Edmondson, which were defamatory.

652. Such false and defamatory representations and statements about Edmondson were published to innumerable current and prospective customers and promoters.

653. Defendants knew their conduct described herein was wrongful.

654. Defendants intended to deprive Edmondson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Edmondson did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

655. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Edmondson's rights.

656. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Edmondson's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

657. WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs,

prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## EDMONDSON COUNT VII
### (Defamation Per Se against all Defendants)

658.   Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

659.   As described herein, Defendants have used, altered and published Edmondson's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

660.   Defendants' unauthorized use and publication of Edmondson's altered images, likeness and/or identity constitutes false representations or statements by implication about Edmondson's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

661.   Defendants' representations or statements by implication were knowingly false.

662.   At all times relevant to matters raised in this Complaint, Defendants knew Edmondson was not affiliated with or employed by the Club, knew that Edmondson would not participate in the events at the Club, knew that Edmondson did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

663.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Edmondson's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

664.    Defendants' unauthorized use and publication of such altered Edmondson's images were defamatory.

665.    Defendants' unauthorized use and publication of such altered Edmondson's images and knowingly false representations or statements by implication about Edmondson were made with actual malice.

666.    Defendants' representations and statements falsely impute to Edmondson a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

667.    These false statements by implication and/or altered images constitute defamation *per se*.

668.    Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

669.    Defendants knew their conduct described herein was wrongful.

670.    Defendants intended to deprive Edmondson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Edmondson did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

671.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Edmondson or, at a minimum, were so reckless or wanton

in care that their conduct constituted a conscious disregard of, or indifference to, Edmondson's rights.

672.    Defendants' publication of Edmondson's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Edmondson as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

673.    Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Edmondson's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

674.    WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

### EDMONDSON COUNT VIII
(**Unjust Enrichment against all Defendants**)

675.    Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

676.    Edmondson has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

677. Defendants were aware that Edmondson's image, likeness and/or identity were valuable.

678. Defendants were aware of the resulting benefit from usage of Edmondson's image, likeness and/or identity.

679. Defendants have retained profits and other benefits conferred upon them by using Edmondson's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

680. It would be inequitable for the Defendants to retain the benefits conferred upon them by using Edmondson's image, likeness and/or identity without paying fair value for the images.

681. WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**EDMONDSON COUNT IX**
**(Negligence against all Defendants)**

682. Edmondson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

683. Under the circumstances stated herein, Defendants owed a duty of care towards Edmondson.

684. Among other things, that duty included the obligation to deal with Edmondson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not

use or alter Edmondson's image, likeness or identity in derogation of her rights, and to not cause harm to Edmondson.

685.     Defendants breached that duty by using and altering Edmondson's image, likeness or identity without Edmondson's authorization, permission or consent.

686.     Defendants' conduct and breach as described above directly and proximately caused injury to Edmondson's reputation, brand, goodwill and livelihood for which she has suffered damages.

687.     WHEREFORE, Edmondson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Ana Cheri's (Moreland) Causes of Action*

### <u>CHERI COUNT I</u>
### (**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
### **False Advertising against all Defendants**)

688.     Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

689.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Cheri from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

690.    Defendants used and altered Cheri's image, likeness and/or identity as described herein without authority in order to create the perception that Cheri worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

691.    Defendants' use and alteration of Cheri's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

692.    Defendants' unauthorized use and alteration of Cheri's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Cheri worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Cheri would participate in or appear at the specific events promoted in the advertisement.

693.    Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Cheri worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

694.     Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Cheri worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

695.     Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

696.     Defendants' unauthorized use and alteration of Cheri's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

697.     Defendants knew or should have known that their unauthorized use and alteration of Cheri's image, likeness and identity would cause consumer confusion as described in this Complaint.

698.    Defendants' unauthorized use and alteration of Cheri's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

699.    Defendants wrongful conduct as described herein was willful.

700.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

701.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Cheri of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cheri.

702.    The method and manner in which Defendants used the images of Cheri further evinces that Defendants were aware of or consciously disregarded the fact that Cheri did not consent to Defendants' use of the images to advertise Defendants' business.

703.    Defendants have caused and will continue to cause irreparable harm to Cheri, her reputation and brand by attributing to Cheri the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

704.    Defendants' unauthorized use of Cheri's image, likeness and identity directly and proximately caused and continue to cause damage to Cheri in an amount to be determined at trial.

705.    WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CHERI COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

706.    Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

707.    Cheri has a statutory right of publicity under Section 540.08, Florida Statutes.

708.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

709.    Despite the clear language of Section 540.08, Defendants published Cheri's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

710.    Cheri's image, likeness or identity are recognizable in the photos identified in **Exhibit C.**

711.    Defendants never sought permission nor authority to use or alter Cheri's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

712.    Cheri never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

713.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Cheri's image, likeness or identity without

her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

714.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Cheri of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

715.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Cheri of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

716.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cheri's rights.

717.    Alternatively, Defendants acted negligently towards Cheri in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

718.    Defendants have caused and will continue to cause irreparable harm to Cheri, her reputation and brand by attributing to Cheri the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

719.    Defendants also have damaged Cheri as a direct and proximate result of their unauthorized use and alteration of Cheri's image, likeness and/or identity without compensating Cheri.

720.    WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CHERI COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

721.    Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

722.    Cheri has a common law right of publicity.

723.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Cheri without express written or oral consent to such use.

724.    Defendants published, printed, displayed and/or publicly used Cheri's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

725.    Cheri's image, likeness or identity are recognizable in the photos identified in **Exhibit C.**

726.    Defendants took these actions without Cheri's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Cheri's image, likeness

or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

727.    Cheri never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

728.    Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Cheri's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

729.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Cheri of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

730.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Cheri of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

731.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cheri's rights.

732.    Alternatively, Defendants acted negligently towards Cheri in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

733.   Defendants have caused and will continue to cause irreparable harm to Cheri, her reputation and brand by attributing to Cheri the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

734.   Defendants also have damaged Cheri as a direct and proximate result of their unauthorized use and alteration of Cheri's image, likeness and/or identity without compensating Cheri.

735.   WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### CHERI COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

736.   Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

737.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

738.   Defendants are direct and active participants in market dealings with Cheri by using the images to advertise and promote Cheri's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

739.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

740.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.    failing to obtain consent from Cheri prior to promoting Defendants' business by and through the misappropriation, use and alteration of Cheri's image, likeness and/or identity;

b.    failing to obtain authorization from Cheri prior to the publication of Cheri's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.    failing to compensate Cheri for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.    falsely representing by implication to the public that Cheri endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.    falsely representing by implication that Cheri sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

741.    Defendants' conduct described herein was misleading.

742.    Defendants knew their unauthorized use and alteration of Cheri's image, likeness and/or identity was misleading.

743.    Defendants' unauthorized use and alteration of Cheri's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

744.    Defendants' wrongful conduct as detailed herein was willful and malicious.

745.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Cheri of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cheri.

746.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cheri's rights.

747.    Alternatively, the method and manner in which Defendants used Cheri's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Cheri did not consent to Defendants' use to advertise Defendants' business.

748.    Defendants have caused and will continue to cause irreparable harm to Cheri, her reputation and brand by attributing to Cheri the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

749.    Defendants' unauthorized use of Cheri's image, likeness and identity directly and proximately caused and continues to cause damage to Cheri in an amount to be determined at trial.

750.    WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CHERI COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

751.    Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

752. Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

753. Defendants knowingly appropriated, altered, used and disseminated Cheri's image, likeness and/or identity without authorization or consent.

754. Defendants misappropriation of Cheri's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Cheri of certain rights.

755. Defendants' misconduct detailed in this Complaint denied Cheri the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

756. Defendants' appropriation and alteration of Cheri's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

757. Defendants' wrongful conduct as detailed herein was willful and malicious.

758. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Cheri of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cheri.

759. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cheri's rights.

760.     Alternatively, the method and manner in which Defendants used Cheri's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Cheri did not consent to Defendants' use in order to advertise Defendants' business.

761.     Defendants' appropriation, use and alteration of Cheri's image, likeness and identity without authority directly and proximately caused damage to Cheri in an amount to be determined at trial.

762.     WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**CHERI COUNT VI**
(**Defamation against all Defendants**)

763.     Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

764.     As described herein, Defendants have used, altered and published Cheri's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

765.     Defendants' unauthorized use and publication of Cheri's altered images, likeness and/or identity constitutes false representations or statements by implication about Cheri's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

766.   Defendants' representations or statements by implication were knowingly false.

767.   At all times relevant to matters raised in this Complaint, Defendants knew Cheri was not affiliated with or employed by the Club, knew that Cheri would not participate in the events at the Club, knew that Cheri did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

768.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Cheri's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

769.   Defendants' unauthorized use and publication of such altered Cheri's images were defamatory.

770.   Defendants' unauthorized use and publication of such altered Cheri's images and knowingly false representations and/or statements by implication about Cheri were made with actual malice.

771.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Cheri, which were defamatory.

772.   Such false and defamatory representations and statements about Cheri were published to innumerable current and prospective customers and promoters.

773.   Defendants knew their conduct described herein was wrongful.

774.   Defendants intended to deprive Cheri of a property interest or, at a minimum, evinced a conscious disregard for the fact that Cheri did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

775.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Cheri or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Cheri's rights.

776.    Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Cheri's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

777.    WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CHERI COUNT VII
### (Defamation Per Se against all Defendants)

778.    Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

779.    As described herein, Defendants have used, altered and published Cheri's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

780.    Defendants' unauthorized use and publication of Cheri's altered images, likeness and/or identity constitutes false representations or statements by implication about Cheri's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

781.   Defendants' representations or statements by implication were knowingly false.

782.   At all times relevant to matters raised in this Complaint, Defendants knew Cheri was not affiliated with or employed by the Club, knew that Cheri would not participate in the events at the Club, knew that Cheri did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

783.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Cheri's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

784.   Defendants' unauthorized use and publication of such altered Cheri's images were defamatory.

785.   Defendants' unauthorized use and publication of such altered Cheri's images and knowingly false representations or statements by implication about Cheri were made with actual malice.

786.   Defendants' representations and statements falsely impute to Cheri a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

787.   These false statements by implication and/or altered images constitute defamation *per se*.

788.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

789.   Defendants knew their conduct described herein was wrongful.

790.   Defendants intended to deprive Cheri of a property interest or, at a minimum, evinced a conscious disregard for the fact that Cheri did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

791.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Cheri or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Cheri's rights.

792.   Defendants' publication of Cheri's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Cheri as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

793.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Cheri's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

794.   WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## CHERI COUNT VIII
### (Unjust Enrichment against all Defendants)

795.    Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

796.    Cheri has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

797.    Defendants were aware that Cheri's image, likeness and/or identity were valuable.

798.    Defendants were aware of the resulting benefit from usage of Cheri's image, likeness and/or identity.

799.    Defendants have retained profits and other benefits conferred upon them by using Cheri's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

800.    It would be inequitable for the Defendants to retain the benefits conferred upon them by using Cheri's image, likeness and/or identity without paying fair value for the images.

801.    WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CHERI COUNT IX
### (Negligence against all Defendants)

802.    Cheri hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

803.    Under the circumstances stated herein, Defendants owed a duty of care towards Cheri.

804.    Among other things, that duty included the obligation to deal with Cheri and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Cheri's image, likeness or identity in derogation of her rights, and to not cause harm to Cheri.

805.    Defendants breached that duty by using and altering Cheri's image, likeness or identity without Cheri's authorization, permission or consent.

806.    Defendants' conduct and breach as described above directly and proximately caused injury to Cheri's reputation, brand, goodwill and livelihood for which she has suffered damages.

807.    WHEREFORE, Cheri respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Carrie Minter's Causes of Action*

### <u>MINTER COUNT I</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a):
False Advertising against all Defendants**)

808.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

809. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Minter from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

810. Defendants used and altered Minter's image, likeness and/or identity as described herein without authority in order to create the perception that Minter worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

811. Defendants' use and alteration of Minter's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

812. Defendants' unauthorized use and alteration of Minter's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Minter worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Minter would participate in or appear at the specific events promoted in the advertisement.

813. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether

127

Minter worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

814.    Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Minter worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

815.    Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

816.    Defendants' unauthorized use and alteration of Minter's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

817.    Defendants knew or should have known that their unauthorized use and alteration of Minter's image, likeness and identity would cause consumer confusion as described in this Complaint.

818.    Defendants' unauthorized use and alteration of Minter's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

819.    Defendants wrongful conduct as described herein was willful.

820.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

821.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Minter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter.

822.    The method and manner in which Defendants used the images of Minter further evinces that Defendants were aware of or consciously disregarded the fact that Minter did not consent to Defendants' use of the images to advertise Defendants' business.

823.    Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

824.    Defendants' unauthorized use of Minter's image, likeness and identity directly and proximately caused and continue to cause damage to Minter in an amount to be determined at trial.

825.    WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### MINTER COUNT II
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

826.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

827.    Minter has a statutory right of publicity under Section 540.08, Florida Statutes.

828.    Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

829.    Despite the clear language of Section 540.08, Defendants published Minter's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

830.    Minter's image, likeness or identity are recognizable in the photos identified in **Exhibit D.**

831.    Defendants never sought permission nor authority to use or alter Minter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

832.    Minter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

833.    Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Minter's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

834.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Minter of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

835.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Minter of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

836.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

837.    Alternatively, Defendants acted negligently towards Minter in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

838.    Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

839.    Defendants also have damaged Minter as a direct and proximate result of their unauthorized use and alteration of Minter's image, likeness and/or identity without compensating Minter.

840.    WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### MINTER COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

841.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

842.    Minter has a common law right of publicity.

843.    Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Minter without express written or oral consent to such use.

844.    Defendants published, printed, displayed and/or publicly used Minter's image, likeness or identity on their website and social media outlets, among others, for purposes of trade

and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

845.     Minter's image, likeness or identity are recognizable in the photos identified in **Exhibit D.**

846.     Defendants took these actions without Minter's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Minter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

847.     Minter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

848.     Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Minter's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

849.     Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Minter of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

850.     Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Minter of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

851.     At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

852.     Alternatively, Defendants acted negligently towards Minter in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

853.     Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

854.     Defendants also have damaged Minter as a direct and proximate result of their unauthorized use and alteration of Minter's image, likeness and/or identity without compensating Minter.

855.     WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**MINTER COUNT IV**
(**Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

856.     Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

857.    Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

858.    Defendants are direct and active participants in market dealings with Minter by using the images to advertise and promote Minter's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

859.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

860.    Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.    failing to obtain consent from Minter prior to promoting Defendants' business by and through the misappropriation, use and alteration of Minter's image, likeness and/or identity;

b.    failing to obtain authorization from Minter prior to the publication of Minter's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.    failing to compensate Minter for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.    falsely representing by implication to the public that Minter endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.    falsely representing by implication that Minter sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

861.    Defendants' conduct described herein was misleading.

862. Defendants knew their unauthorized use and alteration of Minter's image, likeness and/or identity was misleading.

863. Defendants' unauthorized use and alteration of Minter's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

864. Defendants' wrongful conduct as detailed herein was willful and malicious.

865. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Minter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter.

866. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

867. Alternatively, the method and manner in which Defendants used Minter's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Minter did not consent to Defendants' use to advertise Defendants' business.

868. Defendants have caused and will continue to cause irreparable harm to Minter, her reputation and brand by attributing to Minter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

869. Defendants' unauthorized use of Minter's image, likeness and identity directly and proximately caused and continues to cause damage to Minter in an amount to be determined at trial.

870. WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MINTER COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

871.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

872.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

873.    Defendants knowingly appropriated, altered, used and disseminated Minter's image, likeness and/or identity without authorization or consent.

874.    Defendants misappropriation of Minter's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Minter of certain rights.

875.    Defendants' misconduct detailed in this Complaint denied Minter the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

876.    Defendants' appropriation and alteration of Minter's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

877.    Defendants' wrongful conduct as detailed herein was willful and malicious.

878.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Minter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter.

879.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Minter's rights.

880.    Alternatively, the method and manner in which Defendants used Minter's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Minter did not consent to Defendants' use in order to advertise Defendants' business.

881.    Defendants' appropriation, use and alteration of Minter's image, likeness and identity without authority directly and proximately caused damage to Minter in an amount to be determined at trial.

882.    WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MINTER COUNT VI
### (Defamation against all Defendants)

883.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

884.    As described herein, Defendants have used, altered and published Minter's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

885.    Defendants' unauthorized use and publication of Minter's altered images, likeness and/or identity constitutes false representations or statements by implication about Minter's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

886.    Defendants' representations or statements by implication were knowingly false.

887.    At all times relevant to matters raised in this Complaint, Defendants knew Minter was not affiliated with or employed by the Club, knew that Minter would not participate in the events at the Club, knew that Minter did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

888.    Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Minter's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

889.    Defendants' unauthorized use and publication of such altered Minter's images were defamatory.

890.    Defendants' unauthorized use and publication of such altered Minter's images and knowingly false representations and/or statements by implication about Minter were made with actual malice.

891.    Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Minter, which were defamatory.

892.    Such false and defamatory representations and statements about Minter were published to innumerable current and prospective customers and promoters.

893.    Defendants knew their conduct described herein was wrongful.

894.    Defendants intended to deprive Minter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Minter did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

895.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Minter's rights.

896.    Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Minter's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

897.    WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## **MINTER COUNT VII**
### (Defamation Per Se against all Defendants)

898.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

140

899.     As described herein, Defendants have used, altered and published Minter's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

900.     Defendants' unauthorized use and publication of Minter's altered images, likeness and/or identity constitutes false representations or statements by implication about Minter's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

901.     Defendants' representations or statements by implication were knowingly false.

902.     At all times relevant to matters raised in this Complaint, Defendants knew Minter was not affiliated with or employed by the Club, knew that Minter would not participate in the events at the Club, knew that Minter did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

903.     Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Minter's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

904.     Defendants' unauthorized use and publication of such altered Minter's images were defamatory.

905.     Defendants' unauthorized use and publication of such altered Minter's images and knowingly false representations or statements by implication about Minter were made with actual malice.

906.     Defendants' representations and statements falsely impute to Minter a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse

141

swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

907.    These false statements by implication and/or altered images constitute defamation *per se*.

908.    Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

909.    Defendants knew their conduct described herein was wrongful.

910.    Defendants intended to deprive Minter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Minter did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

911.    Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Minter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Minter's rights.

912.    Defendants' publication of Minter's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Minter as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

913.    Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Minter's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

914.    WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

### MINTER COUNT VIII
(**Unjust Enrichment against all Defendants**)

915.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

916.    Minter has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

917.    Defendants were aware that Minter's image, likeness and/or identity were valuable.

918.    Defendants were aware of the resulting benefit from usage of Minter's image, likeness and/or identity.

919.    Defendants have retained profits and other benefits conferred upon them by using Minter's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

920.    It would be inequitable for the Defendants to retain the benefits conferred upon them by using Minter's image, likeness and/or identity without paying fair value for the images.

921.    WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits,

disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## MINTER COUNT IX
### (Negligence against all Defendants)

922.    Minter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

923.    Under the circumstances stated herein, Defendants owed a duty of care towards Minter.

924.    Among other things, that duty included the obligation to deal with Minter and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Minter's image, likeness or identity in derogation of her rights, and to not cause harm to Minter.

925.    Defendants breached that duty by using and altering Minter's image, likeness or identity without Minter's authorization, permission or consent.

926.    Defendants' conduct and breach as described above directly and proximately caused injury to Minter's reputation, brand, goodwill and livelihood for which she has suffered damages.

927.    WHEREFORE, Minter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Cielo Jean Gibson's Causes of Action*

### <u>GIBSON COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

928.   Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

929.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Gibson from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

930.   Defendants used and altered Gibson's image, likeness and/or identity as described herein without authority in order to create the perception that Gibson worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

931.   Defendants' use and alteration of Gibson's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

932.   Defendants' unauthorized use and alteration of Gibson's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Gibson worked at or was otherwise affiliated with the Club, endorsed

Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Gibson would participate in or appear at the specific events promoted in the advertisement.

933.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Gibson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

934.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Gibson worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

935.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants'

146

promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

936.   Defendants' unauthorized use and alteration of Gibson's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

937.   Defendants knew or should have known that their unauthorized use and alteration of Gibson's image, likeness and identity would cause consumer confusion as described in this Complaint.

938.   Defendants' unauthorized use and alteration of Gibson's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

939.   Defendants wrongful conduct as described herein was willful.

940.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

941.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

942.   The method and manner in which Defendants used the images of Gibson further evinces that Defendants were aware of or consciously disregarded the fact that Gibson did not consent to Defendants' use of the images to advertise Defendants' business.

943.     Defendants have caused and will continue to cause irreparable harm to Gibson, her reputation and brand by attributing to Gibson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

944.     Defendants' unauthorized use of Gibson's image, likeness and identity directly and proximately caused and continue to cause damage to Gibson in an amount to be determined at trial.

945.     WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GIBSON COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

946.     Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

947.     Gibson has a statutory right of publicity under Section 540.08, Florida Statutes.

948.     Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

949.   Despite the clear language of Section 540.08, Defendants published Gibson's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

950.   Gibson's image, likeness or identity are recognizable in the photos identified in **Exhibit E.**

951.   Defendants never sought permission nor authority to use or alter Gibson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

952.   Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

953.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Gibson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

954.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Gibson of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

955.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Gibson of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

956. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

957. Alternatively, Defendants acted negligently towards Gibson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

958. Defendants have caused and will continue to cause irreparable harm to Gibson, her reputation and brand by attributing to Gibson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

959. Defendants also have damaged Gibson as a direct and proximate result of their unauthorized use and alteration of Gibson's image, likeness and/or identity without compensating Gibson.

960. WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### **GIBSON COUNT III**
(**Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants**)

961. Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

962.   Gibson has a common law right of publicity.

963.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Gibson without express written or oral consent to such use.

964.   Defendants published, printed, displayed and/or publicly used Gibson's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

965.   Gibson's image, likeness or identity are recognizable in the photos identified in **Exhibit E.**

966.   Defendants took these actions without Gibson's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Gibson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

967.   Gibson never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

968.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Gibson's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

969.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Gibson of a property interest

during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

970.    Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Gibson of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

971.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

972.    Alternatively, Defendants acted negligently towards Gibson in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

973.    Defendants have caused and will continue to cause irreparable harm to Gibson, her reputation and brand by attributing to Gibson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

974.    Defendants also have damaged Gibson as a direct and proximate result of their unauthorized use and alteration of Gibson's image, likeness and/or identity without compensating Gibson.

975.    WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GIBSON COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

976.   Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

977.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

978.   Defendants are direct and active participants in market dealings with Gibson by using the images to advertise and promote Gibson's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

979.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

980.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Gibson prior to promoting Defendants' business by and through the misappropriation, use and alteration of Gibson's image, likeness and/or identity;

b.      failing to obtain authorization from Gibson prior to the publication of Gibson's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Gibson for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Gibson endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Gibson sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

981.    Defendants' conduct described herein was misleading.

982.    Defendants knew their unauthorized use and alteration of Gibson's image, likeness and/or identity was misleading.

983.    Defendants' unauthorized use and alteration of Gibson's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

984.    Defendants' wrongful conduct as detailed herein was willful and malicious.

985.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

986.    At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

987.    Alternatively, the method and manner in which Defendants used Gibson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Gibson did not consent to Defendants' use to advertise Defendants' business.

988.    Defendants have caused and will continue to cause irreparable harm to Gibson, her reputation and brand by attributing to Gibson the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

989.    Defendants' unauthorized use of Gibson's image, likeness and identity directly and proximately caused and continues to cause damage to Gibson in an amount to be determined at trial.

990.    WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### GIBSON COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

991.    Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

992.    Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

993.    Defendants knowingly appropriated, altered, used and disseminated Gibson's image, likeness and/or identity without authorization or consent.

994.    Defendants misappropriation of Gibson's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Gibson of certain rights.

995.    Defendants' misconduct detailed in this Complaint denied Gibson the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

996.   Defendants' appropriation and alteration of Gibson's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

997.   Defendants' wrongful conduct as detailed herein was willful and malicious.

998.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Gibson of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson.

999.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Gibson's rights.

1000.  Alternatively, the method and manner in which Defendants used Gibson's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Gibson did not consent to Defendants' use in order to advertise Defendants' business.

1001.  Defendants' appropriation, use and alteration of Gibson's image, likeness and identity without authority directly and proximately caused damage to Gibson in an amount to be determined at trial.

1002.  WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GIBSON COUNT VI
### (Defamation against all Defendants)

1003.   Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1004.   As described herein, Defendants have used, altered and published Gibson's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1005.   Defendants' unauthorized use and publication of Gibson's altered images, likeness and/or identity constitutes false representations or statements by implication about Gibson's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1006.   Defendants' representations or statements by implication were knowingly false.

1007.   At all times relevant to matters raised in this Complaint, Defendants knew Gibson was not affiliated with or employed by the Club, knew that Gibson would not participate in the events at the Club, knew that Gibson did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1008.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Gibson's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1009.   Defendants' unauthorized use and publication of such altered Gibson's images were defamatory.

1010.   Defendants' unauthorized use and publication of such altered Gibson's images and knowingly false representations and/or statements by implication about Gibson were made with actual malice.

1011.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Gibson, which were defamatory.

1012.   Such false and defamatory representations and statements about Gibson were published to innumerable current and prospective customers and promoters.

1013.   Defendants knew their conduct described herein was wrongful.

1014.   Defendants intended to deprive Gibson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Gibson did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1015.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Gibson's rights.

1016.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Gibson's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1017.   WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GIBSON COUNT VII
### (Defamation Per Se against all Defendants)

1018.   Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1019.   As described herein, Defendants have used, altered and published Gibson's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1020.   Defendants' unauthorized use and publication of Gibson's altered images, likeness and/or identity constitutes false representations or statements by implication about Gibson's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

1021.   Defendants' representations or statements by implication were knowingly false.

1022.   At all times relevant to matters raised in this Complaint, Defendants knew Gibson was not affiliated with or employed by the Club, knew that Gibson would not participate in the events at the Club, knew that Gibson did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1023.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Gibson's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1024.   Defendants' unauthorized use and publication of such altered Gibson's images were defamatory.

1025.   Defendants' unauthorized use and publication of such altered Gibson's images and knowingly false representations or statements by implication about Gibson were made with actual malice.

1026.   Defendants' representations and statements falsely impute to Gibson a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1027.   These false statements by implication and/or altered images constitute defamation *per se*.

1028.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1029.   Defendants knew their conduct described herein was wrongful.

1030.   Defendants intended to deprive Gibson of a property interest or, at a minimum, evinced a conscious disregard for the fact that Gibson did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1031.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Gibson or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Gibson's rights.

1032.   Defendants' publication of Gibson's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays

Gibson as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1033.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Gibson's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1034.  WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## GIBSON COUNT VIII
### (Unjust Enrichment against all Defendants)

1035.  Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1036.  Gibson has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1037.  Defendants were aware that Gibson's image, likeness and/or identity were valuable.

1038.  Defendants were aware of the resulting benefit from usage of Gibson's image, likeness and/or identity.

1039.   Defendants have retained profits and other benefits conferred upon them by using Gibson's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1040.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Gibson's image, likeness and/or identity without paying fair value for the images.

1041.   WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GIBSON COUNT IX
### (Negligence against all Defendants)

1042.   Gibson hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1043.   Under the circumstances stated herein, Defendants owed a duty of care towards Gibson.

1044.   Among other things, that duty included the obligation to deal with Gibson and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Gibson's image, likeness or identity in derogation of her rights, and to not cause harm to Gibson.

1045.   Defendants breached that duty by using and altering Gibson's image, likeness or identity without Gibson's authorization, permission or consent.

1046.   Defendants' conduct and breach as described above directly and proximately caused injury to Gibson's reputation, brand, goodwill and livelihood for which she has suffered damages.

1047.   WHEREFORE, Gibson respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Cora Skinner's Causes of Action*

### <u>SKINNER COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

1048.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1049.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Skinner from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1050.   Defendants used and altered Skinner's image, likeness and/or identity as described herein without authority in order to create the perception that Skinner worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in

order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1051. Defendants' use and alteration of Skinner's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1052. Defendants' unauthorized use and alteration of Skinner's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Skinner worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Skinner would participate in or appear at the specific events promoted in the advertisement.

1053. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Skinner worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1054. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Skinner worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her

images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1055.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1056.   Defendants' unauthorized use and alteration of Skinner's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1057.   Defendants knew or should have known that their unauthorized use and alteration of Skinner's image, likeness and identity would cause consumer confusion as described in this Complaint.

1058.   Defendants' unauthorized use and alteration of Skinner's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1059.   Defendants wrongful conduct as described herein was willful.

1060.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1061.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

1062.   The method and manner in which Defendants used the images of Skinner further evinces that Defendants were aware of or consciously disregarded the fact that Skinner did not consent to Defendants' use of the images to advertise Defendants' business.

1063.   Defendants have caused and will continue to cause irreparable harm to Skinner, her reputation and brand by attributing to Skinner the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1064.   Defendants' unauthorized use of Skinner's image, likeness and identity directly and proximately caused and continue to cause damage to Skinner in an amount to be determined at trial.

1065.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SKINNER COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

1066.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1067.   Skinner has a statutory right of publicity under Section 540.08, Florida Statutes.

1068.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1069.   Despite the clear language of Section 540.08, Defendants published Skinner's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1070.   Skinner's image, likeness or identity are recognizable in the photos identified in **Exhibit F.**

1071.   Defendants never sought permission nor authority to use or alter Skinner's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1072.   Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1073.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Skinner's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1074.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Skinner of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1075.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Skinner of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1076.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Skinner's rights.

1077.  Alternatively, Defendants acted negligently towards Skinner in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1078.  Defendants have caused and will continue to cause irreparable harm to Skinner, her reputation and brand by attributing to Skinner the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1079.  Defendants also have damaged Skinner as a direct and proximate result of their unauthorized use and alteration of Skinner's image, likeness and/or identity without compensating Skinner.

1080. WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### SKINNER COUNT III
(**Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants**)

1081. Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1082. Skinner has a common law right of publicity.

1083. Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Skinner without express written or oral consent to such use.

1084. Defendants published, printed, displayed and/or publicly used Skinner's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1085. Skinner's image, likeness or identity are recognizable in the photos identified in **Exhibit F.**

1086. Defendants took these actions without Skinner's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Skinner's image,

likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1087.   Skinner never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1088.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Skinner's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1089.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Skinner of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1090.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Skinner of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1091.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Skinner's rights.

1092.   Alternatively, Defendants acted negligently towards Skinner in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1093.   Defendants have caused and will continue to cause irreparable harm to Skinner, her reputation and brand by attributing to Skinner the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1094.   Defendants also have damaged Skinner as a direct and proximate result of their unauthorized use and alteration of Skinner's image, likeness and/or identity without compensating Skinner.

1095.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### SKINNER COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

1096.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1097.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1098.   Defendants are direct and active participants in market dealings with Skinner by using the images to advertise and promote Skinner's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

171

1099.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1100.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Skinner prior to promoting Defendants' business by and through the misappropriation, use and alteration of Skinner's image, likeness and/or identity;

b.      failing to obtain authorization from Skinner prior to the publication of Skinner's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Skinner for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Skinner endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Skinner sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1101.   Defendants' conduct described herein was misleading.

1102.   Defendants knew their unauthorized use and alteration of Skinner's image, likeness and/or identity was misleading.

1103.   Defendants' unauthorized use and alteration of Skinner's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1104.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1105.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

1106.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Skinner's rights.

1107.   Alternatively, the method and manner in which Defendants used Skinner's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Skinner did not consent to Defendants' use to advertise Defendants' business.

1108.   Defendants have caused and will continue to cause irreparable harm to Skinner, her reputation and brand by attributing to Skinner the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1109.   Defendants' unauthorized use of Skinner's image, likeness and identity directly and proximately caused and continues to cause damage to Skinner in an amount to be determined at trial.

1110.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SKINNER COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

1111.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1112.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1113.   Defendants knowingly appropriated, altered, used and disseminated Skinner's image, likeness and/or identity without authorization or consent.

1114.   Defendants misappropriation of Skinner's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Skinner of certain rights.

1115.   Defendants' misconduct detailed in this Complaint denied Skinner the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1116.   Defendants' appropriation and alteration of Skinner's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1117.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1118.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Skinner of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner.

1119.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Skinner's rights.

1120.   Alternatively, the method and manner in which Defendants used Skinner's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded

the fact that Skinner did not consent to Defendants' use in order to advertise Defendants' business.

1121.   Defendants' appropriation, use and alteration of Skinner's image, likeness and identity without authority directly and proximately caused damage to Skinner in an amount to be determined at trial.

1122.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SKINNER COUNT VI
### (Defamation against all Defendants)

1123.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1124.   As described herein, Defendants have used, altered and published Skinner's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1125.   Defendants' unauthorized use and publication of Skinner's altered images, likeness and/or identity constitutes false representations or statements by implication about Skinner's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1126.   Defendants' representations or statements by implication were knowingly false.

175

1127.   At all times relevant to matters raised in this Complaint, Defendants knew Skinner was not affiliated with or employed by the Club, knew that Skinner would not participate in the events at the Club, knew that Skinner did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1128.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Skinner's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1129.   Defendants' unauthorized use and publication of such altered Skinner's images were defamatory.

1130.   Defendants' unauthorized use and publication of such altered Skinner's images and knowingly false representations and/or statements by implication about Skinner were made with actual malice.

1131.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Skinner, which were defamatory.

1132.   Such false and defamatory representations and statements about Skinner were published to innumerable current and prospective customers and promoters.

1133.   Defendants knew their conduct described herein was wrongful.

1134.   Defendants intended to deprive Skinner of a property interest or, at a minimum, evinced a conscious disregard for the fact that Skinner did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1135.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Skinner's rights.

1136.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Skinner's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1137.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SKINNER COUNT VII
### (Defamation Per Se against all Defendants)

1138.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1139.   As described herein, Defendants have used, altered and published Skinner's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1140.   Defendants' unauthorized use and publication of Skinner's altered images, likeness and/or identity constitutes false representations or statements by implication about Skinner's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

177

1141.   Defendants' representations or statements by implication were knowingly false.

1142.   At all times relevant to matters raised in this Complaint, Defendants knew Skinner was not affiliated with or employed by the Club, knew that Skinner would not participate in the events at the Club, knew that Skinner did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1143.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Skinner's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1144.   Defendants' unauthorized use and publication of such altered Skinner's images were defamatory.

1145.   Defendants' unauthorized use and publication of such altered Skinner's images and knowingly false representations or statements by implication about Skinner were made with actual malice.

1146.   Defendants' representations and statements falsely impute to Skinner a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1147.   These false statements by implication and/or altered images constitute defamation *per se*.

1148.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1149.   Defendants knew their conduct described herein was wrongful.

1150.   Defendants intended to deprive Skinner of a property interest or, at a minimum, evinced a conscious disregard for the fact that Skinner did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1151.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Skinner or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Skinner's rights.

1152.   Defendants' publication of Skinner's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Skinner as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1153.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Skinner's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1154.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## SKINNER COUNT VIII
### (Unjust Enrichment against all Defendants)

1155.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1156.   Skinner has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1157.   Defendants were aware that Skinner's image, likeness and/or identity were valuable.

1158.   Defendants were aware of the resulting benefit from usage of Skinner's image, likeness and/or identity.

1159.   Defendants have retained profits and other benefits conferred upon them by using Skinner's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1160.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Skinner's image, likeness and/or identity without paying fair value for the images.

1161.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## SKINNER COUNT IX
### (Negligence against all Defendants)

1162.   Skinner hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1163.   Under the circumstances stated herein, Defendants owed a duty of care towards Skinner.

1164.   Among other things, that duty included the obligation to deal with Skinner and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Skinner's image, likeness or identity in derogation of her rights, and to not cause harm to Skinner.

1165.   Defendants breached that duty by using and altering Skinner's image, likeness or identity without Skinner's authorization, permission or consent.

1166.   Defendants' conduct and breach as described above directly and proximately caused injury to Skinner's reputation, brand, goodwill and livelihood for which she has suffered damages.

1167.   WHEREFORE, Skinner respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Danielle Ruiz's Causes of Action*

## RUIZ COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against all Defendants)

1168.  Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1169.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Ruiz from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1170.  Defendants used and altered Ruiz's image, likeness and/or identity as described herein without authority in order to create the perception that Ruiz worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1171.  Defendants' use and alteration of Ruiz's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1172.  Defendants' unauthorized use and alteration of Ruiz's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Ruiz worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and

182

market Defendants' business or the Club's events and activities and/or that Ruiz would participate in or appear at the specific events promoted in the advertisement.

1173. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Ruiz worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1174. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Ruiz worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1175. Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. In addition to membership lists consisting of

members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1176.   Defendants' unauthorized use and alteration of Ruiz's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1177.   Defendants knew or should have known that their unauthorized use and alteration of Ruiz's image, likeness and identity would cause consumer confusion as described in this Complaint.

1178.   Defendants' unauthorized use and alteration of Ruiz's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1179.   Defendants wrongful conduct as described herein was willful.

1180.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1181.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Ruiz of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz.

1182.   The method and manner in which Defendants used the images of Ruiz further evinces that Defendants were aware of or consciously disregarded the fact that Ruiz did not consent to Defendants' use of the images to advertise Defendants' business.

1183.   Defendants have caused and will continue to cause irreparable harm to Ruiz, her reputation and brand by attributing to Ruiz the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1184.   Defendants' unauthorized use of Ruiz's image, likeness and identity directly and proximately caused and continue to cause damage to Ruiz in an amount to be determined at trial.

1185.   WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**RUIZ COUNT II**
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

1186.   Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1187.   Ruiz has a statutory right of publicity under Section 540.08, Florida Statutes.

1188.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1189.   Despite the clear language of Section 540.08, Defendants published Ruiz's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1190.   Ruiz's image, likeness or identity are recognizable in the photos identified in **Exhibit G.**

1191.  Defendants never sought permission nor authority to use or alter Ruiz's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1192.  Ruiz never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1193.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Ruiz's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1194.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Ruiz of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1195.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Ruiz of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1196.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ruiz's rights.

1197.  Alternatively, Defendants acted negligently towards Ruiz in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and

social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1198.  Defendants have caused and will continue to cause irreparable harm to Ruiz, her reputation and brand by attributing to Ruiz the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1199.  Defendants also have damaged Ruiz as a direct and proximate result of their unauthorized use and alteration of Ruiz's image, likeness and/or identity without compensating Ruiz.

1200.  WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### RUIZ COUNT III
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants**)

1201.  Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1202.  Ruiz has a common law right of publicity.

1203.  Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Ruiz without express written or oral consent to such use.

1204.   Defendants published, printed, displayed and/or publicly used Ruiz's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1205.   Ruiz's image, likeness or identity are recognizable in the photos identified in **Exhibit G.**

1206.   Defendants took these actions without Ruiz's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Ruiz's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1207.   Ruiz never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1208.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Ruiz's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1209.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Ruiz of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1210.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Ruiz of a property interest after receipt of the Demand Letter in which

each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1211.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ruiz's rights.

1212.  Alternatively, Defendants acted negligently towards Ruiz in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1213.  Defendants have caused and will continue to cause irreparable harm to Ruiz, her reputation and brand by attributing to Ruiz the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1214.  Defendants also have damaged Ruiz as a direct and proximate result of their unauthorized use and alteration of Ruiz's image, likeness and/or identity without compensating Ruiz.

1215.  WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**RUIZ COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

1216.   Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1217.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1218.   Defendants are direct and active participants in market dealings with Ruiz by using the images to advertise and promote Ruiz's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

1219.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1220.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Ruiz prior to promoting Defendants' business by and through the misappropriation, use and alteration of Ruiz's image, likeness and/or identity;

b.      failing to obtain authorization from Ruiz prior to the publication of Ruiz's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Ruiz for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Ruiz endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e. falsely representing by implication that Ruiz sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1221. Defendants' conduct described herein was misleading.

1222. Defendants knew their unauthorized use and alteration of Ruiz's image, likeness and/or identity was misleading.

1223. Defendants' unauthorized use and alteration of Ruiz's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1224. Defendants' wrongful conduct as detailed herein was willful and malicious.

1225. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Ruiz of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz.

1226. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ruiz's rights.

1227. Alternatively, the method and manner in which Defendants used Ruiz's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Ruiz did not consent to Defendants' use to advertise Defendants' business.

1228. Defendants have caused and will continue to cause irreparable harm to Ruiz, her reputation and brand by attributing to Ruiz the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1229. Defendants' unauthorized use of Ruiz's image, likeness and identity directly and proximately caused and continues to cause damage to Ruiz in an amount to be determined at trial.

1230.   WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**RUIZ COUNT V**
(**Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants**)

1231.   Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1232.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1233.   Defendants knowingly appropriated, altered, used and disseminated Ruiz's image, likeness and/or identity without authorization or consent.

1234.   Defendants misappropriation of Ruiz's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Ruiz of certain rights.

1235.   Defendants' misconduct detailed in this Complaint denied Ruiz the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1236.   Defendants' appropriation and alteration of Ruiz's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1237.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1238.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Ruiz of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz.

1239.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Ruiz's rights.

1240.   Alternatively, the method and manner in which Defendants used Ruiz's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Ruiz did not consent to Defendants' use in order to advertise Defendants' business.

1241.   Defendants' appropriation, use and alteration of Ruiz's image, likeness and identity without authority directly and proximately caused damage to Ruiz in an amount to be determined at trial.

1242.   WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## RUIZ COUNT VI
### (Defamation against all Defendants)

1243.   Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1244.   As described herein, Defendants have used, altered and published Ruiz's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1245.   Defendants' unauthorized use and publication of Ruiz's altered images, likeness and/or identity constitutes false representations or statements by implication about Ruiz's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1246.   Defendants' representations or statements by implication were knowingly false.

1247.   At all times relevant to matters raised in this Complaint, Defendants knew Ruiz was not affiliated with or employed by the Club, knew that Ruiz would not participate in the events at the Club, knew that Ruiz did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1248.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Ruiz's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1249.   Defendants' unauthorized use and publication of such altered Ruiz's images were defamatory.

1250.   Defendants' unauthorized use and publication of such altered Ruiz's images and knowingly false representations and/or statements by implication about Ruiz were made with actual malice.

1251. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Ruiz, which were defamatory.

1252. Such false and defamatory representations and statements about Ruiz were published to innumerable current and prospective customers and promoters.

1253. Defendants knew their conduct described herein was wrongful.

1254. Defendants intended to deprive Ruiz of a property interest or, at a minimum, evinced a conscious disregard for the fact that Ruiz did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1255. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Ruiz's rights.

1256. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Ruiz's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1257. WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## RUIZ COUNT VII
### (Defamation Per Se against all Defendants)

1258.  Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1259.  As described herein, Defendants have used, altered and published Ruiz's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1260.  Defendants' unauthorized use and publication of Ruiz's altered images, likeness and/or identity constitutes false representations or statements by implication about Ruiz's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

1261.  Defendants' representations or statements by implication were knowingly false.

1262.  At all times relevant to matters raised in this Complaint, Defendants knew Ruiz was not affiliated with or employed by the Club, knew that Ruiz would not participate in the events at the Club, knew that Ruiz did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1263.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Ruiz's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1264.  Defendants' unauthorized use and publication of such altered Ruiz's images were defamatory.

1265.  Defendants' unauthorized use and publication of such altered Ruiz's images and knowingly false representations or statements by implication about Ruiz were made with actual malice.

1266.   Defendants' representations and statements falsely impute to Ruiz a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1267.   These false statements by implication and/or altered images constitute defamation *per se*.

1268.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1269.   Defendants knew their conduct described herein was wrongful.

1270.   Defendants intended to deprive Ruiz of a property interest or, at a minimum, evinced a conscious disregard for the fact that Ruiz did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1271.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Ruiz or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Ruiz's rights.

1272.  Defendants' publication of Ruiz's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Ruiz as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1273.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Ruiz's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1274.   WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## RUIZ COUNT VIII
### (Unjust Enrichment against all Defendants)

1275.   Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1276.   Ruiz has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1277.   Defendants were aware that Ruiz's image, likeness and/or identity were valuable.

1278.   Defendants were aware of the resulting benefit from usage of Ruiz's image, likeness and/or identity.

1279.   Defendants have retained profits and other benefits conferred upon them by using Ruiz's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1280.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Ruiz's image, likeness and/or identity without paying fair value for the images.

1281.  WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## RUIZ COUNT IX
### (Negligence against all Defendants)

1282.  Ruiz hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1283.  Under the circumstances stated herein, Defendants owed a duty of care towards Ruiz.

1284.  Among other things, that duty included the obligation to deal with Ruiz and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Ruiz's image, likeness or identity in derogation of her rights, and to not cause harm to Ruiz.

1285.  Defendants breached that duty by using and altering Ruiz's image, likeness or identity without Ruiz's authorization, permission or consent.

1286.  Defendants' conduct and breach as described above directly and proximately caused injury to Ruiz's reputation, brand, goodwill and livelihood for which she has suffered damages.

1287.  WHEREFORE, Ruiz respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Eva Pepaj's Causes of Action*

### PEPAJ COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

1288.  Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1289.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Pepaj from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1290.  Defendants used and altered Pepaj's image, likeness and/or identity as described herein without authority in order to create the perception that Pepaj worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1291.  Defendants' use and alteration of Pepaj's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1292.  Defendants' unauthorized use and alteration of Pepaj's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Pepaj worked at or was otherwise affiliated with the Club, endorsed

Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Pepaj would participate in or appear at the specific events promoted in the advertisement.

1293.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Pepaj worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1294.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Pepaj worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1295.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants'

promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1296.  Defendants' unauthorized use and alteration of Pepaj's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1297.  Defendants knew or should have known that their unauthorized use and alteration of Pepaj's image, likeness and identity would cause consumer confusion as described in this Complaint.

1298.  Defendants' unauthorized use and alteration of Pepaj's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1299.  Defendants wrongful conduct as described herein was willful.

1300.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1301.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

1302.  The method and manner in which Defendants used the images of Pepaj further evinces that Defendants were aware of or consciously disregarded the fact that Pepaj did not consent to Defendants' use of the images to advertise Defendants' business.

1303.   Defendants have caused and will continue to cause irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1304.   Defendants' unauthorized use of Pepaj's image, likeness and identity directly and proximately caused and continue to cause damage to Pepaj in an amount to be determined at trial.

1305.   WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### PEPAJ COUNT II
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

1306.   Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1307.   Pepaj has a statutory right of publicity under Section 540.08, Florida Statutes.

1308.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1309. Despite the clear language of Section 540.08, Defendants published Pepaj's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1310. Pepaj's image, likeness or identity are recognizable in the photos identified in **Exhibit H.**

1311. Defendants never sought permission nor authority to use or alter Pepaj's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1312. Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1313. Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Pepaj's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1314. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Pepaj of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1315. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Pepaj of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1316.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pepaj's rights.

1317.   Alternatively, Defendants acted negligently towards Pepaj in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1318.   Defendants have caused and will continue to cause irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1319.   Defendants also have damaged Pepaj as a direct and proximate result of their unauthorized use and alteration of Pepaj's image, likeness and/or identity without compensating Pepaj.

1320.   WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### PEPAJ COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

1321.   Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1322.   Pepaj has a common law right of publicity.

1323.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Pepaj without express written or oral consent to such use.

1324.   Defendants published, printed, displayed and/or publicly used Pepaj's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1325.   Pepaj's image, likeness or identity are recognizable in the photos identified in **Exhibit H.**

1326.   Defendants took these actions without Pepaj's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Pepaj's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1327.   Pepaj never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1328.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Pepaj's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1329.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Pepaj of a property interest during

the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1330. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Pepaj of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1331. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pepaj's rights.

1332. Alternatively, Defendants acted negligently towards Pepaj in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1333. Defendants have caused and will continue to cause irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1334. Defendants also have damaged Pepaj as a direct and proximate result of their unauthorized use and alteration of Pepaj's image, likeness and/or identity without compensating Pepaj.

1335. WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## PEPAJ COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

1336.   Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1337.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1338.   Defendants are direct and active participants in market dealings with Pepaj by using the images to advertise and promote Pepaj's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

1339.    Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1340.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.       failing to obtain consent from Pepaj prior to promoting Defendants' business by and through the misappropriation, use and alteration of Pepaj's image, likeness and/or identity;

b.       failing to obtain authorization from Pepaj prior to the publication of Pepaj's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.       failing to compensate Pepaj for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

208

d. falsely representing by implication to the public that Pepaj endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e. falsely representing by implication that Pepaj sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1341. Defendants' conduct described herein was misleading.

1342. Defendants knew their unauthorized use and alteration of Pepaj's image, likeness and/or identity was misleading.

1343. Defendants' unauthorized use and alteration of Pepaj's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1344. Defendants' wrongful conduct as detailed herein was willful and malicious.

1345. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

1346. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pepaj's rights.

1347. Alternatively, the method and manner in which Defendants used Pepaj's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Pepaj did not consent to Defendants' use to advertise Defendants' business.

1348. Defendants have caused and will continue to cause irreparable harm to Pepaj, her reputation and brand by attributing to Pepaj the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1349.   Defendants' unauthorized use of Pepaj's image, likeness and identity directly and proximately caused and continues to cause damage to Pepaj in an amount to be determined at trial.

1350.   WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### PEPAJ COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

1351.   Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1352.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1353.   Defendants knowingly appropriated, altered, used and disseminated Pepaj's image, likeness and/or identity without authorization or consent.

1354.   Defendants misappropriation of Pepaj's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Pepaj of certain rights.

1355.   Defendants' misconduct detailed in this Complaint denied Pepaj the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1356. Defendants' appropriation and alteration of Pepaj's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1357. Defendants' wrongful conduct as detailed herein was willful and malicious.

1358. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Pepaj of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj.

1359. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Pepaj's rights.

1360. Alternatively, the method and manner in which Defendants used Pepaj's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Pepaj did not consent to Defendants' use in order to advertise Defendants' business.

1361. Defendants' appropriation, use and alteration of Pepaj's image, likeness and identity without authority directly and proximately caused damage to Pepaj in an amount to be determined at trial.

1362. WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## PEPAJ COUNT VI
### (Defamation against all Defendants)

1363.  Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1364.  As described herein, Defendants have used, altered and published Pepaj's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1365.  Defendants' unauthorized use and publication of Pepaj's altered images, likeness and/or identity constitutes false representations or statements by implication about Pepaj's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1366.  Defendants' representations or statements by implication were knowingly false.

1367.  At all times relevant to matters raised in this Complaint, Defendants knew Pepaj was not affiliated with or employed by the Club, knew that Pepaj would not participate in the events at the Club, knew that Pepaj did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1368.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Pepaj's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1369.  Defendants' unauthorized use and publication of such altered Pepaj's images were defamatory.

1370.  Defendants' unauthorized use and publication of such altered Pepaj's images and knowingly false representations and/or statements by implication about Pepaj were made with actual malice.

1371.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Pepaj, which were defamatory.

1372.  Such false and defamatory representations and statements about Pepaj were published to innumerable current and prospective customers and promoters.

1373.  Defendants knew their conduct described herein was wrongful.

1374.  Defendants intended to deprive Pepaj of a property interest or, at a minimum, evinced a conscious disregard for the fact that Pepaj did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1375.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Pepaj's rights.

1376.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Pepaj's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1377.  WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## PEPAJ COUNT VII
### (Defamation Per Se against all Defendants)

1378.   Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1379.   As described herein, Defendants have used, altered and published Pepaj's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1380.   Defendants' unauthorized use and publication of Pepaj's altered images, likeness and/or identity constitutes false representations or statements by implication about Pepaj's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

1381.   Defendants' representations or statements by implication were knowingly false.

1382.   At all times relevant to matters raised in this Complaint, Defendants knew Pepaj was not affiliated with or employed by the Club, knew that Pepaj would not participate in the events at the Club, knew that Pepaj did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1383.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Pepaj's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1384.   Defendants' unauthorized use and publication of such altered Pepaj's images were defamatory.

1385.   Defendants' unauthorized use and publication of such altered Pepaj's images and knowingly false representations or statements by implication about Pepaj were made with actual malice.

1386.   Defendants' representations and statements falsely impute to Pepaj a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1387.   These false statements by implication and/or altered images constitute defamation *per se*.

1388.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1389.   Defendants knew their conduct described herein was wrongful.

1390.   Defendants intended to deprive Pepaj of a property interest or, at a minimum, evinced a conscious disregard for the fact that Pepaj did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1391.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Pepaj or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Pepaj's rights.

1392.   Defendants' publication of Pepaj's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays

Pepaj as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1393.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Pepaj's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1394.   WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## PEPAJ COUNT VIII
### (Unjust Enrichment against all Defendants)

1395.   Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1396.   Pepaj has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1397.   Defendants were aware that Pepaj's image, likeness and/or identity were valuable.

1398.   Defendants were aware of the resulting benefit from usage of Pepaj's image, likeness and/or identity.

1399.   Defendants have retained profits and other benefits conferred upon them by using Pepaj's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1400.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Pepaj's image, likeness and/or identity without paying fair value for the images.

1401.   WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## PEPAJ COUNT IX
### (Negligence against all Defendants)

1402.   Pepaj hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1403.   Under the circumstances stated herein, Defendants owed a duty of care towards Pepaj.

1404.   Among other things, that duty included the obligation to deal with Pepaj and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Pepaj's image, likeness or identity in derogation of her rights, and to not cause harm to Pepaj.

1405.   Defendants breached that duty by using and altering Pepaj's image, likeness or identity without Pepaj's authorization, permission or consent.

1406.   Defendants' conduct and breach as described above directly and proximately caused injury to Pepaj's reputation, brand, goodwill and livelihood for which she has suffered damages.

1407.   WHEREFORE, Pepaj respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Heather Depriest's Causes of Action*

### DEPRIEST COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

1408.   Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1409.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Depriest from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1410.   Defendants used and altered Depriest's image, likeness and/or identity as described herein without authority in order to create the perception that Depriest worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in

218

order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1411. Defendants' use and alteration of Depriest's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1412. Defendants' unauthorized use and alteration of Depriest's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Depriest worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Depriest would participate in or appear at the specific events promoted in the advertisement.

1413. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Depriest worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1414. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Depriest worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her

images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1415.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1416.  Defendants' unauthorized use and alteration of Depriest's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1417.  Defendants knew or should have known that their unauthorized use and alteration of Depriest's image, likeness and identity would cause consumer confusion as described in this Complaint.

1418.  Defendants' unauthorized use and alteration of Depriest's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1419.  Defendants wrongful conduct as described herein was willful.

1420.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1421.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Depriest of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Depriest.

1422.  The method and manner in which Defendants used the images of Depriest further evinces that Defendants were aware of or consciously disregarded the fact that Depriest did not consent to Defendants' use of the images to advertise Defendants' business.

1423.  Defendants have caused and will continue to cause irreparable harm to Depriest, her reputation and brand by attributing to Depriest the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1424.  Defendants' unauthorized use of Depriest's image, likeness and identity directly and proximately caused and continue to cause damage to Depriest in an amount to be determined at trial.

1425.  WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## DEPRIEST COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

1426.   Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1427.   Depriest has a statutory right of publicity under Section 540.08, Florida Statutes.

1428.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1429.   Despite the clear language of Section 540.08, Defendants published Depriest's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1430.   Depriest's image, likeness or identity are recognizable in the photos identified in **Exhibit I.**

1431.   Defendants never sought permission nor authority to use or alter Depriest's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1432.   Depriest never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1433.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Depriest's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1434.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Depriest of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1435.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Depriest of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1436.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Depriest's rights.

1437.   Alternatively, Defendants acted negligently towards Depriest in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1438.   Defendants have caused and will continue to cause irreparable harm to Depriest, her reputation and brand by attributing to Depriest the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1439.   Defendants also have damaged Depriest as a direct and proximate result of their unauthorized use and alteration of Depriest's image, likeness and/or identity without compensating Depriest.

1440.   WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### DEPRIEST COUNT III
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

1441.   Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1442.   Depriest has a common law right of publicity.

1443.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Depriest without express written or oral consent to such use.

1444.   Defendants published, printed, displayed and/or publicly used Depriest's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1445.   Depriest's image, likeness or identity are recognizable in the photos identified in **Exhibit I.**

1446.   Defendants took these actions without Depriest's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Depriest's image,

likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1447.   Depriest never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1448.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Depriest's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1449.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Depriest of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1450.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Depriest of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1451.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Depriest's rights.

1452.   Alternatively, Defendants acted negligently towards Depriest in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1453.   Defendants have caused and will continue to cause irreparable harm to Depriest, her reputation and brand by attributing to Depriest the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1454.   Defendants also have damaged Depriest as a direct and proximate result of their unauthorized use and alteration of Depriest's image, likeness and/or identity without compensating Depriest.

1455.   WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### DEPRIEST COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

1456.   Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1457.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1458.   Defendants are direct and active participants in market dealings with Depriest by using the images to advertise and promote Depriest's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

1459.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1460.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Depriest prior to promoting Defendants' business by and through the misappropriation, use and alteration of Depriest's image, likeness and/or identity;

b.      failing to obtain authorization from Depriest prior to the publication of Depriest's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Depriest for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Depriest endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Depriest sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1461.   Defendants' conduct described herein was misleading.

1462.   Defendants knew their unauthorized use and alteration of Depriest's image, likeness and/or identity was misleading.

1463.   Defendants' unauthorized use and alteration of Depriest's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1464.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1465.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Depriest of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Depriest.

1466.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Depriest's rights.

1467.  Alternatively, the method and manner in which Defendants used Depriest's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Depriest did not consent to Defendants' use to advertise Defendants' business.

1468.  Defendants have caused and will continue to cause irreparable harm to Depriest, her reputation and brand by attributing to Depriest the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1469.  Defendants' unauthorized use of Depriest's image, likeness and identity directly and proximately caused and continues to cause damage to Depriest in an amount to be determined at trial.

1470.  WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### DEPRIEST COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

1471.  Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1472.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1473.   Defendants knowingly appropriated, altered, used and disseminated Depriest's image, likeness and/or identity without authorization or consent.

1474.   Defendants misappropriation of Depriest's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Depriest of certain rights.

1475.   Defendants' misconduct detailed in this Complaint denied Depriest the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1476.   Defendants' appropriation and alteration of Depriest's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1477.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1478.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Depriest of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Depriest.

1479.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Depriest's rights.

1480.   Alternatively, the method and manner in which Defendants used Depriest's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded

the fact that Depriest did not consent to Defendants' use in order to advertise Defendants' business.

1481.   Defendants' appropriation, use and alteration of Depriest's image, likeness and identity without authority directly and proximately caused damage to Depriest in an amount to be determined at trial.

1482.   WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## DEPRIEST COUNT VI
### (Defamation against all Defendants)

1483.   Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1484.   As described herein, Defendants have used, altered and published Depriest's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1485.   Defendants' unauthorized use and publication of Depriest's altered images, likeness and/or identity constitutes false representations or statements by implication about Depriest's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1486.   Defendants' representations or statements by implication were knowingly false.

1487. At all times relevant to matters raised in this Complaint, Defendants knew Depriest was not affiliated with or employed by the Club, knew that Depriest would not participate in the events at the Club, knew that Depriest did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1488. Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Depriest's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1489. Defendants' unauthorized use and publication of such altered Depriest's images were defamatory.

1490. Defendants' unauthorized use and publication of such altered Depriest's images and knowingly false representations and/or statements by implication about Depriest were made with actual malice.

1491. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Depriest, which were defamatory.

1492. Such false and defamatory representations and statements about Depriest were published to innumerable current and prospective customers and promoters.

1493. Defendants knew their conduct described herein was wrongful.

1494. Defendants intended to deprive Depriest of a property interest or, at a minimum, evinced a conscious disregard for the fact that Depriest did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1495.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Depriest or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Depriest's rights.

1496.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Depriest's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1497.  WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## DEPRIEST COUNT VII
### (Defamation Per Se against all Defendants)

1498.  Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1499.  As described herein, Defendants have used, altered and published Depriest's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1500.  Defendants' unauthorized use and publication of Depriest's altered images, likeness and/or identity constitutes false representations or statements by implication about Depriest's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

232

1501.   Defendants' representations or statements by implication were knowingly false.

1502.   At all times relevant to matters raised in this Complaint, Defendants knew Depriest was not affiliated with or employed by the Club, knew that Depriest would not participate in the events at the Club, knew that Depriest did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1503.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Depriest's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1504.   Defendants' unauthorized use and publication of such altered Depriest's images were defamatory.

1505.   Defendants' unauthorized use and publication of such altered Depriest's images and knowingly false representations or statements by implication about Depriest were made with actual malice.

1506.   Defendants' representations and statements falsely impute to Depriest a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1507.   These false statements by implication and/or altered images constitute defamation *per se*.

1508.  Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1509.  Defendants knew their conduct described herein was wrongful.

1510.  Defendants intended to deprive Depriest of a property interest or, at a minimum, evinced a conscious disregard for the fact that Depriest did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1511.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Depriest or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Depriest's rights.

1512.  Defendants' publication of Depriest's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Depriest as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1513.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Depriest's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1514.  WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

234

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## DEPRIEST COUNT VIII
### (Unjust Enrichment against all Defendants)

1515.    Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1516.    Depriest has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1517.    Defendants were aware that Depriest's image, likeness and/or identity were valuable.

1518.    Defendants were aware of the resulting benefit from usage of Depriest's image, likeness and/or identity.

1519.    Defendants have retained profits and other benefits conferred upon them by using Depriest's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1520.    It would be inequitable for the Defendants to retain the benefits conferred upon them by using Depriest's image, likeness and/or identity without paying fair value for the images.

1521.    WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## DEPRIEST COUNT IX
### (Negligence against all Defendants)

1522.   Depriest hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1523.   Under the circumstances stated herein, Defendants owed a duty of care towards Depriest.

1524.   Among other things, that duty included the obligation to deal with Depriest and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Depriest's image, likeness or identity in derogation of her rights, and to not cause harm to Depriest.

1525.   Defendants breached that duty by using and altering Depriest's image, likeness or identity without Depriest's authorization, permission or consent.

1526.   Defendants' conduct and breach as described above directly and proximately caused injury to Depriest's reputation, brand, goodwill and livelihood for which she has suffered damages.

1527.   WHEREFORE, Depriest respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Irina Voronina's Causes of Action*

**VORONINA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

1528.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1529.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Voronina from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1530.   Defendants used and altered Voronina's image, likeness and/or identity as described herein without authority in order to create the perception that Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1531.   Defendants' use and alteration of Voronina's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1532.   Defendants' unauthorized use and alteration of Voronina's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized

Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Voronina would participate in or appear at the specific events promoted in the advertisement.

1533.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1534.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Voronina worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1535.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons

from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1536.  Defendants' unauthorized use and alteration of Voronina's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1537.  Defendants knew or should have known that their unauthorized use and alteration of Voronina's image, likeness and identity would cause consumer confusion as described in this Complaint.

1538.  Defendants' unauthorized use and alteration of Voronina's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1539.  Defendants wrongful conduct as described herein was willful.

1540.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1541.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

1542.  The method and manner in which Defendants used the images of Voronina further evinces that Defendants were aware of or consciously disregarded the fact that Voronina did not consent to Defendants' use of the images to advertise Defendants' business.

1543.   Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1544.   Defendants' unauthorized use of Voronina's image, likeness and identity directly and proximately caused and continue to cause damage to Voronina in an amount to be determined at trial.

1545.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### VORONINA COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

1546.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1547.   Voronina has a statutory right of publicity under Section 540.08, Florida Statutes.

1548.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1549.   Despite the clear language of Section 540.08, Defendants published Voronina's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1550.   Voronina's image, likeness or identity are recognizable in the photos identified in **Exhibit J.**

1551.   Defendants never sought permission nor authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1552.   Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1553.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Voronina's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1554.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Voronina of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1555.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Voronina of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1556.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

1557.  Alternatively, Defendants acted negligently towards Voronina in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1558.  Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1559.  Defendants also have damaged Voronina as a direct and proximate result of their unauthorized use and alteration of Voronina's image, likeness and/or identity without compensating Voronina.

1560.  WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

1561.  Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1562.   Voronina has a common law right of publicity.

1563.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Voronina without express written or oral consent to such use.

1564.   Defendants published, printed, displayed and/or publicly used Voronina's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1565.   Voronina's image, likeness or identity are recognizable in the photos identified in **Exhibit J.**

1566.   Defendants took these actions without Voronina's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1567.   Voronina never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1568.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Voronina's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1569.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Voronina of a property interest

during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1570. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Voronina of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1571. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

1572. Alternatively, Defendants acted negligently towards Voronina in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1573. Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1574. Defendants also have damaged Voronina as a direct and proximate result of their unauthorized use and alteration of Voronina's image, likeness and/or identity without compensating Voronina.

1575. WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT IV
(Violation of Fla. Stat. § 501.204:
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

1576.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1577.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1578.   Defendants are direct and active participants in market dealings with Voronina by using the images to advertise and promote Voronina's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

1579.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1580.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Voronina prior to promoting Defendants' business by and through the misappropriation, use and alteration of Voronina's image, likeness and/or identity;

b.      failing to obtain authorization from Voronina prior to the publication of Voronina's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Voronina for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Voronina endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Voronina sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1581.   Defendants' conduct described herein was misleading.

1582.   Defendants knew their unauthorized use and alteration of Voronina's image, likeness and/or identity was misleading.

1583.   Defendants' unauthorized use and alteration of Voronina's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1584.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1585.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

1586.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

1587.   Alternatively, the method and manner in which Defendants used Voronina's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Voronina did not consent to Defendants' use to advertise Defendants' business.

1588.   Defendants have caused and will continue to cause irreparable harm to Voronina, her reputation and brand by attributing to Voronina the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1589.   Defendants' unauthorized use of Voronina's image, likeness and identity directly and proximately caused and continues to cause damage to Voronina in an amount to be determined at trial.

1590.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

1591.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1592.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1593.   Defendants knowingly appropriated, altered, used and disseminated Voronina's image, likeness and/or identity without authorization or consent.

1594.   Defendants misappropriation of Voronina's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Voronina of certain rights.

1595.   Defendants' misconduct detailed in this Complaint denied Voronina the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1596.   Defendants' appropriation and alteration of Voronina's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1597.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1598.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Voronina of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina.

1599.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Voronina's rights.

1600.   Alternatively, the method and manner in which Defendants used Voronina's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Voronina did not consent to Defendants' use in order to advertise Defendants' business.

1601.   Defendants' appropriation, use and alteration of Voronina's image, likeness and identity without authority directly and proximately caused damage to Voronina in an amount to be determined at trial.

1602.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VORONINA COUNT VI
### (Defamation against all Defendants)

1603.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1604.   As described herein, Defendants have used, altered and published Voronina's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1605.   Defendants' unauthorized use and publication of Voronina's altered images, likeness and/or identity constitutes false representations or statements by implication about Voronina's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1606.   Defendants' representations or statements by implication were knowingly false.

1607.   At all times relevant to matters raised in this Complaint, Defendants knew Voronina was not affiliated with or employed by the Club, knew that Voronina would not participate in the events at the Club, knew that Voronina did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1608.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Voronina's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1609.  Defendants' unauthorized use and publication of such altered Voronina's images were defamatory.

1610.  Defendants' unauthorized use and publication of such altered Voronina's images and knowingly false representations and/or statements by implication about Voronina were made with actual malice.

1611.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Voronina, which were defamatory.

1612.  Such false and defamatory representations and statements about Voronina were published to innumerable current and prospective customers and promoters.

1613.  Defendants knew their conduct described herein was wrongful.

1614.  Defendants intended to deprive Voronina of a property interest or, at a minimum, evinced a conscious disregard for the fact that Voronina did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1615.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Voronina's rights.

1616.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Voronina's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1617.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### VORONINA COUNT VII
### (Defamation Per Se against all Defendants)

1618.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1619.   As described herein, Defendants have used, altered and published Voronina's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1620.   Defendants' unauthorized use and publication of Voronina's altered images, likeness and/or identity constitutes false representations or statements by implication about Voronina's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

1621.   Defendants' representations or statements by implication were knowingly false.

1622.   At all times relevant to matters raised in this Complaint, Defendants knew Voronina was not affiliated with or employed by the Club, knew that Voronina would not participate in the events at the Club, knew that Voronina did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1623. Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Voronina's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1624. Defendants' unauthorized use and publication of such altered Voronina's images were defamatory.

1625. Defendants' unauthorized use and publication of such altered Voronina's images and knowingly false representations or statements by implication about Voronina were made with actual malice.

1626. Defendants' representations and statements falsely impute to Voronina a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model. She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1627. These false statements by implication and/or altered images constitute defamation *per se*.

1628. Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1629. Defendants knew their conduct described herein was wrongful.

1630. Defendants intended to deprive Voronina of a property interest or, at a minimum, evinced a conscious disregard for the fact that Voronina did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

252

1631.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Voronina or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Voronina's rights.

1632.   Defendants' publication of Voronina's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Voronina as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1633.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Voronina's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1634.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## VORONINA COUNT VIII
### (Unjust Enrichment against all Defendants)

1635.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1636.   Voronina has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1637.   Defendants were aware that Voronina's image, likeness and/or identity were valuable.

1638.   Defendants were aware of the resulting benefit from usage of Voronina's image, likeness and/or identity.

1639.   Defendants have retained profits and other benefits conferred upon them by using Voronina's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1640.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Voronina's image, likeness and/or identity without paying fair value for the images.

1641.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### <u>VORONINA COUNT IX</u>
**(Negligence against all Defendants)**

1642.   Voronina hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1643.   Under the circumstances stated herein, Defendants owed a duty of care towards Voronina.

1644.   Among other things, that duty included the obligation to deal with Voronina and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use

or alter Voronina's image, likeness or identity in derogation of her rights, and to not cause harm to Voronina.

1645.   Defendants breached that duty by using and altering Voronina's image, likeness or identity without Voronina's authorization, permission or consent.

1646.   Defendants' conduct and breach as described above directly and proximately caused injury to Voronina's reputation, brand, goodwill and livelihood for which she has suffered damages.

1647.   WHEREFORE, Voronina respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Jesse Golden's Causes of Action*

### <u>GOLDEN COUNT I</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants**)

1648.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1649.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Golden from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1650. Defendants used and altered Golden's image, likeness and/or identity as described herein without authority in order to create the perception that Golden worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1651. Defendants' use and alteration of Golden's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1652. Defendants' unauthorized use and alteration of Golden's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Golden worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Golden would participate in or appear at the specific events promoted in the advertisement.

1653. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Golden worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1654.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Golden worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1655.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1656.  Defendants' unauthorized use and alteration of Golden's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1657.  Defendants knew or should have known that their unauthorized use and alteration of Golden's image, likeness and identity would cause consumer confusion as described in this Complaint.

1658.  Defendants' unauthorized use and alteration of Golden's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1659.  Defendants wrongful conduct as described herein was willful.

1660.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1661.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Golden of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Golden.

1662.  The method and manner in which Defendants used the images of Golden further evinces that Defendants were aware of or consciously disregarded the fact that Golden did not consent to Defendants' use of the images to advertise Defendants' business.

1663.  Defendants have caused and will continue to cause irreparable harm to Golden, her reputation and brand by attributing to Golden the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1664.  Defendants' unauthorized use of Golden's image, likeness and identity directly and proximately caused and continue to cause damage to Golden in an amount to be determined at trial.

1665.  WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**GOLDEN COUNT II**
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

1666.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1667.   Golden has a statutory right of publicity under Section 540.08, Florida Statutes.

1668.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1669.   Despite the clear language of Section 540.08, Defendants published Golden's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1670.   Golden's image, likeness or identity are recognizable in the photos identified in **Exhibit K.**

1671.   Defendants never sought permission nor authority to use or alter Golden's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1672.   Golden never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1673.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Golden's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1674. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Golden of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1675. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Golden of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1676. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Golden's rights.

1677. Alternatively, Defendants acted negligently towards Golden in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1678. Defendants have caused and will continue to cause irreparable harm to Golden, her reputation and brand by attributing to Golden the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1679. Defendants also have damaged Golden as a direct and proximate result of their unauthorized use and alteration of Golden's image, likeness and/or identity without compensating Golden.

1680.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### GOLDEN COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

1681.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1682.   Golden has a common law right of publicity.

1683.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Golden without express written or oral consent to such use.

1684.   Defendants published, printed, displayed and/or publicly used Golden's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1685.   Golden's image, likeness or identity are recognizable in the photos identified in **Exhibit K.**

1686.   Defendants took these actions without Golden's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Golden's image,

likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1687. Golden never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1688. Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Golden's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1689. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Golden of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1690. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Golden of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1691. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Golden's rights.

1692. Alternatively, Defendants acted negligently towards Golden in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1693.   Defendants have caused and will continue to cause irreparable harm to Golden, her reputation and brand by attributing to Golden the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1694.   Defendants also have damaged Golden as a direct and proximate result of their unauthorized use and alteration of Golden's image, likeness and/or identity without compensating Golden.

1695.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GOLDEN COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

1696.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1697.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1698.   Defendants are direct and active participants in market dealings with Golden by using the images to advertise and promote Golden's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

1699.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1700.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Golden prior to promoting Defendants' business by and through the misappropriation, use and alteration of Golden's image, likeness and/or identity;

b.      failing to obtain authorization from Golden prior to the publication of Golden's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Golden for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Golden endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Golden sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1701.   Defendants' conduct described herein was misleading.

1702.   Defendants knew their unauthorized use and alteration of Golden's image, likeness and/or identity was misleading.

1703.   Defendants' unauthorized use and alteration of Golden's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1704.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1705.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Golden of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Golden.

1706.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Golden's rights.

1707.   Alternatively, the method and manner in which Defendants used Golden's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Golden did not consent to Defendants' use to advertise Defendants' business.

1708.   Defendants have caused and will continue to cause irreparable harm to Golden, her reputation and brand by attributing to Golden the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1709.   Defendants' unauthorized use of Golden's image, likeness and identity directly and proximately caused and continues to cause damage to Golden in an amount to be determined at trial.

1710.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GOLDEN COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

1711.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1712.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1713.   Defendants knowingly appropriated, altered, used and disseminated Golden's image, likeness and/or identity without authorization or consent.

1714.   Defendants misappropriation of Golden's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Golden of certain rights.

1715.   Defendants' misconduct detailed in this Complaint denied Golden the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1716.   Defendants' appropriation and alteration of Golden's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1717.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1718.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Golden of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Golden.

1719.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Golden's rights.

1720.   Alternatively, the method and manner in which Defendants used Golden's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded

the fact that Golden did not consent to Defendants' use in order to advertise Defendants' business.

1721.   Defendants' appropriation, use and alteration of Golden's image, likeness and identity without authority directly and proximately caused damage to Golden in an amount to be determined at trial.

1722.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GOLDEN COUNT VI
### (Defamation against all Defendants)

1723.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1724.   As described herein, Defendants have used, altered and published Golden's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1725.   Defendants' unauthorized use and publication of Golden's altered images, likeness and/or identity constitutes false representations or statements by implication about Golden's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1726.   Defendants' representations or statements by implication were knowingly false.

267

1727.   At all times relevant to matters raised in this Complaint, Defendants knew Golden was not affiliated with or employed by the Club, knew that Golden would not participate in the events at the Club, knew that Golden did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1728.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Golden's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1729.   Defendants' unauthorized use and publication of such altered Golden's images were defamatory.

1730.   Defendants' unauthorized use and publication of such altered Golden's images and knowingly false representations and/or statements by implication about Golden were made with actual malice.

1731.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Golden, which were defamatory.

1732.   Such false and defamatory representations and statements about Golden were published to innumerable current and prospective customers and promoters.

1733.   Defendants knew their conduct described herein was wrongful.

1734.   Defendants intended to deprive Golden of a property interest or, at a minimum, evinced a conscious disregard for the fact that Golden did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1735.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Golden or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Golden's rights.

1736.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Golden's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1737.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GOLDEN COUNT VII
### (Defamation Per Se against all Defendants)

1738.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1739.   As described herein, Defendants have used, altered and published Golden's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1740.   Defendants' unauthorized use and publication of Golden's altered images, likeness and/or identity constitutes false representations or statements by implication about Golden's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

1741.   Defendants' representations or statements by implication were knowingly false.

1742.   At all times relevant to matters raised in this Complaint, Defendants knew Golden was not affiliated with or employed by the Club, knew that Golden would not participate in the events at the Club, knew that Golden did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1743.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Golden's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1744.   Defendants' unauthorized use and publication of such altered Golden's images were defamatory.

1745.   Defendants' unauthorized use and publication of such altered Golden's images and knowingly false representations or statements by implication about Golden were made with actual malice.

1746.   Defendants' representations and statements falsely impute to Golden a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1747.   These false statements by implication and/or altered images constitute defamation *per se*.

1748.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

270

1749.   Defendants knew their conduct described herein was wrongful.

1750.   Defendants intended to deprive Golden of a property interest or, at a minimum, evinced a conscious disregard for the fact that Golden did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1751.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Golden or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Golden's rights.

1752.   Defendants' publication of Golden's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Golden as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1753.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Golden's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1754.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## GOLDEN COUNT VIII
### (Unjust Enrichment against all Defendants)

1755.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1756.   Golden has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1757.   Defendants were aware that Golden's image, likeness and/or identity were valuable.

1758.   Defendants were aware of the resulting benefit from usage of Golden's image, likeness and/or identity.

1759.   Defendants have retained profits and other benefits conferred upon them by using Golden's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1760.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Golden's image, likeness and/or identity without paying fair value for the images.

1761.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GOLDEN COUNT IX
### (Negligence against all Defendants)

1762.   Golden hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1763.   Under the circumstances stated herein, Defendants owed a duty of care towards Golden.

1764.   Among other things, that duty included the obligation to deal with Golden and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Golden's image, likeness or identity in derogation of her rights, and to not cause harm to Golden.

1765.   Defendants breached that duty by using and altering Golden's image, likeness or identity without Golden's authorization, permission or consent.

1766.   Defendants' conduct and breach as described above directly and proximately caused injury to Golden's reputation, brand, goodwill and livelihood for which she has suffered damages.

1767.   WHEREFORE, Golden respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Jessica Burciaga's Causes of Action*

**BURCIAGA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

1768.  Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1769.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Burciaga from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1770.  Defendants used and altered Burciaga's image, likeness and/or identity as described herein without authority in order to create the perception that Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1771.  Defendants' use and alteration of Burciaga's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1772.  Defendants' unauthorized use and alteration of Burciaga's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized

274

Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Burciaga would participate in or appear at the specific events promoted in the advertisement.

1773.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1774.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Burciaga worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1775.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons

from different states throughout the United States. In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1776. Defendants' unauthorized use and alteration of Burciaga's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1777. Defendants knew or should have known that their unauthorized use and alteration of Burciaga's image, likeness and identity would cause consumer confusion as described in this Complaint.

1778. Defendants' unauthorized use and alteration of Burciaga's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1779. Defendants wrongful conduct as described herein was willful.

1780. As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1781. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

1782. The method and manner in which Defendants used the images of Burciaga further evinces that Defendants were aware of or consciously disregarded the fact that Burciaga did not consent to Defendants' use of the images to advertise Defendants' business.

1783.   Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1784.   Defendants' unauthorized use of Burciaga's image, likeness and identity directly and proximately caused and continue to cause damage to Burciaga in an amount to be determined at trial.

1785.   WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### BURCIAGA COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

1786.   Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1787.   Burciaga has a statutory right of publicity under Section 540.08, Florida Statutes.

1788.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1789.  Despite the clear language of Section 540.08, Defendants published Burciaga's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1790.  Burciaga's image, likeness or identity are recognizable in the photos identified in **Exhibit L.**

1791.  Defendants never sought permission nor authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1792.  Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1793.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Burciaga's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1794.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Burciaga of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1795.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Burciaga of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1796.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

1797.  Alternatively, Defendants acted negligently towards Burciaga in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1798.  Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1799.  Defendants also have damaged Burciaga as a direct and proximate result of their unauthorized use and alteration of Burciaga's image, likeness and/or identity without compensating Burciaga.

1800.  WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### BURCIAGA COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

1801.  Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1802.   Burciaga has a common law right of publicity.

1803.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Burciaga without express written or oral consent to such use.

1804.   Defendants published, printed, displayed and/or publicly used Burciaga's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1805.   Burciaga's image, likeness or identity are recognizable in the photos identified in **Exhibit L.**

1806.   Defendants took these actions without Burciaga's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1807.   Burciaga never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1808.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Burciaga's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1809.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Burciaga of a property interest

during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1810.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Burciaga of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1811.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

1812.  Alternatively, Defendants acted negligently towards Burciaga in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1813.  Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1814.  Defendants also have damaged Burciaga as a direct and proximate result of their unauthorized use and alteration of Burciaga's image, likeness and/or identity without compensating Burciaga.

1815.  WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

1816.   Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1817.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1818.   Defendants are direct and active participants in market dealings with Burciaga by using the images to advertise and promote Burciaga's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

1819.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1820.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

    a.     failing to obtain consent from Burciaga prior to promoting Defendants' business by and through the misappropriation, use and alteration of Burciaga's image, likeness and/or identity;

    b.     failing to obtain authorization from Burciaga prior to the publication of Burciaga's image, likeness and/or identity on Defendants' marketing and promotional materials;

    c.     failing to compensate Burciaga for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Burciaga endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Burciaga sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1821.   Defendants' conduct described herein was misleading.

1822.   Defendants knew their unauthorized use and alteration of Burciaga's image, likeness and/or identity was misleading.

1823.   Defendants' unauthorized use and alteration of Burciaga's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1824.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1825.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

1826.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

1827.   Alternatively, the method and manner in which Defendants used Burciaga's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Burciaga did not consent to Defendants' use to advertise Defendants' business.

1828.   Defendants have caused and will continue to cause irreparable harm to Burciaga, her reputation and brand by attributing to Burciaga the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1829. Defendants' unauthorized use of Burciaga's image, likeness and identity directly and proximately caused and continues to cause damage to Burciaga in an amount to be determined at trial.

1830. WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

1831. Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1832. Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1833. Defendants knowingly appropriated, altered, used and disseminated Burciaga's image, likeness and/or identity without authorization or consent.

1834. Defendants misappropriation of Burciaga's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Burciaga of certain rights.

1835. Defendants' misconduct detailed in this Complaint denied Burciaga the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1836.   Defendants' appropriation and alteration of Burciaga's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1837.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1838.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Burciaga of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga.

1839.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Burciaga's rights.

1840.   Alternatively, the method and manner in which Defendants used Burciaga's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Burciaga did not consent to Defendants' use in order to advertise Defendants' business.

1841.   Defendants' appropriation, use and alteration of Burciaga's image, likeness and identity without authority directly and proximately caused damage to Burciaga in an amount to be determined at trial.

1842.   WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use,

attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT VI
### (Defamation against all Defendants)

1843.   Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1844.   As described herein, Defendants have used, altered and published Burciaga's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1845.   Defendants' unauthorized use and publication of Burciaga's altered images, likeness and/or identity constitutes false representations or statements by implication about Burciaga's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1846.   Defendants' representations or statements by implication were knowingly false.

1847.   At all times relevant to matters raised in this Complaint, Defendants knew Burciaga was not affiliated with or employed by the Club, knew that Burciaga would not participate in the events at the Club, knew that Burciaga did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1848.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Burciaga's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1849.   Defendants' unauthorized use and publication of such altered Burciaga's images were defamatory.

286

1850.  Defendants' unauthorized use and publication of such altered Burciaga's images and knowingly false representations and/or statements by implication about Burciaga were made with actual malice.

1851.  Alternatively,  Defendants  negligently  made  the  aforementioned  false representations and/or statements by implication about Burciaga, which were defamatory.

1852.  Such false and defamatory representations and statements about Burciaga were published to innumerable current and prospective customers and promoters.

1853.  Defendants knew their conduct described herein was wrongful.

1854.  Defendants intended to deprive Burciaga of a property interest or, at a minimum, evinced a conscious disregard for the fact that Burciaga did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1855.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Burciaga's rights.

1856.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Burciaga's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1857.  WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

287

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT VII
### (Defamation Per Se against all Defendants)

1858.  Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1859.  As described herein, Defendants have used, altered and published Burciaga's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1860.  Defendants' unauthorized use and publication of Burciaga's altered images, likeness and/or identity constitutes false representations or statements by implication about Burciaga's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

1861.  Defendants' representations or statements by implication were knowingly false.

1862.  At all times relevant to matters raised in this Complaint, Defendants knew Burciaga was not affiliated with or employed by the Club, knew that Burciaga would not participate in the events at the Club, knew that Burciaga did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1863.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Burciaga's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1864.  Defendants' unauthorized use and publication of such altered Burciaga's images were defamatory.

1865.   Defendants' unauthorized use and publication of such altered Burciaga's images and knowingly false representations or statements by implication about Burciaga were made with actual malice.

1866.   Defendants' representations and statements falsely impute to Burciaga a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1867.   These false statements by implication and/or altered images constitute defamation *per se*.

1868.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1869.   Defendants knew their conduct described herein was wrongful.

1870.   Defendants intended to deprive Burciaga of a property interest or, at a minimum, evinced a conscious disregard for the fact that Burciaga did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1871.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Burciaga or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Burciaga's rights.

1872.   Defendants' publication of Burciaga's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays

Burciaga as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1873.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Burciaga's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1874.   WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## BURCIAGA COUNT VIII
### (Unjust Enrichment against all Defendants)

1875.   Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1876.   Burciaga has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1877.   Defendants were aware that Burciaga's image, likeness and/or identity were valuable.

1878.   Defendants were aware of the resulting benefit from usage of Burciaga's image, likeness and/or identity.

1879.   Defendants have retained profits and other benefits conferred upon them by using Burciaga's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

1880.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Burciaga's image, likeness and/or identity without paying fair value for the images.

1881.   WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BURCIAGA COUNT IX
### (Negligence against all Defendants)

1882.   Burciaga hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1883.   Under the circumstances stated herein, Defendants owed a duty of care towards Burciaga.

1884.   Among other things, that duty included the obligation to deal with Burciaga and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Burciaga's image, likeness or identity in derogation of her rights, and to not cause harm to Burciaga.

1885.   Defendants breached that duty by using and altering Burciaga's image, likeness or identity without Burciaga's authorization, permission or consent.

1886.   Defendants' conduct and breach as described above directly and proximately caused injury to Burciaga's reputation, brand, goodwill and livelihood for which she has suffered damages.

1887.   WHEREFORE, Burciaga respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Jessica Hinton's Causes of Action*

### <u>HINTON COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

1888.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1889.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Hinton from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

1890.   Defendants used and altered Hinton's image, likeness and/or identity as described herein without authority in order to create the perception that Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or

consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

1891.   Defendants' use and alteration of Hinton's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

1892.   Defendants' unauthorized use and alteration of Hinton's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Hinton would participate in or appear at the specific events promoted in the advertisement.

1893.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

1894.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Hinton worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her

293

images in order to advertise, promote, and market Defendants' business or the Club's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

1895. Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

1896. Defendants' unauthorized use and alteration of Hinton's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

1897. Defendants knew or should have known that their unauthorized use and alteration of Hinton's image, likeness and identity would cause consumer confusion as described in this Complaint.

1898. Defendants' unauthorized use and alteration of Hinton's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

1899. Defendants wrongful conduct as described herein was willful.

1900.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

1901.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

1902.  The method and manner in which Defendants used the images of Hinton further evinces that Defendants were aware of or consciously disregarded the fact that Hinton did not consent to Defendants' use of the images to advertise Defendants' business.

1903.  Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1904.  Defendants' unauthorized use of Hinton's image, likeness and identity directly and proximately caused and continue to cause damage to Hinton in an amount to be determined at trial.

1905.  WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

1906.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1907.   Hinton has a statutory right of publicity under Section 540.08, Florida Statutes.

1908.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

1909.   Despite the clear language of Section 540.08, Defendants published Hinton's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

1910.   Hinton's image, likeness or identity are recognizable in the photos identified in **Exhibit M.**

1911.   Defendants never sought permission nor authority to use or alter Hinton's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1912.   Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1913.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Hinton's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1914.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Hinton of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1915.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Hinton of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1916.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1917.  Alternatively, Defendants acted negligently towards Hinton in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1918.  Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1919.  Defendants also have damaged Hinton as a direct and proximate result of their unauthorized use and alteration of Hinton's image, likeness and/or identity without compensating Hinton.

1920.  WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### HINTON COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

1921.  Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1922.  Hinton has a common law right of publicity.

1923.  Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Hinton without express written or oral consent to such use.

1924.  Defendants published, printed, displayed and/or publicly used Hinton's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

1925.  Hinton's image, likeness or identity are recognizable in the photos identified in **Exhibit M.**

1926.  Defendants took these actions without Hinton's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Hinton's image, likeness

or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1927.   Hinton never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

1928.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Hinton's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

1929.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Hinton of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

1930.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Hinton of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

1931.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1932.   Alternatively, Defendants acted negligently towards Hinton in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

1933.  Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1934.  Defendants also have damaged Hinton as a direct and proximate result of their unauthorized use and alteration of Hinton's image, likeness and/or identity without compensating Hinton.

1935.  WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### HINTON COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

1936.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1937.  Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

1938.  Defendants are direct and active participants in market dealings with Hinton by using the images to advertise and promote Hinton's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

1939.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

1940.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Hinton prior to promoting Defendants' business by and through the misappropriation, use and alteration of Hinton's image, likeness and/or identity;

b.      failing to obtain authorization from Hinton prior to the publication of Hinton's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Hinton for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Hinton endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Hinton sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

1941.   Defendants' conduct described herein was misleading.

1942.   Defendants knew their unauthorized use and alteration of Hinton's image, likeness and/or identity was misleading.

1943.   Defendants' unauthorized use and alteration of Hinton's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

1944.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1945.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

1946.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1947.   Alternatively, the method and manner in which Defendants used Hinton's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Hinton did not consent to Defendants' use to advertise Defendants' business.

1948.   Defendants have caused and will continue to cause irreparable harm to Hinton, her reputation and brand by attributing to Hinton the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

1949.   Defendants' unauthorized use of Hinton's image, likeness and identity directly and proximately caused and continues to cause damage to Hinton in an amount to be determined at trial.

1950.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### HINTON COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

1951.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1952.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

1953.   Defendants knowingly appropriated, altered, used and disseminated Hinton's image, likeness and/or identity without authorization or consent.

1954.   Defendants misappropriation of Hinton's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Hinton of certain rights.

1955.   Defendants' misconduct detailed in this Complaint denied Hinton the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

1956.   Defendants' appropriation and alteration of Hinton's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

1957.   Defendants' wrongful conduct as detailed herein was willful and malicious.

1958.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Hinton of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton.

1959.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Hinton's rights.

1960.   Alternatively, the method and manner in which Defendants used Hinton's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Hinton did not consent to Defendants' use in order to advertise Defendants' business.

1961.   Defendants' appropriation, use and alteration of Hinton's image, likeness and identity without authority directly and proximately caused damage to Hinton in an amount to be determined at trial.

1962.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT VI
### (Defamation against all Defendants)

1963.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1964.   As described herein, Defendants have used, altered and published Hinton's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1965.   Defendants' unauthorized use and publication of Hinton's altered images, likeness and/or identity constitutes false representations or statements by implication about Hinton's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

1966.   Defendants' representations or statements by implication were knowingly false.

1967.   At all times relevant to matters raised in this Complaint, Defendants knew Hinton was not affiliated with or employed by the Club, knew that Hinton would not participate in the events at the Club, knew that Hinton did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

1968.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Hinton's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1969.   Defendants' unauthorized use and publication of such altered Hinton's images were defamatory.

1970.   Defendants' unauthorized use and publication of such altered Hinton's images and knowingly false representations and/or statements by implication about Hinton were made with actual malice.

1971.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Hinton, which were defamatory.

1972.   Such false and defamatory representations and statements about Hinton were published to innumerable current and prospective customers and promoters.

1973.   Defendants knew their conduct described herein was wrongful.

1974.   Defendants intended to deprive Hinton of a property interest or, at a minimum, evinced a conscious disregard for the fact that Hinton did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

1975.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Hinton's rights.

1976.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Hinton's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1977.  WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT VII
### (Defamation Per Se against all Defendants)

1978.  Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1979.  As described herein, Defendants have used, altered and published Hinton's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

1980.  Defendants' unauthorized use and publication of Hinton's altered images, likeness and/or identity constitutes false representations or statements by implication about Hinton's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

1981.   Defendants' representations or statements by implication were knowingly false.

1982.   At all times relevant to matters raised in this Complaint, Defendants knew Hinton was not affiliated with or employed by the Club, knew that Hinton would not participate in the events at the Club, knew that Hinton did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

1983.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Hinton's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

1984.   Defendants' unauthorized use and publication of such altered Hinton's images were defamatory.

1985.   Defendants' unauthorized use and publication of such altered Hinton's images and knowingly false representations or statements by implication about Hinton were made with actual malice.

1986.   Defendants' representations and statements falsely impute to Hinton a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

1987.   These false statements by implication and/or altered images constitute defamation *per se*.

1988.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

1989.   Defendants knew their conduct described herein was wrongful.

1990.   Defendants intended to deprive Hinton of a property interest or, at a minimum, evinced a conscious disregard for the fact that Hinton did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

1991.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Hinton or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Hinton's rights.

1992.   Defendants' publication of Hinton's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Hinton as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

1993.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Hinton's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

1994.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## HINTON COUNT VIII
### (Unjust Enrichment against all Defendants)

1995.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

1996.   Hinton has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

1997.   Defendants were aware that Hinton's image, likeness and/or identity were valuable.

1998.   Defendants were aware of the resulting benefit from usage of Hinton's image, likeness and/or identity.

1999.   Defendants have retained profits and other benefits conferred upon them by using Hinton's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2000.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Hinton's image, likeness and/or identity without paying fair value for the images.

2001.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## HINTON COUNT IX
### (Negligence against all Defendants)

2002.   Hinton hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2003.   Under the circumstances stated herein, Defendants owed a duty of care towards Hinton.

2004.   Among other things, that duty included the obligation to deal with Hinton and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Hinton's image, likeness or identity in derogation of her rights, and to not cause harm to Hinton.

2005.   Defendants breached that duty by using and altering Hinton's image, likeness or identity without Hinton's authorization, permission or consent.

2006.   Defendants' conduct and breach as described above directly and proximately caused injury to Hinton's reputation, brand, goodwill and livelihood for which she has suffered damages.

2007.   WHEREFORE, Hinton respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Joanna Krupa's Causes of Action*

## KRUPA COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against all Defendants)

2008.  Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2009.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Krupa from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2010.  Defendants used and altered Krupa's image, likeness and/or identity as described herein without authority in order to create the perception that Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2011.  Defendants' use and alteration of Krupa's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2012.  Defendants' unauthorized use and alteration of Krupa's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and

market Defendants' business or the Club's events and activities and/or that Krupa would participate in or appear at the specific events promoted in the advertisement.

2013.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2014.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Krupa worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2015.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.   In addition to membership lists consisting of

members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2016.   Defendants' unauthorized use and alteration of Krupa's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2017.   Defendants knew or should have known that their unauthorized use and alteration of Krupa's image, likeness and identity would cause consumer confusion as described in this Complaint.

2018.   Defendants' unauthorized use and alteration of Krupa's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2019.   Defendants wrongful conduct as described herein was willful.

2020.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2021.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Krupa of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Krupa.

2022.   The method and manner in which Defendants used the images of Krupa further evinces that Defendants were aware of or consciously disregarded the fact that Krupa did not consent to Defendants' use of the images to advertise Defendants' business.

2023.   Defendants have caused and will continue to cause irreparable harm to Krupa, her reputation and brand by attributing to Krupa the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2024.   Defendants' unauthorized use of Krupa's image, likeness and identity directly and proximately caused and continue to cause damage to Krupa in an amount to be determined at trial.

2025.   WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

<u>**KRUPA COUNT II**</u>
(**Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against all Defendants**)

2026.   Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2027.   Krupa has a statutory right of publicity under Section 540.08, Florida Statutes.

2028.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2029.   Despite the clear language of Section 540.08, Defendants published Krupa's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2030.   Krupa's image, likeness or identity are recognizable in the photos identified in **Exhibit N.**

2031.  Defendants never sought permission nor authority to use or alter Krupa's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2032.  Krupa never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2033.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Krupa's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2034.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Krupa of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2035.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Krupa of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2036.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Krupa's rights.

2037.  Alternatively, Defendants acted negligently towards Krupa in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and

social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2038.   Defendants have caused and will continue to cause irreparable harm to Krupa, her reputation and brand by attributing to Krupa the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2039.   Defendants also have damaged Krupa as a direct and proximate result of their unauthorized use and alteration of Krupa's image, likeness and/or identity without compensating Krupa.

2040.   WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### KRUPA COUNT III
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

2041.   Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2042.   Krupa has a common law right of publicity.

2043.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Krupa without express written or oral consent to such use.

2044.  Defendants published, printed, displayed and/or publicly used Krupa's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2045.  Krupa's image, likeness or identity are recognizable in the photos identified in **Exhibit N.**

2046.  Defendants took these actions without Krupa's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Krupa's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2047.  Krupa never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2048.  Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Krupa's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2049.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Krupa of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2050.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Krupa of a property interest after receipt of the Demand Letter in which

each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2051.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Krupa's rights.

2052.  Alternatively, Defendants acted negligently towards Krupa in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2053.  Defendants have caused and will continue to cause irreparable harm to Krupa, her reputation and brand by attributing to Krupa the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2054.  Defendants also have damaged Krupa as a direct and proximate result of their unauthorized use and alteration of Krupa's image, likeness and/or identity without compensating Krupa.

2055.  WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**KRUPA COUNT IV**
(Violation of Fla. Stat. § 501.204:
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

2056.   Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2057.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2058.   Defendants are direct and active participants in market dealings with Krupa by using the images to advertise and promote Krupa's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2059.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2060.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Krupa prior to promoting Defendants' business by and through the misappropriation, use and alteration of Krupa's image, likeness and/or identity;

b.      failing to obtain authorization from Krupa prior to the publication of Krupa's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Krupa for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Krupa endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

319

e.    falsely representing by implication that Krupa sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2061.   Defendants' conduct described herein was misleading.

2062.   Defendants knew their unauthorized use and alteration of Krupa's image, likeness and/or identity was misleading.

2063.   Defendants' unauthorized use and alteration of Krupa's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2064.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2065.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Krupa of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Krupa.

2066.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Krupa's rights.

2067.   Alternatively, the method and manner in which Defendants used Krupa's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Krupa did not consent to Defendants' use to advertise Defendants' business.

2068.   Defendants have caused and will continue to cause irreparable harm to Krupa, her reputation and brand by attributing to Krupa the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2069.   Defendants' unauthorized use of Krupa's image, likeness and identity directly and proximately caused and continues to cause damage to Krupa in an amount to be determined at trial.

2070.   WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**KRUPA COUNT V**
(**Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants**)

2071.   Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2072.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2073.   Defendants knowingly appropriated, altered, used and disseminated Krupa's image, likeness and/or identity without authorization or consent.

2074.   Defendants misappropriation of Krupa's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Krupa of certain rights.

2075.   Defendants' misconduct detailed in this Complaint denied Krupa the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2076.   Defendants' appropriation and alteration of Krupa's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2077.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2078.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Krupa of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Krupa.

2079.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Krupa's rights.

2080.   Alternatively, the method and manner in which Defendants used Krupa's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Krupa did not consent to Defendants' use in order to advertise Defendants' business.

2081.   Defendants' appropriation, use and alteration of Krupa's image, likeness and identity without authority directly and proximately caused damage to Krupa in an amount to be determined at trial.

2082.   WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KRUPA COUNT VI
### (Defamation against all Defendants)

2083.   Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2084.   As described herein, Defendants have used, altered and published Krupa's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2085.   Defendants' unauthorized use and publication of Krupa's altered images, likeness and/or identity constitutes false representations or statements by implication about Krupa's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2086.   Defendants' representations or statements by implication were knowingly false.

2087.   At all times relevant to matters raised in this Complaint, Defendants knew Krupa was not affiliated with or employed by the Club, knew that Krupa would not participate in the events at the Club, knew that Krupa did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

2088.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Krupa's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2089.   Defendants' unauthorized use and publication of such altered Krupa's images were defamatory.

2090.   Defendants' unauthorized use and publication of such altered Krupa's images and knowingly false representations and/or statements by implication about Krupa were made with actual malice.

323

2091. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Krupa, which were defamatory.

2092. Such false and defamatory representations and statements about Krupa were published to innumerable current and prospective customers and promoters.

2093. Defendants knew their conduct described herein was wrongful.

2094. Defendants intended to deprive Krupa of a property interest or, at a minimum, evinced a conscious disregard for the fact that Krupa did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2095. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Krupa or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Krupa's rights.

2096. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Krupa's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2097. WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KRUPA COUNT VII
### (Defamation Per Se against all Defendants)

2098.  Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2099.  As described herein, Defendants have used, altered and published Krupa's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2100.  Defendants' unauthorized use and publication of Krupa's altered images, likeness and/or identity constitutes false representations or statements by implication about Krupa's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

2101.  Defendants' representations or statements by implication were knowingly false.

2102.  At all times relevant to matters raised in this Complaint, Defendants knew Krupa was not affiliated with or employed by the Club, knew that Krupa would not participate in the events at the Club, knew that Krupa did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

2103.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Krupa's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2104.  Defendants' unauthorized use and publication of such altered Krupa's images were defamatory.

2105.  Defendants' unauthorized use and publication of such altered Krupa's images and knowingly false representations or statements by implication about Krupa were made with actual malice.

2106.   Defendants' representations and statements falsely impute to Krupa a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2107.   These false statements by implication and/or altered images constitute defamation *per se*.

2108.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2109.   Defendants knew their conduct described herein was wrongful.

2110.   Defendants intended to deprive Krupa of a property interest or, at a minimum, evinced a conscious disregard for the fact that Krupa did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2111.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Krupa or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Krupa's rights.

2112.  Defendants' publication of Krupa's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Krupa as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2113.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Krupa's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2114.  WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## KRUPA COUNT VIII
### (Unjust Enrichment against all Defendants)

2115.  Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2116.  Krupa has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2117.  Defendants were aware that Krupa's image, likeness and/or identity were valuable.

2118.  Defendants were aware of the resulting benefit from usage of Krupa's image, likeness and/or identity.

2119.  Defendants have retained profits and other benefits conferred upon them by using Krupa's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2120.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Krupa's image, likeness and/or identity without paying fair value for the images.

2121.  WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## <u>KRUPA COUNT IX</u>
### (Negligence against all Defendants)

2122.  Krupa hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2123.  Under the circumstances stated herein, Defendants owed a duty of care towards Krupa.

2124.  Among other things, that duty included the obligation to deal with Krupa and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Krupa's image, likeness or identity in derogation of her rights, and to not cause harm to Krupa.

2125.  Defendants breached that duty by using and altering Krupa's image, likeness or identity without Krupa's authorization, permission or consent.

2126.  Defendants' conduct and breach as described above directly and proximately caused injury to Krupa's reputation, brand, goodwill and livelihood for which she has suffered damages.

2127.   WHEREFORE, Krupa respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Jordan Carver's Causes of Action*

### CARVER COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

2128.   Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2129.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Carver from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2130.   Defendants used and altered Carver's image, likeness and/or identity as described herein without authority in order to create the perception that Carver worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2131.  Defendants' use and alteration of Carver's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2132.  Defendants' unauthorized use and alteration of Carver's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Carver worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Carver would participate in or appear at the specific events promoted in the advertisement.

2133.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Carver worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2134.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Carver worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration

misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2135.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2136.  Defendants' unauthorized use and alteration of Carver's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2137.  Defendants knew or should have known that their unauthorized use and alteration of Carver's image, likeness and identity would cause consumer confusion as described in this Complaint.

2138.  Defendants' unauthorized use and alteration of Carver's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2139.  Defendants wrongful conduct as described herein was willful.

2140.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2141.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Carver of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver.

2142.  The method and manner in which Defendants used the images of Carver further evinces that Defendants were aware of or consciously disregarded the fact that Carver did not consent to Defendants' use of the images to advertise Defendants' business.

2143.  Defendants have caused and will continue to cause irreparable harm to Carver, her reputation and brand by attributing to Carver the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2144.  Defendants' unauthorized use of Carver's image, likeness and identity directly and proximately caused and continue to cause damage to Carver in an amount to be determined at trial.

2145.  WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### **CARVER COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

2146.  Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2147.  Carver has a statutory right of publicity under Section 540.08, Florida Statutes.

2148.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2149.   Despite the clear language of Section 540.08, Defendants published Carver's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2150.   Carver's image, likeness or identity are recognizable in the photos identified in **Exhibit O.**

2151.   Defendants never sought permission nor authority to use or alter Carver's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2152.   Carver never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2153.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Carver's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2154.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Carver of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2155.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Carver of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2156.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Carver's rights.

2157.   Alternatively, Defendants acted negligently towards Carver in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2158.   Defendants have caused and will continue to cause irreparable harm to Carver, her reputation and brand by attributing to Carver the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2159.   Defendants also have damaged Carver as a direct and proximate result of their unauthorized use and alteration of Carver's image, likeness and/or identity without compensating Carver.

2160.   WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CARVER COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

2161.   Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2162.   Carver has a common law right of publicity.

2163.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Carver without express written or oral consent to such use.

2164.   Defendants published, printed, displayed and/or publicly used Carver's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2165.   Carver's image, likeness or identity are recognizable in the photos identified in **Exhibit O.**

2166.   Defendants took these actions without Carver's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Carver's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2167.   Carver never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2168.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Carver's image, likeness or identity

335

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2169.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Carver of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2170.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Carver of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2171.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Carver's rights.

2172.  Alternatively, Defendants acted negligently towards Carver in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2173.  Defendants have caused and will continue to cause irreparable harm to Carver, her reputation and brand by attributing to Carver the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2174.  Defendants also have damaged Carver as a direct and proximate result of their unauthorized use and alteration of Carver's image, likeness and/or identity without compensating Carver.

2175.   WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### **CARVER COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

2176.   Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2177.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2178.   Defendants are direct and active participants in market dealings with Carver by using the images to advertise and promote Carver's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2179.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2180.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Carver prior to promoting Defendants' business by and through the misappropriation, use and alteration of Carver's image, likeness and/or identity;

b.      failing to obtain authorization from Carver prior to the publication of Carver's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Carver for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Carver endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Carver sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2181.   Defendants' conduct described herein was misleading.

2182.   Defendants knew their unauthorized use and alteration of Carver's image, likeness and/or identity was misleading.

2183.   Defendants' unauthorized use and alteration of Carver's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2184.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2185.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Carver of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver.

2186.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Carver's rights.

2187.   Alternatively, the method and manner in which Defendants used Carver's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Carver did not consent to Defendants' use to advertise Defendants' business.

2188.   Defendants have caused and will continue to cause irreparable harm to Carver, her reputation and brand by attributing to Carver the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2189.   Defendants' unauthorized use of Carver's image, likeness and identity directly and proximately caused and continues to cause damage to Carver in an amount to be determined at trial.

2190.   WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**CARVER COUNT V**
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

2191.   Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2192.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2193.   Defendants knowingly appropriated, altered, used and disseminated Carver's image, likeness and/or identity without authorization or consent.

339

2194.  Defendants misappropriation of Carver's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Carver of certain rights.

2195.  Defendants' misconduct detailed in this Complaint denied Carver the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2196.  Defendants' appropriation and alteration of Carver's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2197.  Defendants' wrongful conduct as detailed herein was willful and malicious.

2198.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Carver of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver.

2199.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Carver's rights.

2200.  Alternatively, the method and manner in which Defendants used Carver's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Carver did not consent to Defendants' use in order to advertise Defendants' business.

2201.  Defendants' appropriation, use and alteration of Carver's image, likeness and identity without authority directly and proximately caused damage to Carver in an amount to be determined at trial.

2202.   WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CARVER COUNT VI
### (Defamation against all Defendants)

2203.   Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2204.   As described herein, Defendants have used, altered and published Carver's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2205.   Defendants' unauthorized use and publication of Carver's altered images, likeness and/or identity constitutes false representations or statements by implication about Carver's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2206.   Defendants' representations or statements by implication were knowingly false.

2207.   At all times relevant to matters raised in this Complaint, Defendants knew Carver was not affiliated with or employed by the Club, knew that Carver would not participate in the events at the Club, knew that Carver did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

2208.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Carver's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2209.   Defendants' unauthorized use and publication of such altered Carver's images were defamatory.

2210.   Defendants' unauthorized use and publication of such altered Carver's images and knowingly false representations and/or statements by implication about Carver were made with actual malice.

2211.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Carver, which were defamatory.

2212.   Such false and defamatory representations and statements about Carver were published to innumerable current and prospective customers and promoters.

2213.   Defendants knew their conduct described herein was wrongful.

2214.   Defendants intended to deprive Carver of a property interest or, at a minimum, evinced a conscious disregard for the fact that Carver did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2215.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Carver's rights.

2216.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Carver's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2217.   WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CARVER COUNT VII
### (Defamation Per Se against all Defendants)

2218.   Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2219.   As described herein, Defendants have used, altered and published Carver's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2220.   Defendants' unauthorized use and publication of Carver's altered images, likeness and/or identity constitutes false representations or statements by implication about Carver's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

2221.   Defendants' representations or statements by implication were knowingly false.

2222.   At all times relevant to matters raised in this Complaint, Defendants knew Carver was not affiliated with or employed by the Club, knew that Carver would not participate in the events at the Club, knew that Carver did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

2223. Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Carver's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2224. Defendants' unauthorized use and publication of such altered Carver's images were defamatory.

2225. Defendants' unauthorized use and publication of such altered Carver's images and knowingly false representations or statements by implication about Carver were made with actual malice.

2226. Defendants' representations and statements falsely impute to Carver a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model. She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2227. These false statements by implication and/or altered images constitute defamation *per se*.

2228. Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2229. Defendants knew their conduct described herein was wrongful.

2230. Defendants intended to deprive Carver of a property interest or, at a minimum, evinced a conscious disregard for the fact that Carver did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2231.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Carver or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Carver's rights.

2232.  Defendants' publication of Carver's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Carver as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2233.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Carver's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2234.  WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## CARVER COUNT VIII
### (Unjust Enrichment against all Defendants)

2235.  Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2236.  Carver has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2237.  Defendants were aware that Carver's image, likeness and/or identity were valuable.

2238.  Defendants were aware of the resulting benefit from usage of Carver's image, likeness and/or identity.

2239.  Defendants have retained profits and other benefits conferred upon them by using Carver's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2240.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Carver's image, likeness and/or identity without paying fair value for the images.

2241.  WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## **CARVER COUNT IX**
### **(Negligence against all Defendants)**

2242.  Carver hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2243.  Under the circumstances stated herein, Defendants owed a duty of care towards Carver.

2244.  Among other things, that duty included the obligation to deal with Carver and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or

alter Carver's image, likeness or identity in derogation of her rights, and to not cause harm to Carver.

2245.   Defendants breached that duty by using and altering Carver's image, likeness or identity without Carver's authorization, permission or consent.

2246.   Defendants' conduct and breach as described above directly and proximately caused injury to Carver's reputation, brand, goodwill and livelihood for which she has suffered damages.

2247.   WHEREFORE, Carver respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Katerina Van Derham's Causes of Action*

### <u>VAN DERHAM COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

2248.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2249.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Van Derham from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2250.  Defendants used and altered Van Derham's image, likeness and/or identity as described herein without authority in order to create the perception that Van Derham worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2251.  Defendants' use and alteration of Van Derham's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2252.  Defendants' unauthorized use and alteration of Van Derham's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Van Derham worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Van Derham would participate in or appear at the specific events promoted in the advertisement.

2253.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Van Derham worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2254.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Van Derham worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2255.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2256.  Defendants' unauthorized use and alteration of Van Derham's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2257.  Defendants knew or should have known that their unauthorized use and alteration of Van Derham's image, likeness and identity would cause consumer confusion as described in this Complaint.

2258.   Defendants' unauthorized use and alteration of Van Derham's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2259.   Defendants wrongful conduct as described herein was willful.

2260.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2261.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Van Derham of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Van Derham.

2262.   The method and manner in which Defendants used the images of Van Derham further evinces that Defendants were aware of or consciously disregarded the fact that Van Derham did not consent to Defendants' use of the images to advertise Defendants' business.

2263.   Defendants have caused and will continue to cause irreparable harm to Van Derham, her reputation and brand by attributing to Van Derham the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2264.   Defendants' unauthorized use of Van Derham's image, likeness and identity directly and proximately caused and continue to cause damage to Van Derham in an amount to be determined at trial.

2265.   WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## <u>VAN DERHAM COUNT II</u>
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

2266.  Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2267.  Van Derham has a statutory right of publicity under Section 540.08, Florida Statutes.

2268.  Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2269.  Despite the clear language of Section 540.08, Defendants published Van Derham's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2270.  Van Derham's image, likeness or identity are recognizable in the photos identified in **Exhibit P.**

2271.  Defendants never sought permission nor authority to use or alter Van Derham's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2272.  Van Derham never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

351

2273.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Van Derham's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2274.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Van Derham of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2275.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Van Derham of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2276.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Van Derham's rights.

2277.   Alternatively, Defendants acted negligently towards Van Derham in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2278.   Defendants have caused and will continue to cause irreparable harm to Van Derham, her reputation and brand by attributing to Van Derham the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2279.   Defendants also have damaged Van Derham as a direct and proximate result of their unauthorized use and alteration of Van Derham's image, likeness and/or identity without compensating Van Derham.

2280.   WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### VAN DERHAM COUNT III
(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)

2281.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2282.   Van Derham has a common law right of publicity.

2283.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Van Derham without express written or oral consent to such use.

2284.   Defendants published, printed, displayed and/or publicly used Van Derham's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2285.   Van Derham's image, likeness or identity are recognizable in the photos identified in **Exhibit P.**

2286.   Defendants took these actions without Van Derham's permission, consent or authority.   In fact, Defendants never sought permission nor authority to use or alter Van Derham's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2287.   Van Derham never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2288.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Van Derham's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2289.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Van Derham of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2290.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Van Derham of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2291.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Van Derham's rights.

2292.   Alternatively, Defendants acted negligently towards Van Derham in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2293.   Defendants have caused and will continue to cause irreparable harm to Van Derham, her reputation and brand by attributing to Van Derham the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2294.   Defendants also have damaged Van Derham as a direct and proximate result of their unauthorized use and alteration of Van Derham's image, likeness and/or identity without compensating Van Derham.

2295.   WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VAN DERHAM COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

2296.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2297.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2298.   Defendants are direct and active participants in market dealings with Van Derham by using the images to advertise and promote Van Derham's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2299.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2300.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Van Derham prior to promoting Defendants' business by and through the misappropriation, use and alteration of Van Derham's image, likeness and/or identity;

b.      failing to obtain authorization from Van Derham prior to the publication of Van Derham's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Van Derham for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d..      falsely representing by implication to the public that Van Derham endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Van Derham sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2301.   Defendants' conduct described herein was misleading.

2302.   Defendants knew their unauthorized use and alteration of Van Derham's image, likeness and/or identity was misleading.

2303.   Defendants' unauthorized use and alteration of Van Derham's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2304.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2305.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Van Derham of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Van Derham.

2306.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Van Derham's rights.

2307.   Alternatively, the method and manner in which Defendants used Van Derham's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Van Derham did not consent to Defendants' use to advertise Defendants' business.

2308.   Defendants have caused and will continue to cause irreparable harm to Van Derham, her reputation and brand by attributing to Van Derham the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2309.   Defendants' unauthorized use of Van Derham's image, likeness and identity directly and proximately caused and continues to cause damage to Van Derham in an amount to be determined at trial.

2310.   WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VAN DERHAM COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

2311.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2312.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2313.   Defendants knowingly appropriated, altered, used and disseminated Van Derham's image, likeness and/or identity without authorization or consent.

2314.   Defendants misappropriation of Van Derham's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Van Derham of certain rights.

2315.   Defendants' misconduct detailed in this Complaint denied Van Derham the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2316.  Defendants' appropriation and alteration of Van Derham's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2317.  Defendants' wrongful conduct as detailed herein was willful and malicious.

2318.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Van Derham of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Van Derham.

2319.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Van Derham's rights.

2320.  Alternatively, the method and manner in which Defendants used Van Derham's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Van Derham did not consent to Defendants' use in order to advertise Defendants' business.

2321.  Defendants' appropriation, use and alteration of Van Derham's image, likeness and identity without authority directly and proximately caused damage to Van Derham in an amount to be determined at trial.

2322.  WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VAN DERHAM COUNT VI
### (Defamation against all Defendants)

2323.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2324.   As described herein, Defendants have used, altered and published Van Derham's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2325.   Defendants' unauthorized use and publication of Van Derham's altered images, likeness and/or identity constitutes false representations or statements by implication about Van Derham's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2326.   Defendants' representations or statements by implication were knowingly false.

2327.   At all times relevant to matters raised in this Complaint, Defendants knew Van Derham was not affiliated with or employed by the Club, knew that Van Derham would not participate in the events at the Club, knew that Van Derham did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

2328.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Van Derham's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2329.   Defendants' unauthorized use and publication of such altered Van Derham's images were defamatory.

360

2330. Defendants' unauthorized use and publication of such altered Van Derham's images and knowingly false representations and/or statements by implication about Van Derham were made with actual malice.

2331. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Van Derham, which were defamatory.

2332. Such false and defamatory representations and statements about Van Derham were published to innumerable current and prospective customers and promoters.

2333. Defendants knew their conduct described herein was wrongful.

2334. Defendants intended to deprive Van Derham of a property interest or, at a minimum, evinced a conscious disregard for the fact that Van Derham did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2335. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Van Derham or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Van Derham's rights.

2336. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Van Derham's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2337. WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs,

prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VAN DERHAM COUNT VII
### (Defamation Per Se against all Defendants)

2338.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2339.   As described herein, Defendants have used, altered and published Van Derham's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2340.   Defendants' unauthorized use and publication of Van Derham's altered images, likeness and/or identity constitutes false representations or statements by implication about Van Derham's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

2341.   Defendants' representations or statements by implication were knowingly false.

2342.   At all times relevant to matters raised in this Complaint, Defendants knew Van Derham was not affiliated with or employed by the Club, knew that Van Derham would not participate in the events at the Club, knew that Van Derham did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

2343.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Van Derham's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2344.  Defendants' unauthorized use and publication of such altered Van Derham's images were defamatory.

2345.  Defendants' unauthorized use and publication of such altered Van Derham's images and knowingly false representations or statements by implication about Van Derham were made with actual malice.

2346.  Defendants' representations and statements falsely impute to Van Derham a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2347.  These false statements by implication and/or altered images constitute defamation *per se*.

2348.  Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2349.  Defendants knew their conduct described herein was wrongful.

2350.  Defendants intended to deprive Van Derham of a property interest or, at a minimum, evinced a conscious disregard for the fact that Van Derham did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2351.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Van Derham or, at a minimum, were so reckless or wanton

in care that their conduct constituted a conscious disregard of, or indifference to, Van Derham's rights.

2352.   Defendants' publication of Van Derham's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Van Derham as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2353.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Van Derham's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2354.   WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## VAN DERHAM COUNT VIII
### (Unjust Enrichment against all Defendants)

2355.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2356.   Van Derham has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2357.   Defendants were aware that Van Derham's image, likeness and/or identity were valuable.

2358.   Defendants were aware of the resulting benefit from usage of Van Derham's image, likeness and/or identity.

2359.   Defendants have retained profits and other benefits conferred upon them by using Van Derham's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2360.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Van Derham's image, likeness and/or identity without paying fair value for the images.

2361.   WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VAN DERHAM COUNT IX
### (Negligence against all Defendants)

2362.   Van Derham hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2363.   Under the circumstances stated herein, Defendants owed a duty of care towards Van Derham.

2364.   Among other things, that duty included the obligation to deal with Van Derham and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not

use or alter Van Derham's image, likeness or identity in derogation of her rights, and to not cause harm to Van Derham.

2365.   Defendants breached that duty by using and altering Van Derham's image, likeness or identity without Van Derham's authorization, permission or consent.

2366.   Defendants' conduct and breach as described above directly and proximately caused injury to Van Derham's reputation, brand, goodwill and livelihood for which she has suffered damages.

2367.   WHEREFORE, Van Derham respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Kim Cozzens' Causes of Action*

### <u>COZZENS COUNT I</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants**)

2368.   Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2369.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Cozzens from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2370.   Defendants used and altered Cozzens' image, likeness and/or identity as described herein without authority in order to create the perception that Cozzens worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2371.   Defendants' use and alteration of Cozzens' image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2372.   Defendants' unauthorized use and alteration of Cozzens' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Cozzens worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Cozzens would participate in or appear at the specific events promoted in the advertisement.

2373.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Cozzens worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2374.  Upon information and belief, Defendants' false advertising described above did, in, fact, deceive and/or cause consumer confusion as to whether Cozzens worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2375.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2376.  Defendants' unauthorized use and alteration of Cozzens' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2377.  Defendants knew or should have known that their unauthorized use and alteration of Cozzens' image, likeness and identity would cause consumer confusion as described in this Complaint.

2378.   Defendants' unauthorized use and alteration of Cozzens' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2379.   Defendants wrongful conduct as described herein was willful.

2380.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2381.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Cozzens of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cozzens.

2382.   The method and manner in which Defendants used the images of Cozzens further evinces that Defendants were aware of or consciously disregarded the fact that Cozzens did not consent to Defendants' use of the images to advertise Defendants' business.

2383.   Defendants have caused and will continue to cause irreparable harm to Cozzens, her reputation and brand by attributing to Cozzens the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2384.   Defendants' unauthorized use of Cozzens' image, likeness and identity directly and proximately caused and continue to cause damage to Cozzens in an amount to be determined at trial.

2385.   WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COZZENS COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

2386.   Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2387.   Cozzens has a statutory right of publicity under Section 540.08, Florida Statutes.

2388.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2389.   Despite the clear language of Section 540.08, Defendants published Cozzens' image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2390.   Cozzens' image, likeness or identity are recognizable in the photos identified in **Exhibit Q.**

2391.   Defendants never sought permission nor authority to use or alter Cozzens' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2392.   Cozzens never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2393.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Cozzens' image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2394. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Cozzens of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2395. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Cozzens of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2396. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cozzens' rights.

2397. Alternatively, Defendants acted negligently towards Cozzens in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2398. Defendants have caused and will continue to cause irreparable harm to Cozzens, her reputation and brand by attributing to Cozzens the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2399. Defendants also have damaged Cozzens as a direct and proximate result of their unauthorized use and alteration of Cozzens' image, likeness and/or identity without compensating Cozzens.

2400. WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### COZZENS COUNT III
(**Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants**)

2401. Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2402. Cozzens has a common law right of publicity.

2403. Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Cozzens without express written or oral consent to such use.

2404. Defendants published, printed, displayed and/or publicly used Cozzens' image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2405. Cozzens' image, likeness or identity are recognizable in the photos identified in **Exhibit Q.**

2406. Defendants took these actions without Cozzens' permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Cozzens' image,

likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2407.   Cozzens never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2408.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Cozzens' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2409.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Cozzens of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2410.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Cozzens of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2411.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cozzens' rights.

2412.   Alternatively, Defendants acted negligently towards Cozzens in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2413.   Defendants have caused and will continue to cause irreparable harm to Cozzens, her reputation and brand by attributing to Cozzens the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2414.   Defendants also have damaged Cozzens as a direct and proximate result of their unauthorized use and alteration of Cozzens' image, likeness and/or identity without compensating Cozzens.

2415.   WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### COZZENS COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

2416.   Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2417.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2418.   Defendants are direct and active participants in market dealings with Cozzens by using the images to advertise and promote Cozzens' claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2419.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2420.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

    a.    failing to obtain consent from Cozzens prior to promoting Defendants' business by and through the misappropriation, use and alteration of Cozzens' image, likeness and/or identity;

    b.    failing to obtain authorization from Cozzens prior to the publication of Cozzens' image, likeness and/or identity on Defendants' marketing and promotional materials;

    c.    failing to compensate Cozzens for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

    d.    falsely representing by implication to the public that Cozzens endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

    e.    falsely representing by implication that Cozzens sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2421.   Defendants' conduct described herein was misleading.

2422.   Defendants knew their unauthorized use and alteration of Cozzens' image, likeness and/or identity was misleading.

2423.   Defendants' unauthorized use and alteration of Cozzens' image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2424.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2425.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Cozzens of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cozzens.

2426.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cozzens' rights.

2427.   Alternatively, the method and manner in which Defendants used Cozzens' image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Cozzens did not consent to Defendants' use to advertise Defendants' business.

2428.   Defendants have caused and will continue to cause irreparable harm to Cozzens, her reputation and brand by attributing to Cozzens the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2429.   Defendants' unauthorized use of Cozzens' image, likeness and identity directly and proximately caused and continues to cause damage to Cozzens in an amount to be determined at trial.

2430.   WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### COZZENS COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

2431.   Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2432.  Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2433.  Defendants knowingly appropriated, altered, used and disseminated Cozzens' image, likeness and/or identity without authorization or consent.

2434.  Defendants misappropriation of Cozzens' image, likeness and/or identity was for Defendants' own use and benefit and to deprive Cozzens of certain rights.

2435.  Defendants' misconduct detailed in this Complaint denied Cozzens the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2436.  Defendants' appropriation and alteration of Cozzens' image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2437.  Defendants' wrongful conduct as detailed herein was willful and malicious.

2438.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Cozzens of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Cozzens.

2439.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Cozzens' rights.

2440.  Alternatively, the method and manner in which Defendants used Cozzens' image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded

the fact that Cozzens did not consent to Defendants' use in order to advertise Defendants' business.

2441.   Defendants' appropriation, use and alteration of Cozzens' image, likeness and identity without authority directly and proximately caused damage to Cozzens in an amount to be determined at trial.

2442.   WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COZZENS COUNT VI
### (Defamation against all Defendants)

2443.   Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2444.   As described herein, Defendants have used, altered and published Cozzens' image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2445.   Defendants' unauthorized use and publication of Cozzens' altered images, likeness and/or identity constitutes false representations or statements by implication about Cozzens' affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2446.   Defendants' representations or statements by implication were knowingly false.

378

2447.  At all times relevant to matters raised in this Complaint, Defendants knew Cozzens was not affiliated with or employed by the Club, knew that Cozzens would not participate in the events at the Club, knew that Cozzens did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

2448.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Cozzens' images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2449.  Defendants' unauthorized use and publication of such altered Cozzens' images were defamatory.

2450.  Defendants' unauthorized use and publication of such altered Cozzens images and knowingly false representations and/or statements by implication about Cozzens' were made with actual malice.

2451.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Cozzens, which were defamatory.

2452.  Such false and defamatory representations and statements about Cozzens were published to innumerable current and prospective customers and promoters.

2453.  Defendants knew their conduct described herein was wrongful.

2454.  Defendants intended to deprive Cozzens of a property interest or, at a minimum, evinced a conscious disregard for the fact that Cozzens did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2455.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Cozzens or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Cozzens' rights.

2456.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Cozzens' reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2457.  WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COZZENS COUNT VII
### (Defamation Per Se against all Defendants)

2458.  Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2459.  As described herein, Defendants have used, altered and published Cozzens' image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2460.  Defendants' unauthorized use and publication of Cozzens' altered images, likeness and/or identity constitutes false representations or statements by implication about Cozzens' affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

380

2461.   Defendants' representations or statements by implication were knowingly false.

2462.   At all times relevant to matters raised in this Complaint, Defendants knew Cozzens was not affiliated with or employed by the Club, knew that Cozzens would not participate in the events at the Club, knew that Cozzens did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

2463.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Cozzens' images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2464.   Defendants' unauthorized use and publication of such altered Cozzens' images were defamatory.

2465.   Defendants' unauthorized use and publication of such altered Cozzens' images and knowingly false representations or statements by implication about Cozzens were made with actual malice.

2466.   Defendants' representations and statements falsely impute to Cozzens a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2467.   These false statements by implication and/or altered images constitute defamation *per se*.

2468.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2469.   Defendants knew their conduct described herein was wrongful.

2470.   Defendants intended to deprive Cozzens of a property interest or, at a minimum, evinced a conscious disregard for the fact that Cozzens did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2471.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Cozzens or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Cozzens' rights.

2472.   Defendants' publication of Cozzens' image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Cozzens as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2473.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Cozzens' reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2474.   WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## COZZENS COUNT VIII
### (Unjust Enrichment against all Defendants)

2475.   Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2476.   Cozzens has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2477.   Defendants were aware that Cozzens' image, likeness and/or identity were valuable.

2478.   Defendants were aware of the resulting benefit from usage of Cozzens' image, likeness and/or identity.

2479.   Defendants have retained profits and other benefits conferred upon them by using Cozzens' image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2480.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Cozzens' image, likeness and/or identity without paying fair value for the images.

2481.   WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COZZENS COUNT IX
### (Negligence against all Defendants)

2482.   Cozzens hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2483.   Under the circumstances stated herein, Defendants owed a duty of care towards Cozzens.

2484.   Among other things, that duty included the obligation to deal with Cozzens and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Cozzens' image, likeness or identity in derogation of her rights, and to not cause harm to Cozzens.

2485.   Defendants breached that duty by using and altering Cozzens' image, likeness or identity without Cozzens' authorization, permission or consent.

2486.   Defendants' conduct and breach as described above directly and proximately caused injury to Cozzens' reputation, brand, goodwill and livelihood for which she has suffered damages.

2487.   WHEREFORE, Cozzens respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Laurie Fetter'ss (Jacobs) Causes of Action*

**FETTER COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

2488.   Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2489.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Fetter from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2490.   Defendants used and altered Fetter's image, likeness and/or identity as described herein without authority in order to create the perception that Fetter worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2491.   Defendants' use and alteration of Fetter'ss image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2492.   Defendants' unauthorized use and alteration of Fetter's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Fetter worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and

385

market Defendants' business or the Club's events and activities and/or that Fetter would participate in or appear at the specific events promoted in the advertisement.

2493. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Fetter worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2494. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Fetter worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2495. Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of

members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2496.   Defendants' unauthorized use and alteration of Fetter's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2497.   Defendants knew or should have known that their unauthorized use and alteration of Fetter's image, likeness and identity would cause consumer confusion as described in this Complaint.

2498.   Defendants' unauthorized use and alteration of Fetter's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2499.   Defendants wrongful conduct as described herein was willful.

2500.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2501.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Fetter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Fetter.

2502.   The method and manner in which Defendants used the images of Fetter further evinces that Defendants were aware of or consciously disregarded the fact that Fetter did not consent to Defendants' use of the images to advertise Defendants' business.

2503.   Defendants have caused and will continue to cause irreparable harm to Fetter, her reputation and brand by attributing to Fetter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

387

2504.   Defendants' unauthorized use of Fetter's image, likeness and identity directly and proximately caused and continue to cause damage to Fetter in an amount to be determined at trial.

2505.   WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## FETTER COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

2506.   Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2507.   Fetter has a statutory right of publicity under Section 540.08, Florida Statutes.

2508.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2509.   Despite the clear language of Section 540.08, Defendants published Fetter's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2510.   Fetter's image, likeness or identity are recognizable in the photos identified in **Exhibit R.**

388

2511.  Defendants never sought permission nor authority to use or alter Fetter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2512.  Fetter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2513.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Fetter's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2514.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Fetter of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2515.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Fetter of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2516.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Fetter's rights.

2517.  Alternatively, Defendants acted negligently towards Fetter in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and

social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2518.   Defendants have caused and will continue to cause irreparable harm to Fetter, her reputation and brand by attributing to Fetter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2519.   Defendants also have damaged Fetter as a direct and proximate result of their unauthorized use and alteration of Fetter's image, likeness and/or identity without compensating Fetter.

2520.   WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### FETTER COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

2521.   Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2522.   Fetter has a common law right of publicity.

2523.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Fetter without express written or oral consent to such use.

390

2524.  Defendants published, printed, displayed and/or publicly used Fetter's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2525.  Fetter's image, likeness or identity are recognizable in the photos identified in **Exhibit R.**

2526.  Defendants took these actions without Fetter's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Fetter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2527.  Fetter never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2528.  Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Fetter's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2529.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Fetter of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2530.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Fetter of a property interest after receipt of the Demand Letter in which

each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2531.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Fetter's rights.

2532.  Alternatively, Defendants acted negligently towards Fetter in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2533.  Defendants have caused and will continue to cause irreparable harm to Fetter, her reputation and brand by attributing to Fetter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2534.  Defendants also have damaged Fetter as a direct and proximate result of their unauthorized use and alteration of Fetter's image, likeness and/or identity without compensating Fetter.

2535.  WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**FETTER COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

2536.   Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2537.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2538.   Defendants are direct and active participants in market dealings with Fetter by using the images to advertise and promote Fetter's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2539.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2540.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.   failing to obtain consent from Fetter prior to promoting Defendants' business by and through the misappropriation, use and alteration of Fetter's image, likeness and/or identity;

b.   failing to obtain authorization from Fetter prior to the publication of Fetter's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.   failing to compensate Fetter for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.   falsely representing by implication to the public that Fetter endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Fetter sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2541.   Defendants' conduct described herein was misleading.

2542.   Defendants knew their unauthorized use and alteration of Fetter's image, likeness and/or identity was misleading.

2543.   Defendants' unauthorized use and alteration of Fetter's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2544.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2545.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Fetter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Fetter.

2546.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Fetter's rights.

2547.   Alternatively, the method and manner in which Defendants used Fetter's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Fetter did not consent to Defendants' use to advertise Defendants' business.

2548.   Defendants have caused and will continue to cause irreparable harm to Fetter, her reputation and brand by attributing to Fetter the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2549.   Defendants' unauthorized use of Fetter's image, likeness and identity directly and proximately caused and continues to cause damage to Fetter in an amount to be determined at trial.

2550.   WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### FETTER COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

2551.   Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2552.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2553.   Defendants knowingly appropriated, altered, used and disseminated Fetter's image, likeness and/or identity without authorization or consent.

2554.   Defendants misappropriation of Fetter's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Fetter of certain rights.

2555.   Defendants' misconduct detailed in this Complaint denied Fetter the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2556.   Defendants' appropriation and alteration of Fetter's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2557.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2558.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Fetter of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Fetter.

2559.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Fetter's rights.

2560.   Alternatively, the method and manner in which Defendants used Fetter's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Fetter did not consent to Defendants' use in order to advertise Defendants' business.

2561.   Defendants' appropriation, use and alteration of Fetter's image, likeness and identity without authority directly and proximately caused damage to Fetter in an amount to be determined at trial.

2562.   WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## FETTER COUNT VI
### (Defamation against all Defendants)

2563.  Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2564.  As described herein, Defendants have used, altered and published Fetter's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2565.  Defendants' unauthorized use and publication of Fetter's altered images, likeness and/or identity constitutes false representations or statements by implication about Fetter's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2566.  Defendants' representations or statements by implication were knowingly false.

2567.  At all times relevant to matters raised in this Complaint, Defendants knew Fetter was not affiliated with or employed by the Club, knew that Fetter would not participate in the events at the Club, knew that Fetter did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

2568.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Fetter's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2569.  Defendants' unauthorized use and publication of such altered Fetter's images were defamatory.

2570.  Defendants' unauthorized use and publication of such altered Fetter's images and knowingly false representations and/or statements by implication about Fetter were made with actual malice.

2571.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Fetter, which were defamatory.

2572.   Such false and defamatory representations and statements about Fetter were published to innumerable current and prospective customers and promoters.

2573.   Defendants knew their conduct described herein was wrongful.

2574.   Defendants intended to deprive Fetter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Fetter did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2575.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Fetter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Fetter's rights.

2576.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Fetter's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2577.   WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## FETTER COUNT VII
### (Defamation Per Se against all Defendants)

2578.  Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2579.  As described herein, Defendants have used, altered and published Fetter's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2580.  Defendants' unauthorized use and publication of Fetter's altered images, likeness and/or identity constitutes false representations or statements by implication about Fetter's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

2581.  Defendants' representations or statements by implication were knowingly false.

2582.  At all times relevant to matters raised in this Complaint, Defendants knew Fetter was not affiliated with or employed by the Club, knew that Fetter would not participate in the events at the Club, knew that Fetter did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

2583.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Fetter's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2584.  Defendants' unauthorized use and publication of such altered Fetter's images were defamatory.

2585.  Defendants' unauthorized use and publication of such altered Fetter's images and knowingly false representations or statements by implication about Fetter were made with actual malice.

2586.   Defendants' representations and statements falsely impute to Fetter a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2587.   These false statements by implication and/or altered images constitute defamation *per se*.

2588.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2589.   Defendants knew their conduct described herein was wrongful.

2590.   Defendants intended to deprive Fetter of a property interest or, at a minimum, evinced a conscious disregard for the fact that Fetter did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2591.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Fetter or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Fetter's rights.

2592.  Defendants' publication of Fetter's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Fetter as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2593.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Fetter's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2594.   WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## FETTER COUNT VIII
### (Unjust Enrichment against all Defendants)

2595.   Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2596.   Fetter has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2597.   Defendants were aware that Fetter's image, likeness and/or identity were valuable.

2598.   Defendants were aware of the resulting benefit from usage of Fetter's image, likeness and/or identity.

2599.   Defendants have retained profits and other benefits conferred upon them by using Fetter's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2600.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Fetter's image, likeness and/or identity without paying fair value for the images.

2601.  WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### FETTER COUNT IX
**(Negligence against all Defendants)**

2602.  Fetter hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2603.  Under the circumstances stated herein, Defendants owed a duty of care towards Fetter.

2604.  Among other things, that duty included the obligation to deal with Fetter and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Fetter's image, likeness or identity in derogation of her rights, and to not cause harm to Fetter.

2605.  Defendants breached that duty by using and altering Fetter's image, likeness or identity without Fetter's authorization, permission or consent.

2606.  Defendants' conduct and breach as described above directly and proximately caused injury to Fetter's reputation, brand, goodwill and livelihood for which she has suffered damages.

2607.  WHEREFORE, Fetter respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees

and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Lina Posada'ss Causes of Action*

<u>POSADA COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

2608.  Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2609.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Posada from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2610.  Defendants used and altered Posada's image, likeness and/or identity as described herein without authority in order to create the perception that Posada worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2611.  Defendants' use and alteration of Posada's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2612.  Defendants' unauthorized use and alteration of Posada's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying,

among other things, that Posada worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Posada would participate in or appear at the specific events promoted in the advertisement.

2613.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Posada worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2614.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Posada worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2615.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2616.   Defendants' unauthorized use and alteration of Posada's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2617.   Defendants knew or should have known that their unauthorized use and alteration of Posada's image, likeness and identity would cause consumer confusion as described in this Complaint.

2618.   Defendants' unauthorized use and alteration of Posada's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2619.   Defendants wrongful conduct as described herein was willful.

2620.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2621.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

2622.   The method and manner in which Defendants used the images of Posada further evinces that Defendants were aware of or consciously disregarded the fact that Posada did not consent to Defendants' use of the images to advertise Defendants' business.

2623.   Defendants have caused and will continue to cause irreparable harm to Posada, her reputation and brand by attributing to Posada the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2624.   Defendants' unauthorized use of Posada's image, likeness and identity directly and proximately caused and continue to cause damage to Posada in an amount to be determined at trial.

2625.   WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### POSADA COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

2626.   Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2627.   Posada has a statutory right of publicity under Section 540.08, Florida Statutes.

2628.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising

purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2629.   Despite the clear language of Section 540.08, Defendants published Posada's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2630.   Posada's image, likeness or identity are recognizable in the photos identified in **Exhibit S.**

2631.   Defendants never sought permission nor authority to use or alter Posada's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2632.   Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2633.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2634.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Posada of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2635.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Posada of a property interest after receipt of the Demand Letter in which

each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2636.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

2637.  Alternatively, Defendants acted negligently towards Posada in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2638.  Defendants have caused and will continue to cause irreparable harm to Posada, her reputation and brand by attributing to Posada the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2639.  Defendants also have damaged Posada as a direct and proximate result of their unauthorized use and alteration of Posada's image, likeness and/or identity without compensating Posada.

2640.  WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## POSADA COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

2641.   Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2642.   Posada has a common law right of publicity.

2643.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Posada without express written or oral consent to such use.

2644.   Defendants published, printed, displayed and/or publicly used Posada's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2645.   Posada's image, likeness or identity are recognizable in the photos identified in **Exhibit S.**

2646.   Defendants took these actions without Posada's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Posada's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2647.   Posada never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2648.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Posada's image, likeness or identity

409

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2649.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Posada of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2650.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Posada of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2651.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

2652.   Alternatively, Defendants acted negligently towards Posada in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2653.   Defendants have caused and will continue to cause irreparable harm to Posada, her reputation and brand by attributing to Posada the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2654.   Defendants also have damaged Posada as a direct and proximate result of their unauthorized use and alteration of Posada's image, likeness and/or identity without compensating Posada.

2655.   WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### POSADA COUNT IV
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

2656.   Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2657.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2658.   Defendants are direct and active participants in market dealings with Posada by using the images to advertise and promote Posada's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2659.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2660.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.       failing to obtain consent from Posada prior to promoting Defendants' business by and through the misappropriation, use and alteration of Posada's image, likeness and/or identity;

b.       failing to obtain authorization from Posada prior to the publication of Posada's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.       failing to compensate Posada for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.       falsely representing by implication to the public that Posada endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.       falsely representing by implication that Posada sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2661.   Defendants' conduct described herein was misleading.

2662.   Defendants knew their unauthorized use and alteration of Posada's image, likeness and/or identity was misleading.

2663.   Defendants' unauthorized use and alteration of Posada's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2664.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2665.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

2666.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

412

2667.  Alternatively, the method and manner in which Defendants used Posada's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Posada did not consent to Defendants' use to advertise Defendants' business.

2668.  Defendants have caused and will continue to cause irreparable harm to Posada, her reputation and brand by attributing to Posada the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2669.  Defendants' unauthorized use of Posada's image, likeness and identity directly and proximately caused and continues to cause damage to Posada in an amount to be determined at trial.

2670.  WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## POSADA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

2671.  Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2672.  Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2673.  Defendants knowingly appropriated, altered, used and disseminated Posada's image, likeness and/or identity without authorization or consent.

413

2674.   Defendants misappropriation of Posada's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Posada of certain rights.

2675.   Defendants' misconduct detailed in this Complaint denied Posada the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2676.   Defendants' appropriation and alteration of Posada's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2677.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2678.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Posada of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada.

2679.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Posada's rights.

2680.   Alternatively, the method and manner in which Defendants used Posada's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Posada did not consent to Defendants' use in order to advertise Defendants' business.

2681.   Defendants' appropriation, use and alteration of Posada's image, likeness and identity without authority directly and proximately caused damage to Posada in an amount to be determined at trial.

2682.   WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## POSADA COUNT VI
### (Defamation against all Defendants)

2683.   Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2684.   As described herein, Defendants have used, altered and published Posada's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2685.   Defendants' unauthorized use and publication of Posada's altered images, likeness and/or identity constitutes false representations or statements by implication about Posada's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2686.   Defendants' representations or statements by implication were knowingly false.

2687.   At all times relevant to matters raised in this Complaint, Defendants knew Posada was not affiliated with or employed by the Club, knew that Posada would not participate in the events at the Club, knew that Posada did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

2688.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Posada's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2689.   Defendants' unauthorized use and publication of such altered Posada's images were defamatory.

2690.   Defendants' unauthorized use and publication of such altered Posada's images and knowingly false representations and/or statements by implication about Posada were made with actual malice.

2691.   Alternatively,   Defendants   negligently   made   the   aforementioned   false representations and/or statements by implication about Posada, which were defamatory.

2692.   Such false and defamatory representations and statements about Posada were published to innumerable current and prospective customers and promoters.

2693.   Defendants knew their conduct described herein was wrongful.

2694.   Defendants intended to deprive Posada of a property interest or, at a minimum, evinced a conscious disregard for the fact that Posada did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2695.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Posada's rights.

2696.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Posada's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2697.   WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## POSADA COUNT VII
### (Defamation Per Se against all Defendants)

2698.   Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2699.   As described herein, Defendants have used, altered and published Posada's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2700.   Defendants' unauthorized use and publication of Posada's altered images, likeness and/or identity constitutes false representations or statements by implication about Posada's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

2701.   Defendants' representations or statements by implication were knowingly false.

2702.   At all times relevant to matters raised in this Complaint, Defendants knew Posada was not affiliated with or employed by the Club, knew that Posada would not participate in the events at the Club, knew that Posada did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

417

2703.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Posada's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2704.   Defendants' unauthorized use and publication of such altered Posada's images were defamatory.

2705.   Defendants' unauthorized use and publication of such altered Posada's images and knowingly false representations or statements by implication about Posada were made with actual malice.

2706.   Defendants' representations and statements falsely impute to Posada a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2707.   These false statements by implication and/or altered images constitute defamation *per se*.

2708.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2709.   Defendants knew their conduct described herein was wrongful.

2710.   Defendants intended to deprive Posada of a property interest or, at a minimum, evinced a conscious disregard for the fact that Posada did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2711.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Posada or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Posada's rights.

2712.  Defendants' publication of Posada's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Posada as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2713.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Posada's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2714.  WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

### POSADA COUNT VIII
### (Unjust Enrichment against all Defendants)

2715.  Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2716.  Posada has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2717.   Defendants were aware that Posada's image, likeness and/or identity were valuable.

2718.   Defendants were aware of the resulting benefit from usage of Posada's image, likeness and/or identity.

2719.   Defendants have retained profits and other benefits conferred upon them by using Posada's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2720.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Posada's image, likeness and/or identity without paying fair value for the images.

2721.   WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## POSADA COUNT IX
### (Negligence against all Defendants)

2722.   Posada hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2723.   Under the circumstances stated herein, Defendants owed a duty of care towards Posada.

2724.   Among other things, that duty included the obligation to deal with Posada and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or

alter Posada's image, likeness or identity in derogation of her rights, and to not cause harm to Posada.

2725.  Defendants breached that duty by using and altering Posada's image, likeness or identity without Posada's authorization, permission or consent.

2726.  Defendants' conduct and breach as described above directly and proximately caused injury to Posada's reputation, brand, goodwill and livelihood for which she has suffered damages.

2727.  WHEREFORE, Posada respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Maria Zyrianova's Causes of Action*

### ZYRIANOVA COUNT I
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants**)

2728.  Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2729.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Zyrianova from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2730. Defendants used and altered Zyrianova's image, likeness and/or identity as described herein without authority in order to create the perception that Zyrianova worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2731. Defendants' use and alteration of Zyrianova's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2732. Defendants' unauthorized use and alteration of Zyrianova's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Zyrianova worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Zyrianova would participate in or appear at the specific events promoted in the advertisement.

2733. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Zyrianova worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2734.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Zyrianova worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2735.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2736.  Defendants' unauthorized use and alteration of Zyrianova's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2737.  Defendants knew or should have known that their unauthorized use and alteration of Zyrianova's image, likeness and identity would cause consumer confusion as described in this Complaint.

2738.   Defendants' unauthorized use and alteration of Zyrianova's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2739.   Defendants wrongful conduct as described herein was willful.

2740.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2741.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Zyrianova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Zyrianova.

2742.   The method and manner in which Defendants used the images of Zyrianova further evinces that Defendants were aware of or consciously disregarded the fact that Zyrianova did not consent to Defendants' use of the images to advertise Defendants' business.

2743.   Defendants have caused and will continue to cause irreparable harm to Zyrianova, her reputation and brand by attributing to Zyrianova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2744.   Defendants' unauthorized use of Zyrianova's image, likeness and identity directly and proximately caused and continue to cause damage to Zyrianova in an amount to be determined at trial.

2745.   WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**ZYRIANOVA COUNT II**
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

2746.   Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2747.   Zyrianova has a statutory right of publicity under Section 540.08, Florida Statutes.

2748.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2749.   Despite the clear language of Section 540.08, Defendants published Zyrianova's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2750.   Zyrianova's image, likeness or identity are recognizable in the photos identified in **Exhibit T.**

2751.   Defendants never sought permission nor authority to use or alter Zyrianova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2752.   Zyrianova never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

425

2753.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Zyrianova's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2754.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Zyrianova of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2755.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Zyrianova of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2756.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Zyrianova's rights.

2757.  Alternatively, Defendants acted negligently towards Zyrianova in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2758.  Defendants have caused and will continue to cause irreparable harm to Zyrianova, her reputation and brand by attributing to Zyrianova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2759. Defendants also have damaged Zyrianova as a direct and proximate result of their unauthorized use and alteration of Zyrianova's image, likeness and/or identity without compensating Zyrianova.

2760. WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### ZYRIANOVA COUNT III
(**Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants**)

2761. Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2762. Zyrianova has a common law right of publicity.

2763. Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Zyrianova without express written or oral consent to such use.

2764. Defendants published, printed, displayed and/or publicly used Zyrianova's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2765.   Zyrianova's image, likeness or identity are recognizable in the photos identified in **Exhibit T.**

2766.   Defendants took these actions without Zyrianova's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Zyrianova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2767.   Zyrianova never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2768.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Zyrianova's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2769.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Zyrianova of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2770.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Zyrianova of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2771.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Zyrianova's rights.

428

2772.   Alternatively, Defendants acted negligently towards Zyrianova in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2773.   Defendants have caused and will continue to cause irreparable harm to Zyrianova, her reputation and brand by attributing to Zyrianova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2774.   Defendants also have damaged Zyrianova as a direct and proximate result of their unauthorized use and alteration of Zyrianova's image, likeness and/or identity without compensating Zyrianova.

2775.   WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### ZYRIANOVA COUNT IV
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

2776.   Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2777.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2778.   Defendants are direct and active participants in market dealings with Zyrianova by using the images to advertise and promote Zyrianova's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2779.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2780.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Zyrianova prior to promoting Defendants' business by and through the misappropriation, use and alteration of Zyrianova's image, likeness and/or identity;

b.      failing to obtain authorization from Zyrianova prior to the publication of Zyrianova's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Zyrianova for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Zyrianova endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Zyrianova sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2781.   Defendants' conduct described herein was misleading.

2782.   Defendants knew their unauthorized use and alteration of Zyrianova's image, likeness and/or identity was misleading.

2783.   Defendants' unauthorized use and alteration of Zyrianova's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2784.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2785.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Zyrianova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Zyrianova.

2786.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Zyrianova's rights.

2787.   Alternatively, the method and manner in which Defendants used Zyrianova's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Zyrianova did not consent to Defendants' use to advertise Defendants' business.

2788.   Defendants have caused and will continue to cause irreparable harm to Zyrianova, her reputation and brand by attributing to Zyrianova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2789.   Defendants' unauthorized use of Zyrianova's image, likeness and identity directly and proximately caused and continues to cause damage to Zyrianova in an amount to be determined at trial.

2790.   WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### ZYRIANOVA COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants**)

2791.  Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2792.  Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2793.  Defendants knowingly appropriated, altered, used and disseminated Zyrianova's image, likeness and/or identity without authorization or consent.

2794.  Defendants misappropriation of Zyrianova's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Zyrianova of certain rights.

2795.  Defendants' misconduct detailed in this Complaint denied Zyrianova the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2796.  Defendants' appropriation and alteration of Zyrianova's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2797.  Defendants' wrongful conduct as detailed herein was willful and malicious.

2798.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Zyrianova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Zyrianova.

2799.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Zyrianova's rights.

2800.  Alternatively, the method and manner in which Defendants used Zyrianova's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Zyrianova did not consent to Defendants' use in order to advertise Defendants' business.

2801.  Defendants' appropriation, use and alteration of Zyrianova's image, likeness and identity without authority directly and proximately caused damage to Zyrianova in an amount to be determined at trial.

2802.  WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### ZYRIANOVA COUNT VI
#### (Defamation against all Defendants)

2803.  Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2804.  As described herein, Defendants have used, altered and published Zyrianova's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2805.  Defendants' unauthorized use and publication of Zyrianova's altered images, likeness and/or identity constitutes false representations or statements by implication about Zyrianova's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2806.  Defendants' representations or statements by implication were knowingly false.

2807.  At all times relevant to matters raised in this Complaint, Defendants knew Zyrianova was not affiliated with or employed by the Club, knew that Zyrianova would not participate in the events at the Club, knew that Zyrianova did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

2808.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Zyrianova's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2809.  Defendants' unauthorized use and publication of such altered Zyrianova's images were defamatory.

2810.  Defendants' unauthorized use and publication of such altered Zyrianova's images and knowingly false representations and/or statements by implication about Zyrianova were made with actual malice.

2811.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Zyrianova, which were defamatory.

2812.   Such false and defamatory representations and statements about Zyrianova were published to innumerable current and prospective customers and promoters.

2813.   Defendants knew their conduct described herein was wrongful.

2814.   Defendants intended to deprive Zyrianova of a property interest or, at a minimum, evinced a conscious disregard for the fact that Zyrianova did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2815.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Zyrianova or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Zyrianova's rights.

2816.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Zyrianova's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2817.   WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### ZYRIANOVA COUNT VII
**(Defamation Per Se against all Defendants)**

2818.   Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2819.   As described herein, Defendants have used, altered and published Zyrianova's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2820.   Defendants' unauthorized use and publication of Zyrianova's altered images, likeness and/or identity constitutes false representations or statements by implication about Zyrianova's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

2821.   Defendants' representations or statements by implication were knowingly false.

2822.   At all times relevant to matters raised in this Complaint, Defendants knew Zyrianova was not affiliated with or employed by the Club, knew that Zyrianova would not participate in the events at the Club, knew that Zyrianova did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

2823.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Zyrianova's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2824.   Defendants' unauthorized use and publication of such altered Zyrianova's images were defamatory.

2825.   Defendants' unauthorized use and publication of such altered Zyrianova's images and knowingly false representations or statements by implication about Zyrianova were made with actual malice.

2826.   Defendants' representations and statements falsely impute to Zyrianova a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate

and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2827.   These false statements by implication and/or altered images constitute defamation *per se*.

2828.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2829.   Defendants knew their conduct described herein was wrongful.

2830.   Defendants intended to deprive Zyrianova of a property interest or, at a minimum, evinced a conscious disregard for the fact that Zyrianova did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2831.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Zyrianova or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Zyrianova's rights.

2832.  Defendants' publication of Zyrianova's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Zyrianova as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2833.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Zyrianova's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2834.   WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## ZYRIANOVA COUNT VIII
### (Unjust Enrichment against all Defendants)

2835.   Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2836.   Zyrianova has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2837.   Defendants were aware that Zyrianova's image, likeness and/or identity were valuable.

2838.   Defendants were aware of the resulting benefit from usage of Zyrianova's image, likeness and/or identity.

2839.   Defendants have retained profits and other benefits conferred upon them by using Zyrianova's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2840.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Zyrianova's image, likeness and/or identity without paying fair value for the images.

2841.  WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## ZYRIANOVA COUNT IX
### (Negligence against all Defendants)

2842.  Zyrianova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2843.  Under the circumstances stated herein, Defendants owed a duty of care towards Zyrianova.

2844.  Among other things, that duty included the obligation to deal with Zyrianova and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Zyrianova's image, likeness or identity in derogation of her rights, and to not cause harm to Zyrianova.

2845.  Defendants breached that duty by using and altering Zyrianova's image, likeness or identity without Zyrianova's authorization, permission or consent.

2846.  Defendants' conduct and breach as described above directly and proximately caused injury to Zyrianova's reputation, brand, goodwill and livelihood for which she has suffered damages.

2847.  WHEREFORE, Zyrianova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Marketa Kazdova's Causes of Action*

### KAZDOVA COUNT I
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

2848.  Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2849.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Kazdova from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2850.  Defendants used and altered Kazdova's image, likeness and/or identity as described herein without authority in order to create the perception that Kazdova worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2851. Defendants' use and alteration of Kazdova's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2852. Defendants' unauthorized use and alteration of Kazdova's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Kazdova worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Kazdova would participate in or appear at the specific events promoted in the advertisement.

2853. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Kazdova worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2854. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Kazdova worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities. Among other things, upon information and belief, such unauthorized use or alteration

misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2855.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2856.  Defendants' unauthorized use and alteration of Kazdova's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2857.  Defendants knew or should have known that their unauthorized use and alteration of Kazdova's image, likeness and identity would cause consumer confusion as described in this Complaint.

2858.  Defendants' unauthorized use and alteration of Kazdova's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2859.  Defendants wrongful conduct as described herein was willful.

2860.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

442

2861.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Kazdova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova.

2862.   The method and manner in which Defendants used the images of Kazdova further evinces that Defendants were aware of or consciously disregarded the fact that Kazdova did not consent to Defendants' use of the images to advertise Defendants' business.

2863.   Defendants have caused and will continue to cause irreparable harm to Kazdova, her reputation and brand by attributing to Kazdova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2864.   Defendants' unauthorized use of Kazdova's image, likeness and identity directly and proximately caused and continue to cause damage to Kazdova in an amount to be determined at trial.

2865.   WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### KAZDOVA COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against all Defendants)**

2866.   Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2867.   Kazdova has a statutory right of publicity under Section 540.08, Florida Statutes.

2868.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2869.   Despite the clear language of Section 540.08, Defendants published Kazdova's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2870.   Kazdova's image, likeness or identity are recognizable in the photos identified in **Exhibit U.**

2871.   Defendants never sought permission nor authority to use or alter Kazdova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2872.   Kazdova never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2873.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Kazdova's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2874.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Kazdova of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2875.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Kazdova of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2876.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kazdova's rights.

2877.   Alternatively, Defendants acted negligently towards Kazdova in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2878.   Defendants have caused and will continue to cause irreparable harm to Kazdova, her reputation and brand by attributing to Kazdova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2879.   Defendants also have damaged Kazdova as a direct and proximate result of their unauthorized use and alteration of Kazdova's image, likeness and/or identity without compensating Kazdova.

2880.   WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KAZDOVA COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

2881.   Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2882.   Kazdova has a common law right of publicity.

2883.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Kazdova without express written or oral consent to such use.

2884.   Defendants published, printed, displayed and/or publicly used Kazdova's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

2885.   Kazdova's image, likeness or identity are recognizable in the photos identified in **Exhibit U.**

2886.   Defendants took these actions without Kazdova's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Kazdova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2887.   Kazdova never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2888.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Kazdova's image, likeness or identity

446

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2889.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Kazdova of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2890.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Kazdova of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2891.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kazdova's rights.

2892.  Alternatively, Defendants acted negligently towards Kazdova in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2893.  Defendants have caused and will continue to cause irreparable harm to Kazdova, her reputation and brand by attributing to Kazdova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2894.  Defendants also have damaged Kazdova as a direct and proximate result of their unauthorized use and alteration of Kazdova's image, likeness and/or identity without compensating Kazdova.

2895.   WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### KAZDOVA COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

2896.   Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2897.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2898.   Defendants are direct and active participants in market dealings with Kazdova by using the images to advertise and promote Kazdova's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

2899.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

2900.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Kazdova prior to promoting Defendants' business by and through the misappropriation, use and alteration of Kazdova's image, likeness and/or identity;

b.      failing to obtain authorization from Kazdova prior to the publication of Kazdova's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Kazdova for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Kazdova endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Kazdova sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

2901.   Defendants' conduct described herein was misleading.

2902.   Defendants knew their unauthorized use and alteration of Kazdova's image, likeness and/or identity was misleading.

2903.   Defendants' unauthorized use and alteration of Kazdova's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

2904.   Defendants' wrongful conduct as detailed herein was willful and malicious.

2905.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Kazdova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova.

2906.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kazdova's rights.

2907. Alternatively, the method and manner in which Defendants used Kazdova's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Kazdova did not consent to Defendants' use to advertise Defendants' business.

2908. Defendants have caused and will continue to cause irreparable harm to Kazdova, her reputation and brand by attributing to Kazdova the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2909. Defendants' unauthorized use of Kazdova's image, likeness and identity directly and proximately caused and continues to cause damage to Kazdova in an amount to be determined at trial.

2910. WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### KAZDOVA COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

2911. Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2912. Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

2913. Defendants knowingly appropriated, altered, used and disseminated Kazdova's image, likeness and/or identity without authorization or consent.

2914. Defendants misappropriation of Kazdova's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Kazdova of certain rights.

2915. Defendants' misconduct detailed in this Complaint denied Kazdova the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

2916. Defendants' appropriation and alteration of Kazdova's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

2917. Defendants' wrongful conduct as detailed herein was willful and malicious.

2918. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Kazdova of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova.

2919. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kazdova's rights.

2920. Alternatively, the method and manner in which Defendants used Kazdova's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Kazdova did not consent to Defendants' use in order to advertise Defendants' business.

2921. Defendants' appropriation, use and alteration of Kazdova's image, likeness and identity without authority directly and proximately caused damage to Kazdova in an amount to be determined at trial.

2922.   WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### KAZDOVA COUNT VI
### (Defamation against all Defendants)

2923.   Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2924.   As described herein, Defendants have used, altered and published Kazdova's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2925.   Defendants' unauthorized use and publication of Kazdova's altered images, likeness and/or identity constitutes false representations or statements by implication about Kazdova's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

2926.   Defendants' representations or statements by implication were knowingly false.

2927.   At all times relevant to matters raised in this Complaint, Defendants knew Kazdova was not affiliated with or employed by the Club, knew that Kazdova would not participate in the events at the Club, knew that Kazdova did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

452

2928.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Kazdova's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2929.   Defendants' unauthorized use and publication of such altered Kazdova's images were defamatory.

2930.   Defendants' unauthorized use and publication of such altered Kazdova's images and knowingly false representations and/or statements by implication about Kazdova were made with actual malice.

2931.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Kazdova, which were defamatory.

2932.   Such false and defamatory representations and statements about Kazdova were published to innumerable current and prospective customers and promoters.

2933.   Defendants knew their conduct described herein was wrongful.

2934.   Defendants intended to deprive Kazdova of a property interest or, at a minimum, evinced a conscious disregard for the fact that Kazdova did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

2935.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Kazdova's rights.

2936.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Kazdova's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2937.   WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### KAZDOVA COUNT VII
#### (Defamation Per Se against all Defendants)

2938.   Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2939.   As described herein, Defendants have used, altered and published Kazdova's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

2940.   Defendants' unauthorized use and publication of Kazdova's altered images, likeness and/or identity constitutes false representations or statements by implication about Kazdova's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

2941.   Defendants' representations or statements by implication were knowingly false.

2942.   At all times relevant to matters raised in this Complaint, Defendants knew Kazdova was not affiliated with or employed by the Club, knew that Kazdova would not participate in the events at the Club, knew that Kazdova did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

2943.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Kazdova's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

2944.   Defendants' unauthorized use and publication of such altered Kazdova's images were defamatory.

2945.   Defendants' unauthorized use and publication of such altered Kazdova's images and knowingly false representations or statements by implication about Kazdova were made with actual malice.

2946.   Defendants' representations and statements falsely impute to Kazdova a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

2947.   These false statements by implication and/or altered images constitute defamation *per se*.

2948.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

2949.   Defendants knew their conduct described herein was wrongful.

2950.   Defendants intended to deprive Kazdova of a property interest or, at a minimum, evinced a conscious disregard for the fact that Kazdova did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

2951.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Kazdova or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Kazdova's rights.

2952.  Defendants' publication of Kazdova's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Kazdova as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

2953.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Kazdova's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

2954.  WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## KAZDOVA COUNT VIII
### (Unjust Enrichment against all Defendants)

2955.  Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2956.  Kazdova has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

2957.  Defendants were aware that Kazdova's image, likeness and/or identity were valuable.

2958.  Defendants were aware of the resulting benefit from usage of Kazdova's image, likeness and/or identity.

2959.  Defendants have retained profits and other benefits conferred upon them by using Kazdova's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

2960.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Kazdova's image, likeness and/or identity without paying fair value for the images.

2961.  WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KAZDOVA COUNT IX
### (Negligence against all Defendants)

2962.  Kazdova hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2963.  Under the circumstances stated herein, Defendants owed a duty of care towards Kazdova.

2964.  Among other things, that duty included the obligation to deal with Kazdova and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use

or alter Kazdova's image, likeness or identity in derogation of her rights, and to not cause harm to Kazdova.

2965.   Defendants breached that duty by using and altering Kazdova's image, likeness or identity without Kazdova's authorization, permission or consent.

2966.   Defendants' conduct and breach as described above directly and proximately caused injury to Kazdova's reputation, brand, goodwill and livelihood for which she has suffered damages.

2967.   WHEREFORE, Kazdova respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Masha Lund's Causes of Action*

### <u>LUND COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

2968.   Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2969.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Lund from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

2970.   Defendants used and altered Lund's image, likeness and/or identity as described herein without authority in order to create the perception that Lund worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

2971.   Defendants' use and alteration of Lund's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

2972.   Defendants' unauthorized use and alteration of Lund's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Lund worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Lund would participate in or appear at the specific events promoted in the advertisement.

2973.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Lund worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

2974.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Lund worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

2975.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

2976.  Defendants' unauthorized use and alteration of Lund's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

2977.  Defendants knew or should have known that their unauthorized use and alteration of Lund's image, likeness and identity would cause consumer confusion as described in this Complaint.

2978.  Defendants' unauthorized use and alteration of Lund's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

2979.  Defendants wrongful conduct as described herein was willful.

2980.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

2981.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lund of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lund.

2982.  The method and manner in which Defendants used the images of Lund further evinces that Defendants were aware of or consciously disregarded the fact that Lund did not consent to Defendants' use of the images to advertise Defendants' business.

2983.  Defendants have caused and will continue to cause irreparable harm to Lund, her reputation and brand by attributing to Lund the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2984.  Defendants' unauthorized use of Lund's image, likeness and identity directly and proximately caused and continue to cause damage to Lund in an amount to be determined at trial.

2985.  WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**LUND COUNT II**
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

2986.   Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

2987.   Lund has a statutory right of publicity under Section 540.08, Florida Statutes.

2988.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

2989.   Despite the clear language of Section 540.08, Defendants published Lund's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

2990.   Lund's image, likeness or identity are recognizable in the photos identified in **Exhibit V.**

2991.   Defendants never sought permission nor authority to use or alter Lund's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2992.   Lund never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

2993.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Lund's image, likeness or identity without

her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

2994.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Lund of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

2995.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Lund of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

2996.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lund's rights.

2997.  Alternatively, Defendants acted negligently towards Lund in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

2998.  Defendants have caused and will continue to cause irreparable harm to Lund, her reputation and brand by attributing to Lund the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

2999.  Defendants also have damaged Lund as a direct and proximate result of their unauthorized use and alteration of Lund's image, likeness and/or identity without compensating Lund.

3000.   WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### LUND COUNT III
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

3001.   Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3002.   Lund has a common law right of publicity.

3003.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Lund without express written or oral consent to such use.

3004.   Defendants published, printed, displayed and/or publicly used Lund's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3005.   Lund's image, likeness or identity are recognizable in the photos identified in **Exhibit V.**

3006.   Defendants took these actions without Lund's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Lund's image, likeness or

identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3007.   Lund never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3008.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Lund's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3009.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Lund of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3010.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Lund of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3011.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lund's rights.

3012.   Alternatively, Defendants acted negligently towards Lund in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3013.   Defendants have caused and will continue to cause irreparable harm to Lund, her reputation and brand by attributing to Lund the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3014.   Defendants also have damaged Lund as a direct and proximate result of their unauthorized use and alteration of Lund's image, likeness and/or identity without compensating Lund.

3015.   WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## LUND COUNT IV
### (Violation of Fla. Stat. § 501.204: Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

3016.   Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3017.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3018.   Defendants are direct and active participants in market dealings with Lund by using the images to advertise and promote Lund's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

466

3019.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3020.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.       failing to obtain consent from Lund prior to promoting Defendants' business by and through the misappropriation, use and alteration of Lund's image, likeness and/or identity;

b.       failing to obtain authorization from Lund prior to the publication of Lund's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.       failing to compensate Lund for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.       falsely representing by implication to the public that Lund endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.       falsely representing by implication that Lund sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3021.   Defendants' conduct described herein was misleading.

3022.   Defendants knew their unauthorized use and alteration of Lund's image, likeness and/or identity was misleading.

3023.   Defendants' unauthorized use and alteration of Lund's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3024.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3025.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lund of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lund.

3026.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lund's rights.

3027.   Alternatively, the method and manner in which Defendants used Lund's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Lund did not consent to Defendants' use to advertise Defendants' business.

3028.   Defendants have caused and will continue to cause irreparable harm to Lund, her reputation and brand by attributing to Lund the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3029.   Defendants' unauthorized use of Lund's image, likeness and identity directly and proximately caused and continues to cause damage to Lund in an amount to be determined at trial.

3030.   WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## LUND COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

3031.   Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3032.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3033.   Defendants knowingly appropriated, altered, used and disseminated Lund's image, likeness and/or identity without authorization or consent.

3034.   Defendants misappropriation of Lund's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Lund of certain rights.

3035.   Defendants' misconduct detailed in this Complaint denied Lund the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3036.   Defendants' appropriation and alteration of Lund's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3037.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3038.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Lund of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Lund.

3039.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Lund's rights.

3040.  Alternatively, the method and manner in which Defendants used Lund's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Lund did not consent to Defendants' use in order to advertise Defendants' business.

3041.  Defendants' appropriation, use and alteration of Lund's image, likeness and identity without authority directly and proximately caused damage to Lund in an amount to be determined at trial.

3042.  WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### LUND COUNT VI
### (Defamation against all Defendants)

3043.  Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3044.  As described herein, Defendants have used, altered and published Lund's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3045.  Defendants' unauthorized use and publication of Lund's altered images, likeness and/or identity constitutes false representations or statements by implication about Lund's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3046.   Defendants' representations or statements by implication were knowingly false.

3047.   At all times relevant to matters raised in this Complaint, Defendants knew Lund was not affiliated with or employed by the Club, knew that Lund would not participate in the events at the Club, knew that Lund did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3048.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Lund's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3049.   Defendants' unauthorized use and publication of such altered Lund's images were defamatory.

3050.   Defendants' unauthorized use and publication of such altered Lund's images and knowingly false representations and/or statements by implication about Lund were made with actual malice.

3051.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Lund, which were defamatory.

3052.   Such false and defamatory representations and statements about Lund were published to innumerable current and prospective customers and promoters.

3053.   Defendants knew their conduct described herein was wrongful.

3054.   Defendants intended to deprive Lund of a property interest or, at a minimum, evinced a conscious disregard for the fact that Lund did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3055.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Lund or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Lund's rights.

3056.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Lund's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3057.  WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## LUND COUNT VII
### (Defamation Per Se against all Defendants)

3058.  Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3059.  As described herein, Defendants have used, altered and published Lund's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3060.  Defendants' unauthorized use and publication of Lund's altered images, likeness and/or identity constitutes false representations or statements by implication about Lund's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3061.   Defendants' representations or statements by implication were knowingly false.

3062.   At all times relevant to matters raised in this Complaint, Defendants knew Lund was not affiliated with or employed by the Club, knew that Lund would not participate in the events at the Club, knew that Lund did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3063.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Lund's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3064.   Defendants' unauthorized use and publication of such altered Lund's images were defamatory.

3065.   Defendants' unauthorized use and publication of such altered Lund's images and knowingly false representations or statements by implication about Lund were made with actual malice.

3066.   Defendants' representations and statements falsely impute to Lund a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3067.   These false statements by implication and/or altered images constitute defamation *per se*.

3068.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

473

3069.   Defendants knew their conduct described herein was wrongful.

3070.   Defendants intended to deprive Lund of a property interest or, at a minimum, evinced a conscious disregard for the fact that Lund did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3071.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Lund or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Lund's rights.

3072.  Defendants' publication of Lund's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Lund as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3073.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Lund's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3074.  WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

**LUND COUNT VIII**
**(Unjust Enrichment against all Defendants)**

3075.  Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3076.  Lund has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3077.  Defendants were aware that Lund's image, likeness and/or identity were valuable.

3078.  Defendants were aware of the resulting benefit from usage of Lund's image, likeness and/or identity.

3079.  Defendants have retained profits and other benefits conferred upon them by using Lund's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3080.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Lund's image, likeness and/or identity without paying fair value for the images.

3081.  WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**LUND COUNT IX**
**(Negligence against all Defendants)**

3082.  Lund hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3083.   Under the circumstances stated herein, Defendants owed a duty of care towards Lund.

3084.   Among other things, that duty included the obligation to deal with Lund and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Lund's image, likeness or identity in derogation of her rights, and to not cause harm to Lund.

3085.   Defendants breached that duty by using and altering Lund's image, likeness or identity without Lund's authorization, permission or consent.

3086.   Defendants' conduct and breach as described above directly and proximately caused injury to Lund's reputation, brand, goodwill and livelihood for which she has suffered damages.

3087.   WHEREFORE, Lund respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Maysa Quy's Causes of Action*

### <u>QUY COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

3088.   Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3089.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Quy from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

3090.  Defendants used and altered Quy's image, likeness and/or identity as described herein without authority in order to create the perception that Quy worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3091.  Defendants' use and alteration of Quy's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3092.  Defendants' unauthorized use and alteration of Quy's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Quy worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Quy would participate in or appear at the specific events promoted in the advertisement.

3093.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether

Quy worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3094.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Quy worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3095.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.   In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3096.   Defendants' unauthorized use and alteration of Quy's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3097.   Defendants knew or should have known that their unauthorized use and alteration of Quy's image, likeness and identity would cause consumer confusion as described in this Complaint.

3098.   Defendants' unauthorized use and alteration of Quy's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3099.   Defendants wrongful conduct as described herein was willful.

3100.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3101.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Quy of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy.

3102.   The method and manner in which Defendants used the images of Quy further evinces that Defendants were aware of or consciously disregarded the fact that Quy did not consent to Defendants' use of the images to advertise Defendants' business.

3103.   Defendants have caused and will continue to cause irreparable harm to Quy, her reputation and brand by attributing to Quy the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3104.   Defendants' unauthorized use of Quy's image, likeness and identity directly and proximately caused and continue to cause damage to Quy in an amount to be determined at trial.

3105.   WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## QUY COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

3106.   Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3107.   Quy has a statutory right of publicity under Section 540.08, Florida Statutes.

3108.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3109.   Despite the clear language of Section 540.08, Defendants published Quy's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3110.   Quy's image, likeness or identity are recognizable in the photos identified in **Exhibit W.**

3111.   Defendants never sought permission nor authority to use or alter Quy's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3112.   Quy never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3113.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Quy's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3114.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Quy of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3115.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Quy of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3116.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

3117.   Alternatively, Defendants acted negligently towards Quy in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3118.  Defendants have caused and will continue to cause irreparable harm to Quy, her reputation and brand by attributing to Quy the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3119.  Defendants also have damaged Quy as a direct and proximate result of their unauthorized use and alteration of Quy's image, likeness and/or identity without compensating Quy.

3120.  WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### QUY COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

3121.  Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3122.  Quy has a common law right of publicity.

3123.  Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Quy without express written or oral consent to such use.

3124.  Defendants published, printed, displayed and/or publicly used Quy's image, likeness or identity on their website and social media outlets, among others, for purposes of trade

and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3125. Quy's image, likeness or identity are recognizable in the photos identified in **Exhibit W.**

3126. Defendants took these actions without Quy's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Quy's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3127. Quy never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3128. Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Quy's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3129. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Quy of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3130. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Quy of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3131.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

3132.  Alternatively, Defendants acted negligently towards Quy in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3133.  Defendants have caused and will continue to cause irreparable harm to Quy, her reputation and brand by attributing to Quy the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3134.  Defendants also have damaged Quy as a direct and proximate result of their unauthorized use and alteration of Quy's image, likeness and/or identity without compensating Quy.

3135.  WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### QUY COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

3136.  Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3137.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3138.   Defendants are direct and active participants in market dealings with Quy by using the images to advertise and promote Quy's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3139.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3140.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Quy prior to promoting Defendants' business by and through the misappropriation, use and alteration of Quy's image, likeness and/or identity;

b.      failing to obtain authorization from Quy prior to the publication of Quy's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Quy for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Quy endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Quy sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3141.   Defendants' conduct described herein was misleading.

3142.  Defendants knew their unauthorized use and alteration of Quy's image, likeness and/or identity was misleading.

3143.  Defendants' unauthorized use and alteration of Quy's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3144.  Defendants' wrongful conduct as detailed herein was willful and malicious.

3145.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Quy of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy.

3146.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

3147.  Alternatively, the method and manner in which Defendants used Quy's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Quy did not consent to Defendants' use to advertise Defendants' business.

3148.  Defendants have caused and will continue to cause irreparable harm to Quy, her reputation and brand by attributing to Quy the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3149.  Defendants' unauthorized use of Quy's image, likeness and identity directly and proximately caused and continues to cause damage to Quy in an amount to be determined at trial.

3150. WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**QUY COUNT V**
(**Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants**)

3151.   Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3152.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3153.   Defendants knowingly appropriated, altered, used and disseminated Quy's image, likeness and/or identity without authorization or consent.

3154.   Defendants misappropriation of Quy's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Quy of certain rights.

3155.   Defendants' misconduct detailed in this Complaint denied Quy the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3156.   Defendants' appropriation and alteration of Quy's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3157.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3158.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Quy of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy.

3159.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Quy's rights.

3160.  Alternatively, the method and manner in which Defendants used Quy's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Quy did not consent to Defendants' use in order to advertise Defendants' business.

3161.  Defendants' appropriation, use and alteration of Quy's image, likeness and identity without authority directly and proximately caused damage to Quy in an amount to be determined at trial.

3162.  WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## QUY COUNT VI
### (Defamation against all Defendants)

3163.  Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3164.  As described herein, Defendants have used, altered and published Quy's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3165.  Defendants' unauthorized use and publication of Quy's altered images, likeness and/or identity constitutes false representations or statements by implication about Quy's

affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3166.  Defendants' representations or statements by implication were knowingly false.

3167.  At all times relevant to matters raised in this Complaint, Defendants knew Quy was not affiliated with or employed by the Club, knew that Quy would not participate in the events at the Club, knew that Quy did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3168.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Quy's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3169.  Defendants' unauthorized use and publication of such altered Quy's images were defamatory.

3170.  Defendants' unauthorized use and publication of such altered Quy's images and knowingly false representations and/or statements by implication about Quy were made with actual malice.

3171.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Quy, which were defamatory.

3172.  Such false and defamatory representations and statements about Quy were published to innumerable current and prospective customers and promoters.

3173.  Defendants knew their conduct described herein was wrongful.

3174.  Defendants intended to deprive Quy of a property interest or, at a minimum, evinced a conscious disregard for the fact that Quy did not consent to Defendants' use or

alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3175.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Quy's rights.

3176.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Quy's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3177.  WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### QUY COUNT VII
#### (Defamation Per Se against all Defendants)

3178.  Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3179.  As described herein, Defendants have used, altered and published Quy's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3180.  Defendants' unauthorized use and publication of Quy's altered images, likeness and/or identity constitutes false representations or statements by implication about Quy's

affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3181.   Defendants' representations or statements by implication were knowingly false.

3182.   At all times relevant to matters raised in this Complaint, Defendants knew Quy was not affiliated with or employed by the Club, knew that Quy would not participate in the events at the Club, knew that Quy did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3183.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Quy's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3184.   Defendants' unauthorized use and publication of such altered Quy's images were defamatory.

3185.   Defendants' unauthorized use and publication of such altered Quy's images and knowingly false representations or statements by implication about Quy were made with actual malice.

3186.   Defendants' representations and statements falsely impute to Quy a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3187.   These false statements by implication and/or altered images constitute defamation *per se*.

3188.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

3189.   Defendants knew their conduct described herein was wrongful.

3190.   Defendants intended to deprive Quy of a property interest or, at a minimum, evinced a conscious disregard for the fact that Quy did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3191.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Quy or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Quy's rights.

3192.   Defendants' publication of Quy's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Quy as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3193.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Quy's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3194.   WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## QUY COUNT VIII
### (Unjust Enrichment against all Defendants)

3195.   Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3196.   Quy has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3197.   Defendants were aware that Quy's image, likeness and/or identity were valuable.

3198.   Defendants were aware of the resulting benefit from usage of Quy's image, likeness and/or identity.

3199.   Defendants have retained profits and other benefits conferred upon them by using Quy's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3200.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Quy's image, likeness and/or identity without paying fair value for the images.

3201.   WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## QUY COUNT IX
### (Negligence against all Defendants)

3202.   Quy hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3203.   Under the circumstances stated herein, Defendants owed a duty of care towards Quy.

3204.   Among other things, that duty included the obligation to deal with Quy and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Quy's image, likeness or identity in derogation of her rights, and to not cause harm to Quy.

3205.   Defendants breached that duty by using and altering Quy's image, likeness or identity without Quy's authorization, permission or consent.

3206.   Defendants' conduct and breach as described above directly and proximately caused injury to Quy's reputation, brand, goodwill and livelihood for which she has suffered damages.

3207.   WHEREFORE, Quy respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Paola Canas' Causes of Action*

**CANAS COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

3208.   Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3209.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Canas from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

3210.   Defendants used and altered Canas' image, likeness and/or identity as described herein without authority in order to create the perception that Canas worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3211.   Defendants' use and alteration of Canas' image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3212.   Defendants' unauthorized use and alteration of Canas' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Canas worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and

market Defendants' business or the Club's events and activities and/or that Canas would participate in or appear at the specific events promoted in the advertisement.

3213.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Canas worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3214.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Canas worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3215.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.   In addition to membership lists consisting of

members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3216. Defendants' unauthorized use and alteration of Canas' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3217. Defendants knew or should have known that their unauthorized use and alteration of Canas' image, likeness and identity would cause consumer confusion as described in this Complaint.

3218. Defendants' unauthorized use and alteration of Canas' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3219. Defendants wrongful conduct as described herein was willful.

3220. As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3221. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

3222. The method and manner in which Defendants used the images of Canas further evinces that Defendants were aware of or consciously disregarded the fact that Canas did not consent to Defendants' use of the images to advertise Defendants' business.

3223. Defendants have caused and will continue to cause irreparable harm to Canas, her reputation and brand by attributing to Canas the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3224.   Defendants' unauthorized use of Canas' image, likeness and identity directly and proximately caused and continue to cause damage to Canas in an amount to be determined at trial.

3225.   WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### CANAS COUNT II
#### (Violation of Fla. Stat. § 540.08: Right of Publicity;
#### Unauthorized Misappropriation of Name/Likeness against all Defendants)

3226.   Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3227.   Canas has a statutory right of publicity under Section 540.08, Florida Statutes.

3228.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3229.   Despite the clear language of Section 540.08, Defendants published Canas' image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3230.   Canas' image, likeness or identity are recognizable in the photos identified in **Exhibit X.**

3231.   Defendants never sought permission nor authority to use or alter Canas' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3232.   Canas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3233.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Canas' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3234.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Canas of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3235.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Canas of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3236.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

3237.   Alternatively, Defendants acted negligently towards Canas in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and

social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3238.   Defendants have caused and will continue to cause irreparable harm to Canas, her reputation and brand by attributing to Canas the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3239.   Defendants also have damaged Canas as a direct and proximate result of their unauthorized use and alteration of Canas' image, likeness and/or identity without compensating Canas.

3240.   WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### CANAS COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

3241.   Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3242.   Canas has a common law right of publicity.

3243.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Canas without express written or oral consent to such use.

500

3244.   Defendants published, printed, displayed and/or publicly used Canas' image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3245.   Canas' image, likeness or identity are recognizable in the photos identified in **Exhibit X.**

3246.   Defendants took these actions without Canas' permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Canas' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3247.   Canas never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3248.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Canas' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3249.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Canas of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3250.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Canas of a property interest after receipt of the Demand Letter in which

each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3251.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

3252.  Alternatively, Defendants acted negligently towards Canas in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3253.  Defendants have caused and will continue to cause irreparable harm to Canas, her reputation and brand by attributing to Canas the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3254.  Defendants also have damaged Canas as a direct and proximate result of their unauthorized use and alteration of Canas' image, likeness and/or identity without compensating Canas.

3255.  WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CANAS COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

3256.   Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3257.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3258.   Defendants are direct and active participants in market dealings with Canas by using the images to advertise and promote Canas' claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3259.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3260.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Canas prior to promoting Defendants' business by and through the misappropriation, use and alteration of Canas' image, likeness and/or identity;

b.      failing to obtain authorization from Canas prior to the publication of Canas' image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Canas for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Canas endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Canas sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3261.   Defendants' conduct described herein was misleading.

3262.   Defendants knew their unauthorized use and alteration of Canas' image, likeness and/or identity was misleading.

3263.   Defendants' unauthorized use and alteration of Canas' image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3264.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3265.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

3266.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

3267.   Alternatively, the method and manner in which Defendants used Canas' image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Canas did not consent to Defendants' use to advertise Defendants' business.

3268.   Defendants have caused and will continue to cause irreparable harm to Canas, her reputation and brand by attributing to Canas the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3269.   Defendants' unauthorized use of Canas' image, likeness and identity directly and proximately caused and continues to cause damage to Canas in an amount to be determined at trial.

3270.  WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### CANAS COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11: Civil Theft against all Defendants)

3271.  Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3272.  Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3273.  Defendants knowingly appropriated, altered, used and disseminated Canas' image, likeness and/or identity without authorization or consent.

3274.  Defendants misappropriation of Canas' image, likeness and/or identity was for Defendants' own use and benefit and to deprive Canas of certain rights.

3275.  Defendants' misconduct detailed in this Complaint denied Canas the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3276.   Defendants' appropriation and alteration of Canas' image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3277.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3278.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Canas of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas.

3279.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Canas' rights.

3280.   Alternatively, the method and manner in which Defendants used Canas' image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Canas did not consent to Defendants' use in order to advertise Defendants' business.

3281.   Defendants' appropriation, use and alteration of Canas' image, likeness and identity without authority directly and proximately caused damage to Canas in an amount to be determined at trial.

3282.   WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CANAS COUNT VI
### (Defamation against all Defendants)

3283.  Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3284.  As described herein, Defendants have used, altered and published Canas' image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3285.  Defendants' unauthorized use and publication of Canas' altered images, likeness and/or identity constitutes false representations or statements by implication about Canas' affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3286.  Defendants' representations or statements by implication were knowingly false.

3287.  At all times relevant to matters raised in this Complaint, Defendants knew Canas was not affiliated with or employed by the Club, knew that Canas would not participate in the events at the Club, knew that Canas did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3288.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Canas' images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3289.  Defendants' unauthorized use and publication of such altered Canas' images were defamatory.

3290.  Defendants' unauthorized use and publication of such altered Canas' images and knowingly false representations and/or statements by implication about Canas were made with actual malice.

3291. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Canas, which were defamatory.

3292. Such false and defamatory representations and statements about Canas were published to innumerable current and prospective customers and promoters.

3293. Defendants knew their conduct described herein was wrongful.

3294. Defendants intended to deprive Canas of a property interest or, at a minimum, evinced a conscious disregard for the fact that Canas did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3295. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Canas' rights.

3296. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Canas' reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3297. WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CANAS COUNT VII
### (Defamation Per Se against all Defendants)

3298.   Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3299.   As described herein, Defendants have used, altered and published Canas' image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3300.   Defendants' unauthorized use and publication of Canas' altered images, likeness and/or identity constitutes false representations or statements by implication about Canas' affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3301.   Defendants' representations or statements by implication were knowingly false.

3302.   At all times relevant to matters raised in this Complaint, Defendants knew Canas was not affiliated with or employed by the Club, knew that Canas would not participate in the events at the Club, knew that Canas did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3303.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Canas' images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3304.   Defendants' unauthorized use and publication of such altered Canas' images were defamatory.

3305.   Defendants' unauthorized use and publication of such altered Canas' images and knowingly false representations or statements by implication about Canas were made with actual malice.

3306.   Defendants' representations and statements falsely impute to Canas a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.   She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3307.   These false statements by implication and/or altered images constitute defamation *per se*.

3308.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

3309.   Defendants knew their conduct described herein was wrongful.

3310.   Defendants intended to deprive Canas of a property interest or, at a minimum, evinced a conscious disregard for the fact that Canas did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3311.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Canas or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Canas' rights.

3312. Defendants' publication of Canas' image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Canas as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3313.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Canas' reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3314.  WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## CANAS COUNT VIII
### (Unjust Enrichment against all Defendants)

3315.  Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3316.  Canas has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3317.  Defendants were aware that Canas' image, likeness and/or identity were valuable.

3318.  Defendants were aware of the resulting benefit from usage of Canas' image, likeness and/or identity.

3319.  Defendants have retained profits and other benefits conferred upon them by using Canas' image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3320.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Canas' image, likeness and/or identity without paying fair value for the images.

511

3321.   WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## CANAS COUNT IX
### (Negligence against all Defendants)

3322.   Canas hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3323.   Under the circumstances stated herein, Defendants owed a duty of care towards Canas.

3324.   Among other things, that duty included the obligation to deal with Canas and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Canas' image, likeness or identity in derogation of her rights, and to not cause harm to Canas.

3325.   Defendants breached that duty by using and altering Canas' image, likeness or identity without Canas' authorization, permission or consent.

3326.   Defendants' conduct and breach as described above directly and proximately caused injury to Canas' reputation, brand, goodwill and livelihood for which she has suffered damages.

3327.   WHEREFORE, Canas respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees

and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Rachel Bernstein's (Koren) Causes of Action*

**BERNSTEIN COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

3328.  Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3329.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Bernstein from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

3330.  Defendants used and altered Bernstein's image, likeness and/or identity as described herein without authority in order to create the perception that Bernstein worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3331.  Defendants' use and alteration of Bernstein's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3332.  Defendants' unauthorized use and alteration of Bernstein's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Bernstein worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Bernstein would participate in or appear at the specific events promoted in the advertisement.

3333.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Bernstein worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3334.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Bernstein worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision

514

of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3335.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.   In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3336.   Defendants' unauthorized use and alteration of Bernstein's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3337.   Defendants knew or should have known that their unauthorized use and alteration of Bernstein's image, likeness and identity would cause consumer confusion as described in this Complaint.

3338.   Defendants' unauthorized use and alteration of Bernstein's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3339.   Defendants wrongful conduct as described herein was willful.

3340.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3341.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Bernstein of a property interest, and further acted with

actual or constructive knowledge of the high probability that injury or damage would result to Bernstein.

3342.   The method and manner in which Defendants used the images of Bernstein further evinces that Defendants were aware of or consciously disregarded the fact that Bernstein did not consent to Defendants' use of the images to advertise Defendants' business.

3343.   Defendants have caused and will continue to cause irreparable harm to Bernstein, her reputation and brand by attributing to Bernstein the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3344.   Defendants' unauthorized use of Bernstein's image, likeness and identity directly and proximately caused and continue to cause damage to Bernstein in an amount to be determined at trial.

3345.   WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BERNSTEIN COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

3346.   Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3347.   Bernstein has a statutory right of publicity under Section 540.08, Florida Statutes.

3348.  Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3349.  Despite the clear language of Section 540.08, Defendants published Bernstein's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3350.  Bernstein's image, likeness or identity are recognizable in the photos identified in **Exhibit Y.**

3351.  Defendants never sought permission nor authority to use or alter Bernstein's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3352.  Bernstein never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3353.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Bernstein's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3354.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Bernstein of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3355.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Bernstein of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3356.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Bernstein's rights.

3357.  Alternatively, Defendants acted negligently towards Bernstein in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3358.  Defendants have caused and will continue to cause irreparable harm to Bernstein, her reputation and brand by attributing to Bernstein the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3359.  Defendants also have damaged Bernstein as a direct and proximate result of their unauthorized use and alteration of Bernstein's image, likeness and/or identity without compensating Bernstein.

3360.  WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**BERNSTEIN COUNT III**
**(Violation of Common Law Right of Publicity;**
**Unauthorized Misappropriation of Name or Likeness against all Defendants)**

3361.   Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3362.   Bernstein has a common law right of publicity.

3363.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Bernstein without express written or oral consent to such use.

3364.   Defendants published, printed, displayed and/or publicly used Bernstein's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3365.   Bernstein's image, likeness or identity are recognizable in the photos identified in **Exhibit Y.**

3366. Defendants took these actions without Bernstein's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Bernstein's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3367.   Bernstein never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3368.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Bernstein's image, likeness or identity

519

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3369.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Bernstein of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3370.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Bernstein of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3371.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Bernstein's rights.

3372.  Alternatively, Defendants acted negligently towards Bernstein in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3373.  Defendants have caused and will continue to cause irreparable harm to Bernstein, her reputation and brand by attributing to Bernstein the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3374.  Defendants also have damaged Bernstein as a direct and proximate result of their unauthorized use and alteration of Bernstein's image, likeness and/or identity without compensating Bernstein.

3375.   WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**BERNSTEIN COUNT IV**
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

3376.   Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3377.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3378.   Defendants are direct and active participants in market dealings with Bernstein by using the images to advertise and promote Bernstein's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3379.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3380.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Bernstein prior to promoting Defendants' business by and through the misappropriation, use and alteration of Bernstein's image, likeness and/or identity;

b.      failing to obtain authorization from Bernstein prior to the publication of Bernstein's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Bernstein for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Bernstein endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Bernstein sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3381.   Defendants' conduct described herein was misleading.

3382.   Defendants knew their unauthorized use and alteration of Bernstein's image, likeness and/or identity was misleading.

3383.   Defendants' unauthorized use and alteration of Bernstein's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3384.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3385.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Bernstein of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Bernstein.

3386.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Bernstein's rights.

3387.  Alternatively, the method and manner in which Defendants used Bernstein's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Bernstein did not consent to Defendants' use to advertise Defendants' business.

3388.  Defendants have caused and will continue to cause irreparable harm to Bernstein, her reputation and brand by attributing to Bernstein the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3389.  Defendants' unauthorized use of Bernstein's image, likeness and identity directly and proximately caused and continues to cause damage to Bernstein in an amount to be determined at trial.

3390.  WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## **BERNSTEIN COUNT V**
### (**Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
### **Civil Theft against all Defendants**)

3391.  Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3392.  Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3393.   Defendants knowingly appropriated, altered, used and disseminated Bernstein's image, likeness and/or identity without authorization or consent.

3394.   Defendants misappropriation of Bernstein's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Bernstein of certain rights.

3395.   Defendants' misconduct detailed in this Complaint denied Bernstein the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3396.   Defendants' appropriation and alteration of Bernstein's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3397.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3398.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Bernstein of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Bernstein.

3399.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Bernstein's rights.

3400.   Alternatively, the method and manner in which Defendants used Bernstein's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Bernstein did not consent to Defendants' use in order to advertise Defendants' business.

3401. Defendants' appropriation, use and alteration of Bernstein's image, likeness and identity without authority directly and proximately caused damage to Bernstein in an amount to be determined at trial.

3402. WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BERNSTEIN COUNT VI
### (Defamation against all Defendants)

3403. Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3404. As described herein, Defendants have used, altered and published Bernstein's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3405. Defendants' unauthorized use and publication of Bernstein's altered images, likeness and/or identity constitutes false representations or statements by implication about Bernstein's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3406. Defendants' representations or statements by implication were knowingly false.

3407. At all times relevant to matters raised in this Complaint, Defendants knew Bernstein was not affiliated with or employed by the Club, knew that Bernstein would not

participate in the events at the Club, knew that Bernstein did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3408.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Bernstein's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3409.   Defendants' unauthorized use and publication of such altered Bernstein's images were defamatory.

3410.   Defendants' unauthorized use and publication of such altered Bernstein's images and knowingly false representations and/or statements by implication about Bernstein were made with actual malice.

3411.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Bernstein, which were defamatory.

3412.   Such false and defamatory representations and statements about Bernstein were published to innumerable current and prospective customers and promoters.

3413.   Defendants knew their conduct described herein was wrongful.

3414.   Defendants intended to deprive Bernstein of a property interest or, at a minimum, evinced a conscious disregard for the fact that Bernstein did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3415.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Bernstein or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Bernstein's rights.

3416.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Bernstein's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3417.  WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BERNSTEIN COUNT VII
### (Defamation Per Se against all Defendants)

3418.  Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3419.  As described herein, Defendants have used, altered and published Bernstein's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3420.  Defendants' unauthorized use and publication of Bernstein's altered images, likeness and/or identity constitutes false representations or statements by implication about Bernstein's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3421.  Defendants' representations or statements by implication were knowingly false.

3422.  At all times relevant to matters raised in this Complaint, Defendants knew Bernstein was not affiliated with or employed by the Club, knew that Bernstein would not

participate in the events at the Club, knew that Bernstein did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3423.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Bernstein's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3424.   Defendants' unauthorized use and publication of such altered Bernstein's images were defamatory.

3425.   Defendants' unauthorized use and publication of such altered Bernstein's images and knowingly false representations or statements by implication about Bernstein were made with actual malice.

3426.   Defendants' representations and statements falsely impute to Bernstein a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3427.   These false statements by implication and/or altered images constitute defamation *per se*.

3428.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

3429.   Defendants knew their conduct described herein was wrongful.

3430.   Defendants intended to deprive Bernstein of a property interest or, at a minimum, evinced a conscious disregard for the fact that Bernstein did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3431.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Bernstein or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Bernstein's rights.

3432.   Defendants' publication of Bernstein's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Bernstein as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3433.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Bernstein's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3434.   WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## BERNSTEIN COUNT VIII
### (Unjust Enrichment against all Defendants)

3435.   Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3436.   Bernstein has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3437.   Defendants were aware that Bernstein's image, likeness and/or identity were valuable.

3438.   Defendants were aware of the resulting benefit from usage of Bernstein's image, likeness and/or identity.

3439.   Defendants have retained profits and other benefits conferred upon them by using Bernstein's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3440.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Bernstein's image, likeness and/or identity without paying fair value for the images.

3441.   WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## BERNSTEIN COUNT IX
### (Negligence against all Defendants)

3442.   Bernstein hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3443.   Under the circumstances stated herein, Defendants owed a duty of care towards Bernstein.

3444.   Among other things, that duty included the obligation to deal with Bernstein and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Bernstein's image, likeness or identity in derogation of her rights, and to not cause harm to Bernstein.

3445.   Defendants breached that duty by using and altering Bernstein's image, likeness or identity without Bernstein's authorization, permission or consent.

3446.   Defendants' conduct and breach as described above directly and proximately caused injury to Bernstein's reputation, brand, goodwill and livelihood for which she has suffered damages.

3447.   WHEREFORE, Bernstein respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Sanda Valencia's Causes of Action*

**VALENCIA COUNT I**
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

3448.   Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3449.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Valencia from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

3450.   Defendants used and altered Valencia's image, likeness and/or identity as described herein without authority in order to create the perception that Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3451.   Defendants' use and alteration of Valencia's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3452.   Defendants' unauthorized use and alteration of Valencia's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized

532

Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Valencia would participate in or appear at the specific events promoted in the advertisement.

3453.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3454.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Valencia worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.   Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3455.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons

from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3456.  Defendants' unauthorized use and alteration of Valencia's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3457.  Defendants knew or should have known that their unauthorized use and alteration of Valencia's image, likeness and identity would cause consumer confusion as described in this Complaint.

3458.  Defendants' unauthorized use and alteration of Valencia's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3459.  Defendants wrongful conduct as described herein was willful.

3460.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3461.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Valencia of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Valencia.

3462.  The method and manner in which Defendants used the images of Valencia further evinces that Defendants were aware of or consciously disregarded the fact that Valencia did not consent to Defendants' use of the images to advertise Defendants' business.

3463.   Defendants have caused and will continue to cause irreparable harm to Valencia, her reputation and brand by attributing to Valencia the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3464.   Defendants' unauthorized use of Valencia's image, likeness and identity directly and proximately caused and continue to cause damage to Valencia in an amount to be determined at trial.

3465.   WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### VALENCIA COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

3466.   Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3467.   Valencia has a statutory right of publicity under Section 540.08, Florida Statutes.

3468.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3469.   Despite the clear language of Section 540.08, Defendants published Valencia's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3470.   Valencia's image, likeness or identity are recognizable in the photos identified in **Exhibit Z.**

3471.   Defendants never sought permission nor authority to use or alter Valencia's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3472.   Valencia never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3473.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Valencia's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3474.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Valencia of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3475.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Valencia of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3476.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Valencia's rights.

3477.   Alternatively, Defendants acted negligently towards Valencia in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3478.   Defendants have caused and will continue to cause irreparable harm to Valencia, her reputation and brand by attributing to Valencia the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3479.   Defendants also have damaged Valencia as a direct and proximate result of their unauthorized use and alteration of Valencia's image, likeness and/or identity without compensating Valencia.

3480.   WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VALENCIA COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

3481.   Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3482.   Valencia has a common law right of publicity.

3483.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Valencia without express written or oral consent to such use.

3484.   Defendants published, printed, displayed and/or publicly used Valencia's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3485.   Valencia's image, likeness or identity are recognizable in the photos identified in **Exhibit Z.**

3486.   Defendants took these actions without Valencia's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Valencia's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3487.   Valencia never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3488.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Valencia's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3489.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Valencia of a property interest

during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3490. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Valencia of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3491. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Valencia's rights.

3492. Alternatively, Defendants acted negligently towards Valencia in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3493. Defendants have caused and will continue to cause irreparable harm to Valencia, her reputation and brand by attributing to Valencia the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3494. Defendants also have damaged Valencia as a direct and proximate result of their unauthorized use and alteration of Valencia's image, likeness and/or identity without compensating Valencia.

3495. WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### VALENCIA COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

3496.   Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3497.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3498.   Defendants are direct and active participants in market dealings with Valencia by using the images to advertise and promote Valencia's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3499.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3500.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Valencia prior to promoting Defendants' business by and through the misappropriation, use and alteration of Valencia's image, likeness and/or identity;

b.      failing to obtain authorization from Valencia prior to the publication of Valencia's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Valencia for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

540

d.    falsely representing by implication to the public that Valencia endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.    falsely representing by implication that Valencia sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3501.   Defendants' conduct described herein was misleading.

3502.   Defendants knew their unauthorized use and alteration of Valencia's image, likeness and/or identity was misleading.

3503.   Defendants' unauthorized use and alteration of Valencia's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3504.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3505.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Valencia of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Valencia.

3506.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Valencia's rights.

3507.   Alternatively, the method and manner in which Defendants used Valencia's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Valencia did not consent to Defendants' use to advertise Defendants' business.

3508.   Defendants have caused and will continue to cause irreparable harm to Valencia, her reputation and brand by attributing to Valencia the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3509.   Defendants' unauthorized use of Valencia's image, likeness and identity directly and proximately caused and continues to cause damage to Valencia in an amount to be determined at trial.

3510.   WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

<u>**VALENCIA COUNT V**</u>
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

3511.   Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3512.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3513.   Defendants knowingly appropriated, altered, used and disseminated Valencia's image, likeness and/or identity without authorization or consent.

3514.   Defendants misappropriation of Valencia's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Valencia of certain rights.

3515.   Defendants' misconduct detailed in this Complaint denied Valencia the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3516.   Defendants' appropriation and alteration of Valencia's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3517.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3518.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Valencia of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Valencia.

3519.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Valencia's rights.

3520.   Alternatively, the method and manner in which Defendants used Valencia's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Valencia did not consent to Defendants' use in order to advertise Defendants' business.

3521.   Defendants' appropriation, use and alteration of Valencia's image, likeness and identity without authority directly and proximately caused damage to Valencia in an amount to be determined at trial.

3522.   WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VALENCIA COUNT VI
### (Defamation against all Defendants)

3523.  Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3524.  As described herein, Defendants have used, altered and published Valencia's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3525.  Defendants' unauthorized use and publication of Valencia's altered images, likeness and/or identity constitutes false representations or statements by implication about Valencia's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3526.  Defendants' representations or statements by implication were knowingly false.

3527.  At all times relevant to matters raised in this Complaint, Defendants knew Valencia was not affiliated with or employed by the Club, knew that Valencia would not participate in the events at the Club, knew that Valencia did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3528.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Valencia's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3529.  Defendants' unauthorized use and publication of such altered Valencia's images were defamatory.

3530.   Defendants' unauthorized use and publication of such altered Valencia's images and knowingly false representations and/or statements by implication about Valencia were made with actual malice.

3531.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Valencia, which were defamatory.

3532.   Such false and defamatory representations and statements about Valencia were published to innumerable current and prospective customers and promoters.

3533.   Defendants knew their conduct described herein was wrongful.

3534.   Defendants intended to deprive Valencia of a property interest or, at a minimum, evinced a conscious disregard for the fact that Valencia did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3535.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Valencia or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Valencia's rights.

3536.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Valencia's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3537.   WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VALENCIA COUNT VII
### (Defamation Per Se against all Defendants)

3538.   Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3539.   As described herein, Defendants have used, altered and published Valencia's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3540.   Defendants' unauthorized use and publication of Valencia's altered images, likeness and/or identity constitutes false representations or statements by implication about Valencia's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3541.   Defendants' representations or statements by implication were knowingly false.

3542.   At all times relevant to matters raised in this Complaint, Defendants knew Valencia was not affiliated with or employed by the Club, knew that Valencia would not participate in the events at the Club, knew that Valencia did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3543.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Valencia's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3544.   Defendants' unauthorized use and publication of such altered Valencia's images were defamatory.

3545.   Defendants' unauthorized use and publication of such altered Valencia's images and knowingly false representations or statements by implication about Valencia were made with actual malice.

3546.   Defendants' representations and statements falsely impute to Valencia a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3547.   These false statements by implication and/or altered images constitute defamation *per se*.

3548.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

3549.   Defendants knew their conduct described herein was wrongful.

3550.   Defendants intended to deprive Valencia of a property interest or, at a minimum, evinced a conscious disregard for the fact that Valencia did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3551.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Valencia or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Valencia's rights.

3552.  Defendants' publication of Valencia's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays

Valencia as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3553.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Valencia's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3554.  WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

### VALENCIA COUNT VIII
(**Unjust Enrichment against all Defendants**)

3555.  Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3556.  Valencia has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3557.  Defendants were aware that Valencia's image, likeness and/or identity were valuable.

3558.  Defendants were aware of the resulting benefit from usage of Valencia's image, likeness and/or identity.

3559.   Defendants have retained profits and other benefits conferred upon them by using Valencia's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3560.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Valencia's image, likeness and/or identity without paying fair value for the images.

3561.   WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## VALENCIA COUNT IX
### (Negligence against all Defendants)

3562.   Valencia hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3563.   Under the circumstances stated herein, Defendants owed a duty of care towards Valencia.

3564.   Among other things, that duty included the obligation to deal with Valencia and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Valencia's image, likeness or identity in derogation of her rights, and to not cause harm to Valencia.

3565.   Defendants breached that duty by using and altering Valencia's image, likeness or identity without Valencia's authorization, permission or consent.

3566. Defendants' conduct and breach as described above directly and proximately caused injury to Valencia's reputation, brand, goodwill and livelihood for which she has suffered damages.

3567. WHEREFORE, Valencia respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Sara Underwood's Causes of Action*

### <u>UNDERWOOD COUNT I</u>
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants)**

3568. Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3569. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Underwood from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ." 15 U.S.C. §1125(a)(1)(B).

3570. Defendants used and altered Underwood's image, likeness and/or identity as described herein without authority in order to create the perception that Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in

order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3571.   Defendants' use and alteration of Underwood's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3572.   Defendants' unauthorized use and alteration of Underwood's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Underwood would participate in or appear at the specific events promoted in the advertisement.

3573.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3574.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Underwood worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her

images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3575.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3576.   Defendants' unauthorized use and alteration of Underwood's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3577.   Defendants knew or should have known that their unauthorized use and alteration of Underwood's image, likeness and identity would cause consumer confusion as described in this Complaint.

3578.   Defendants' unauthorized use and alteration of Underwood's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3579.   Defendants wrongful conduct as described herein was willful.

3580. As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3581. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

3582. The method and manner in which Defendants used the images of Underwood further evinces that Defendants were aware of or consciously disregarded the fact that Underwood did not consent to Defendants' use of the images to advertise Defendants' business.

3583. Defendants have caused and will continue to cause irreparable harm to Underwood, her reputation and brand by attributing to Underwood the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3584. Defendants' unauthorized use of Underwood's image, likeness and identity directly and proximately caused and continue to cause damage to Underwood in an amount to be determined at trial.

3585. WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**UNDERWOOD COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

3586.   Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3587.   Underwood has a statutory right of publicity under Section 540.08, Florida Statutes.

3588.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3589.   Despite the clear language of Section 540.08, Defendants published Underwood's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3590.   Underwood's image, likeness or identity are recognizable in the photos identified in **Exhibit AA.**

3591.   Defendants never sought permission nor authority to use or alter Underwood's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3592.   Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3593.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Underwood's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3594.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Underwood of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3595.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Underwood of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3596.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Underwood's rights.

3597.  Alternatively, Defendants acted negligently towards Underwood in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3598.  Defendants have caused and will continue to cause irreparable harm to Underwood, her reputation and brand by attributing to Underwood the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3599.  Defendants also have damaged Underwood as a direct and proximate result of their unauthorized use and alteration of Underwood's image, likeness and/or identity without compensating Underwood.

3600. WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## UNDERWOOD COUNT III
### (Violation of Common Law Right of Publicity; Unauthorized Misappropriation of Name or Likeness against all Defendants)

3601. Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3602. Underwood has a common law right of publicity.

3603. Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Underwood without express written or oral consent to such use.

3604. Defendants published, printed, displayed and/or publicly used Underwood's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3605. Underwood's image, likeness or identity are recognizable in the photos identified in **Exhibit AA.**

3606. Defendants took these actions without Underwood's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Underwood's

556

image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3607.   Underwood never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3608.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Underwood's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3609.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Underwood of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3610.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Underwood of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3611.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Underwood's rights.

3612.   Alternatively, Defendants acted negligently towards Underwood in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3613.   Defendants have caused and will continue to cause irreparable harm to Underwood, her reputation and brand by attributing to Underwood the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3614.   Defendants also have damaged Underwood as a direct and proximate result of their unauthorized use and alteration of Underwood's image, likeness and/or identity without compensating Underwood.

3615.   WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### UNDERWOOD COUNT IV
**(Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants)**

3616.   Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3617.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3618.   Defendants are direct and active participants in market dealings with Underwood by using the images to advertise and promote Underwood's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3619.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3620.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Underwood prior to promoting Defendants' business by and through the misappropriation, use and alteration of Underwood's image, likeness and/or identity;

b.      failing to obtain authorization from Underwood prior to the publication of Underwood's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Underwood for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Underwood endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Underwood sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3621.   Defendants' conduct described herein was misleading.

3622.   Defendants knew their unauthorized use and alteration of Underwood's image, likeness and/or identity was misleading.

3623.   Defendants' unauthorized use and alteration of Underwood's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3624.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3625.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Underwood of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

3626.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Underwood's rights.

3627.  Alternatively, the method and manner in which Defendants used Underwood's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Underwood did not consent to Defendants' use to advertise Defendants' business.

3628.  Defendants have caused and will continue to cause irreparable harm to Underwood, her reputation and brand by attributing to Underwood the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3629.  Defendants' unauthorized use of Underwood's image, likeness and identity directly and proximately caused and continues to cause damage to Underwood in an amount to be determined at trial.

3630.  WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## UNDERWOOD COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

3631.   Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3632.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3633.   Defendants knowingly appropriated, altered, used and disseminated Underwood's image, likeness and/or identity without authorization or consent.

3634.   Defendants misappropriation of Underwood's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Underwood of certain rights.

3635.   Defendants' misconduct detailed in this Complaint denied Underwood the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3636.   Defendants' appropriation and alteration of Underwood's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3637.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3638.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Underwood of a property interest, and further acted with

actual or constructive knowledge of the high probability that injury or damage would result to Underwood.

3639.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Underwood's rights.

3640.   Alternatively, the method and manner in which Defendants used Underwood's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Underwood did not consent to Defendants' use in order to advertise Defendants' business.

3641.   Defendants' appropriation, use and alteration of Underwood's image, likeness and identity without authority directly and proximately caused damage to Underwood in an amount to be determined at trial.

3642.   WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## UNDERWOOD COUNT VI
### (Defamation against all Defendants)

3643.   Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3644. As described herein, Defendants have used, altered and published Underwood's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3645. Defendants' unauthorized use and publication of Underwood's altered images, likeness and/or identity constitutes false representations or statements by implication about Underwood's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3646. Defendants' representations or statements by implication were knowingly false.

3647. At all times relevant to matters raised in this Complaint, Defendants knew Underwood was not affiliated with or employed by the Club, knew that Underwood would not participate in the events at the Club, knew that Underwood did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3648. Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Underwood's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3649. Defendants' unauthorized use and publication of such altered Underwood's images were defamatory.

3650. Defendants' unauthorized use and publication of such altered Underwood's images and knowingly false representations and/or statements by implication about Underwood were made with actual malice.

3651. Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Underwood, which were defamatory.

3652.   Such false and defamatory representations and statements about Underwood were published to innumerable current and prospective customers and promoters.

3653.   Defendants knew their conduct described herein was wrongful.

3654.   Defendants intended to deprive Underwood of a property interest or, at a minimum, evinced a conscious disregard for the fact that Underwood did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3655.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Underwood's rights.

3656.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Underwood's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3657.   WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## UNDERWOOD COUNT VII
### (Defamation Per Se against all Defendants)

3658.  Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3659.  As described herein, Defendants have used, altered and published Underwood's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3660.  Defendants' unauthorized use and publication of Underwood's altered images, likeness and/or identity constitutes false representations or statements by implication about Underwood's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3661.  Defendants' representations or statements by implication were knowingly false.

3662.  At all times relevant to matters raised in this Complaint, Defendants knew Underwood was not affiliated with or employed by the Club, knew that Underwood would not participate in the events at the Club, knew that Underwood did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3663.  Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Underwood's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3664.  Defendants' unauthorized use and publication of such altered Underwood's images were defamatory.

3665.   Defendants' unauthorized use and publication of such altered Underwood's images and knowingly false representations or statements by implication about Underwood were made with actual malice.

3666.   Defendants' representations and statements falsely impute to Underwood a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3667.   These false statements by implication and/or altered images constitute defamation *per se*.

3668.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

3669.   Defendants knew their conduct described herein was wrongful.

3670.  Defendants intended to deprive Underwood of a property interest or, at a minimum, evinced a conscious disregard for the fact that Underwood did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3671.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Underwood or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Underwood's rights.

3672.   Defendants' publication of Underwood's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Underwood as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3673.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Underwood's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3674.   WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## <u>UNDERWOOD COUNT VIII</u>
### (**Unjust Enrichment against all Defendants**)

3675.   Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3676.   Underwood has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3677.   Defendants were aware that Underwood's image, likeness and/or identity were valuable.

3678.   Defendants were aware of the resulting benefit from usage of Underwood's image, likeness and/or identity.

3679.   Defendants have retained profits and other benefits conferred upon them by using Underwood's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3680.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Underwood's image, likeness and/or identity without paying fair value for the images.

3681.   WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## UNDERWOOD COUNT IX
### (Negligence against all Defendants)

3682.   Underwood hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3683.   Under the circumstances stated herein, Defendants owed a duty of care towards Underwood.

3684.   Among other things, that duty included the obligation to deal with Underwood and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Underwood's image, likeness or identity in derogation of her rights, and to not cause harm to Underwood.

3685.   Defendants breached that duty by using and altering Underwood's image, likeness or identity without Underwood's authorization, permission or consent.

3686.   Defendants' conduct and breach as described above directly and proximately caused injury to Underwood's reputation, brand, goodwill and livelihood for which she has suffered damages.

3687.   WHEREFORE, Underwood respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Tiffany Toth's Causes of Action*

### <u>TOTH COUNT I</u>
### (Violation of the <u>Lanham Act</u>, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

3688.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3689.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Toth from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

3690.   Defendants used and altered Toth's image, likeness and/or identity as described herein without authority in order to create the perception that Toth worked at or was otherwise

affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3691.  Defendants' use and alteration of Toth's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3692.  Defendants' unauthorized use and alteration of Toth's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Toth worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Toth would participate in or appear at the specific events promoted in the advertisement.

3693.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Toth worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3694.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Toth worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and

activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3695. Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3696. Defendants' unauthorized use and alteration of Toth's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3697. Defendants knew or should have known that their unauthorized use and alteration of Toth's image, likeness and identity would cause consumer confusion as described in this Complaint.

3698. Defendants' unauthorized use and alteration of Toth's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3699. Defendants wrongful conduct as described herein was willful.

3700.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3701.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Toth of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth.

3702.  The method and manner in which Defendants used the images of Toth further evinces that Defendants were aware of or consciously disregarded the fact that Toth did not consent to Defendants' use of the images to advertise Defendants' business.

3703.  Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3704.  Defendants' unauthorized use of Toth's image, likeness and identity directly and proximately caused and continue to cause damage to Toth in an amount to be determined at trial.

3705.  WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity;
### Unauthorized Misappropriation of Name/Likeness against all Defendants)

3706.  Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3707.   Toth has a statutory right of publicity under Section 540.08, Florida Statutes.

3708.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3709.   Despite the clear language of Section 540.08, Defendants published Toth's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3710.   Toth's image, likeness or identity are recognizable in the photos identified in **Exhibit BB.**

3711.   Defendants never sought permission nor authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3712.   Toth never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3713.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Toth's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3714.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Toth of a property interest

during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3715.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Toth of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3716.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

3717.   Alternatively, Defendants acted negligently towards Toth in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3718.   Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3719.   Defendants also have damaged Toth as a direct and proximate result of their unauthorized use and alteration of Toth's image, likeness and/or identity without compensating Toth.

3720.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT III
### (Violation of Common Law Right of Publicity; Unauthorized Misappropriation of Name or Likeness against all Defendants)

3721.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3722.   Toth has a common law right of publicity.

3723.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Toth without express written or oral consent to such use.

3724.   Defendants published, printed, displayed and/or publicly used Toth's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3725.   Toth's image, likeness or identity are recognizable in the photos identified in **Exhibit BB.**

3726.   Defendants took these actions without Toth's permission, consent or authority.  In fact, Defendants never sought permission nor authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3727.   Toth never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3728.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Toth's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3729.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Toth of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3730.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Toth of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3731.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

3732.   Alternatively, Defendants acted negligently towards Toth in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3733.   Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3734.   Defendants also have damaged Toth as a direct and proximate result of their unauthorized use and alteration of Toth's image, likeness and/or identity without compensating Toth.

3735.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

3736.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3737.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3738.   Defendants are direct and active participants in market dealings with Toth by using the images to advertise and promote Toth's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3739.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3740. Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.     failing to obtain consent from Toth prior to promoting Defendants' business by and through the misappropriation, use and alteration of Toth's image, likeness and/or identity;

b.     failing to obtain authorization from Toth prior to the publication of Toth's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.     failing to compensate Toth for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.     falsely representing by implication to the public that Toth endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.     falsely representing by implication that Toth sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3741. Defendants' conduct described herein was misleading.

3742. Defendants knew their unauthorized use and alteration of Toth's image, likeness and/or identity was misleading.

3743. Defendants' unauthorized use and alteration of Toth's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3744. Defendants' wrongful conduct as detailed herein was willful and malicious.

3745. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Toth of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth.

3746.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

3747.   Alternatively, the method and manner in which Defendants used Toth's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Toth did not consent to Defendants' use to advertise Defendants' business.

3748.   Defendants have caused and will continue to cause irreparable harm to Toth, her reputation and brand by attributing to Toth the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3749.   Defendants' unauthorized use of Toth's image, likeness and identity directly and proximately caused and continues to cause damage to Toth in an amount to be determined at trial.

3750.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### TOTH COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

3751.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3752.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3753.   Defendants knowingly appropriated, altered, used and disseminated Toth's image, likeness and/or identity without authorization or consent.

3754.   Defendants misappropriation of Toth's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Toth of certain rights.

3755.   Defendants' misconduct detailed in this Complaint denied Toth the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3756.   Defendants' appropriation and alteration of Toth's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3757.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3758.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Toth of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth.

3759.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Toth's rights.

3760.   Alternatively, the method and manner in which Defendants used Toth's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Toth did not consent to Defendants' use in order to advertise Defendants' business.

3761. Defendants' appropriation, use and alteration of Toth's image, likeness and identity without authority directly and proximately caused damage to Toth in an amount to be determined at trial.

3762. WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT VI
### (Defamation against all Defendants)

3763. Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3764. As described herein, Defendants have used, altered and published Toth's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3765. Defendants' unauthorized use and publication of Toth's altered images, likeness and/or identity constitutes false representations or statements by implication about Toth's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3766. Defendants' representations or statements by implication were knowingly false.

3767. At all times relevant to matters raised in this Complaint, Defendants knew Toth was not affiliated with or employed by the Club, knew that Toth would not participate in the

581

events at the Club, knew that Toth did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3768.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Toth's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3769.   Defendants' unauthorized use and publication of such altered Toth's images were defamatory.

3770.   Defendants' unauthorized use and publication of such altered Toth's images and knowingly false representations and/or statements by implication about Toth were made with actual malice.

3771.   Alternatively,   Defendants   negligently   made   the   aforementioned   false representations and/or statements by implication about Toth, which were defamatory.

3772.   Such false and defamatory representations and statements about Toth were published to innumerable current and prospective customers and promoters.

3773.   Defendants knew their conduct described herein was wrongful.

3774.   Defendants intended to deprive Toth of a property interest or, at a minimum, evinced a conscious disregard for the fact that Toth did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3775.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Toth's rights.

3776. Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Toth's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3777. WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## <u>TOTH COUNT VII</u>
### (**Defamation Per Se against all Defendants**)

3778. Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3779. As described herein, Defendants have used, altered and published Toth's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3780. Defendants' unauthorized use and publication of Toth's altered images, likeness and/or identity constitutes false representations or statements by implication about Toth's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3781. Defendants' representations or statements by implication were knowingly false.

3782. At all times relevant to matters raised in this Complaint, Defendants knew Toth was not affiliated with or employed by the Club, knew that Toth would not participate in the

events at the Club, knew that Toth did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3783.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Toth's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3784.   Defendants' unauthorized use and publication of such altered Toth's images were defamatory.

3785.   Defendants' unauthorized use and publication of such altered Toth's images and knowingly false representations or statements by implication about Toth were made with actual malice.

3786.   Defendants' representations and statements falsely impute to Toth a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3787.   These false statements by implication and/or altered images constitute defamation *per se*.

3788.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

3789.   Defendants knew their conduct described herein was wrongful.

3790.   Defendants intended to deprive Toth of a property interest or, at a minimum, evinced a conscious disregard for the fact that Toth did not consent to Defendants' use, alteration

or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3791. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Toth or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Toth's rights.

3792. Defendants' publication of Toth's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Toth as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3793. Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Toth's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3794. WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## TOTH COUNT VIII
### (Unjust Enrichment against all Defendants)

3795. Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3796.   Toth has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3797.   Defendants were aware that Toth's image, likeness and/or identity were valuable.

3798.   Defendants were aware of the resulting benefit from usage of Toth's image, likeness and/or identity.

3799.   Defendants have retained profits and other benefits conferred upon them by using Toth's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3800.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Toth's image, likeness and/or identity without paying fair value for the images.

3801.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## TOTH COUNT IX
### (Negligence against all Defendants)

3802.   Toth hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3803.   Under the circumstances stated herein, Defendants owed a duty of care towards Toth.

3804.   Among other things, that duty included the obligation to deal with Toth and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Toth's image, likeness or identity in derogation of her rights, and to not cause harm to Toth.

3805.   Defendants breached that duty by using and altering Toth's image, likeness or identity without Toth's authorization, permission or consent.

3806.   Defendants' conduct and breach as described above directly and proximately caused injury to Toth's reputation, brand, goodwill and livelihood for which she has suffered damages.

3807.   WHEREFORE, Toth respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Vivian Kindle's Causes of Action*

### <u>KINDLE COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against all Defendants)

3808.   Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3809.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Kindle from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature,

characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

3810.  Defendants used and altered Kindle's image, likeness and/or identity as described herein without authority in order to create the perception that Kindle worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3811.  Defendants' use and alteration of Kindle's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3812.  Defendants' unauthorized use and alteration of Kindle's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Kindle worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Kindle would participate in or appear at the specific events promoted in the advertisement.

3813.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Kindle worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's

usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3814.   Upon information and belief, Defendants' false advertising described above did, in, fact, deceive and/or cause consumer confusion as to whether Kindle worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3815.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3816.   Defendants' unauthorized use and alteration of Kindle's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3817.   Defendants knew or should have known that their unauthorized use and alteration of Kindle's image, likeness and identity would cause consumer confusion as described in this Complaint.

3818.   Defendants' unauthorized use and alteration of Kindle's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3819.   Defendants wrongful conduct as described herein was willful.

3820.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3821.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

3822.   The method and manner in which Defendants used the images of Kindle further evinces that Defendants were aware of or consciously disregarded the fact that Kindle did not consent to Defendants' use of the images to advertise Defendants' business.

3823.   Defendants have caused and will continue to cause irreparable harm to Kindle, her reputation and brand by attributing to Kindle the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3824.   Defendants' unauthorized use of Kindle's image, likeness and identity directly and proximately caused and continue to cause damage to Kindle in an amount to be determined at trial.

3825.   WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees

and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KINDLE COUNT II
### (Violation of Fla. Stat. § 540.08: Right of Publicity; Unauthorized Misappropriation of Name/Likeness against all Defendants)

3826. Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3827. Kindle has a statutory right of publicity under Section 540.08, Florida Statutes.

3828. Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3829. Despite the clear language of Section 540.08, Defendants published Kindle's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3830. Kindle's image, likeness or identity are recognizable in the photos identified in **Exhibit CC.**

3831. Defendants never sought permission nor authority to use or alter Kindle's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3832. Kindle never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3833.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Kindle's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3834.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Kindle of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3835.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Kindle of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3836.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kindle's rights.

3837.  Alternatively, Defendants acted negligently towards Kindle in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3838.  Defendants have caused and will continue to cause irreparable harm to Kindle, her reputation and brand by attributing to Kindle the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3839.  Defendants also have damaged Kindle as a direct and proximate result of their unauthorized use and alteration of Kindle's image, likeness and/or identity without compensating Kindle.

3840.  WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KINDLE COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

3841.  Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3842.  Kindle has a common law right of publicity.

3843.  Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Kindle without express written or oral consent to such use.

3844.  Defendants published, printed, displayed and/or publicly used Kindle's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3845.   Kindle's image, likeness or identity are recognizable in the photos identified in **Exhibit CC.**

3846.   Defendants took these actions without Kindle's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Kindle's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3847.   Kindle never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3848.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Kindle's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3849.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Kindle of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3850.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Kindle of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3851.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kindle's rights.

3852.  Alternatively, Defendants acted negligently towards Kindle in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3853.  Defendants have caused and will continue to cause irreparable harm to Kindle, her reputation and brand by attributing to Kindle the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3854.  Defendants also have damaged Kindle as a direct and proximate result of their unauthorized use and alteration of Kindle's image, likeness and/or identity without compensating Kindle.

3855.  WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### KINDLE COUNT IV
(**Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

3856.  Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3857.  Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3858.  Defendants are direct and active participants in market dealings with Kindle by using the images to advertise and promote Kindle's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3859.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3860.  Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Kindle prior to promoting Defendants' business by and through the misappropriation, use and alteration of Kindle's image, likeness and/or identity;

b.      failing to obtain authorization from Kindle prior to the publication of Kindle's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Kindle for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Kindle endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Kindle sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3861.  Defendants' conduct described herein was misleading.

596

3862.   Defendants knew their unauthorized use and alteration of Kindle's image, likeness and/or identity was misleading.

3863.   Defendants' unauthorized use and alteration of Kindle's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3864.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3865.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

3866.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kindle's rights.

3867.   Alternatively, the method and manner in which Defendants used Kindle's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Kindle did not consent to Defendants' use to advertise Defendants' business.

3868.   Defendants have caused and will continue to cause irreparable harm to Kindle, her reputation and brand by attributing to Kindle the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3869.   Defendants' unauthorized use of Kindle's image, likeness and identity directly and proximately caused and continues to cause damage to Kindle in an amount to be determined at trial.

3870.   WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KINDLE COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

3871.   Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3872.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3873.   Defendants knowingly appropriated, altered, used and disseminated Kindle's image, likeness and/or identity without authorization or consent.

3874.   Defendants misappropriation of Kindle's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Kindle of certain rights.

3875.   Defendants' misconduct detailed in this Complaint denied Kindle the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3876.  Defendants' appropriation and alteration of Kindle's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3877.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3878.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Kindle of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle.

3879.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Kindle's rights.

3880.  Alternatively, the method and manner in which Defendants used Kindle's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Kindle did not consent to Defendants' use in order to advertise Defendants' business.

3881.  Defendants' appropriation, use and alteration of Kindle's image, likeness and identity without authority directly and proximately caused damage to Kindle in an amount to be determined at trial.

3882.  WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## <u>KINDLE COUNT VI</u>
### (Defamation against all Defendants)

3883.  Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3884.   As described herein, Defendants have used, altered and published Kindle's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3885.   Defendants' unauthorized use and publication of Kindle's altered images, likeness and/or identity constitutes false representations or statements by implication about Kindle's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

3886.   Defendants' representations or statements by implication were knowingly false.

3887.   At all times relevant to matters raised in this Complaint, Defendants knew Kindle was not affiliated with or employed by the Club, knew that Kindle would not participate in the events at the Club, knew that Kindle did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

3888.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Kindle's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3889.   Defendants' unauthorized use and publication of such altered Kindle's images were defamatory.

3890.   Defendants' unauthorized use and publication of such altered Kindle's images and knowingly false representations and/or statements by implication about Kindle were made with actual malice.

3891.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Kindle, which were defamatory.

3892.  Such false and defamatory representations and statements about Kindle were published to innumerable current and prospective customers and promoters.

3893.  Defendants knew their conduct described herein was wrongful.

3894.  Defendants intended to deprive Kindle of a property interest or, at a minimum, evinced a conscious disregard for the fact that Kindle did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

3895.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Kindle's rights.

3896.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Kindle's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3897.  WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KINDLE COUNT VII
### (Defamation Per Se against all Defendants)

3898.  Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

601

3899.   As described herein, Defendants have used, altered and published Kindle's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

3900.   Defendants' unauthorized use and publication of Kindle's altered images, likeness and/or identity constitutes false representations or statements by implication about Kindle's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

3901.   Defendants' representations or statements by implication were knowingly false.

3902.   At all times relevant to matters raised in this Complaint, Defendants knew Kindle was not affiliated with or employed by the Club, knew that Kindle would not participate in the events at the Club, knew that Kindle did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

3903.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Kindle's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

3904.   Defendants' unauthorized use and publication of such altered Kindle's images were defamatory.

3905.   Defendants' unauthorized use and publication of such altered Kindle's images and knowingly false representations or statements by implication about Kindle were made with actual malice.

3906.   Defendants' representations and statements falsely impute to Kindle a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse

swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

3907.   These false statements by implication and/or altered images constitute defamation *per se*.

3908.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

3909.   Defendants knew their conduct described herein was wrongful.

3910.   Defendants intended to deprive Kindle of a property interest or, at a minimum, evinced a conscious disregard for the fact that Kindle did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

3911.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Kindle or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Kindle's rights.

3912.   Defendants' publication of Kindle's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Kindle as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

3913.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Kindle's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

3914.  WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

### KINDLE COUNT VIII
### (Unjust Enrichment against all Defendants)

3915.  Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3916.  Kindle has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

3917.  Defendants were aware that Kindle's image, likeness and/or identity were valuable.

3918.  Defendants were aware of the resulting benefit from usage of Kindle's image, likeness and/or identity.

3919.  Defendants have retained profits and other benefits conferred upon them by using Kindle's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

3920.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Kindle's image, likeness and/or identity without paying fair value for the images.

3921.  WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits,

disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## KINDLE COUNT IX
### (Negligence against all Defendants)

3922.   Kindle hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3923.   Under the circumstances stated herein, Defendants owed a duty of care towards Kindle.

3924.   Among other things, that duty included the obligation to deal with Kindle and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Kindle's image, likeness or identity in derogation of her rights, and to not cause harm to Kindle.

3925.   Defendants breached that duty by using and altering Kindle's image, likeness or identity without Kindle's authorization, permission or consent.

3926.   Defendants' conduct and breach as described above directly and proximately caused injury to Kindle's reputation, brand, goodwill and livelihood for which she has suffered damages.

3927.   WHEREFORE, Kindle respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive

relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Melanie Iglesias' Causes of Action*

### <u>IGLESIAS COUNT I</u>
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

3928.   Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3929.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Iglesias from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

3930.   Defendants used and altered Iglesias' image, likeness and/or identity as described herein without authority in order to create the perception that Iglesias worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

3931.   Defendants' use and alteration of Iglesias' image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

3932.   Defendants' unauthorized use and alteration of Iglesias' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Iglesias worked at or was otherwise affiliated with the Club, endorsed

Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Iglesias would participate in or appear at the specific events promoted in the advertisement.

3933.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Iglesias worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

3934.   Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Iglesias worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

3935.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants'

promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

3936.  Defendants' unauthorized use and alteration of Iglesias' image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

3937.  Defendants knew or should have known that their unauthorized use and alteration of Iglesias' image, likeness and identity would cause consumer confusion as described in this Complaint.

3938.  Defendants' unauthorized use and alteration of Iglesias' image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

3939.  Defendants wrongful conduct as described herein was willful.

3940.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

3941.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Iglesias of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Iglesias.

3942.  The method and manner in which Defendants used the images of Iglesias further evinces that Defendants were aware of or consciously disregarded the fact that Iglesias did not consent to Defendants' use of the images to advertise Defendants' business.

3943.   Defendants have caused and will continue to cause irreparable harm to Iglesias, her reputation and brand by attributing to Iglesias the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3944.   Defendants' unauthorized use of Iglesias' image, likeness and identity directly and proximately caused and continue to cause damage to Iglesias in an amount to be determined at trial.

3945.   WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### IGLESIAS COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

3946.   Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3947.   Iglesias has a statutory right of publicity under Section 540.08, Florida Statutes.

3948.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

3949.  Despite the clear language of Section 540.08, Defendants published Iglesias' image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

3950.  Iglesias' image, likeness or identity are recognizable in the photos identified in **Exhibit DD.**

3951.  Defendants never sought permission nor authority to use or alter Iglesias' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3952.  Iglesias never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3953.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Iglesias' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3954.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Iglesias of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3955.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Iglesias of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3956.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Iglesias' rights.

3957.   Alternatively, Defendants acted negligently towards Iglesias in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3958.   Defendants have caused and will continue to cause irreparable harm to Iglesias, her reputation and brand by attributing to Iglesias the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3959.   Defendants also have damaged Iglesias as a direct and proximate result of their unauthorized use and alteration of Iglesias' image, likeness and/or identity without compensating Iglesias.

3960.   WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### IGLESIAS COUNT III
(**Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants**)

3961.   Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3962.   Iglesias has a common law right of publicity.

3963.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Iglesias without express written or oral consent to such use.

3964.   Defendants published, printed, displayed and/or publicly used Iglesias' image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

3965.   Iglesias' image, likeness or identity are recognizable in the photos identified in **Exhibit DD.**

3966.   Defendants took these actions without Iglesias' permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Iglesias' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3967.   Iglesias never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

3968.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Iglesias' image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

3969.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Iglesias of a property interest

during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

3970.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Iglesias of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

3971.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Iglesias' rights.

3972.  Alternatively, Defendants acted negligently towards Iglesias in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

3973.  Defendants have caused and will continue to cause irreparable harm to Iglesias, her reputation and brand by attributing to Iglesias the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3974.  Defendants also have damaged Iglesias as a direct and proximate result of their unauthorized use and alteration of Iglesias' image, likeness and/or identity without compensating Iglesias.

3975.  WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### IGLESIAS COUNT IV
(**Violation of Fla. Stat. § 501.204:**
**Florida's Deceptive and Unfair Trade Practices Act against all Defendants**)

3976.   Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3977.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

3978.   Defendants are direct and active participants in market dealings with Iglesias by using the images to advertise and promote Iglesias' claimed services not only to patrons of the Club, but to the general public in interstate commerce.

3979.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

3980.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Iglesias prior to promoting Defendants' business by and through the misappropriation, use and alteration of Iglesias' image, likeness and/or identity;

b.      failing to obtain authorization from Iglesias prior to the publication of Iglesias' image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Iglesias for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Iglesias endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Iglesias sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

3981.   Defendants' conduct described herein was misleading.

3982.   Defendants knew their unauthorized use and alteration of Iglesias' image, likeness and/or identity was misleading.

3983.   Defendants' unauthorized use and alteration of Iglesias' image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

3984.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3985.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Iglesias of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Iglesias.

3986.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Iglesias' rights.

3987.   Alternatively, the method and manner in which Defendants used Iglesias' image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Iglesias did not consent to Defendants' use to advertise Defendants' business.

3988.   Defendants have caused and will continue to cause irreparable harm to Iglesias, her reputation and brand by attributing to Iglesias the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

3989. Defendants' unauthorized use of Iglesias' image, likeness and identity directly and proximately caused and continues to cause damage to Iglesias in an amount to be determined at trial.

3990. WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### IGLESIAS COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

3991. Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

3992. Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

3993. Defendants knowingly appropriated, altered, used and disseminated Iglesias' image, likeness and/or identity without authorization or consent.

3994. Defendants misappropriation of Iglesias' image, likeness and/or identity was for Defendants' own use and benefit and to deprive Iglesias of certain rights.

3995. Defendants' misconduct detailed in this Complaint denied Iglesias the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no"

to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

3996.   Defendants' appropriation and alteration of Iglesias' image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

3997.   Defendants' wrongful conduct as detailed herein was willful and malicious.

3998.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Iglesias of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Iglesias.

3999.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Iglesias' rights.

4000.   Alternatively, the method and manner in which Defendants used Iglesias' image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Iglesias did not consent to Defendants' use in order to advertise Defendants' business.

4001.   Defendants' appropriation, use and alteration of Iglesias' image, likeness and identity without authority directly and proximately caused damage to Iglesias in an amount to be determined at trial.

4002.   WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## IGLESIAS COUNT VI
### (Defamation against all Defendants)

4003.   Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4004.   As described herein, Defendants have used, altered and published Iglesias' image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4005.   Defendants' unauthorized use and publication of Iglesias' altered images, likeness and/or identity constitutes false representations or statements by implication about Iglesias' affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

4006.   Defendants' representations or statements by implication were knowingly false.

4007.   At all times relevant to matters raised in this Complaint, Defendants knew Iglesias was not affiliated with or employed by the Club, knew that Iglesias would not participate in the events at the Club, knew that Iglesias did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

4008.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Iglesias' images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4009.   Defendants' unauthorized use and publication of such altered Iglesias' images were defamatory.

4010.  Defendants' unauthorized use and publication of such altered Iglesias' images and knowingly false representations and/or statements by implication about Iglesias were made with actual malice.

4011.  Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Iglesias, which were defamatory.

4012.  Such false and defamatory representations and statements about Iglesias were published to innumerable current and prospective customers and promoters.

4013.  Defendants knew their conduct described herein was wrongful.

4014.  Defendants intended to deprive Iglesias of a property interest or, at a minimum, evinced a conscious disregard for the fact that Iglesias did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

4015.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Iglesias or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Iglesias' rights.

4016.  Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Iglesias' reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4017.  WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief

enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## IGLESIAS COUNT VII
### (Defamation Per Se against all Defendants)

4018.   Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4019.   As described herein, Defendants have used, altered and published Iglesias' image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4020.   Defendants' unauthorized use and publication of Iglesias' altered images, likeness and/or identity constitutes false representations or statements by implication about Iglesias' affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

4021.   Defendants' representations or statements by implication were knowingly false.

4022.   At all times relevant to matters raised in this Complaint, Defendants knew Iglesias was not affiliated with or employed by the Club, knew that Iglesias would not participate in the events at the Club, knew that Iglesias did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

4023.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Iglesias' images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4024.   Defendants' unauthorized use and publication of such altered Iglesias' images were defamatory.

4025.   Defendants' unauthorized use and publication of such altered Iglesias' images and knowingly false representations or statements by implication about Iglesias were made with actual malice.

4026.   Defendants' representations and statements falsely impute to Iglesias a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

4027.   These false statements by implication and/or altered images constitute defamation *per se*.

4028.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

4029.   Defendants knew their conduct described herein was wrongful.

4030.   Defendants intended to deprive Iglesias of a property interest or, at a minimum, evinced a conscious disregard for the fact that Iglesias did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

4031.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Iglesias or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Iglesias' rights.

4032.  Defendants' publication of Iglesias' image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays

Iglesias as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

4033. Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Iglesias' reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4034. WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## IGLESIAS COUNT VIII
### (Unjust Enrichment against all Defendants)

4035. Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4036. Iglesias has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

4037. Defendants were aware that Iglesias' image, likeness and/or identity were valuable.

4038. Defendants were aware of the resulting benefit from usage of Iglesias' image, likeness and/or identity.

4039.   Defendants have retained profits and other benefits conferred upon them by using Iglesias' image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

4040.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Iglesias' image, likeness and/or identity without paying fair value for the images.

4041.   WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## IGLESIAS COUNT IX
### (Negligence against all Defendants)

4042.   Iglesias hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4043.   Under the circumstances stated herein, Defendants owed a duty of care towards Iglesias.

4044.   Among other things, that duty included the obligation to deal with Iglesias and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Iglesias' image, likeness or identity in derogation of her rights, and to not cause harm to Iglesias.

4045.   Defendants breached that duty by using and altering Iglesias' image, likeness or identity without Iglesias' authorization, permission or consent.

4046.   Defendants' conduct and breach as described above directly and proximately caused injury to Iglesias' reputation, brand, goodwill and livelihood for which she has suffered damages.

4047.   WHEREFORE, Iglesias respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Brenda Lynn Geiger's Causes of Action*

### GEIGER COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Advertising against all Defendants)

4048.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4049.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Geiger from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

4050.   Defendants used and altered Geiger's image, likeness and/or identity as described herein without authority in order to create the perception that Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or

consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

4051.  Defendants' use and alteration of Geiger's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

4052.  Defendants' unauthorized use and alteration of Geiger's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Geiger would participate in or appear at the specific events promoted in the advertisement.

4053.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

4054.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Geiger worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her

images in order to advertise, promote, and market Defendants' business or the Club's events and activities. Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

4055. Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce. Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States. In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

4056. Defendants' unauthorized use and alteration of Geiger's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

4057. Defendants knew or should have known that their unauthorized use and alteration of Geiger's image, likeness and identity would cause consumer confusion as described in this Complaint.

4058. Defendants' unauthorized use and alteration of Geiger's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

4059. Defendants wrongful conduct as described herein was willful.

4060.  As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

4061.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Geiger of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger.

4062.  The method and manner in which Defendants used the images of Geiger further evinces that Defendants were aware of or consciously disregarded the fact that Geiger did not consent to Defendants' use of the images to advertise Defendants' business.

4063.  Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4064.  Defendants' unauthorized use of Geiger's image, likeness and identity directly and proximately caused and continue to cause damage to Geiger in an amount to be determined at trial.

4065.  WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**GEIGER COUNT II**
(**Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants**)

4066.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4067.   Geiger has a statutory right of publicity under Section 540.08, Florida Statutes.

4068.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

4069.   Despite the clear language of Section 540.08, Defendants published Geiger's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

4070.   Geiger's image, likeness or identity are recognizable in the photos identified in **Exhibit EE.**

4071.   Defendants never sought permission nor authority to use or alter Geiger's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4072.   Geiger never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4073.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Geiger's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

4074.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Geiger of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

4075.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Geiger of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

4076.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

4077.   Alternatively, Defendants acted negligently towards Geiger in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

4078.   Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4079.   Defendants also have damaged Geiger as a direct and proximate result of their unauthorized use and alteration of Geiger's image, likeness and/or identity without compensating Geiger.

4080.   WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

**GEIGER COUNT III**
(**Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants**)

4081.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4082.   Geiger has a common law right of publicity.

4083.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Geiger without express written or oral consent to such use.

4084.   Defendants published, printed, displayed and/or publicly used Geiger's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

4085.   Geiger's image, likeness or identity are recognizable in the photos identified in **Exhibit EE.**

4086.   Defendants took these actions without Geiger's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Geiger's image, likeness

or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4087.   Geiger never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4088.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Geiger's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

4089.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Geiger of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

4090.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Geiger of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

4091.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

4092.   Alternatively, Defendants acted negligently towards Geiger in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

4093.  Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4094.  Defendants also have damaged Geiger as a direct and proximate result of their unauthorized use and alteration of Geiger's image, likeness and/or identity without compensating Geiger.

4095.  WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### GEIGER COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

4096.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4097.  Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

4098.  Defendants are direct and active participants in market dealings with Geiger by using the images to advertise and promote Geiger's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

4099.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

4100.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Geiger prior to promoting Defendants' business by and through the misappropriation, use and alteration of Geiger's image, likeness and/or identity;

b.      failing to obtain authorization from Geiger prior to the publication of Geiger's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Geiger for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Geiger endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Geiger sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

4101.   Defendants' conduct described herein was misleading.

4102.   Defendants knew their unauthorized use and alteration of Geiger's image, likeness and/or identity was misleading.

4103.   Defendants' unauthorized use and alteration of Geiger's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

4104.   Defendants' wrongful conduct as detailed herein was willful and malicious.

4105.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Geiger of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger.

4106.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

4107.  Alternatively, the method and manner in which Defendants used Geiger's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Geiger did not consent to Defendants' use to advertise Defendants' business.

4108.  Defendants have caused and will continue to cause irreparable harm to Geiger, her reputation and brand by attributing to Geiger the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4109.  Defendants' unauthorized use of Geiger's image, likeness and identity directly and proximately caused and continues to cause damage to Geiger in an amount to be determined at trial.

4110.  WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### GEIGER COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:**
**Civil Theft against all Defendants)**

4111.  Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4112.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

4113.   Defendants knowingly appropriated, altered, used and disseminated Geiger's image, likeness and/or identity without authorization or consent.

4114.   Defendants misappropriation of Geiger's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Geiger of certain rights.

4115.   Defendants' misconduct detailed in this Complaint denied Geiger the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

4116.   Defendants' appropriation and alteration of Geiger's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

4117.   Defendants' wrongful conduct as detailed herein was willful and malicious.

4118.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Geiger of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger.

4119.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Geiger's rights.

4120.  Alternatively, the method and manner in which Defendants used Geiger's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Geiger did not consent to Defendants' use in order to advertise Defendants' business.

4121.  Defendants' appropriation, use and alteration of Geiger's image, likeness and identity without authority directly and proximately caused damage to Geiger in an amount to be determined at trial.

4122.  WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT VI
### (Defamation against all Defendants)

4123.  Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4124.  As described herein, Defendants have used, altered and published Geiger's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4125.  Defendants' unauthorized use and publication of Geiger's altered images, likeness and/or identity constitutes false representations or statements by implication about Geiger's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

4126.   Defendants' representations or statements by implication were knowingly false.

4127.   At all times relevant to matters raised in this Complaint, Defendants knew Geiger was not affiliated with or employed by the Club, knew that Geiger would not participate in the events at the Club, knew that Geiger did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

4128.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Geiger's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4129.   Defendants' unauthorized use and publication of such altered Geiger's images were defamatory.

4130.   Defendants' unauthorized use and publication of such altered Geiger's images and knowingly false representations and/or statements by implication about Geiger were made with actual malice.

4131.   Alternatively,   Defendants   negligently   made   the   aforementioned   false representations and/or statements by implication about Geiger, which were defamatory.

4132.   Such false and defamatory representations and statements about Geiger were published to innumerable current and prospective customers and promoters.

4133.   Defendants knew their conduct described herein was wrongful.

4134.   Defendants intended to deprive Geiger of a property interest or, at a minimum, evinced a conscious disregard for the fact that Geiger did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

4135.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Geiger's rights.

4136.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Geiger's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4137.   WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT VII
### (Defamation Per Se against all Defendants)

4138.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4139.   As described herein, Defendants have used, altered and published Geiger's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4140.   Defendants' unauthorized use and publication of Geiger's altered images, likeness and/or identity constitutes false representations or statements by implication about Geiger's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

4141.   Defendants' representations or statements by implication were knowingly false.

4142.   At all times relevant to matters raised in this Complaint, Defendants knew Geiger was not affiliated with or employed by the Club, knew that Geiger would not participate in the events at the Club, knew that Geiger did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

4143.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Geiger's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4144.   Defendants' unauthorized use and publication of such altered Geiger's images were defamatory.

4145.   Defendants' unauthorized use and publication of such altered Geiger's images and knowingly false representations or statements by implication about Geiger were made with actual malice.

4146.   Defendants' representations and statements falsely impute to Geiger a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.  She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

4147.   These false statements by implication and/or altered images constitute defamation *per se*.

4148.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

4149. Defendants knew their conduct described herein was wrongful.

4150. Defendants intended to deprive Geiger of a property interest or, at a minimum, evinced a conscious disregard for the fact that Geiger did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

4151. Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Geiger or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Geiger's rights.

4152. Defendants' publication of Geiger's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Geiger as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

4153. Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Geiger's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4154. WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## GEIGER COUNT VIII
### (Unjust Enrichment against all Defendants)

4155.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4156.   Geiger has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

4157.   Defendants were aware that Geiger's image, likeness and/or identity were valuable.

4158.   Defendants were aware of the resulting benefit from usage of Geiger's image, likeness and/or identity.

4159.   Defendants have retained profits and other benefits conferred upon them by using Geiger's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

4160.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Geiger's image, likeness and/or identity without paying fair value for the images.

4161.   WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## GEIGER COUNT IX
### (Negligence against all Defendants)

4162.   Geiger hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4163.   Under the circumstances stated herein, Defendants owed a duty of care towards Geiger.

4164.   Among other things, that duty included the obligation to deal with Geiger and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Geiger's image, likeness or identity in derogation of her rights, and to not cause harm to Geiger.

4165.   Defendants breached that duty by using and altering Geiger's image, likeness or identity without Geiger's authorization, permission or consent.

4166.   Defendants' conduct and breach as described above directly and proximately caused injury to Geiger's reputation, brand, goodwill and livelihood for which she has suffered damages.

4167.   WHEREFORE, Geiger respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

*Plaintiff Heather Rae Young's Causes of Action*

## YOUNG COUNT I
### (Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising against all Defendants)

4168.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4169.   Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Young from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

4170.   Defendants used and altered Young's image, likeness and/or identity as described herein without authority in order to create the perception that Young worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

4171.   Defendants' use and alteration of Young's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

4172.   Defendants' unauthorized use and alteration of Young's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Young worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and

market Defendants' business or the Club's events and activities and/or that Young would participate in or appear at the specific events promoted in the advertisement.

4173.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Young worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

4174.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Young worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

4175.  Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.  In addition to membership lists consisting of

members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

4176.   Defendants' unauthorized use and alteration of Young's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

4177.   Defendants knew or should have known that their unauthorized use and alteration of Young's image, likeness and identity would cause consumer confusion as described in this Complaint.

4178.   Defendants' unauthorized use and alteration of Young's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

4179.   Defendants wrongful conduct as described herein was willful.

4180.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

4181.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Young of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Young.

4182.   The method and manner in which Defendants used the images of Young further evinces that Defendants were aware of or consciously disregarded the fact that Young did not consent to Defendants' use of the images to advertise Defendants' business.

4183.   Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4184.   Defendants' unauthorized use of Young's image, likeness and identity directly and proximately caused and continue to cause damage to Young in an amount to be determined at trial.

4185.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### YOUNG COUNT II
**(Violation of Fla. Stat. § 540.08: Right of Publicity;
Unauthorized Misappropriation of Name/Likeness against all Defendants)**

4186.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4187.   Young has a statutory right of publicity under Section 540.08, Florida Statutes.

4188.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

4189.   Despite the clear language of Section 540.08, Defendants published Young's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

4190.   Young's image, likeness or identity are recognizable in the photos identified in **Exhibit FF.**

4191.  Defendants never sought permission nor authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4192.  Young never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4193.  Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Young's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

4194.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Young of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

4195.  Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Young of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

4196.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

4197.  Alternatively, Defendants acted negligently towards Young in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and

social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

4198.   Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4199.   Defendants also have damaged Young as a direct and proximate result of their unauthorized use and alteration of Young's image, likeness and/or identity without compensating Young.

4200.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### YOUNG COUNT III
**(Violation of Common Law Right of Publicity;
Unauthorized Misappropriation of Name or Likeness against all Defendants)**

4201.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4202.   Young has a common law right of publicity.

4203.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Young without express written or oral consent to such use.

4204. Defendants published, printed, displayed and/or publicly used Young's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

4205. Young's image, likeness or identity are recognizable in the photos identified in **Exhibit FF.**

4206. Defendants took these actions without Young's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4207. Young never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4208. Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Young's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

4209. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Young of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

4210. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Young of a property interest after receipt of the Demand Letter in which

each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

4211.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

4212.  Alternatively, Defendants acted negligently towards Young in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

4213.  Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4214.  Defendants also have damaged Young as a direct and proximate result of their unauthorized use and alteration of Young's image, likeness and/or identity without compensating Young.

4215.  WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

4216.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4217.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

4218.   Defendants are direct and active participants in market dealings with Young by using the images to advertise and promote Young's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

4219.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

4220.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Young prior to promoting Defendants' business by and through the misappropriation, use and alteration of Young's image, likeness and/or identity;

b.      failing to obtain authorization from Young prior to the publication of Young's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Young for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Young endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.    falsely representing by implication that Young sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

4221.  Defendants' conduct described herein was misleading.

4222.  Defendants knew their unauthorized use and alteration of Young's image, likeness and/or identity was misleading.

4223.  Defendants' unauthorized use and alteration of Young's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

4224.  Defendants' wrongful conduct as detailed herein was willful and malicious.

4225.  Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Young of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Young.

4226.  At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

4227.  Alternatively, the method and manner in which Defendants used Young's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Young did not consent to Defendants' use to advertise Defendants' business.

4228.  Defendants have caused and will continue to cause irreparable harm to Young, her reputation and brand by attributing to Young the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4229.  Defendants' unauthorized use of Young's image, likeness and identity directly and proximately caused and continues to cause damage to Young in an amount to be determined at trial.

4230.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT V
**(Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
Civil Theft against all Defendants)**

4231.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4232.   Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

4233.   Defendants knowingly appropriated, altered, used and disseminated Young's image, likeness and/or identity without authorization or consent.

4234.   Defendants misappropriation of Young's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Young of certain rights.

4235.   Defendants' misconduct detailed in this Complaint denied Young the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

4236. Defendants' appropriation and alteration of Young's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

4237. Defendants' wrongful conduct as detailed herein was willful and malicious.

4238. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Young of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Young.

4239. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Young's rights.

4240. Alternatively, the method and manner in which Defendants used Young's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Young did not consent to Defendants' use in order to advertise Defendants' business.

4241. Defendants' appropriation, use and alteration of Young's image, likeness and identity without authority directly and proximately caused damage to Young in an amount to be determined at trial.

4242. WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT VI
### (Defamation against all Defendants)

4243.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4244.   As described herein, Defendants have used, altered and published Young's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4245.   Defendants' unauthorized use and publication of Young's altered images, likeness and/or identity constitutes false representations or statements by implication about Young's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

4246.   Defendants' representations or statements by implication were knowingly false.

4247.   At all times relevant to matters raised in this Complaint, Defendants knew Young was not affiliated with or employed by the Club, knew that Young would not participate in the events at the Club, knew that Young did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

4248.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Young's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4249.   Defendants' unauthorized use and publication of such altered Young's images were defamatory.

4250.   Defendants' unauthorized use and publication of such altered Young's images and knowingly false representations and/or statements by implication about Young were made with actual malice.

4251.   Alternatively, Defendants negligently made the aforementioned false representations and/or statements by implication about Young, which were defamatory.

4252.   Such false and defamatory representations and statements about Young were published to innumerable current and prospective customers and promoters.

4253.   Defendants knew their conduct described herein was wrongful.

4254.   Defendants intended to deprive Young of a property interest or, at a minimum, evinced a conscious disregard for the fact that Young did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

4255.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Young or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Young's rights.

4256.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Young's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4257.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT VII
### (Defamation Per Se against all Defendants)

4258.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4259.   As described herein, Defendants have used, altered and published Young's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4260.   Defendants' unauthorized use and publication of Young's altered images, likeness and/or identity constitutes false representations or statements by implication about Young's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

4261.   Defendants' representations or statements by implication were knowingly false.

4262.   At all times relevant to matters raised in this Complaint, Defendants knew Young was not affiliated with or employed by the Club, knew that Young would not participate in the events at the Club, knew that Young did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

4263.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Young's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4264.   Defendants' unauthorized use and publication of such altered Young's images were defamatory.

4265.   Defendants' unauthorized use and publication of such altered Young's images and knowingly false representations or statements by implication about Young were made with actual malice.

4266.   Defendants' representations and statements falsely impute to Young a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model.   She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

4267.   These false statements by implication and/or altered images constitute defamation *per se*.

4268.   Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

4269.   Defendants knew their conduct described herein was wrongful.

4270.   Defendants intended to deprive Young of a property interest or, at a minimum, evinced a conscious disregard for the fact that Young did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

4271.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Young or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Young's rights.

4272.  Defendants' publication of Young's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Young as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

4273.   Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Young's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4274.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## <u>YOUNG COUNT VIII</u>
(**Unjust Enrichment against all Defendants**)

4275.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4276.   Young has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

4277.   Defendants were aware that Young's image, likeness and/or identity were valuable.

4278.   Defendants were aware of the resulting benefit from usage of Young's image, likeness and/or identity.

4279.   Defendants have retained profits and other benefits conferred upon them by using Young's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

4280.   It would be inequitable for the Defendants to retain the benefits conferred upon them by using Young's image, likeness and/or identity without paying fair value for the images.

4281.   WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## YOUNG COUNT IX
### (Negligence against all Defendants)

4282.   Young hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4283.   Under the circumstances stated herein, Defendants owed a duty of care towards Young.

4284.   Among other things, that duty included the obligation to deal with Young and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or alter Young's image, likeness or identity in derogation of her rights, and to not cause harm to Young.

4285.   Defendants breached that duty by using and altering Young's image, likeness or identity without Young's authorization, permission or consent.

4286.   Defendants' conduct and breach as described above directly and proximately caused injury to Young's reputation, brand, goodwill and livelihood for which she has suffered damages.

4287.  WHEREFORE, Young respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### *Plaintiff Rosa Acosta's Causes of Action*

### <u>ACOSTA COUNT I</u>
(**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants**)

4288.  Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4289.  Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Acosta from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

4290.  Defendants used and altered Acosta's image, likeness and/or identity as described herein without authority in order to create the perception that Acosta worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

4291.  Defendants' use and alteration of Acosta's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

4292.  Defendants' unauthorized use and alteration of Acosta's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Acosta worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that Acosta would participate in or appear at the specific events promoted in the advertisement.

4293.  Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and in its events, as well as specifically whether Acosta worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

4294.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Acosta worked at or was otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration

misled and served to entice consumers and prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

4295.   Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.   Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target persons from different states throughout the United States.   In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at, Club events.

4296.   Defendants' unauthorized use and alteration of Acosta's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting clientele to the Club.

4297.   Defendants knew or should have known that their unauthorized use and alteration of Acosta's image, likeness and identity would cause consumer confusion as described in this Complaint.

4298.   Defendants' unauthorized use and alteration of Acosta's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

4299.   Defendants wrongful conduct as described herein was willful.

4300.   As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

4301. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Acosta of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Acosta.

4302. The method and manner in which Defendants used the images of Acosta further evinces that Defendants were aware of or consciously disregarded the fact that Acosta did not consent to Defendants' use of the images to advertise Defendants' business.

4303. Defendants have caused and will continue to cause irreparable harm to Acosta, her reputation and brand by attributing to Acosta the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4304. Defendants' unauthorized use of Acosta's image, likeness and identity directly and proximately caused and continue to cause damage to Acosta in an amount to be determined at trial.

4305. WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### **ACOSTA COUNT II**
**(Violation of Fla. Stat. § 540.08: Right of Publicity;**
**Unauthorized Misappropriation of Name/Likeness against all Defendants)**

4306. Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4307. Acosta has a statutory right of publicity under Section 540.08, Florida Statutes.

4308.   Section 540.08, Florida Statutes, provides that: "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."

4309.   Despite the clear language of Section 540.08, Defendants published Acosta's image, likeness or identity on their website and social media outlets, among others, in order to promote, advertise and market the Club and Club's events and activities.

4310.   Acosta's image, likeness or identity are recognizable in the photos identified in **Exhibit GG.**

4311.   Defendants never sought permission nor authority to use or alter Acosta's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4312.   Acosta never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4313.   Defendants intentionally or, at a minimum, recklessly published, printed, displayed, or otherwise publicly disseminated or used Acosta's image, likeness or identity without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

4314.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or with reckless disregard to deprive Acosta of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

4315.   Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Acosta of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

4316.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Acosta's rights.

4317.   Alternatively, Defendants acted negligently towards Acosta in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

4318.   Defendants have caused and will continue to cause irreparable harm to Acosta, her reputation and brand by attributing to Acosta the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4319.   Defendants also have damaged Acosta as a direct and proximate result of their unauthorized use and alteration of Acosta's image, likeness and/or identity without compensating Acosta.

4320.   WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

666

## ACOSTA COUNT III
### (Violation of Common Law Right of Publicity;
### Unauthorized Misappropriation of Name or Likeness against all Defendants)

4321.   Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4322.   Acosta has a common law right of publicity.

4323.   Defendants may not publish, print, display or publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of Acosta without express written or oral consent to such use.

4324.   Defendants published, printed, displayed and/or publicly used Acosta's image, likeness or identity on their website and social media outlets, among others, for purposes of trade and/or commercial advertising including, but not limited to, promoting, advertising and marketing the Club and Club's events and activities.

4325.   Acosta's image, likeness or identity are recognizable in the photos identified in **Exhibit GG.**

4326.   Defendants took these actions without Acosta's permission, consent or authority. In fact, Defendants never sought permission nor authority to use or alter Acosta's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4327.   Acosta never consented to, permitted, assigned, licensed, or otherwise agreed to Defendants' use or alteration of her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event or activity.

4328.   Defendants intentionally or, at a minimum, recklessly, published, printed, displayed, or otherwise publicly disseminated or used Acosta's image, likeness or identity

without her express written or oral consent, for purposes of trade or for other commercial or advertising purposes as detailed in this Complaint.

4329. Defendants had actual or constructive knowledge of the wrongfulness of their conduct and acted with intent or reckless disregard to deprive Acosta of a property interest during the entire time period in which the unauthorized use and alteration took place prior to receiving the Demand Letter.

4330. Defendants had actual knowledge of the wrongfulness of their conduct and acted with intent to deprive Acosta of a property interest after receipt of the Demand Letter in which each Plaintiff's objection to the unauthorized use and alteration was presented to Defendants along with the specific offending images.

4331. At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Acosta's rights.

4332. Alternatively, Defendants acted negligently towards Acosta in using and disseminating, without authority, her image, likeness or identity on the Defendants' website and social media outlets in order to promote, advertise and market the Club and the Club's events and activities.

4333. Defendants have caused and will continue to cause irreparable harm to Acosta, her reputation and brand by attributing to Acosta the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4334. Defendants also have damaged Acosta as a direct and proximate result of their unauthorized use and alteration of Acosta's image, likeness and/or identity without compensating Acosta.

4335.   WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## ACOSTA COUNT IV
### (Violation of Fla. Stat. § 501.204:
### Florida's Deceptive and Unfair Trade Practices Act against all Defendants)

4336.   Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4337.   Section 501.204(1), Florida Statutes ("FDUTPA") provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

4338.   Defendants are direct and active participants in market dealings with Acosta by using the images to advertise and promote Acosta's claimed services not only to patrons of the Club, but to the general public in interstate commerce.

4339.   Defendants at all material times were engaged in a trade or commerce, as defined within Section 501.203, Florida Statutes.

4340.   Defendants have engaged in deceptive acts and unfair practices in the course of their business activities by:

a.      failing to obtain consent from Acosta prior to promoting Defendants' business by and through the misappropriation, use and alteration of Acosta's image, likeness and/or identity;

b.      failing to obtain authorization from Acosta prior to the publication of Acosta's image, likeness and/or identity on Defendants' marketing and promotional materials;

c.      failing to compensate Acosta for the misappropriation, use and alteration of her image, likeness and/or identity on Defendants' marketing and promotional materials;

d.      falsely representing by implication to the public that Acosta endorsed the Defendants' business, or would be present at and participate in Defendants' events; and

e.      falsely representing by implication that Acosta sanctioned the type of business, events, lifestyle, or other activities promoted by Defendants.

4341.   Defendants' conduct described herein was misleading.

4342.   Defendants knew their unauthorized use and alteration of Acosta's image, likeness and/or identity was misleading.

4343.   Defendants' unauthorized use and alteration of Acosta's image, likeness and/or identity as detailed herein violates Section 501.204(1), Florida Statutes, and was wrongful.

4344.   Defendants' wrongful conduct as detailed herein was willful and malicious.

4345.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Acosta of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Acosta.

4346.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Acosta's rights.

4347.  Alternatively, the method and manner in which Defendants used Acosta's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded that Acosta did not consent to Defendants' use to advertise Defendants' business.

4348.  Defendants have caused and will continue to cause irreparable harm to Acosta, her reputation and brand by attributing to Acosta the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

4349.  Defendants' unauthorized use of Acosta's image, likeness and identity directly and proximately caused and continues to cause damage to Acosta in an amount to be determined at trial.

4350.  WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## ACOSTA COUNT V
### (Violation of Fla. Stat. § 812.014 and Fla. Stat. § 772.11:
### Civil Theft against all Defendants)

4351.  Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4352.  Section 772.11, Florida Statutes, creates a private right of action for victims of theft of tangible and intangible personal property, including rights, privileges, interests and claims.

4353.  Defendants knowingly appropriated, altered, used and disseminated Acosta's image, likeness and/or identity without authorization or consent.

4354.   Defendants misappropriation of Acosta's image, likeness and/or identity was for Defendants' own use and benefit and to deprive Acosta of certain rights.

4355.   Defendants' misconduct detailed in this Complaint denied Acosta the right to engage in arms-length negotiations over the use and dissemination of her image, likeness or identity, the right to negotiate over reasonable bargained-for compensation, the right to say "no" to the proposed use by Defendants and the right to otherwise protect her image, likeness and/or identity from harm at the hands of Defendants.

4356.   Defendants' appropriation and alteration of Acosta's image, likeness and/or identity as detailed herein without authority violates Sections 772.11 and 812.014, Florida Statutes, and was wrongful.

4357.   Defendants' wrongful conduct as detailed herein was willful and malicious.

4358.   Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Acosta of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Acosta.

4359.   At a minimum, Defendants' conduct was so reckless or wanton in care that it constituted a conscious disregard of or indifference to Acosta's rights.

4360.   Alternatively, the method and manner in which Defendants used Acosta's image, likeness and/or identity further evinces that Defendants were aware or consciously disregarded the fact that Acosta did not consent to Defendants' use in order to advertise Defendants' business.

4361.   Defendants' appropriation, use and alteration of Acosta's image, likeness and identity without authority directly and proximately caused damage to Acosta in an amount to be determined at trial.

4362.   WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, treble damages or, at a minimum, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## ACOSTA COUNT VI
### (Defamation against all Defendants)

4363.   Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4364.   As described herein, Defendants have used, altered and published Acosta's image, likeness and/or identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4365.   Defendants' unauthorized use and publication of Acosta's altered images, likeness and/or identity constitutes false representations or statements by implication about Acosta's affiliation with or employment by the Club, and her participation in or endorsement of the advertised activities at the Club.

4366.   Defendants' representations or statements by implication were knowingly false.

4367.   At all times relevant to matters raised in this Complaint, Defendants knew Acosta was not affiliated with or employed by the Club, knew that Acosta would not participate in the events at the Club, knew that Acosta did not endorse Defendants' business, the Club or Club events, and knew that she had not been appropriately compensated for such use.

4368.   Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Acosta's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4369.   Defendants' unauthorized use and publication of such altered Acosta's images were defamatory.

4370.   Defendants' unauthorized use and publication of such altered Acosta's images and knowingly false representations and/or statements by implication about Acosta were made with actual malice.

4371.   Alternatively,   Defendants   negligently   made   the   aforementioned   false representations and/or statements by implication about Acosta, which were defamatory.

4372.   Such false and defamatory representations and statements about Acosta were published to innumerable current and prospective customers and promoters.

4373.   Defendants knew their conduct described herein was wrongful.

4374.   Defendants intended to deprive Acosta of a property interest or, at a minimum, evinced a conscious disregard for the fact that Acosta did not consent to Defendants' use or alteration of her image, likeness or identity to promote, advertise, market or endorse the Club or Defendants' business interests.

4375.   Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Acosta or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of or indifference to Acosta's rights.

4376.   Defendants' use and publication of false and defamatory statements by implication have directly and proximately harmed Acosta's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4377.   WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

### ACOSTA COUNT VII
**(Defamation Per Se against all Defendants)**

4378.   Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4379.   As described herein, Defendants have used, altered and published Acosta's image, likeness and identity without her authority or consent in order to promote the Club and its activities, attract clientele to the Club, and generate revenue for Defendants.

4380.   Defendants' unauthorized use and publication of Acosta's altered images, likeness and/or identity constitutes false representations or statements by implication about Acosta's affiliation with or employment by the Club, or her participation in or endorsement of the advertised activities at the Club.

4381.   Defendants' representations or statements by implication were knowingly false.

4382.   At all times relevant to matters raised in this Complaint, Defendants knew Acosta was not affiliated with or employed by the Club, knew that Acosta would not participate in the events at the Club, knew that Acosta did not endorse Defendants' business activities, the Club or the Club events, and knew that she had not been appropriately compensated for such use.

4383. Despite knowledge of the foregoing, Defendants nonetheless used and published such altered Acosta's images to promote the Club, attract clientele to the Club, and generate revenue for Defendants.

4384. Defendants' unauthorized use and publication of such altered Acosta's images were defamatory.

4385. Defendants' unauthorized use and publication of such altered Acosta's images and knowingly false representations or statements by implication about Acosta were made with actual malice.

4386. Defendants' representations and statements falsely impute to Acosta a matter, practice or course of conduct incompatible with her business, trade or profession as a legitimate and successful professional model. She is not a participant in the deviant "swinger" or "spouse swapping" lifestyle events offered and hosted at the Club, or employed or contracted by the Club to appear, perform, dance, host, model or otherwise serve as a paid participant in the activities and events at the Club for which her image, likeness and/or identity was used.

4387. These false statements by implication and/or altered images constitute defamation *per se*.

4388. Such false and *per se* defamatory representations and statements by implication were published to innumerable current and prospective customers and promoters.

4389. Defendants knew their conduct described herein was wrongful.

4390. Defendants intended to deprive Acosta of a property interest or, at a minimum, evinced a conscious disregard for the fact that Acosta did not consent to Defendants' use, alteration or publication of her image, likeness or identity to promote, advertise, market or endorse Defendants' business, the Club or the Club's events and activities.

4391.  Defendants acted with actual or constructive knowledge of the high probability that injury or damage would result to Acosta or, at a minimum, were so reckless or wanton in care that their conduct constituted a conscious disregard of, or indifference to, Acosta's rights.

4392.  Defendants' publication of Acosta's image, likeness an identity constitutes defamation *per se* under Florida common law because, among other things, it falsely portrays Acosta as a "swinger" at the Club who would partake and participate in the full panoply of activities persons at such an establishment are expected to engage, thus imputing a condition incompatible with the proper exercise of her lawful business, trade, profession, or office.

4393.  Defendants' use and publication of false and *per se* defamatory statements by implication have directly and proximately harmed Acosta's reputation, brand and marketability, among other injuries, in an amount to be determined at trial.

4394.  WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, punitive damages in an amount equal to *at least* twice the actual damages, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper

## ACOSTA COUNT VIII
### (Unjust Enrichment against all Defendants)

4395.  Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4396.  Acosta has conferred a benefit upon Defendants by virtue of Defendants usage and self-serving alteration of her images without compensation.

4397.  Defendants were aware that Acosta's image, likeness and/or identity were valuable.

4398.  Defendants were aware of the resulting benefit from usage of Acosta's image, likeness and/or identity.

4399.  Defendants have retained profits and other benefits conferred upon them by using Acosta's image, likeness and/or identity to promote and advertise Defendants' business, the Club or Club events.

4400.  It would be inequitable for the Defendants to retain the benefits conferred upon them by using Acosta's image, likeness and/or identity without paying fair value for the images.

4401.  WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## ACOSTA COUNT IX
### (Negligence against all Defendants)

4402.  Acosta hereby incorporates by reference each and every allegation set forth in paragraphs 1-567 as if fully alleged herein.

4403.  Under the circumstances stated herein, Defendants owed a duty of care towards Acosta.

4404.  Among other things, that duty included the obligation to deal with Acosta and her image, likeness and/or identity in a commercially reasonable and prudent manner, to not use or

alter Acosta's image, likeness or identity in derogation of her rights, and to not cause harm to Acosta.

4405.   Defendants breached that duty by using and altering Acosta's image, likeness or identity without Acosta's authorization, permission or consent.

4406.   Defendants' conduct and breach as described above directly and proximately caused injury to Acosta's reputation, brand, goodwill and livelihood for which she has suffered damages.

4407.   WHEREFORE, Acosta respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, as follows:

(a)      Adjudging and decreeing that Defendants have impermissibly and falsely implied each Plaintiff's association with, voluntary and authorized promotion, advertising, marketing and endorsement of Defendants' business, the Club or the Club's events and activities, have violated each Plaintiff's right of privacy, and have violated each Plaintiff's right of publicity;

(b)      Permanently enjoining and restraining Defendants from further violations and misappropriation of each Plaintiff's image, likeness and identity;

(c)     Awarding each Plaintiff damages including, without limitation, actual or compensatory-type damages, exclusive of lost profits and disgorgement of profits, and exclusive of special, consequential, exemplary or punitive damages, from the multiple instances of unauthorized use and alteration of each Plaintiff's image, likeness and/or identity, false advertising, deceptive practices, violation of right of privacy, violation of right of publicity, defamation and defamation *per se* in an amount to be determined at trial but in no event less than **$5,575,000** aggregated across all Plaintiffs from Velvet Lifestyles, LLC, and **$5,575,000** aggregated across all Plaintiffs from My Three Yorkies, LLC;

(d)     Requiring Defendants to account to each Plaintiff for any and all earnings and profits derived by Defendants from each violation alleged herein;

(e)     Requiring Defendants to disgorge any fees, profits, or money to each Plaintiff by which it has been unjustly enriched;

(f)     Awarding each Plaintiff punitive damages in an amount equal to *at least* twice the actual damages awarded at trial but in no event less than **$11,150,000** aggregated across all Plaintiffs from Velvet Lifestyles, LLC and **$11,150,000** aggregated across all Plaintiffs from My Three Yorkies, LLC;

(g)     Awarding each Plaintiff her and his costs and disbursements incurred in the prosecution of this action, including reasonable attorneys' fees;

(h)     Granting such other, further or different relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

Dated: December 2, 2015

Respectfully Submitted,

/s Naim S. Surgeon
**NAIM S. SURGEON**
Florida Bar No. 101682
Email: naim.surgeon@akerman.com
**AKERMAN LLP**
One Southeast Third Avenue, Suite 2500
Miami, FL 33131-1714
Phone: (305) 982-5679
Fax: (305) 349-4654

And

**CHRISTOPHER G. OPRISON\***
Washington D.C. Bar No. 489087
Texas Bar No. 24035601
Virginia Bar No. 41765
Email: christopher.oprison@akerman.com
**AKERMAN LLP**
750 Ninth Street, N.W., Suite 750
Washington, D.C. 20001
Phone: (202) 824-1703
Fax: (202) 393-5959
*\*Pro Hac Vice Admission to Be Applied For*

*Attorneys for Plaintiffs Jaime Faith Edmondson, Ana Cheri (Moreland), Carrie Minter, Cielo Jean Gibson, Cora Skinner, Danielle Ruiz, Eva Pepaj, Heather DePriest, Irina Voronina, Jesse Golden, Jessica Burciaga, Jessica Hinton, Joanna Krupa, Jordan Carver, Katerina Van Derham, Kim Cozzens, Laurie Fetter (Jacobs), Lina Posada, Maria Zyrianova, Marketa Kazdova, Masha Lund, Maysa Quy, Paola Canas, Rachel Bernstein (Koren), Sandra Valencia, Sara Underwood, Tiffany Toth, Vivian Kindle, Melanie Iglesias, Brenda Lynn Geiger, Heather Rae Young, and Rosa Acosta.*

681