# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

Case No. 15-24442-CIV-LENARD/GOODMAN

JAIME FAITH EDMONDSON, ANA CHERI (MORELAND), CARRIE MINTER, CIELO JEAN GIBSON, CORA SKINNER, DANIELLE RUIZ, EVA PEPAJ, HEATHER DEPRIEST, IRINA VORONINA, JESSE GOLDEN, JESSICA BURCIAGA, JESSICA HINTON, JOANNA KRUPA, JORDAN CARVER, KATERINA VAN DERHAM, KIM COZZENS, LAURIE FETTER (JACOBS), LINA POSADA, MARIA ZYRIANOVA, MARKETA KAZDOVA, MASHA LUND, MAYSA QUY, PAOLA CANAS, RACHEL BERNSTEIN (KOREN), SANDRA VALENCIA, SARA UNDERWOOD, TIFFANY TOTH, VIVIAN KINDLE, MELANIE IGLESIAS, BRENDA LYNN GEIGER, HEATHER RAE YOUNG, and ROSA ACOSTA,

Plaintiffs,

- against -

VELVET LIFESTYLES, LLC, f/k/a VELVET LIFESTYLES, INC., d/b/a MIAMI VELVET, JOY DORFMAN, a/k/a JOY ZIPPER, PRESIDENT OF VELVET LIFESTYLES, LLC, and MY THREE YORKIES, LLC,

Defendants.

**AMENDED COMPLAINT**
**INJUNCTIVE RELIEF SOUGHT**
(Jury Trial Demanded)

# **AMENDED COMPLAINT**[1]

Plaintiffs JAIME FAITH EDMONDSON, ANA CHERI (MORELAND), CARRIE

MINTER, CIELO JEAN GIBSON, CORA SKINNER, DANIELLE RUIZ, EVA PEPAJ,

HEATHER DEPRIEST, IRINA VORONINA, JESSE GOLDEN, JESSICA BURCIAGA,

---

[1] Pursuant to this Court's Order on Defendants' Motion to Dismiss [ECF No. 77], Plaintiffs submit this Amended Complaint stating claims as to the Lanham Act, 15 U.S.C. 1125(a), only.

JESSICA HINTON, JOANNA KRUPA, JORDAN CARVER, KATERINA VAN DERHAM, KIM COZZENS, LAURIE FETTER (JACOBS), LINA POSADA, MARIA ZYRIANOVA, MARKETA KAZDOVA, MASHA LUND, MAYSA QUY, PAOLA CANAS, RACHEL BERNSTEIN (KOREN), SANDRA VALENCIA, SARA UNDERWOOD, TIFFANY TOTH, VIVIAN KINDLE, MELANIE IGLESIAS, BRENDA LYNN GEIGER, HEATHER RAE YOUNG, and ROSA ACOSTA (collectively, "Plaintiffs"), by and through undersigned counsel, hereby file their Amended Complaint against Defendants VELVET LIFESTYLES, LLC, f/k/a VELVET LIFESTYLES, INC., d/b/a MIAMI VELVET, JOY DORFMAN, a/k/a JOY ZIPPER, PRESIDENT OF VELVET LIFESTYLES, LLC, and MY THREE YORKIES, LLC (collectively, "Defendants") and state as follows:

<u>**INTRODUCTION**</u>

1.      Defendants have pirated and altered the images, likeness and/or identity of each Plaintiff Model for purely self-serving commercial purposes – to advertise, promote and market Defendants' own business interests on websites and social media accounts owned, operated, hosted, or controlled by Defendants.

2.      The purpose and intent of Defendants' advertising activities is to attract like-minded individuals who participate in the swinger and spouse-swapping lifestyle from across the country and around the world to attend the events advertised at the Club (defined below) by becoming members of this particular establishment.

3.      Defendants are unapologetic, chronic and habitual infringers.

4.      Defendants never negotiated for or purchased the images.

5.      Defendants never sought consent or authority through appropriate channels to use any of the Plaintiffs' images for any purpose.

6.      No Plaintiff ever agreed, nor would any Plaintiff have agreed, to Defendants' use of her image, likeness and/or identity.

7.      Had each Plaintiff been afforded the opportunity to consider whether to consent and release rights as to the use or alteration of any image, each Plaintiff would have promptly and unequivocally declined.

8.      Defendants' conduct is therefore misleading and deceptive by falsely and fraudulently representing that each Plaintiff Model depicted in the misappropriated images is somehow affiliated with Defendants Velvet Lifestyles LLC or Miami Velvet Club (the "Club"), has contracted to perform at and/or participate in events at the Club, has been hired to promote, advertise, market or endorse its "swinger" or alternative lifestyle events and other activities offered at the Club, and/or that each Plaintiff depicted in the advertisements has attended or will attend each event and has participated in or intends to participate in the activities advertised.

9.      Defendants' conduct is also injurious to each Plaintiff.

10.     Defendants circumvented the typical arms-length negotiation process entirely and pirated the images. In doing so, **Defendants have utterly deprived each Plaintiff the right and ability to say "no."**

11.     Defendants have prevented each Plaintiff from engaging in arms-length negotiations regarding the terms and conditions of use of their images, including the term of any release, remuneration per image or use, or the ability to decline the business opportunity entirely. In short, Defendants deprived each Plaintiff the ability to protect her image, brand and reputation.

12.     In the end, Defendants admittedly gain an economic windfall by using and altering the images of professional and successful models for Defendants' own commercial

3

purposes, luring and enticing patrons worldwide to view the images and visit the Club, without having to compensate the models a single penny for such usage.  Plaintiffs, however, sustain injury to their images, brands and marketability by shear affiliation with Defendants and the type of club operated by Defendants.

13.     As if the economic piracy – the lost commercial opportunity to bargain for and decline Defendants' proposed usage – was not damaging enough, Defendants posted the Plaintiffs' misappropriated and altered images on the miamivelvet.com website and social media outlets owned, hosted, or controlled by Defendants next to or in very close proximity to photos reflecting images of explicit, hardcore pornography – too obscene and offensive, in fact, to even include as an exhibit to this publicly-filed complaint.

14.     Defendants intended to (and did) increase their membership ranks by featuring Plaintiffs' images in their advertisements next to far more explicit and hardcore images.

15.     Such explicit, hardcore images purport to reflect sex acts performed at the Club by Club patrons and at all times the intent was to intimate that Plaintiffs also participated in such activities.  The explicit, hardcore pornographic images strategically positioned by Defendants in proximity to the infringing images, likeness or identity of Plaintiffs reflect unhealthy and unsanitary acts and conditions, including "gang bangs," roving group sex, explicit simultaneous 3-on-1 anal, oral and vaginal penetration, alternating anal penetration, and anal penetration using inanimate objects – in one case, anal penetration using a cluster of 14 Sharpie markers where the consent of the individual depicted in the photo is itself in question.

16.     The explicit, hardcore images are, standing alone, unsettling and disturbing.  But, when posted and presented in conjunction and in close proximity with the unauthorized use of Plaintiffs' images, they are offensive, insulting, humiliating, demeaning, erroneously suggestive

of Plaintiffs' endorsement and participation in the still-photo, film or streaming online hardcore pornographic film industry, and damaging to each model's reputation, marketability and brand.

17.     Having operated a business in the adult entertainment and "swingers" club industry, Defendants are well aware of the standard negotiation process over terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of images for Defendants' commercial benefit.

18.     Moreover, Defendants are no strangers to litigation over the protection of marks, image, and reputation.  Velvet Lifestyles, Inc., the predecessor entity to Velvet Lifestyles, LLC filed an action in this Court on July 19, 2004, styled *Velvet Lifestyles, Inc. v. SDC Media, Inc., et al*, 1:04-cv-21800-FAM (SD Florida 2004) (the "SDC Action"), seeking money damages and injunctive relief from SDC [Swingers Dating Club] for SDC's misappropriation of Velvet Lifestyle's marks in commerce, cybersquatting and cyberpiracy, trademark infringement, unfair competition, and, ironically, *injury to business reputation and dilution*.  The facts of the above-referenced case are sufficiently similar to raise a fair presumption that Defendants knew that at the time they pirated and altered each Plaintiff's image, likeness and identity for Defendants' own commercial use, and failed to engage in an arm's length negotiation, seek consent, or compensate Plaintiffs for the use of such images, Defendants were violating the law.

19.     Even after receiving a demand and cease & desist letter from Plaintiffs' counsel, enclosed herewith as **Exhibit A**[2] (October 16, 2015 Letter)**,** Defendants failed and refused to remove the infringing imagery from one or more social media sites controlled by them.  More egregious is that Defendants have posted *additional* infringing images without any effort to obtain the consent from the model depicted in the posted image.

---

[2]     Plaintiffs' Amended Complaint is amended as to the claims only.  Plaintiffs incorporate by reference each of the exhibits filed with the Original Complaint [ECF No. 1].

20.     Knowing Plaintiffs' objections thereto, Defendants continue to use the images without authority.  Much more than merely a misuse in connection with an innocuous brand or event, Defendants' have defamed and embarrassed Plaintiffs by associating their images with Defendants and the Club.

21.     Each Plaintiff seeks, among other relief, an Order immediately and permanently enjoining Defendants' illegal activities, and compelling Defendants to appropriately compensate each Plaintiff for the theft and piracy of her image.

**PARTIES**

A.  **Plaintiffs**

22.     Given the multitude of violations harming numerous models, and the similarity of misconduct from Defendants harming all models, in the interest of judicial economy, Plaintiffs, through counsel, respectfully consolidate all actionable violations *presently known* into this single collective action on behalf of the following models.

23.     Plaintiff Jaime Faith Edmondson ("Edmondson") is, and at all times relevant to this action was, a professional model and a resident of Saint Petersburg, Florida.

24.     Plaintiff Ana Cheri (Moreland) ("Cheri") is, and at all times relevant to this action was, a professional model and a resident of Westminster, California.

25.     Plaintiff Carrie Minter ("Minter") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

26.     Plaintiff Cielo Jean Gibson ("Gibson") is, and at all times relevant to this action was, a professional model and a resident of Santa Monica, California.

27.     Plaintiff Cora Skinner ("Skinner") is, and at all times relevant to this action was, a professional model and a resident of Santa Monica, California.

28.     Plaintiff Danielle Ruiz ("Ruiz") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

29.     Plaintiff Eva Pepaj ("Pepaj") is, and at all times relevant to this action was, a professional model and a resident of North Hollywood, California.

30.     Plaintiff Heather Depriest ("Depriest") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

31.     Plaintiff Irina Voronina ("Voronina") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

32.     Plaintiff Jesse Golden ("Golden") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

33.     Plaintiff Jessica Burciaga ("Burciaga") is, and at all times relevant to this action was, a professional model and a resident of Whittier, California.

34.     Plaintiff Jessica (Jessa) Hinton ("Hinton") is, and at all times relevant to this action was, a professional model and a resident of Sherman Oaks, California.

35.     Plaintiff Joanna Krupa ("Krupa") is, and at all times relevant to this action was, a professional model and a resident of Studio City, California.

36.     Plaintiff Jordan Carver ("Carver") is, and at all times relevant to this action was, a professional model and a resident of Las Vegas, Nevada.

37.     Plaintiff Katerina Van Derham ("Van Derham") is, and at all times relevant to this action was, a professional model and a resident of North Hollywood, California.

38.     Plaintiff Kim Cozzens ("Cozzens") is, and at all times relevant to this action was, a professional model and a resident of San Jose, California.

39.     Plaintiff Laurie Fetter Jacobs ("Fetter") is, and at all times relevant to this action was, a professional model and a resident of Rye, New York.

40.     Plaintiff Lina Posada ("Posada") is, and at all times relevant to this action was, a professional model and a resident of San Gabriel, California.

41.     Plaintiff Maria Zyrianova ("Zyrianova") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

42.     Plaintiff Marketa Kazdova ("Kazdova") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

43.     Plaintiff Masha Lund ("Lund") is, and at all times relevant to this action was, a professional model and a resident of New York, New York.

44.     Plaintiff Maysa Quy ("Quy") is, and at all times relevant to this action was, a professional model and a resident of Las Vegas, Nevada.

45.     Plaintiff Paola Canas ("Canas") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

46.     Plaintiff Rachel Bernstein Koren ("Bernstein") is, and at all times relevant to this action was, a professional model and a Los Angeles, California.

47.     Plaintiff Sandra Valencia ("Valencia") is, and at all times relevant to this action was, a professional model and a resident of San Gabriel, California.

48.     Plaintiff Sara Underwood ("Underwood") is, and at all times relevant to this action was, a professional model and a resident of Scappoose, Oregon.

49.     Plaintiff Tiffany Toth ("Toth") is, and at all times relevant to this action was, a professional model and a resident of Orange County, California.

50.     Plaintiff Vivian Kindle ("Kindle") is, and at all times relevant to this action was, a professional model and a resident of West Hollywood, California.

51.     Plaintiff Melanie Iglesias ("Iglesias") is, and at all times relevant to this action was, a professional model and a resident of Toluca Lake, California.

52.     Plaintiff Brenda Lynn Geiger ("Geiger") is, and at all times relevant to this action was, a professional model and a resident of Brewerton, New York.

53.     Plaintiff Heather Rae Young ("Young") is, and at all times relevant to this action was, a professional model and a resident of Beverly Hills, California.

54.     Plaintiff Rosa Acosta ("Acosta") is, and at all times relevant to this action was, a professional model and a resident of Los Angeles, California.

**B.   Velvet Lifestyles, LLC, f/k/a Velvet Lifestyles, Inc. d/b/a Miami Velvet**

55.     Velvet Lifestyles, LLC, f/k/a Velvet Lifestyles, Inc., (collectively, "Velvet Lifestyles") is a limited liability corporation organized and existing under the laws of the State of Florida with a principal place of business at 3901 NW 77th Avenue, Miami, Florida 33180. Velvet Lifestyles is, and during all times relevant to the allegations in this Complaint was, operating and doing business "Miami Velvet" (as defined above, or "the Club").

56.     The Club is a private, members-only club marketing and catering locally and nationally to individuals who engage in the "swinger," "spouse swapping" or open relationship lifestyle and who seek to regularly attend events where they can participate in those activities..

57.     Clubs similar to Miami Velvet are distributed throughout the country and regularly seek to entice individuals who engage in the "swinger," "spouse swapping," or open relationship lifestyle to visit the Club where they can engage in sexual activities with  likeminded

persons.  Notably, Miami Velvet attracts significant numbers of tourists who visit the state of Florida and seek out swinger's clubs and sex parties to enjoy while they vacation.

58.     Individuals who attend the Club's events are sold memberships.  Membership is not elective.  Attendees must purchase a membership in order to enter the Club and attend an event. However, by purchasing a membership, which is valid for approximately two months, members are allowed to attend multiple events at the Club.  Generally, the Club hosts three parties per week.

59.     Defendants own and/or operate miamivelvet.com as well as other social media accounts and websites through which they advertise their business which frequently and continuously posts explicit, hardcore pornography to depict actual sex acts performed at the Club.

60.     Miami Velvet has "members from all over the world" and holds multiple "swinger" or "spouse swapping" events throughout each month.  For many of these events, Images of one or more of the Models are used to market and promote the events.

61.     Prospective Members and interested parties typically purchase their memberships in one of two ways: at the door when they present at the Club for an event, or online in advance of any event after receiving advertisements for the Club's events.  According to Miami Velvet's corporate representative's sworn deposition testimony, the majority of Miami Velvet's members choose to pay for their memberships online through the Club's website.

62.     The Club coordinates its advertising, marketing and promotional activities through, among other things, active and dynamic use of its website miamivelvet.com, an email distribution list that advertises the Club's events to its members throughout the country and the

world, and various coordinated social media promotions through Facebook, Twitter, Instagram and Tumblr, among others.

63.    For this reason, Defendants expressly acknowledged both in this action and in the SDC Action that its membership and services are extensively offered for sale in interstate commerce.  Indeed, Defendants maintain that its services under the "Miami Velvet" mark have been widely advertised and extensively offered for sale and sold in interstate commerce in the United States and the State of Florida."  *SDC Action*, 1:04-cv-21800-FAM (Doc 1 (Complaint) at ¶ 16.)

64.    Online, Velvet Lifestyles describes the Club as:

> Florida's largest on premise Swingers Club! Swingers throughout South Florida, from Miami, Fort Lauderdale, West Palm Beach, and the Florida Keys, as well as across the world come to enjoy the best adult fantasy swinger's club nightclub around. Miami Velvet puts style in the lifestyle. Miami Velvet is open Wednesday, Friday and Saturday nights and hosts monthly themed parties. It also hosts parties from some of the biggest names in the Lifestyle.[3]

## C.  Defendant Joy Dorfman, a/k/a Joy Zipper

65.    Joy Dorfman ("Dorfman"), a/k/a Joy Zipper, is an individual who works and/or resides in Broward County, Florida.

66.    Dorfman presently serves, and during all times relevant to the allegations raised herein served, as the President of Defendant Velvet Lifestyles, LLC.

67.    Dorfman serves, and during all time relevant to the allegations raised herein served, as Managing Member of Defendant My Three Yorkies, LLC.

68.    As President of Defendant Velvet Lifestyles, LLC, and Managing Member of Defendant My Three Yorkies, LLC, Dorfman has, and during all times relevant to the allegations raised herein had, operational and managerial control and responsibility over the business

---

[3] http://miamivelvet.com.

operations of, and decision-making authority for, Velvet Lifestyles and the Club, including decisions relating to Miami Velvet's promotional, advertising, marketing and endorsement activities such as those detailed in this Complaint.

69.     Dorfman is married to Randy Dorfman who, while taking an active role in the management and operation of Velvet Lifestyles, My Three Yorkies, LLC, and Globex, LLC, which is the managing member of My Three Yorkies, LLC.

**D.  Defendant "My Three Yorkies, LLC"**

70.     My Three Yorkies, LLC ("Yorkies") is a limited liability corporation organized and existing under the laws of the State of Florida with a principal place of business at 6070 N. Federal Highway, Boca Raton, Florida 33487.

71.     Yorkies presently serves, and during all times relevant to the allegations raised herein served, as the Managing Member of Velvet Lifestyles.  As Managing Member, Yorkies has, and during all times relevant to the allegations raised herein had, operational and managerial control and responsibility over the business operations of and decision-making authority for Velvet Lifestyles and the Club, including decisions relating to Miami Velvet's promotional, advertising, marketing and endorsement activities such as those detailed in this Complaint.

**E.  The Miami Velvet Websites and Business Model**

72.     Defendants have a unified business structure, through which Defendants advertise events at the Club and offers members of the Club to attend those events through payment of a discounted fee.

73.     Miamivelvet.com is registered to Velvet  Lifestyles, LLC, f/k/a Velvet Lifestyles, Inc.

74.     The exhibits hereto reflect that the infringing images which form the basis for the claims raised herein were jointly advertised and/or promoted by the Defendants for the benefit of all Defendants.

## JURISDICTION AND VENUE

75.     This Court has original federal question jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 as Plaintiffs have each individually stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

76.     The Court has personal jurisdiction over Defendants Velvet Lifestyles, LLC and My Three Yorkies, LLC based on their contacts with the State of Florida, including but not limited to each Defendant's registration to conduct business in Florida, each has its physical location and principal place of business in Florida, and each, upon information and belief, committed, facilitated, assisted, encouraged or conspired to commit the actions giving rise to the harm and damages alleged herein in the State of Florida.

77.     The Court has personal jurisdiction over Defendant Dorfman. Defendant Dorfman lives and works in the State of Florida, operates the Club as its president in the State of Florida, and, upon information and belief, is ultimately responsible for the decisions and business choices for the Club and My Three Yorkies, LLC that give rise to the allegations in the Complaint.

78.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b) because all Defendants reside in the Southern District of Florida and have their principal place of business in either Broward or Miami-Dade County, Florida and all acts giving rise to the claims set forth herein occurred or originated in either Broward or Miami-Dade County, both of which are in the Southern District of Florida.

## FACTUAL BACKGROUND

**A. <u>Standard and Customary Business Practices in the Modeling Industry Require Arms-Length Negotiations over the Terms and Conditions of Usage and Remuneration for any Modeling Images</u>**

79.     In the modeling industry, reputation is critical.  Being vigilant and proactive about protecting one's reputation is therefore of paramount importance.

80.     Each Plaintiff is a professional model who earns a living by promoting her image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on her reputation and own brand for modeling, acting, hosting, and other opportunities.

81.     Not one Plaintiff has ever participated in the hardcore pornography industry, whether magazine, film or streaming online media.  On the contrary, each Plaintiff's career in modeling, acting, and/or private enterprise has value stemming from the goodwill and reputation each has built, all of which is critical to establishing a brand, being selected for jobs and maximizing earnings.

82.     Each Plaintiff has worked to establish herself as reliable, reputable and professional.

83.     Each Plaintiff must necessarily be vigilant in protecting her "brand" from harm, taint, or other diminution.

84.     Any improper or unauthorized use of an image, likeness or identity could substantially injure the career and career opportunities of each Plaintiff.

85.     In the modeling industry, models such as Plaintiffs typically do not have a single employer, but rather work on an independent contractor basis for different agents or entities.

86.     Each Plaintiff is a responsible professional in the ordinary course.  Each Plaintiff seeks to control the use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, brand spokesperson, or hosting engagements.

87.     A model's vetting and selection of a professional engagement involves a multi-tiered assessment, to wit:

   a.   determine whether the individual or entity seeking a license and release of a model's image, likeness or identity is reputable, has reputable products or services, and, through affiliation therewith, would enhance or harm a model's stature or reputation;

   b.   this reputational information is used in negotiating compensation which typically turns on the work a model is hired to do, the time involved, travel and how her image is going to be used (among other variables);

   c.   to protect her reputation and livelihood, a model or agent carefully and expressly defines the terms and conditions of use;

   d.   the entire negotiated deal is reduced to and memorialized in an integrated, written agreement which defines the parties' relationship.  The terms and conditions of the Agreement typically, unless otherwise expressly delineated, bind and are applicable to only the parties to that Agreement.

88.     Endorsing, promoting, advertising or marketing the "wrong" product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.  Conversely, association with high-end companies, products, or magazines can

enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

89.     For these reasons, *even if* a model chose to jeopardize her career for a compromising engagement – such as appearing in an advertisement for a "swingers" club that posts boastful images of group sex, 3-in-1 "gang bangs" and anal penetration with clustered Sharpie markers – the fee she would charge would necessarily far exceed the fee typically charged for more mainstream and reputable work.

**B.**  **Defendants Have Misappropriated and Altered Each Plaintiff's Image, Likeness and Identity For Use In Interstate Commerce Without Authority, for Self-Serving Commercial Gain and Without Offering or Paying Compensation to any Plaintiff**

90.     As set forth below, each Plaintiff's image, likeness and/or identity has been misappropriated and intentionally altered by or at the direction of the Defendants for use in interstate commerce by incentivizing potential members from around the United States to purchase online memberships after viewing advertisements featuring Plaintiffs' Images and to travel across state lines to attend events at the Club.  Defendants' conduct created the false and misleading appearance and impression that each Plaintiff either worked for Defendants, had appeared and participated or would appear and participate in Defendants' activities or events at the Club, and/or has agreed and consented to advertise, promote, market or endorse Defendants' business, the Club or one or more Club events or activities.

91.     The images at issue affect interstate commerce as such images were lawfully used by corporations in interstate commerce to advertise products and services.

92.     Defendants promote the Club on the Internet through Facebook, Instagram, and other websites and social media that operate through interstate commerce and are viewable and have been viewed by persons in and out of the state of Florida.

93.     Defendants use a Utah-based company, TXT180, Inc. to send text messages or text "blasts" to advertise the Club's events, including, upon information and belief, events that were advertised using Plaintiffs' images.  Persons that subscribe to such text messages or text blasts participate in advertising that is sent via text message across state lines and through interstate commerce.

94.      The companies and websites through which the offending advertisements were promoted online traveled through interstate commerce as the servers for websites that hosted the offending advertisements are maintained outside of Florida and are owned by companies that are located outside of Florida.

95.     Defendants'' online marketing was accessible to individuals through the United States and the world.

96.     Defendant's President and chief executive, Randy Dorfman, operates the Club and its marketing strategy from Nevada and therefore operates the Club across state lines.

97.     Defendant's President and chief executive, Randy Dorfman, upon information and belief, regularly transfers money and assets from the Club to himself in Nevada.

98.     Defendants coordinate their advertising with nationwide swinger networks and swinger social networking websites, and therefore advertise Club events through interstate commerce.

### *Plaintiff Jaime Faith Edmondson*

99.     Edmondson is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.  After graduating from Florida Atlantic University with a degree in Criminal Justice in 2002, Edmondson worked as a police officer in Boca Raton, Florida for two years.  She then became a cheerleader for the Miami

Dolphins.  Edmondson, along with a fellow Miami Dolphins cheerleader, participated in "The Amazing Race 14" reality TV series.  As a model, Edmondson was a *Playboy* Playmate.  She is also a sports blogger for *Playboy* online and co-host of Sirius Fantasy Sports Radio.  Edmondson appeared on "The Bunny House" documentary, and in the Trace Adkins video for "This Aint No Love Song," among others.

100.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Edmondson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

101.    Edmondson's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit B** to the Complaint, which has been used at least two times and altered to create the false perception that Edmondson has consented or agreed to promote, advertise, market and/or endorse the Club's events to benefit Defendants' commercial interests.

102.    Even after Edmondson's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Edmondson's demands.

103.    Edmondson's image, likeness and identity in **Exhibit B** are being used as advertising.

104.    Edmondson's image, likeness and identity in **Exhibit B** are being used on social media.

105.    Edmondson has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

106.    Edmondson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

107.    Defendants never sought permission or authority to use or alter Edmondson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

108.    Edmondson never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

109.    Defendants neither offered nor paid any remuneration to Edmondson for the unauthorized use and self-serving alteration of her image, likeness or identity.

110.    Defendants' use of Edmondson's image, likeness and identity in connection with the Club's "swinger" events impugns Edmondson's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

111.    Defendants' use of Edmondson's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Edmondson endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

112.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Edmondson's images in their market activities and business. In doing so, Defendants have further damaged Edmondson.

*Plaintiff Ana Cheri (Moreland)*

113.    Cheri is, and at all times relevant to this action was, a successful professional model, spokeswoman, businesswoman and actress with numerous accomplishments.  As a model and spokeswoman, Cheri was a *Playboy* Playmate and also works Shredz Supplements as a model, brand Ambassador and motivational speaker representing strength, positivity and healthy lifestyles.  Cheri is contracted to appear at events and seminars and has worked with many big name companies and charities around the world.  As a businesswoman, Cheri recently launched a new gym, "Be More Athletics" in Santa Ana, California and debuted in *Muscle & Fitness* Magazine.

114.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Cheri negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

115.    Cheri's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit C** to the Complaint, which has been used at least four times and altered to create the false perception that Cheri has consented or agreed to promote, advertise, market and/or endorse the Club and the Club's events to benefit Defendants' commercial interests.

116.    Even after Cheri's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Cheri's demands.

117.    Cheri's image, likeness and identity in **Exhibit C** are being used as advertising.

118.    Cheri's image, likeness and identity in **Exhibit C** are being used on social media.

119.    Cheri's image, likeness and identity in **Exhibit C** are tagged with "#swingersclub" and "#swingersparty" and are being used for branding purposes.

120.   Cheri's image, likeness and identity in **Exhibit C** have an additional usage, having been tagged with "Rate her . . . 1<2<3>4,. . . ."

121.   Cheri has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

122.   Cheri has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

123.   Defendants never sought permission or authority to use or alter Cheri's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

124.   Cheri never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

125.   Defendants neither offered nor paid any remuneration to Cheri for the unauthorized use and self-serving alteration of her image, likeness or identity.

126.   Defendants' use of Cheri's image, likeness and identity in connection with the Club's "swinger" events impugns Cheri's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

127.   Defendants' use of Cheri's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Cheri endorsed the

Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

128.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Cheri's images in their market activities and business.  In doing so, Defendants have further damaged Cheri.

### *Plaintiff Carrie Minter*

129.    Minter is, and at all times relevant to this action was, a successful professional model, actress and businesswoman with numerous accomplishments.  As a model, Minter was a Playboy Playmate, and has appeared in such other magazines as GQ, Maxim, FHM, Seventeen, Aroos Bridal Magazine, Apparel News.  Minter has also been featured in advertising campaigns for Harley Davidson, Dreamgirl International, Elegant Moments Lingerie, Benchwarmer Trading Cards, JC Penney, Women's Wear Daily, Simin Couture, the Beverly Hills Hotel, Ferrari, Renaissance Hotel & Spa, Gillette, Love FiFi Lingerie, Music Legs, Linder Sport/Sexy Shapewear, Have Faith Swimgerie, Wendy Griffin Jewelry, Shirley of Hollywood, and many other companies.  Minter has also been featured in commercials, television series, music videos, and films.  Minter's business ventures include her ownership of "Carrie's Pilates Plus."

130.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Minter negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

131.    Minter's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit D** to the Complaint, which has been used at least four times and altered to

create the false perception that Minter has consented or agreed to promote, advertise, market and/or endorse the Club's "Nothing But Net" event to benefit Defendants' commercial interests.

132.    Even after Minter's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Minter's demands.

133.    Minter's image, likeness and identity in **Exhibit D** are being used as advertising.

134.    Minter's image, likeness and identity in **Exhibit D** are being used on social media.

135.    Minter's image, likeness and identity in **Exhibit D** are being used as a "coupon", offering "Single Ladies wearing fishnets Free Entry."

136.    Minter's image, likeness and identity in **Exhibit D** are tagged with "It's going to get erotic fast" and are being used for branding purposes.

137.    Minter has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

138.    Minter has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

139.    Defendants never sought permission or authority to use or alter Minter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

140.    Minter never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants business, the Club or any Club event.

141.    Defendants neither offered nor paid any remuneration to Minter for the unauthorized use or self-serving alteration of her image, likeness or identity.

142.   Defendants' use of Minter's image, likeness and identity in connection with the Club's "swinger" events impugns Minter's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

143.   Defendants' use of Minter's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Minter endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

144.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Minter's images in their market activities and business.   In doing so, Defendants have further damaged Minter.

### *Plaintiff Cielo Jean Gibson*

145.   Gibson is, and at all times relevant to this action was, a successful businesswoman and professional model with numerous accomplishments.   Gibson's business ventures include developing her own line of health supplements and fitness clothing.   As a model, Gibson was the *Import Tuner* magazine Model Search winner, is a model for the Falken Drift Team, and has appeared in magazines such as *FHM*, *American Curves* as a cover model, *Supreme*, *MuscleMag International*, *Muscle & Fitness*, *Teeze*, and in a *Bowflex* ad.  Gibson has also modeled for Short Block Technologies (SBT, Inc.), and appeared in a home workout video called ENVY.

146.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Gibson negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

147.    Gibson's image, likeness and identity are depicted in at least five photographs, enclosed as **Exhibit E** to the Complaint, one of which has been used at least four times and altered to create the false perception that Gibson has consented or agreed to promote, advertise, market and/or endorse the Club's "Genie in a Bottle Party," and the four remaining images having been similarly misused and altered to create the false impression that Gibson has consented or agreed to promote, advertise, market and/or endorse the Club and its other events to benefit Defendants' commercial interests.

148.    Even after Gibson's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Gibson's demands.

149.    Gibson's image, likeness and identity in **Exhibit E** are being used as advertising.

150.    Gibson's image, likeness and identity in **Exhibit E** are being used on social media.

151.    Gibson's image, likeness and identity in **Exhibit E** are being used as a "coupon", having been tagged with "Entry is Free."

152.    Gibson's image, likeness and identity in **Exhibit E** are tagged with "members.miamivelvet" and are being used for branding purposes.

153.    Gibson has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

154.     Gibson has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

155.     Defendants never sought permission or authority to use or alter Gibson's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

156.     Gibson never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

157.     Defendants neither offered nor paid any remuneration to Gibson for the unauthorized use and self-serving alteration of her image, likeness or identity.

158.     Defendants' use of Gibson's image, likeness and identity in connection with the Club's "swinger" events impugns Gibson's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

159.     Defendants' use of Gibson's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Gibson endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

160.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to

26

further utilize and misappropriate Gibson's images in their market activities and business.   In doing so, Defendants have further damaged Gibson.

### *Plaintiff Cora Skinner*

161.    Skinner is, and at all times relevant to this action was, a successful professional model, brand spokesperson, and actress with numerous accomplishments.  As a model, Skinner has appeared in pictorials and features in *Maxim* (USA), *Maxim* (Spain), *FHM* (USA), *Maxim* (Belgium), *Muscle & Fitness*, and *Playboy's* lingerie catalog.  Skinner has also been featured on her own set of Bench Warmer model trading cards and was a contract model of *Hot Bike* and *Import Tuner*.  As a brand spokesperson, Skinner has featured in campaigns for Sketchers, Aether Apparel, Monari Clothing, GUESS, Sears, Palm's Casino, Nordstrom's and many others. As an actress, Skinner has presented trophies at the Emmys, dressed up like a superhero for Spike TV's Scream Awards and has done several live skits on Jay Leno's *Tonight Show*.  She has also been featured on such shows as *Las Vegas, Shark, Deal or No Deal, Chuck, Rules of Engagement, CSI: Miami* and *The Office*.  Skinner also starred in the "Nine Lives" video by Def Leopard, and "Just Go" by Lionel Richie.

162.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Skinner negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

163.    Skinner's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit F** to the Complaint, which has been used at least three times and altered to create the false perception that Skinner has consented or agreed to promote, advertise, market and/or endorse the Club's "Veteran's Day Crazy Camo Party" event to benefit Defendants' commercial interests.

164.     Even after Skinner's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Skinner's demands.

165.     Skinner's image, likeness and identity in **Exhibit F** are being used as advertising.

166.     Skinner's image, likeness and identity in **Exhibit F** are being used on social media.

167.     Skinner's image, likeness and identity in **Exhibit F** are tagged with ". . . pure erotic fun . . ." and are being used for branding purposes.

168.     Skinner has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

169.     Skinner has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

170.     Defendants never sought permission or authority to use or alter Skinner's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

171.     Skinner never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

172.     Defendants neither offered nor paid any remuneration to Skinner for the unauthorized use and self-serving alteration of her image, likeness or identity.

173.     Defendants' use of Skinner's image, likeness and identity in connection with the Club's "swinger" events impugns Skinner's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

28

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

174.     Defendants' use of Skinner's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that they could attend events advertised in interstate commerce that falsely suggested that Skinner endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

175.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Skinner's images in their market activities and business. In doing so, Defendants have further damaged Skinner.

### *Plaintiff Danielle Ruiz*

176.     Ruiz is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host and actress with numerous accomplishments. As a model, Ruiz has worked for Foreplay Lingerie, Elegant Moments, Escante Lingerie, Hustler Apparel, Body Zone Apparel, and Ziggy NY shoes. She was a contract model for Frederick's of Hollywood and L*Space and has appeared in many magazines and on the covers of *Maxim* and *Elegant*. As a brand spokesperson, Ruiz was Rockstar Energy's "Miss Motocross" and Monster Energy Dime Squad Girl. As a host and actress, Ruiz has appeared on *The New Girl*, *The Finder*, *Breaking In*, *Cougar Town*, *CSI*, *Entourage*, *Miami Trauma*, *Dark Blue*, *Love Bites*, *Friends With Benefits*, *Battle LA: The Ex's* and hosted the series *World Poker Tour (WPT): Royal Flush*.

177.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Ruiz negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

178.   Ruiz's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit G** to the Complaint, one of which has been used at least four times and altered to create the false perception that Ruiz has consented or agreed to promote, advertise, market and/or endorse the Club's "Bunny Bash" and the second of which has been used and similar altered to create the false impression that Ruiz has consented or agreed to promote, advertise, market and/or endorse the Club's "animal print" themed event to benefit Defendants' commercial interests.

179.   Even after Ruiz's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Ruiz's demands.

180.   Ruiz's image, likeness and identity in **Exhibit G** are being used as advertising.

181.   Ruiz's image, likeness and identity in **Exhibit G** are being used on social media.

182.   Ruiz's image, likeness and identity in **Exhibit G** are tagged with "SDC" for "Swingers Date Club" and "#swingersclub" and are being used for branding purposes.

183.   Ruiz's image, likeness and identity in **Exhibit G** have also been tagged "#flipagram" and used on a video and flipagram.

184.   Ruiz's image, likeness and identity in **Exhibit G** have been used for an additional, foreseeable use by *Xcitement* magazine.

185.   Ruiz has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

186.     Defendants never sought permission or authority to use or alter Ruiz's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

187.     Ruiz never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

188.     Defendants neither offered nor paid any remuneration to Ruiz for the unauthorized use and self-serving alteration of her image, likeness or identity.

189.     Defendants' use of Ruiz's image, likeness and identity in connection with the Club's "swinger" events impugns Ruiz's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

190.     Defendants' use of Ruiz's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Ruiz endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

191.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Ruiz's images in their market activities and business.  In doing so, Defendants have further damaged Ruiz.

31

*Plaintiff Eva Pepaj*

192.    Pepaj is, and at all times relevant to this action was, a successful professional model, brand spokesperson, and actress with numerous accomplishments.  Pepaj has appeared in numerous print and media advertisements, including a national Diet Coke TV commercial and in advertisements for Oil of Olay, Fruit of the Loom, Kohler and Coca Cola.  As an actress, Pepaj has had a lead role in *The Hand Off, Interior, Leather Bar,* and *The Romp.*

193.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Pepaj negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

194.    Pepaj's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit H** to the Complaint, which has been used at least four times and altered to create the false perception that Pepaj has consented or agreed to promote, advertise, market and/or endorse the Club's "St Patty's Day Meet & Greet" event to benefit Defendants' commercial interests.

195.    Even after Pepaj's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Pepaj's demands.

196.    Pepaj's image, likeness and identity in **Exhibit H** are being used as advertising.

197.    Pepaj's image, likeness and identity in **Exhibit H** are being used on social media.

198.    Pepaj's image, likeness and identity in **Exhibit H** are tagged with "SDC" for "Swingers Date Club" and "the premier swing club" and are being used for branding purposes.

199.    Pepaj's image, likeness and identity in **Exhibit H** are also being used as a "coupon", offering "the earlier you arrive, the less your admission price."

200.    Pepaj has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

201.    Defendants never sought permission or authority to use or alter Pepaj's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

202.    Pepaj never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

203.    Defendants neither offered nor paid any remuneration to Pepaj for the unauthorized use and self-serving alteration of her image, likeness or identity.

204.    Defendants' use of Pepaj's image, likeness and identity in connection with the Club's "swinger" events impugns Pepaj's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

205.    Defendants' use of Pepaj's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Pepaj endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

206.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to

further utilize and misappropriate Pepaj's images in their market activities and business.  In doing so, Defendants have further damaged Pepaj.

### Plaintiff Heather Depriest

207.    Depriest is, and at all times relevant to this action was, a successful professional model and brand spokesperson with numerous accomplishments.  Depriest has made multiple appears in national GUESS campaigns and her image has been used repeatedly in magazines, on posters, billboards and in store displays for GUESS.  Depriest is the September 2015 *Playboy* cover girl, and has appeared in multiple other magazines including *L'official*, *Hudson Hawaii* magazine, *Kode* magazine and *Latch*.  Depriest has also been a national brand model for products such as Sexy Hair, Faces by Lena and Alfaparf products.

208.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Depriest negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

209.    Depriest's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit I** to the Complaint, one of which has been used at least four times and altered to create the false perception that Depriest has consented or agreed to promote, advertise, market and/or endorse the Club's ""Shake Your Tailfeather Booty Shaking Context for Cash" event and the other of which has been used as least three times and similarly altered to create the false perception that Depriest has consented or agreed to promote, advertise, market and/or endorse a wild "animal print" party at the Club to benefit Defendants' commercial interests.

210.    Even after Depriest's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Depriest's demands.

211.    Depriest's image, likeness and identity in **Exhibit I** are being used as advertising.

212.    Depriest's image, likeness and identity in **Exhibit I** are being used on social media.

213.    Depriest's image, likeness and identity in **Exhibit I** are tagged with "#swingers" and "#swingersclub" and are being used for branding purposes.

214.    Depriest's image, likeness and identity in **Exhibit I** are also being used as a "coupon", advertising cash prizes for participation in the "Shake Your Tailfeather" contest.

215.    Depriest has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

216.    Defendants never sought permission or authority to use or alter Depriest's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

217.    Depriest never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

218.    Defendants neither offered nor paid any remuneration to Depriest for the unauthorized use and self-serving alteration of her image, likeness or identity.

219.    Defendants' use of Depriest's image, likeness and identity in connection with the Club's "swinger" events impugns Depriest's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

220. Defendants' use of Depriest's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that they could attend events advertised in interstate commerce that falsely suggested that Depriest endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

221. Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Depriest's images in their market activities and business. In doing so, Defendants have further damaged Depriest.

### Plaintiff Irina Voronina

222. Voronina is, and at all times relevant to this action was, a successful professional model, spokesmodel and actress with numerous accomplishments. As a model, Voronina has modeled internationally for more than 14 years, was a Playboy "Playmate of the Month" and has been named "Model Of the Year" by *Kandy* Magazine based on the highest number of digital issue downloads on iPad and iPhone. Voronina has also modeled for international brands such as SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour, among others. Additionally, Voronina has appeared in numerous magazines including *FHM*, *Maxim*, *Maxim* (Italy), *Ocean*, *Shape, 944, Knockout, Q (UK)*, and *People* (Australia). Voronina was a St Pauli Girl Beer spokes model, led a year-long public relations tour across the United States for the beer brand, and became first ever St. Pauli Girl to ring the NYSE closing bell. As a spokesmodel, Voronina was the main host of Playboy Radio's weekly shows "Playmate Club" and interviewed hundreds of celebrities live on air. As an actress, Voronina has appeared in *Reno 911, Balls of*

*Fury, Towelhead*, and *Piranha 3DD,* as well as television shows *Svetlana*, on the live action show *Saul of the Mole Men*, and as a guest star on Nickelodeon's *iCarly*.

223.    Voronina has more than 2 million Facebook fans.

224.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Voronina negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

225.    Voronina's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit J** to the Complaint, one of which has been used at least three times and altered to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse the Club's "Horny as Hell" Halloween party and the other of which has been used and similarly altered to create the false perception that Voronina has consented or agreed to promote, advertise, market and/or endorse the Club's "sexiest fairy tale princess" themed event to benefit Defendants' commercial interests.

226.    Even after Voronina's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Voronina's demands.

227.    Voronina's image, likeness and identity in **Exhibit J** are being used as advertising.

228.    Voronina's image, likeness and identity in **Exhibit J** are being used on social media.

229.    Voronina's Image, likeness and identity in **Exhibit J** are tagged with "horny as hell," "sexual gratification," and "Youngest Swingers Club" and are being used for branding purposes.

230.    Voronina's Image, likeness and identity in **Exhibit J** are also being used as a "coupon", offering new members "Free One Month Membership."

231.    Voronina has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

232.    Voronina has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

233.    Defendants never sought permission or authority to use or alter Voronina's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

234.    Voronina never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

235.    Defendants neither offered nor paid any remuneration to Voronina for the unauthorized use and self-serving alteration of her image, likeness or identity.

236.    Defendants' use of Voronina's image, likeness and identity in connection with the Club's "swinger" events impugns Voronina's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

237.    Defendants' use of Voronina's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Voronina endorsed the

Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

238.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Voronina's images in their market activities and business.  In doing so, Defendants have further damaged Voronina.

### *Plaintiff Jesse Golden*

239.    Golden is, and at all times relevant to this action was, a successful professional model, brand spokesperson and businesswoman with numerous accomplishments.  Her business ventures include being a Holistic Health Practitioner and is a certified Hatha Yoga instructor.  As a model and brand spokesperson, Golden has worked with national and international brands such as Abercrombie & Fitch, Victoria Secret, Speedo, Lucy Sport, Coca Cola, Gap, Nike.  She has also appeared on the covers of the *New York Times* Magazine, *Fitness* Magazine, *Newport Beach* Magazine, and *Yoga International*, among others.

240.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Golden negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

241.    Golden's image, likeness and identity are depicted in at least four photographs, enclosed as **Exhibit K** to the Complaint, one of which has been used at least three times and altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's Toga Part themed event, another of which was used at least three times and similarly altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's "Moulin Rouge" event, a third of

which was used and similarly altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's "Polka Dot Paradize" party, and a fourth of which was used and similarly altered to create the false perception that Golden has consented or agreed to promote, advertise, market and/or endorse the Club's "Candy Cane Martini Cocktail party" to benefit Defendants' commercial interests.

242.    Even after Golden's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Golden's demands.

243.    Golden's image, likeness and identity in **Exhibit K** are being used as advertising.

244.    Golden's image, likeness and identity in **Exhibit K** are being used on social media.

245.    Golden's image, likeness and identity in **Exhibit K** are tagged with "SDC" for Swingers Date Club and "very arousing night" and are being used for branding purposes.

246.    Golden has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

247.    Defendants never sought permission or authority to use or alter Golden's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

248.    Golden never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

249.    Defendants neither offered nor paid any remuneration to Golden for the unauthorized use and self-serving alteration of her image, likeness or identity.

250.    Defendants' use of Golden's image, likeness and identity in connection with the Club's "swinger" events impugns Golden's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

251.    Defendants' use of Golden's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Golden endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

252.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Golden's images in their market activities and business.  In doing so, Defendants have further damaged Golden.

### Plaintiff Jessica Burciaga

253.    Burciaga is, and at all times relevant to this action was, a successful businesswoman, professional model and actress with numerous accomplishments.  Burciaga's business ventures include a women's online clothing boutique, www.SailorandSaint.com.  As a model, Burciaga won *Stuff* Magazine's "Neighborhood Knockout" contest, appeared as a ring girl in EA Sports Fight Night Round 3 video game, was a *Playboy* Playmate, and was featured in *Maxim*, *Import Tuner*, *Modified Magazine*, *Performance Auto & Sound*, *Show Latina*, and

*Lowrider* Magazine, among others.  As an actress, Burciaga has appeared as herself in several episodes of "The Girls Next Door" reality TV series.

254.   Burciaga has over 1.2 million Instagram followers and 200,000 Twitter subscribers.

255.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Burciaga negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

256.   Burciaga's image, likeness and identity are depicted in at least four photos, enclosed as **Exhibit L** to the Complaint, one of which has been used at least four times and altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's blue-themed event, another of which was used at least four times and similarly altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's "SEXY Latin weekend" events, a third of which was used at least four times and similarly altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's "Wine-O" wine & cheese event, and the fourth of which was used at least three times and similarly altered to create the false perception that Burciaga has consented or agreed to promote, advertise, market and/or endorse the Club's wild animal print-themed event to benefit Defendants' commercial interests.

257.   Even after Golden's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Golden's demands.

258.   Burciaga's image, likeness and identity in **Exhibit L** are being used as advertising.

259.   Burciaga's image, likeness and identity in **Exhibit L** are being used on social media.

260.   Burciaga's image, likeness and identity in **Exhibit L** are tagged with "#swingersclub" and are being used for branding purposes.

261.   Burciaga's image, likeness and identity in **Exhibit L** are being used for the additional purposes as a video and flipagram.

262.   Burciaga has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

263.   Burciaga has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

264.   Defendants never sought permission or authority to use or alter Burciaga's image, likeness or identity to advertise, promote, market or endorse Defendants, the Club, or any Club event.

265.   Burciaga never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

266.   Defendants neither offered or paid any remuneration to Burciaga for the unauthorized use or self-serving alteration of her image, likeness or identity.

267.   Defendants' use of Burciaga's image, likeness and identity in connection with the Club's "swinger" events impugns Burciaga's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

268.    Defendants' use of Burciaga's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Burciaga endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

269.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Burciaga's images in their market activities and business.  In doing so, Defendants have further damaged Burciaga.

### *Plaintiff Jessica Hinton*

270.    Hinton is, and at all times relevant to this action was, a successful businesswoman, professional model, host, actress and television personality with numerous accomplishments.  Hinton's business ventures include being named Creative Director for MAJR Media and given part ownership for her role with the company.  As a model, Hinton has been the Palms Hotel & Casino's ad campaign spokesmodel, a *Playboy* "Playmate of the Month," has been featured as the front cover model for magazines such as *FHM, Kandy* Magazine, *MMA Sports* Magazine, *Guitar World* and *Muscle & Fitness* Magazine.  She served as the spokesmodel for Milwaukee's Best Beer in conjunction with Playboy Enterprises, the spokesmodel for Affliction Clothing, Enzo Milano Hair Products, REVIV Wellness Spa, Protein World and has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue and Roma Costume.

Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. As an actress, Hinton has appeared in multiple national television commercials, on "Baywatch" and "7th Heaven." Hinton has also been the host of Victory Poker interviewing poker players and celebrities and as an interview personality for Top Rank Boxing, interviewing Manny Pacquiao and Shane Mosley. Hinton has also been a guest host for Los Angeles television station KTLA.

271. Hinton has 1 million Instagram followers.

272. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Hinton negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

273. Hinton's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit M** to the Complaint, one of which has been used at least three times and altered to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse the Club's "Nuts & Bolts" meet and greet event, and another of which has been used at least three times to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse another non-descript Club event to benefit Defendants' commercial interests.

274. Even after Hinton's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Hinton's demands.

275. Hinton's image, likeness and identity in **Exhibit M** are being used as advertising.

276. Hinton's image, likeness and identity in **Exhibit M** are being used on social media.

277.    Hinton's image, likeness and identity in **Exhibit M** are tagged with  "sexiest meet and greet," "#swingersclub" and "#swingers" and are being used for branding purposes.

278.    Hinton has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

279.    Hinton has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

280.    Defendants never sought permission or authority to use or alter Hinton's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

281.    Hinton never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

282.    Defendants neither offered nor paid any remuneration to Hinton for the unauthorized use and self-serving alteration of her image, likeness or identity.

283.    Defendants' use of Hinton's image, likeness and identity in connection with the Club's "swinger" events impugns Hinton's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

284.    Defendants' use of Hinton's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Hinton endorsed the

46

Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

285.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Hinton's images in their market activities and business.   In doing so, Defendants have further damaged Hinton.

### *Plaintiff Joanna Krupa*

286.    Krupa is, and at all times relevant to this action was, a successful professional model, actress and television personality, and spokesperson with numerous accomplishments. As a model, Krupa has appeared twice on the cover of *Playboy*, is a lingerie model for Frederick's of Hollywood, and appeared on the covers of such magazines as *Envy*, *FHM*, *Personal*, *Inside Sport*, *Stuff*, *Steppin' Out*, *Teeze*, *Shape* and *Maxim*, in which she was named the "Sexiest Swimsuit Model in the World."   As an actress and television personality, Krupa has appeared in the film *Max Havoc: Curse of the Dragon*, the television show *Superstars*, made multiple appearances on the CSI and Las Vegas television series, and appeared as a contestant on Season 9 of ABC's *Dancing with the Stars*.   Additionally, since 2010 Krupa has been head judge of *Poland's Next Top Model*, and is a cast member of Bravo's *The Real Housewives of Miami*. She has also appeared as a guest on *Jimmy Kimmel*, *Chelsea Lately*, *Jenny Jones*, *Guys Choice*, Howard Stern's *On Demand*, *The View*, *Poker 2 night*, *The Wendy Williams Show*.

287.    Krupa has nearly 500,000 Instagram followers and over eight hundred thousand Facebook followers.

288.    Krupa is a spokeswoman for People for the Ethical Treatment of Animals ("PETA") worldwide.

289.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Krupa negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

290.     Krupa's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit N** to the Complaint, one of which has been used at least five times and altered to create the false perception that Hinton has consented or agreed to promote, advertise, market and/or endorse the Club's "FCUK ME FRIDAY" event (with the patently revealing too-cute-by-half "disclaimer" that "[w]e're not disguising the purpose of this party at all . . . (ok, maybe a little bit)"), and another of which has been used at least four times to create the false perception that Krupa has consented or agreed to promote, advertise, market and/or endorse the Club's "Woman Crush Wednesday: ***Joanna Krupa*** is a hottie.  Who is your #WCW [Woman Crush Wednesday]?" (emphasis added) to benefit Defendants' commercial interests.

291.     Even after Krupa's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Krupa's demands.

292.     Krupa's image, likeness and identity in **Exhibit N** are being used as advertising.

293.     Krupa's image, likeness and identity in **Exhibit N** are being used on social media.

294.     Krupa's image, likeness and identity in **Exhibit N** are tagged with "FCUK ME FRIDAY," "SDC.com," and "#swingersclub" and are being used for branding purposes.

295.     Krupa's image, likeness and identity in **Exhibit N** have an additional use which includes identifying the internationally known star Krupa by name in Defendants' advertisements.

296.     Krupa has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

297.     Krupa has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

298.     Defendants never sought permission or authority to use or alter Krupa's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

299.     Krupa never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

300.     Defendants neither offered nor paid any remuneration to Krupa for the unauthorized use and self-serving alteration of her image, likeness or identity.

301.     Defendants' use of Krupa's image, likeness and identity in connection with the Club's "swinger" events impugns Krupa's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

302.     Defendants' use of Krupa's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Krupa endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

303.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Krupa's images in their market activities and business.   In doing so, Defendants have further damaged Krupa.

### Plaintiff Jordan Carver

304.    Carver is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host, actress and businesswoman with numerous accomplishments. Her career started with the launch of her own Facebook page in 2010 and her own website, www.jordancarver.com, posting fashion modeling photos Her business successes include a widely released "Yoga for Beginners" DVD and the launch of her very own YouTube channel after partnering with the world's largest television production company, Endemol, and featuring reality-style episodes uploaded regularly.   Carver has also hosted the 2013 PBR Rock Bar's NYE Bash in Planet Hollywood Las Vegas.   As a model and brand spokesperson, Carver won second place on the Top 100 Internet Model Newcomer of the Year, and has appeared on the cover of such magazines as *Digital, Maxim, Like*.   She was also a commercial spokeswoman for online German consumer electronics giant Redcoon, and was the spokesmodel for Cobra racing sport seat production company, among others.   As an actress, Ms.Carver appeared in the German-American comedy *Who Killed Johnny*, and participated for two years in the German reality show *Wild Girls, 'Auf High Heels durch Afrika'* ("Wild Girls - In High Heels Through Africa"), in which she along with other participants lived in the deserts of Namibia with the indigenous people.

305.    Carver has four (4) million Facebook followers, one million Instagram followers and 172,500 Twitter followers.

306.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Carver negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

307.     Carver's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit O** to the Complaint, which has been used at least three times and altered to create the false perception that Carver has consented or agreed to promote, advertise, market and/or endorse the Club, which referenced Carver by name, to wit: "wow, looks like Jordon Carver is ready for swim suit season!" to benefit Defendants' commercial interests.

308.     Even after Carver's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Carver's demands.

309.     Carver's image, likeness and identity in **Exhibit O** are being used as advertising.

310.     Carver's image, likeness and identity in **Exhibit O** are being used on social media.

311.     Carver's image, likeness and identity in **Exhibit O** have an additional use which includes identifying the internationally known star Carver by name in Defendants' advertisements.

312.     Carver has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

313.     Carver has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

314.     Defendants never sought permission or authority to use or alter Carver's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

315.    Carver never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

316.    Defendants neither offered nor paid any remuneration to Carver for the unauthorized use and self-serving alteration of her image, likeness or identity.

317.    Defendants' use of Carver's image, likeness and identity in connection with the Club's "swinger" events impugns Carver's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

318.    Defendants' use of Carver's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Carver endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

319.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Carver's images in their market activities and business.  In doing so, Defendants have further damaged Carver.

### *Plaintiff Katerina Van Derham*

320.    Van Derham is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host, actress and businesswoman with numerous

accomplishments.  Her business successes include being the Founder, CEO and Editor-in-Chief of VIVA GLAM, established in 2012, as a classic glamour lifestyle magazine.  VIVA GLAM offers alternative approaches to traditional lifestyle, with a strong focus on vegan, organic and cruelty free brands.  She has developed and manufactures a line of cruelty-free, 100% human hair eyelashes, Kat Lash.  As a model and brand spokesperson, Van Derham has appeared on over 60 magazine covers world-wide and appeared in over 600 major media outlets including the Times Square Jumbotron, CNN, FOX, and NBC.  She is the longest reigning St. Pauli Girl spokesmodel and, as the national spokesmodel, has appeared in hundreds of media outlets.  As an actress and spokesmodel, Van Derham has appeared in 17 television commercials, had guest spots on *Entourage*, *CSI* and *Monk*, has appeared in the movies *Redline, Unbelievable* and *15 Minutes Alone*, and can be seen in music videos with Bobby Brown, Ja Rule, 50 Cent, Andy, and Big & Rich.

321.    Van Derham is active, passionate and outspoken about charities, such SCIL (an animal care company), Peace4Animals and PETA.  She has also worked with RedLightChildren.org to help end child slavery and exploitation, and has teamed up with Leah Remini, WorldVentures Foundation and the Nancy Lieberman Foundation on the DreamCourt project to build the first high quality basketball court at the Freeman E. Fairfield/Westside Boys & Girls Club.

322.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Van Derham negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

323.    Van Derham's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit P** to the Complaint, which has been used at least twice and

altered to create the false perception that Van Derham has consented or agreed to promote, advertise, market and/or endorse the Club to benefit Defendants' commercial interests.

324.    Even after Van Derham's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Van Derham's demands.

325.    Van Derham's image, likeness and identity in **Exhibit P** are being used as advertising.

326.    Van Derham's image, likeness and identity in **Exhibit P** are being used on social media.

327.    Van Derham has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

328.    Van Derham has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

329.    Defendants never sought permission or authority to use or alter Van Derham's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

330.    Van Derham never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

331.    Defendants neither offered nor paid any remuneration to Van Derham for the unauthorized use and self-serving alteration of her image, likeness or identity.

332.    Defendants' use of Van Derham's image, likeness and identity in connection with the Club's "swinger" events impugns Van Derham's character, embarrasses her, and suggests –

falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

333.   Defendants' use of Van Derham's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Van Derham endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

334.   Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Van Derham's images in their market activities and business. In doing so, Defendants have further damaged Van Derham.

### *Plaintiff Kim Cozzens*

335.   Cozzens is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host, and actress with numerous accomplishments.  As a model and brand spokesperson, Cozzens has appeared in dozens of international commercials and campaigns.  She was featured in an "Old Spice" commercial with a full speaking role that was one of the most highly sought after roles cast nationally.   Cozzens has been featured in Sketchers advertising, appeared in a worldwide New Amsterdam vodka campaign, was the spokesmodel for La Z Boy furniture galleries, was the spokesmodel for a Martini Rossi liquor campaign in which George Clooney appeared, and for Dodge automotive.  The Martini Rossi liquor campaign featured Cozzens with George Clooney.  Adweek rated the Dodge commercial

featuring Cozzens as one of the best of the year.  Cozzens has also appeared on the cover of *VIVA GLAM* magazine, *Rangoni* magazine, in *Maxim*, and others.

336.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Cozzens negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

337.    Cozzens' image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit Q** to the Complaint, which has been used at least four times and altered to create the false perception that Cozzens has consented or agreed to promote, advertise, market and/or endorse the Club's purple-themed event to benefit Defendants' commercial interests and included an obscene posting appearing to be attributed to Cozzens "I want to fuck so hard" and "Let's Party!"

338.    Even after Cozzens' objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Cozzens' demands.

339.    Cozzens' image, likeness and identity in **Exhibit Q** are being used as advertising.

340.    Cozzens' image, likeness and identity in **Exhibit Q** are being used on social media.

341.    Cozzens' image, likeness and identity in **Exhibit Q** are tagged with "#swingersclub" and are being used for branding purposes.

342.    Cozzens' image, likeness and identity in **Exhibit Q** are additionally being used in a video by the Club.

343.    Cozzens has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

344.    Cozzens has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

345.    Defendants never sought permission or authority to use or alter Cozzens' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

346.    Cozzens never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

347.    Defendants neither offered nor paid any remuneration to Cozzens for the unauthorized use and self-serving alteration of her image, likeness or identity.

348.    Defendants' use of Cozzens' image, likeness and identity in connection with the Club's "swinger" events impugns Cozzens' character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

349.    Defendants' use of Cozzen's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Cozzen endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

350.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to

further utilize and misappropriate Cozzens' images in their market activities and business.   In doing so, Defendants have further damaged Cozzens.

### *Plaintiff Laurie Fetter (Jacobs)*

351.   Fetter is, and at all times relevant to this action was, a successful professional model, brand spokesperson and actress with numerous accomplishments.  As a model, Fetter was *Playboy* "Playmate of the Month" and also appeared in *Maxim, FHM,* and *Vanity Fair* magazines.  Fetter also was a brand spokesperson for Kohl's, Macy's, McDonalds, Sunglass Hut, and Leg Avenue.  As an actress, Fetter appeared in the indie thriller "Hitters," has appeared on CSI, and had a starring role in the movie "A Guy Named Rick" where she played God's wife.

352.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Fetter negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

353.   Fetter's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit R** to the Complaint, which has been used at least three times and altered to create the false perception that Fetter has consented or agreed to promote, advertise, market and/or endorse the Club's "hot fairy tale princess" themed event to benefit Defendants' commercial interests.

354.   Even after Fetter's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Fetter's demands.

355.   Fetter's image, likeness and identity in **Exhibit R** are being used as advertising.

356.   Fetter's image, likeness and identity in **Exhibit R** are being used on social media.

357.   Fetter's image, likeness and identity in **Exhibit R** are tagged with "#swingersparty" and are being used for branding purposes.

358.   Fetter has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

359.   Fetter has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

360.   Defendants never sought permission or authority to use or alter Fetter's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

361.   Fetter never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

362.   Defendants neither offered nor paid any remuneration to Fetter for the unauthorized use and self-serving alteration of her image, likeness or identity.

363.   Defendants' use of Fetter's image, likeness and identity in connection with the Club's "swinger" events impugns Fetter's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

364.   Defendants' use of Fetter's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Fetter endorsed the

Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

365.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Fetter's images in their market activities and business.   In doing so, Defendants have further damaged Fetter.

### *Plaintiff Lina Posada*

366.    Posada is, and at all times relevant to this action was, a successful professional model, brand spokesperson and fashion designer with numerous accomplishments.  As a model and brand spokesperson, Posada is the face of the lingerie brands *Besame* and *Espiral*.  She has also appeared in advertisements for Babalu' Swimwear, JSN, UJeans, T.T. Blues, Irgus Swimwear, and Paradizia.

367.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Posada negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

368.    Posada's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit S** to the Complaint, one of which has been used at least three times and altered to create the false perception that Posada has consented or agreed to promote, advertise, market and/or endorse the Club's "Happy Halloween" event, and another of which was used at least twice and similarly altered to create the false perception that Posada has consented or agreed to promote, advertise, market and/or endorse the Club's "Black and White" party to benefit Defendants' commercial interests.

369.    Even after Posada's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Posada's demands.

370.    Posada's image, likeness and identity in **Exhibit S** are being used as advertising.

371.    Posada's image, likeness and identity in **Exhibit S** are being used on social media.

372.    Posada's image, likeness and identity in **Exhibit S** are tagged with "Youngest Swingers Club" and are being used for branding purposes.

373.    Posada has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

374.    Posada has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

375.    Defendants never sought permission or authority to use or alter Posada's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

376.    Posada never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

377.    Defendants neither offered nor paid any remuneration to Posada for the unauthorized use and self-serving alteration of her image, likeness or identity.

378.    Defendants' use of Posada's image, likeness and identity in connection with the Club's "swinger" events impugns Posada's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

379.    Defendants' use of Posada's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Posada endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

380.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Posada's images in their market activities and business.  In doing so, Defendants have further damaged Posada.

### Plaintiff Maria Zyrianova

381.    Zyrianova is, and at all times relevant to this action was, a successful professional model, brand spokesperson, actress and stand-up comedian with numerous accomplishments.  As a model and brand spokesperson, Zyrianova has been featured in countless advertising and editorial bookings, including *Vogue, Elle* and *Cosmopolitan* magazines, as well as national advertising campaign for L'Oreal, Avon, Coca-Cola and Samsung.  Zyrianova was also chosen to be the face of and represent Ardell Lashes in an international beauty campaign.  Zyrianova has been featured in a national television advertising campaign for Progressive insurance.  As an actress and stand-up comedian, Zyrianova has made guest appearances on HBO's *Entourage*, STARZ *Party Down*, SHOWTIME's *Dexter*, FX's *Always Sunny In Philadelphia*, ABC FAMILY's *Baby Daddy* and on the primetime networks hit *Two and a Half Men* and *NCIS: Los*

*Angeles.* Zyrianova played "Masha" in 3 SISTERS by Chekov, the role of "Nastasya" in IDIOT by Dostoevsky, and regularly performs stand-up comedy at Los Angeles' premier comedy venues such as Hollywood's famous Comedy Store.

382.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Zyrianova negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

383.    Zyrianova's image, likeness and identity are depicted in at least one  photograph, enclosed as **Exhibit T** to the Complaint, which has been used at least four times and altered to create the false perception that Zyrianova has consented or agreed to promote, advertise, market and/or endorse the Club's "Sex Therapy Friday" event to benefit Defendants' commercial interests.

384.    Even after Zyrianova's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Zyrianova's demands.

385.    Zyrianova's image, likeness and identity in **Exhibit T** are being used as advertising.

386.    Zyrianova's image, likeness and identity in **Exhibit T** are being used on social media.

387.    Zyrianova's image, likeness and identity in **Exhibit T** are tagged with "Sex Therapy Friday" and "best place to start your sex fund this weekend" and are being used for branding purposes.

388.    Zyrianova has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

389.    Zyrianova has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

390.    Defendants never sought permission or authority to use or alter Zyrianova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

391.    Zyrianova never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

392.    Defendants neither offered nor paid any remuneration to Zyrianova for the unauthorized use and self-serving alteration of her image, likeness or identity.

393.    Defendants' use of Zyrianova's image, likeness and identity in connection with the Club's "swinger" events impugns Zyrianova's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

394.    Defendants' use of Zyrianova's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Zyrianova endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

395.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to

further utilize and misappropriate Zyrianova's images in their market activities and business.   In doing so, Defendants have further damaged Zyrianova.

### *Plaintiff Marketa Kazdova*

396.    Kazdova is, and at all times relevant to this action was, a successful professional model, brand spokesperson and actress with numerous accomplishments.   As a model and brand spokesperson, Kazdova has appeared in magazines such as *Elle, Style, Cosmo Girl, Dolce Vita*, *Nylon, Prestige Paris, Fiasco, Composure, Formen, Modern Salon, Viva Glam* and many others. Kazdova has also appeared in advertisements and promotional material for Nordstrom, Macy's, Tadashi Shoji, Nike, Anthony Franco, Alicia Estrada, Mirabella beauty, MAC, Level 99, Dreamgirl lingerie, Erka Mare Swimwear, House of Pink Lemonaid Swimwear, Hautelook and Patagonia.   Most recently, Kazdova has appeared on billboards in a national advertising campaign for Mello Yello.   Kazdova also has appeared in commercials for McDonalds' McFlurry for worldwide use, as well as Soysh.   As an actress, she has appeared in a number of music videos and worked with stars such as Kanye West and Jay Z.

397.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Kazdova negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

398.    Kazdova's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit U** to the Complaint, one of which has been used at least three times and altered to create the false perception that Kazdova has consented or agreed to promote, advertise, market and/or endorse the Club's activities, and another of which has been used at least four times and similarly altered to create the false perception that Kazdova has consented or agreed to

promote, advertise, market and/or endorse the Club's "Fantastic 80's" event to benefit Defendants' commercial interests.

399.    Even after Kazdova's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Kazdova's demands.

400.    Kazdova's image, likeness and identity in **Exhibit U** are being used as advertising.

401.    Kazdova's image, likeness and identity in **Exhibit U** are being used on social media.

402.    Kazdova's image, likeness and identity in **Exhibit U** are tagged with "Now THIS is what I call a cleaning service!", "#swingers," "#swingersclub," and "Youngest Swingers Club" and are being used for branding purposes.

403.    Kazdova's image, likeness and identity in **Exhibit U** are being used as a "coupon", offering new members "Free one month membership."

404.    Kazdova has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

405.    Kazdova has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

406.    Defendants never sought permission or authority to use or alter Kazdova's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

407.    Kazdova never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

408.    Defendants neither offered nor paid any remuneration to Kazdova for the unauthorized use and self-serving alteration of her image, likeness or identity.

409.    Defendants' use of Kazdova's image, likeness and identity in connection with the Club's "swinger" events impugns Kazdova's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

410.    Defendants' use of Kazdova's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Kazdova endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

411.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Kazdova's images in their market activities and business.  In doing so, Defendants have further damaged Kazdova.

*Plaintiff Masha Lund*

412.    Lund is, and at all times relevant to this action was, a successful professional model, brand spokesperson and actress with numerous accomplishments.  As a model and brand

spokesperson, Lund appeared in a national billboard campaign for Rockstar Energy Drink, Ikeka, and E-Trade Denmark.  She has appeared on the covers of such magazines as *FHM, Maxim, Ralph, Dreamgirl, Gear, Exposed* and the popular Danish magazine *M!*, and appeared in national commercials for Corona, Rolling Rock Beer, and Saturn.  Lund is also the spokesperson for the "Dreamgirl" lingerie line and Celebrity jewelry line "Nialaya."  As an actress, Lund has appeared in popular films such as "The Pick of Destiny" with Jack Black and "Epic Movie" with Carmen Electra.  She has appeared in music videos with Lady Gaga, Beyoncé, Eminem and D12, has appeared on E!, Jay Leno, Spike TV, Jimmy Kimmel Live, The Late Late Show, and is one of the stars on a popular European Reality Show "Danske Hollywood Fruer."  She has a business degree and is fluent in three languages.

413.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Lund negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

414.    Lund's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit V** to the Complaint, one of which has been used at least three times and altered to create the false perception that Lund has consented or agreed to promote, advertise, market and/or endorse the Club's "Sexy Week at the Office" event, and another of which has been used at least four times and similarly altered to create the false perception that Lund has consented or agreed to promote, advertise, market and/or endorse the Club's "Oktoberfest: Boobs & Beer Jugs" event to benefit Defendants' commercial interests.

415.    Even after Lund's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Lund's demands.

416.    Lund's image, likeness and identity in **Exhibit V** are being used as advertising.

417.    Lund's image, likeness and identity in **Exhibit V** are being used on social media.

418.    Lund's image, likeness and identity in **Exhibit V** are tagged with "Let it be a sexy week at the office," "#swingersclub," "Boobs & Beer Jugs," and "SDC.com" and are being used for branding purposes.

419.    Lund has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

420.    Lund has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

421.    Defendants never sought permission or authority to use or alter Lund's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

422.    Lund never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

423.    Defendants neither offered nor paid any remuneration to Lund for the unauthorized use and self-serving alteration of her image, likeness or identity.

424.    Defendants' use of Lund's image, likeness and identity in connection with the Club's "swinger" events impugns Lund's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

425.     Defendants' use of Lund's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Lund endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

426.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Lund's images in their market activities and business.  In doing so, Defendants have further damaged Lund.

### Plaintiff Maysa Quy

427.     Quy is, and at all times relevant to this action was, a successful professional model, brand spokesperson, pro body builder, ring girl, martial artist, fitness trainer and nutritionist with numerous accomplishments.  As a model and brand spokesperson, Quy modeled and appeared in numerous magazines, catalogues and advertising campaigns for national and international brands including Sketchers Shoes, Benefit Cosmetics, CoverFX cosmetics, Dreamgirl International Lingerie, Mini Cooper USA, T-Mobile, Apple, Nike, Microsoft, and David's Bridal.  Quy was a presenter at the People's Choice Awards and was a Strike Force/Ring Card Model.  She was also a featured performer in the National Microsoft "Stay Connected" television commercial.

428.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Quy negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

429.    Quy's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit W** to the Complaint, which has been used at least three times and altered to create the false perception that Quy has consented or agreed to promote, advertise, market and/or endorse the Club's "Annual White Party" event to benefit Defendants' commercial interests.

430.    Even after Quy's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Quy's demands.

431.    Quy's image, likeness and identity in **Exhibit W** are being used as advertising.

432.    Quy's image, likeness and identity in **Exhibit W** are being used on social media.

433.    Quy's image, likeness and identity in **Exhibit W** are tagged with "wear your sexiest white outfit" and are being used for branding purposes.

434.    Quy has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

435.    Quy has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

436.    Defendants never sought permission or authority to use or alter Quy's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

437.    Quy never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

438.    Defendants neither offered nor paid any remuneration to Quy for the unauthorized use and self-serving alteration of her image, likeness or identity.

439.     Defendants' use of Quy's image, likeness and identity in connection with the Club's "swinger" events impugns Quy's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

440.     Defendants' use of Quy's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Quy endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

441.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Quy's images in their market activities and business.  In doing so, Defendants have further damaged Quy.

### *Plaintiff Paola Canas*

442.     Canas is, and at all times relevant to this action was, a successful professional model, brand spokesperson, host and actress with numerous accomplishments.  As a model and brand spokesperson, Canas worked for international brands and labels such as, Soho, Kiss Underwear, Salon International, Zona Rosa and Esteban Escobar.  Canas has also has worked runway shows in her native Colombia, Mexico, the United States, Ecuador and Paris, France. Canas was a contracted model for Curve and their worldwide lingerie line and features in Curve's international ad campaign. In Dubai, Canas was chosen as the face of the Masters Golf

tournament.  In Orlando, Florida, she was the face for the "International Surf and Sport Expo." Canas has appeared on FOX Sports, Telemundo and TV Azteca.

443.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Canas negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

444.    Canas' image, likeness and identity are depicted in at least five photographs, enclosed as **Exhibit X** to the Complaint, one of which has been used at least two times and altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "Black & White" event, another of which was used at least four times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "Ultimate Couples Only Experience in BLUE" event, another of which was used at least four times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "SEXY in blue" event, another of which was used at least three times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "Libra Party," and a fifth of which was used at least four times and similarly altered to create the false perception that Canas has consented or agreed to promote, advertise, market and/or endorse the Club's "SEXY in blue" event to benefit Defendants' commercial interests.

445.    Even after Canas' objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Canas' demands.

446.    Canas' image, likeness and identity in **Exhibit X** are being used as advertising.

73

447.   Canas' image, likeness and identity in **Exhibit X** are being used on social media.

448.   Canas' image, likeness and identity in **Exhibit X** are tagged with "members.miamivelvet," "Yorkies.com," "The ultimate Couples Only experience in Blue Tonight," "#swingersclub", and "We are getting SEXY in blue," and are being used for branding purposes.

449.   Canas' image, likeness and identity in **Exhibit X** are being used as a "coupon" offering "Prepay and Save" and "Anyone born under the sign of Libra Free Entry. . . ."

450.   Canas' image, likeness and identity in **Exhibit X** are being used for an additional purpose in a video and flipagram.

451.   Canas has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

452.   Canas has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

453.   Defendants never sought permission or authority to use or alter Canas' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

454.   Canas never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

455.   Defendants neither offered nor paid any remuneration to Canas' for the unauthorized use and self-serving alteration of her image, likeness or identity.

456.   Defendants' use of Canas' image, likeness and identity in connection with the Club's "swinger" events impugns Canas' character, embarrasses her, and suggests – falsely – her

support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

457.    Defendants' use of Canas' image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Canas endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

458.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Canas' images in their market activities and business.  In doing so, Defendants have further damaged Canas.

### Plaintiff Rachel Bernstein (Koren)

459.    Bernstein is, and at all times relevant to this action was, a successful professional model, brand spokesperson, actress and businesswoman with numerous accomplishments.  As a model and brand spokesperson, Bernstein has walked runways for fashion shows in Miami's "Mercedes Benz Fashion Week," and has been featured in The Midori Campaign in both print and billboards.  Bernstein has appeared in such magazines *as Esquire, Vogue, Modern Salon, Kandy, Vibra, Launch Pad, Cut & Dry, Hairdo, Rebel X, Maxim, Viva Glam*, and *Swim*. Bernstein has modeled brands by Nike, Reebok, Affliction Clothing, Volcom, Body Glove, Sinful, American Customs, Alo, No Fear, Axe Body Spray, Skinit, Paul Mitchell, Styleget, Bijoli, Sunset Tan, Divine Boutique, True Religion, Jessica Simpson Swimwear, Ed Hardy,

Christian Audigier, Smet, SNI Swimwear Calendars, Tommy Bahama, Sunsets Inc, B Swim, Love Culture, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, American Honey and Have Faith Swimwear.  Bernstein's other business ventures include being a part owner of Cashmere hair products.  She has appeared on television shows such as Shark Tank.

460.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Bernstein negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

461.    Bernstein's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit Y** to the Complaint, which has been used at least four times and altered to create the false perception that Bernstein has consented or agreed to promote, advertise, market and/or endorse the Club's "Black OR White" event to benefit Defendants' commercial interests.

462.    Even after Bernstein's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Bernstein's demands.

463.    Bernstein's image, likeness and identity in **Exhibit Y** are being used as advertising.

464.    Bernstein's image, likeness and identity in **Exhibit Y** are being used on social media.

465.    Bernstein's image, likeness and identity in **Exhibit Y** are tagged with "#swingersclub" and are being used for branding purposes.

466.    Bernstein's image, likeness and identity in **Exhibit Y** are being used as a ""coupon"" offering new members "FREE ONE MONTH MEMBERSHIP."

467.     Bernstein has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

468.     Bernstein has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

469.     Defendants never sought permission or authority to use or alter Bernstein's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

470.     Bernstein never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

471.     Defendants neither offered nor paid any remuneration to Bernstein for the unauthorized use and self-serving alteration of her image, likeness or identity.

472.     Defendants' use of Bernstein's image, likeness and identity in connection with the Club's "swinger" events impugns Bernstein's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

473.     Defendants' use of Bernstein's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Bernstein endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

474.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Bernstein's images in their market activities and business.  In doing so, Defendants have further damaged Bernstein.

### *Plaintiff Sandra Valencia*

475.    Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments.  She is regarded as one of the top models in her home country of Colombia.  Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela.  She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of BESAME lingerie.

476.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Valencia negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

477.    Valencia's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit Z** to the Complaint, one of which has been used at least four times and altered to create the false perception that Valencia has consented or agreed to promote, advertise, market and/or endorse the Club's upcoming event, and the other of which has been used at least three times and altered to create the false perception that Valencia has consented or agreed to promote, advertise, market and/or endorse the Club generally to benefit Defendants' commercial interests.

478.    Even after Valencia's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Valencia's demands.

479.    Valencia's image, likeness and identity in **Exhibit Z** are being used as advertising.

480.    Valencia's image, likeness and identity in **Exhibit Z** are being used on social media.

481.    Valencia's image, likeness and identity in **Exhibit Z** are tagged with "Youngest Swingers Club . . . " and "Some sweet booty" and are being used for branding purposes.

482.    Valencia's image, likeness and identity in **Exhibit Z** are being used as a "coupon" offering new members "FREE ONE MONTH MEMBERSHIP."

483.    Valencia has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

484.    Valencia has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

485.    Defendants never sought permission or authority to use or alter Valencia's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

486.    Valencia never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

487.    Defendants neither offered nor paid any remuneration to Valencia for the unauthorized use and self-serving alteration of her image, likeness or identity.

488.    Defendants' use of Valencia's image, likeness and identity in connection with the Club's "swinger" events impugns Valencia's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

489.    Defendants' use of Valencia's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Valencia endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

490.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Valencia's images in their market activities and business.  In doing so, Defendants have further damaged Valencia.

### Plaintiff Sara Underwood

491.    Underwood is, and at all times relevant to this action was, a successful professional model, actress, television personality, host and spokeswoman with numerous accomplishments.  As a model, Underwood was featured in *Playboy's* "Girls of the Pac-10," was a *Playboy* "Playmate of the Month," and *Playboy* "Playmate of the Year."  As an actress, Underwood worked as a "fight jock" announcer for the Blackbelt TV cable network, she co-hosted G4's *Attack of the Show*, has hosted *The Feed*, and has starred in numerous commercials.

492.    Underwood has more than one million Instagram followers.

493.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Underwood negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

494.    Underwood's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit AA** to the Complaint, which has been used at least three times and was altered to create the false perception that Underwood has consented or agreed to promote, advertise, market and/or endorse the Club's Birthday Bash to benefit Defendants' commercial interests.

495.    Even after Underwood's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Underwood's demands.

496.    Underwood's image, likeness and identity in **Exhibit AA** are being used as advertising.

497.    Underwood's image, likeness and identity in **Exhibit AA** are being used on social media.

498.    Underwood's image, likeness and identity in **Exhibit AA** are tagged with "don't miss this sexy night!" and are being used for branding purposes.

499.    Underwood has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

500.    Underwood has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

501.    Defendants never sought permission or authority to use or alter Underwood's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

502.    Underwood never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

503.    Defendants neither offered nor paid any remuneration to Underwood for the unauthorized use and self-serving alteration of her image, likeness or identity.

504.    Defendants' use of Underwood's image, likeness and identity in connection with the Club's "swinger" events impugns Underwood's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

505.    Defendants' use of Underwood's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Underwood endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

506.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Underwood's images in their market activities and business.  In doing so, Defendants have further damaged Underwood.

### *Plaintiff Tiffany Toth*

507.    Toth is, and at all times relevant to this action was, a successful professional model with numerous accomplishments.  As a model, Toth has been a *Playboy* "Playmate of the

Month," a *Playboy* "Cyber Girl of the Week" and *Playboy* "Cyber Girl of the Month." She has also been featured in such magazines as *Maxim, Super Street Bike, Import Tuner, Sport Truck, Iron Man,* and *Seventeen*.

508. Toth has more than 370,000 Instagram followers, over one million Facebook followers, and is paid for social media product endorsements.

509. In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Toth negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

510. Toth's image, likeness and identity are depicted in at least three photographs, enclosed as **Exhibit BB** to the Complaint, one of which has been used at least three times and altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Club's wild animal print-themed event, a second of which has been used at least three times and was similarly altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Club's "Unicorn Party," and a third of which has been used at least twice and was similarly altered to create the false perception that Toth has consented or agreed to promote, advertise, market and/or endorse the Club's "Corset & Heels" event, to benefit Defendants' commercial interests.

511. Even after Toth's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Toth's demands.

512. Toth's image, likeness and identity in **Exhibit BB** are being used as advertising.

513. Toth's image, likeness and identity in **Exhibit BB** are being used on social media.

514.   Toth's image, likeness and identity in **Exhibit BB** are tagged with "#swingersClub" and "SDC.com" and are being used for branding purposes.

515.   Toth has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

516.   Toth has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

517.   Defendants never sought permission or authority to use or alter Toth's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

518.   Toth never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

519.   Defendants neither offered nor paid any remuneration to Toth for the unauthorized use or self-serving alteration of her image, likeness or identity.

520.   Defendants' use of Toth's image, likeness and identity in connection with the Club's "swinger" events impugns Toth's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

521.   Defendants' use of Toth's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that they could attend events advertised in interstate commerce that falsely suggested that Toth endorsed the

Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

522.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Toth's images in their market activities and business.  In doing so, Defendants have further damaged Toth.

### Plaintiff Vivian Kindle

523.     Kindle is, and at all times relevant to this action was, a successful professional model and actress with numerous accomplishments.  As a model, Kindle published in such magazines such as *Maxim, FHM, American Curves, Push, Esquire, GQ,* and *World Physique.* As an actress, Kindle appeared as the teacher "Mrs. Johnson" in the movie "School Dance," written, produced and directed by Nick Cannon.  She also appeared on MTV2 as an official Wild'N'Out girl for season 5-7 and had a recurring role on the CBS soap opera "The Bold & Beautiful."

524.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Kindle negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

525.     Kindle's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit CC** to the Complaint, one of which has been used at least three times and altered to create the false perception that Kindle has consented or agreed to promote, advertise, market and/or endorse the Club's "Fill 'er up" event, and a second of which has been used at least three times and was similarly altered to create the false perception that Kindle has consented or

agreed to promote, advertise, market and/or endorse the Club's "Cocktail Party" with SDC [Swingers Date Club], to benefit Defendants' commercial interests.

526.   Even after Kindle's objection outlined in the demand and cease/desist letter of October 16, 2015 (**Exhibit A**), Defendants failed and refused to remove the offending images or otherwise respond to or comply with Kindle's demands.

527.   Kindle's image, likeness and identity in **Exhibit CC** are being used as advertising.

528.   Kindle's image, likeness and identity in **Exhibit CC** are being used on social media.

529.   Kindle's image, likeness and identity in **Exhibit CC** are tagged with "#swingersClub" and "SDC" and are being used for branding purposes.

530.   Kindle has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

531.   Kindle has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

532.   Defendants never sought permission or authority to use or alter Kindle's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

533.   Kindle never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

534.   Defendants neither offered nor paid any remuneration to Kindle for the unauthorized use or self-serving alteration of her image, likeness or identity.

535.     Defendants' use of Kindle's image, likeness and identity in connection with the Club's "swinger" events impugns Kindle's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

536.     Defendants' use of Kindle's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Kindle endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

537.     Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Kindle's images in their market activities and business.   In doing so, Defendants have further damaged Kindle.

### *Plaintiff Melanie Iglesias*

538.     Iglesias is, and at all times relevant to this action was, a successful professional model, host and actress with numerous accomplishments.   As a model, Iglelsias has been featured in such magazines as *Maxim, World's Most Beautiful, Esquire,* and *Vibe.*   As a host and actress, Iglesias has hosted the MLB Fan Cave, has appeared in the World Poker Tour series, has appeared as herself on all seasons of MTV's *Guy Code* and *Girl Code*, as well as the spin-off series *Guy Cour*t, and as a guest on the Ellen DeGeneres show.   Iglesias also has a starring role in the feature film "Abnormal Attraction" set to be released in 2016.

539.     Iglesias has more nearly four million follows on Instagram, Facebook and Twitter combined.

540.     In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Iglesias negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

541.     Iglesias' image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit DD** to the Complaint, one of which has been used at least three times and altered to create the false perception that Iglesias has consented or agreed to promote, advertise, market and/or endorse the Club's 2013 "Noche Latina" event and explicitly attributing Iglesias' name to the image and attribution, and a second of which has been used at least four times and was similarly altered to create the false perception that Iglesias has consented or agreed to promote, advertise, market and/or endorse the Club's 2014 "Noche Latina" event to benefit Defendants' commercial interests.

542.     Iglesias' image, likeness and identity in **Exhibit DD** are being used as advertising.

543.     Iglesias' image, likeness and identity in **Exhibit DD** are being used on social media.

544.     Iglesias' image, likeness and identity in **Exhibit DD** are tagged with Iglesias' name and attribution as well as "Youngest Swingers Club on the East Coast" and are being used for branding purposes.

545.     Iglesias' image, likeness and identity in **Exhibit DD** are being used as a "coupon" offering "Free one month membership when you mention #instaswing at the door."

546.     Iglesias has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

547.    Iglesias has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

548.    Defendants never sought permission or authority to use or alter Iglesias' image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

549.    Iglesias' never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

550.    Defendants neither offered nor paid any remuneration to Iglesias' for the unauthorized use or self-serving alteration of her image, likeness or identity.

551.    Defendants' use of Iglesias' image, likeness and identity in connection with the Club's "swinger" events impugns Iglesias' character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

552.    Defendants' use of Iglesias' image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Iglesias endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her.

553.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to

89

further utilize and misappropriate Iglesias' images in their market activities and business.   In doing so, Defendants have further damaged Iglesias.

### *Plaintiff Brenda Lynn Geiger*

554.    Geiger is, and at all times relevant to this action was, a successful professional model, television personality, and actress with numerous accomplishments.  As a model, Geiger has been featured in numerous magazines such as *Show, Maxim, Glamour,* and *Raw,* as well as product and brand campaigns such as Primitive Clothing.   Geiger has also appeared on the Howard Stern Show in a "Miss HTV" contest and in music videos including Keri Hilton's video "Ms. Officer."

555.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Geiger negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

556.    Geiger's image, likeness and identity are depicted in at least two photographs, enclosed as **Exhibit EE** to the Complaint, one of which has been used at least three times and altered to create the false perception that Geiger has consented or agreed to promote, advertise, market and/or endorse the Club's "Girls Night Out" event, and a second of which has been used at least three times and similarly altered to create the false perception that Geiger has consented or agreed to promote, advertise, market and/or endorse the Club's prior year "Girls Night Out" event, to benefit Defendants' commercial interests.

557.    Geiger's image, likeness and identity in **Exhibit EE** are being used as advertising.

558.    Geiger's image, likeness and identity in **Exhibit EE** are being used on social media.

559.    Geiger's image, likeness and identity in **Exhibit EE** are tagged with "Sex Drive" and "experience the lifestyle at it's finest" and are being used for branding purposes.

560.    Geiger's image, likeness and identity in **Exhibit EE** are being used as a "coupon" offering "Single ladies in free all night."

561.    Geiger has never been employed by Defendants or contracted with Defendants to participate in events at the Club.

562.    Geiger has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

563.    Defendants never sought permission or authority to use or alter Geiger's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

564.    Geiger never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

565.    Defendants neither offered nor paid any remuneration to Geiger for the unauthorized use or self-serving alteration of her image, likeness or identity.

566.    Defendants' use of Geiger's image, likeness and identity in connection with the Club's "swinger" events impugns Geiger's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

567.    Defendants' use of Geiger's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to

purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Geiger endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her

568.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Geiger's images in their market activities and business.   In doing so, Defendants have further damaged Geiger.

### Plaintiff Heather Rae Young

569.    Young is, and at all times relevant to this action was, a successful professional model, brand spokesperson, businesswoman and actress with numerous accomplishments. Young's business successes have been in real estate.   As a model, Young was a *Playboy "*Playmate of the Month."  She has also appeared in countless swimwear, lingerie, and fashion catalogs such as *Super Star Swimwear*, *Calao Swimwear*, *Carrie Amber Lingerie*, *Trashy Lingerie*, *7 Till Midnight*, *Foreplay*, and *Affliction Clothing Campaign*.   Young has also been featured in numerous car and motorcycle enthusiast magazine features and covers such as *Import Tuner*, *Hot Rod Deluxe*, *Super Street Bike*, *Low Rider* and *Sport Truck*.   As a brand spokesperson and actress, Young has appeared in commercials for KIA Motors, Shake Weight, and Blue Mountain State, as well as television shows such as *Entourage,  The Tonight Show w/ Jay Leno,* and *Til Death,* and in the movie trailer for *Mafia*.

570.    In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Young negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

571.    Young's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit FF** to the Complaint, which has been used at least three times and altered to create the false perception that Young has consented or agreed to promote, advertise, market and/or endorse the Club's "wild" animal print themed party to benefit Defendants' commercial interests.

572.    Young's image, likeness and identity in **Exhibit FF** are being used as advertising.

573.    Young's image, likeness and identity in **Exhibit FF** are being used on social media.

574.    Young's image, likeness and identity in **Exhibit FF** are tagged with "#swingers" and "#swingersclub" and are being used for branding purposes.

575.    Young has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

576.    Defendants never sought permission or authority to use or alter Young's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

577.    Young never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

578.    Defendants neither offered nor paid any remuneration to Young for the unauthorized use and self-serving alteration of her image, likeness or identity.

579.    Defendants' use of Young's image, likeness and identity in connection with the Club's "swinger" events impugns Young's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit,

hardcore pornography on Miami Velvet's social media sites, is intended to imply her participation in the explicit, hardcore pornography industry.

580.    Defendants' use of Young's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Young endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her

581.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Young's images in their market activities and business.  In doing so, Defendants have further damaged Young.

### *Plaintiff Rosa Acosta*

582.    Acosta is, and at all times relevant to this action was, a successful professional model, brand spokesperson, actress, and classical ballet dancer with numerous accomplishments. Acosta's classical ballet training from the age of four in the Dominican Republic through graduating with honors from the ICA and  Ballet School of Norma Garcia led her to became the youngest soloist member of the Dominican Nacional Ballet in 2002.  As a model, Acosta has appeared in magazines such as *Show, King, Black Lingerie,* and *Maxim.*  Acosta has also appeared on numerous radio and television programs, commercials, and music videos.  As s brand spokesperson, Acosta was the face of Nine5 Eyewear and was featured in *Supreme* Magazine.

583.   Acosta has over two million Facebook followers, nearly one million Instagram followers, and more than 300,000 Twitter subscribers.

584.   In all instances of commercial marketing and promotion of her image, likeness or identity by third parties, Acosta negotiated and expressly granted authority for such use pursuant to agreed-upon terms and conditions and for agreed-upon compensation.

585.   Acosta's image, likeness and identity are depicted in at least one photograph, enclosed as **Exhibit GG** to the Complaint, which has been used at least three times and altered to create the false perception that Acosta has consented or agreed to promote, advertise, market and/or endorse the Club's "Noche Latina" event to benefit Defendants' commercial interests.

586.   Acosta's image, likeness and identity in **Exhibit GG** are being used as advertising.

587.   Acosta's image, likeness and identity in **Exhibit GG** are being used on social media.

588.   Acosta's image, likeness and identity in **Exhibit GG** are tagged with "hottest Spanish beats" and are being used for branding purposes.

589.   Acosta has never been hired by Defendants or contracted with Defendants to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

590.   Defendants never sought permission or authority to use or alter Acosta's image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club, or any Club event.

591.   Acosta never gave permission, or assigned, licensed or otherwise consented to Defendants using or altering her image, likeness or identity to advertise, promote, market or endorse Defendants' business, the Club or any Club event.

592.    Defendants  neither  offered  nor  paid  any  remuneration  to  Acosta  for  the unauthorized use and self-serving alteration of her image, likeness or identity.

593.    Defendants' use of Acosta's image, likeness and identity in connection with the Club's "swinger" events impugns Acosta's character, embarrasses her, and suggests – falsely – her support for and participation in such a lifestyle and, given the proximity to images of explicit, hardcore  pornography  on  Miami  Velvet's  social  media  sites,  is  intended  to  imply  her participation in the explicit, hardcore pornography industry.

594.    Defendants' use of Acosta's image was for the sole purpose of increasing Miami Velvet's membership numbers by enticing patrons here in Florida and across the country to purchase online memberships or visit the Club and purchase memberships so that  they could attend events advertised in interstate commerce that falsely suggested that Acosta endorsed the Club and its swinger events, that she would attend Club events, and that members attending that same event could potentially engage in sexual activity with her

595.    Upon information and belief, Defendants' improper use and alteration of the images described herein permitted, encouraged, or facilitated other persons, firms, and entities to further utilize and misappropriate Acosta's images in their market activities and business.  In doing so, Defendants have further damaged Acosta.

**C.   Defendants Ignored Plaintiffs' Demand Letter that Directed Defendants to Cease and Desist Unauthorized Use of Plaintiffs' Images and Notified Defendants of the Potential Claims Should Defendants Fail or Refuse to Comply**

596.    As  referenced  and  discussed  above,  on  October  16,  2015  Plaintiffs,  through counsel, sent Defendants a demand and cease/desist letter ( the "Demand Letter").

597.    The Demand Letter provided Defendants with notice of their wrongful actions and demanded that Defendants immediately "cease and desist any further use of the Models'

Image(s) . . . ."  (**Exhibit A**, at 15).  Appended to the Demand Letter was a "Preliminary Expert Report Regarding Image Infringement by Velvet Lifestyles LLC., d/b/a Miami Velvet, and My Three Yorkies LLC" which provided illustrative examples of the offending images.

598.    The Demand Letter further demanded that "Miami Velvet and Yorkies provide written disclaimers of its misuse and written acknowledgement of its intention to permanently comply with this cease and desist demand."  *Id.*

599.    The Demand Letter further demanded that "Miami Velvet and Yorkies immediately remove any and all unauthorized images from a Defendants'-owned, hosted, controlled or contributed website as well as any social media outlet (Facebook, Twitter, Instagram, YouTube, Tumblr, etc)."  *Id.*

600.    The Demand Letter further demanded that "Miami Velvet and Yorkies each pay **$5,405,000** in aggregate compensatory, or actual, single damages to compensate the Models for the theft and unauthorized use of the Images . . . ."  *Id* at 2.  The amount demanded was a significantly smaller figure than actual damages, and was equivalent to the valuation of the infringed images *known to Plaintiffs at the time* of the Demand Letter.  It did not include any demand fee for the tortious damages to the Plaintiffs themselves.

601.    The Demand Letter further demanded that "Miami Velvet and Yorkies disclose, pursuant to Section 627.4137, Florida Statutes, all insurance policy coverage information. . . ."  *Id.*

602.    The Demand Letter further demanded that "Miami Velvet and Yorkies preserve all records (electronic and hard copy) relevant to the matters raised herein for use in litigation pursuant to the Document Preservation Demand," and appended a separate, detailed document preservation demand.  *Id.*

603.    The Demand Letter outlined, among other things, the values for each infringed image and some (but not all) of the potential legal claims Plaintiffs would pursue absent Defendants' full compliance with the demands.

604.    Defendants were given thirty (30) days to satisfy the conditions set forth in the Demand Letter. *Id.*

605.    Defendants certified receipt of the Demand Letter October 17, 2015.

606.    Defendants provided no response to the Demand Letter and, upon information and belief, made no effort to comply with the demands therein.

607.    Defendants failed and refused to "cease and desist" use and dissemination of the infringing images.

608.    Defendants failed and refused to "provide written disclosures of its misuse and written acknowledgement of its intention to permanently comply with [the] cease and desist demand."

609.    Defendants failed and refused to remove the infringing images from one or more social media sites owned, operated, leased, hosted, contributed or supported by Defendants.  The infringing images continue to be accessible.

610.    Defendants failed and refused to compensate Plaintiffs for the unauthorized use of their images.

611.    Defendants failed and refused to disclose their insurance policy coverage information.

612.    Upon information and belief, Defendants have failed and refused to preserve relevant records.

613.    Upon further investigation, Plaintiffs, through counsel, learned of additional misappropriated and altered images posted by Defendants to the same sites and social media outlets as the initial infringing images.  In particular, counsel discovered after submission of the Demand Letter that Defendants had posted photos reflecting the images of models Melanie Iglesias, Brenda Lynn Geiger, Heather Rae Young, and Rosa Acosta.

614.    In the interest of judicial economy and efficiency, those *new* images have been included within this Complaint, as detailed above.

## CAUSES OF ACTION

### COUNT I
**Violation of the Lanham Act, 15 U.S.C. § 1125(a):**
**False Advertising against all Defendants**

615.    Each Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1-614 as if fully alleged herein.

616.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects each Plaintiff from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . . ."  15 U.S.C. §1125(a)(1)(B).

617.    Defendants used and altered each Plaintiff's image, likeness and/or identity as described herein without authority in order to create the perception that each Plaintiff worked at or was otherwise affiliated with the Club, endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants' business, the Club, and/or the Club's events and activities.

618.   Defendants' use and alteration of each Plaintiff's image, likeness and/or identity to advertise, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint was false and misleading.

619.   Defendants' unauthorized use and alteration of each Plaintiff's image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that each Plaintiff worked at or was otherwise affiliated with the Club, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that each Plaintiff would participate in or appear at the specific events promoted in the advertisement.

620.   Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons to the Club, as to the general quality of attendees and participants at the Club and at its events, as well as specifically whether each Plaintiff worked at or was otherwise affiliated with the Club, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities

621.   Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether each Plaintiff worked at or was otherwise affiliated with the Club, the Club or the Club's events and activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities.  Among other things, upon information and belief, such unauthorized use or alteration misled and served to entice consumers and

prospective consumers to join the Club, visit the Club, and participate in events at the Club and had a material effect and impact on the decision of members and prospective members and participants to join the Club, visit the Club and take part in the events at the Club.

622.    Defendants' advertisements, promotions and marketing of the Club, the Club and events at the Club occur in and are targeted to interstate commerce.  Specifically, Defendants' promote their business and events through interstate promotions and campaigns to target members and prospective members throughout the United States.  In addition to membership lists consisting of members of the Club from states other than Florida, Defendants principally use the world wide web, social media and other vehicles of interstate commerce to advertise, market, promote, sell and entice or lure membership and attendance at, Club events.

623.    As a result of Defendants' use of each Plaintiff's image, Defendants attracted new patrons to their establishment, particularly tourists, who purchased online memberships for the Club, were enticed to travel across state lines to attend events, and did in fact travel in interstate commerce across the state lines to attend Defendants' events, or patrons who purchased memberships at the door after receiving advertisements that relied on the unauthorized use of each Plaintiff's image, likeness and identity.

624.    Defendants' unauthorized use and alteration of each Plaintiff's image, likeness and identity as described herein was designed to benefit Defendants' business interests by, among other things, promoting the Club and its activities and attracting new members to the Club.

625.    Defendants knew or should have known that their unauthorized use and alteration of each Plaintiff's image, likeness and identity would cause consumer confusion as described in this Complaint.

626.    Defendants' unauthorized use and alteration of each Plaintiff's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

627.    Defendants wrongful conduct as described herein was willful.

628.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

629.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive each Plaintiff of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to each Plaintiff.

630.    The method and manner in which Defendants used the images of each Plaintiff further evinces that Defendants were aware of or consciously disregarded the fact that each Plaintiff did not consent to Defendants' use of the images to advertise Defendants' business.

631.    Defendants have caused and will continue to cause irreparable harm to each Plaintiff, her reputation and brand by attributing to each Plaintiff the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

632.    Defendants' unauthorized use of each Plaintiff's image, likeness and identity directly and proximately caused and continue to cause damage to each Plaintiff in an amount to be determined at trial.

633.    WHEREFORE, each Plaintiff respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and

permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## COUNT II
### Violation of the Lanham Act, 15 U.S.C. § 1125(a):
### False Endorsement against all Defendants

634.    Each Plaintiff hereby incorporates by reference each and every allegation set forth in paragraphs 1- 614 as if fully alleged herein.

635.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects each Plaintiff from the conduct described herein.   Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from committing any act that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. §1125(a)(1)(A).

636.    Defendants used and altered Plaintiffs' Images, likeness and/or identity as described herein without authority in order to create the false perception that each Plaintiff worked at or was otherwise affiliated with the Club, or endorsed Defendants, the Club or the Club's business activities, and/or consented to or authorized Defendants' or the Club's usage of her images in order to advertise, promote, and market Defendants business, the Club, and/or the Club's events and activities.

637.    Defendants used each Plaintiffs' Image was for Defendants' commercial benefit and was designed for the sole and express purpose of attracting clientele to the Club by selling memberships online as well as at the door thereby generating revenue for the Club.

638.    Each Plaintiff is in the business of commercializing her identity and selling her image to reputable brands and companies for profit.  Most (if not all) of the Club's members have undoubtedly viewed Plaintiffs' images in magazines and online.

639.    Defendants' unauthorized use and alteration of each Plaintiff's Image, likeness and/or identity to advertise, endorse, promote and market Defendants' business, the Club, and/or the Club's events and activities as described in this Complaint has led to a competitive injury to Plaintiffs.

640.    Defendants' unauthorized use and alteration of each Plaintiff's image, likeness and/or identity as described in this Complaint constitutes a false designation of the source or origin, sponsorship, approval, association, or endorsement which has deceived Plaintiffs' fans and present and prospective clients into believing that, among other things, each Plaintiff works at or is otherwise affiliated with the Club, endorsed Defendants' business, the Club or the Club's events or activities, or consented to or authorized Defendants' or the Club's usage or alteration of her images in order to advertise, promote, and market Defendants' business or the Club's events and activities and/or that each Plaintiff would participate in or appear at the specific events promoted in the advertisement.

641.    Despite the fact that Defendants were at all times aware that none of the Plaintiffs worked at, nor endorsed the Club, Defendants nevertheless used each Plaintiff's image to mislead potential members as to each Plaintiff's employment at the Club.

642.    Defendants knew that their use of each Plaintiff's image would cause consumer confusion as to each Plaintiff's sponsorship, endorsement, and/or employment at the Club.

643.    Upon information and belief, Defendants' use of each Plaintiff's image as described above did, in fact, deceive and/or cause consumer confusion as to whether each Plaintiff worked at and/or endorsed the Club, and endorsed Club's business..

644.    As a direct and proximate results of Defendants' actions, each Plaintiff has no control over the nature and quality of the services provided by the Club, the nature of the advertisements depicting each Plaintiff's image, likeness and/or identity, or how each Plaintiff's image is being depicted by the Club.

645.    Defendants' unauthorized use and alteration of each Plaintiff's image, likeness and identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

646.    Defendants wrongful conduct as described herein was willful.

647.    As such, the present case is an exceptional case warranting an award of reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

648.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to wrongfully portray each Plaintiff as endorsing Defendants' business, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to each Plaintiff from such an endorsement.

649.    Further, any failure, neglect or default in ceasing to use each Plaintiff's image will reflect adversely on each Plaintiff as the believed source of origin, sponsorship, approval, endorsement, or association thereof, hampering efforts by each Plaintiff to continue to protect her reputation for high-quality profession modeling, resulting in loss of sales thereof and the considerable expenditures each Plaintiff incurs to promote her personal modeling services to legitimate mainstream media.

650.   Defendants have caused and will continue to cause irreparable harm to each Plaintiff's reputation and brand by attributing to each Plaintiff an express endorsement of the deviant "swinger" or "spouse swapping" lifestyle and activities at the Club.

651.   Defendants' unauthorized use of each Plaintiff's  image, likeness and identity directly and proximately caused and continue to cause damage to each Plaintiff  in an amount to be determined at trial.

652.   WHEREFORE, each Plaintiff respectfully requests that the Court issue a judgment granting actual, or compensatory, damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and preliminary and permanent injunctive relief enjoining Defendants from engaging in further unauthorized use of the Images, and/or such further relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, each Plaintiff individually respectfully prays that this Court grant Judgment to each Plaintiff, respectively, and against Defendants, jointly and severally, as follows:

(a)   Adjudging and decreeing that Defendants have impermissibly and falsely implied each Plaintiff's association with, voluntary and authorized promotion, advertising, marketing and endorsement of Defendants' business, the Club or the Club's events and activities, have violated each Plaintiff's right of privacy, and have violated each Plaintiff's right of publicity;

(b)   Permanently enjoining and restraining Defendants from further violations and misappropriation of each Plaintiff's image, likeness and identity;

(c)   Awarding each Plaintiff damages including, without limitation, actual or

compensatory-type damages, exclusive of lost profits and disgorgement of profits, and exclusive of special, consequential, exemplary or punitive damages, from the multiple instances of unauthorized use and alteration of each Plaintiff's image, likeness and/or identity, false advertising, deceptive practices in an amount to be determined at trial but in no event less than **$5,575,000** aggregated across all Plaintiffs from Velvet Lifestyles, LLC, and **$5,575,000** aggregated across all Plaintiffs from My Three Yorkies, LLC;

(d)     Requiring Defendants to account to each Plaintiff for any and all earnings and profits derived by Defendants from each violation alleged herein;

(e)     Requiring Defendants to disgorge any fees, profits, or money to each Plaintiff by which it has been unjustly enriched;

(f)     Awarding each Plaintiff punitive damages in an amount equal to *at least* twice the actual damages awarded at trial but in no event less than **$11,150,000** aggregated across all Plaintiffs from Velvet Lifestyles, LLC and **$11,150,000** aggregated across all Plaintiffs from My Three Yorkies, LLC;

(g)     Awarding each Plaintiff her and his costs and disbursements incurred in the prosecution of this action, including reasonable attorneys' fees;

(h)     Granting such other, further or different relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand trial by jury on all issues so triable.

Dated: September 15, 2016

Respectfully Submitted,


*/s Christopher G. Oprison*
**CHRISTOPHER G. OPRISON**
Florida Bar No. 122080
Email: christopher.oprison@akerman.com
**NAIM SURGEON**
Florida Bar No. 101682
Email: naim.surgeon@akerman.com

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131-1714
Phone: (305) 374-5600
Fax: (305) 349-4654

*Attorneys for Plaintiffs Jaime Faith Edmondson, Ana Cheri (Moreland), Carrie Minter, Cielo Jean Gibson, Cora Skinner, Danielle Ruiz, Eva Pepaj, Heather DePriest, Irina Voronina, Jesse Golden, Jessica Burciaga, Jessica Hinton, Joanna Krupa, Jordan Carver, Katerina Van Derham, Kim Cozzens, Laurie Fetter (Jacobs), Lina Posada, Maria Zyrianova, Marketa Kazdova, Masha Lund, Maysa Quy, Paola Canas, Rachel Bernstein (Koren), Sandra Valencia, Sara Underwood, Tiffany Toth, Vivian Kindle, Melanie Iglesias, Brenda Lynn Geiger, Heather Rae Young, and Rosa Acosta.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF this 15th day of September, 2016. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s Christopher G. Oprison*
Attorney

## <u>SERVICE LIST</u>

### JAMIE FAITH EDMONDSON, *et al*. V. VELVET LIFESTYLES, INC. f/k/a VELVET LIFESTYLES, INC., d/b/a MIAMI VELVET, *et al*.

### CASE No.: 1:15-cv-24442-JAL

Luke Lirot, Esq.
LUKE CHARLES LIROT, P.A.
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Telephone: (727) 536-2100
Facsimile: (727) 536-2110
Primary E-mail: luke2@lirotlaw.com
Secondary E-mail: jimmy@lirotlaw.com
Secondary E-mail: krista@lirotlaw.com

*Attorneys for Defendants*

Served via CM/ECF