**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 15-24442-CIV-MARTINEZ/LOUIS

JAIME FAITH EDMONDSON, *et al*.,

      Plaintiffs,

v.

VELVET LIFESTYLES, LLC, *et al*.,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION *IN LIMINE***

      This cause came before the Court upon Defendants' Daubert Motion to Exclude Reports and Testimony of Plaintiffs' Experts (ECF No. 204). The motion was referred to the undersigned United States Magistrate Judge by the Honorable Jose E. Martinez, United States District Judge, for a Report and Recommendation (ECF No. 207). A hearing was held before the undersigned on August 27, 2018. Upon review of the briefing, the relevant discovery, and the pertinent parts of the record, the Court makes the following Report and Recommendation.

**I.      BACKGROUND**

      The following facts have been previously established by this Court and are drawn from the Order on summary judgment. Defendant Velvet Lifestyles, LLC owns and operates a swingers club called "Miami Velvet" (hereafter, the "Club"). Defendants spend thousands of dollars per year on advertising for the Club's swinger events, using the internet, social media, and email, as well as permitting party promoters to re-post Defendants' advertisements on their own social media and send "text blasts" to advertise parties. Each Plaintiff is a professional model, actress, and/or businesswoman who earns or has earned a living by promoting her image,

1

likeness, and/or identity to select clients, commercial brands, media, and entertainment outlets. Each Plaintiff relies on her professional reputation and own brand for modeling, acting, hosting, and other professional opportunities and has worked to establish herself as reliable, reputable, and professional. No Plaintiff has ever been employed by, contracted with, or otherwise given permission or consent to Defendants in any way for the use of their images by Defendants to advertise, promote, market, or endorse Defendants' Club or Defendants' swinger lifestyle activities. Even if asked in advance, no Plaintiff would, under any circumstances and regardless of the compensation offered, have permitted or consented to the use of their images by Defendants to advertise, promote, market, or endorse Defendants' swinger lifestyle activities hosted at the Club. Notwithstanding, Plaintiffs' images were used to advertise and promote Defendants' commercial activities, and Plaintiffs were never paid for this unauthorized use. Defendants contend that they received the contested images from third parties, but Defendants never obtained Plaintiffs' consent to use their images in their promotional advertising and had no authority to use any of Plaintiffs' images for any purpose whatsoever.

In July 2017, the Court entered an Order on the Parties' summary judgment motions. The Court denied Defendants' motions, and granted Plaintiffs' motion in part. The Court granted the motion on the question of liability in Plaintiffs' favor. The Court concluded that Defendants' use of Plaintiffs' images was confusing to consumers. In so holding, the Court relied on the opinions of Plaintiffs' survey expert, Martin Buchner, notwithstanding Defendants' objections to the reliability of his study. The Court further found that Plaintiffs each had a present intent to commercialize their image, a finding supported in part by the report of Plaintiffs' damages expert, Stephen Chamberlin. The Court granted summary judgment on Plaintiffs' entitlement to a permanent injunction barring Defendants' use of Plaintiffs' images, but found a material dispute

existed with respect to the amount of damages (ECF No. 174). Accordingly, trial is set in this matter on the question of damages only.

## II.    DEFENDANTS' MOTION TO EXCLUDE

Defendants now move to exclude the testimony of Plaintiffs' experts. As noted above, the question of liability has been decided in Plaintiffs' favor, and Plaintiffs' counsel has represented that they have no intention of presenting their survey expert at trial. Defendants' motion to exclude Martin Buchner is accordingly moot. With respect to Plaintiffs' damages expert, Stephen Chamberlin, Defendants argue that his report and opinions fail to satisfy Rule 702, challenging his qualifications, methodology, and ultimately the helpfulness of his opinion. The undersigned disagrees largely with the defense's attack on Mr. Chamberlin's admissibility. However, the undersigned recommends that his opinion be limited to exclude his proposed multiplier of damages, for the reasons set forth.

### A.    The Motion Is Untimely

But first, a word on timeliness. On February 14, 2017, Judge Lenard entered an Amended Scheduling Order in this matter (ECF No. 137). Judge Lenard's Scheduling Order, which was adopted from the Parties' Joint Scheduling Report, set a deadline of April 14, 2017, for the Parties to file motions to exclude or limit expert testimony. Dispositive motions were due on the same date. Plaintiffs timely moved for summary judgment, relying in part on the survey results compiled by their expert Stephen Chamberlin.

The time to file a motion to exclude or limit expert testimony expired on April 14, 2017. Prior to Judge Lenard's recusal and reassignment to Judge Martinez, the operative Scheduling Order established two distinct deadlines for motions to exclude or limit the admission of evidence: first, a deadline for challenges to expert testimony, and later, a deadline for unspecified

motions *in limine*. When this Court entered its Order setting trial and related deadlines earlier this year, in response to Plaintiffs seeking entry of such a Scheduling Order, it made no indication that it intended to revive long-lapsed deadlines. In fact, the recently-entered Order mimicked the timing established under the prior Scheduling Order, requiring the filing of motions *in limine* approximately ten days before the filing of the Joint Pretrial Stipulation. *Compare* ECF No. 137 to ECF No. 202.

Defendants' motion to exclude the testimony of Plaintiffs' experts was filed on August 10, 2018. It is a year and four months out of time. Defendants contend that the motion is timely under the Court's operative Scheduling Order, which makes no distinction between motions *in limine* to exclude experts and other motions *in limine*. This is true, in a vacuum. Considered in the context of the case history, it is unmistakable that the deadline to move to limit or exclude the testimony of experts lapsed on April 14, 2017.

Under these circumstances, the district court is not obligated to consider Defendants' evidentiary challenge at all. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1349 (11th Cir. 2003) (affirming judgment and rejecting challenge to district court's denial of continuance to mount *Daubert* challenge, but also approving district court's analysis of expert's admissibility under *Daubert*). Notwithstanding, the undersigned has analyzed the merits of Defendants' challenge and makes the following recommendations, in the event the Court elects not to deny the motion as time barred.

### B.       Admissibility Under Rule 702

A motion *in limine* seeks to exclude evidence prior to trial. A *Daubert* motion is a specific type of motion *in limine*, referring to the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), where the Court held that the trial

court must serve as a "gatekeeper" of expert witnesses to ensure that their testimony is both reliable and relevant. Federal Rule of Evidence 702, amended in 2000 in response to the *Daubert* decision, states that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

The Eleventh Circuit has required the trial court to conduct a "rigorous three-part inquiry" under Rule 702, considering whether: (1) the expert is qualified to testify competently regarding the matter she intends to address ("qualification"); (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert ("reliability"); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue ("helpfulness"). *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The proponent of the expert bears the burden of showing, by a preponderance of the evidence, that each of these requirements is met. *Id.*

The Rule compels the Court to act as "gatekeepers to ensure that speculative, unreliable expert testimony does not reach the jury." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 597, n.13). However, in so doing, the Court makes no determinations on credibility or persuasiveness of the proffered evidence; "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

### 1.    Stephen Chamberlin's opinions are admissible.

Plaintiffs' damages expert, Stephen Chamberlin, issued a 108-page Report evaluating and retroactively valuing the fair market value "of all presently known image infringements, in the aggregate," at $5,415,000. (Chamberlin Report (ECF No. 148-33)). Because Mr. Chamberlin opines that the fair market measure of damages provides only a baseline valuation and does not account for the damage to each Plaintiff's professional standing and publicity value, he opines that application of a three-factor multiplier premium is appropriate, resulting in a total damage estimate of $16,245,000 for all Plaintiffs combined.

### a.    Qualification

Stephen Chamberlin is a former talent agency director and current owner and director of a management company for models. He has worked in this industry since 1989 and represented over 5,000 models in that time. His work involves the negotiation of contracts and rates for models, from which he attests to have "developed expertise in the economics of image use, the valuation of image uses, model and public career valuation and the effective rates of work and valuation." ECF No. 148-33 at ¶¶ 11-12. Defendants, however, contest his qualification to render the opinion on fair market value of the challenged uses because he lacks experience in negotiating licenses for particular images, or for use of images on social media; nor does he have significant experience in the nightclub industry.

The qualifications standard for expert testimony is not stringent. "[A] witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). So long as the expert is "minimally qualified, objections to the level of the expert's expertise go to credibility

and weight, not admissibility." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *1 (S.D. Fla. July 6, 2015) (citing *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012)). The undersigned agrees that Mr. Chamberlin is at least "minimally qualified" and sufficiently knowledgeable about the issues underlying Plaintiffs' damages. Mr. Chamberlin's experience in the modeling industry since 1989 includes his negotiation of thousands of contracts, and determination of fees, including day rates and usages. Defendants' challenges to Mr. Chamberlin's qualifications go to the weight of his credibility and may make effective fodder for cross-examination, but his report demonstrates sufficient foundation for the opinions he offers.

### b.    Reliability

Defendants contend that Mr. Chamberlin's methodology fails to identify any objective data on which he relied. Without objective data, Defendants aver, nothing can be tested and the reliability of his methodology cannot be shown. In the reply, Defendants argue that Mr. Chamberlin's damage calculation is further flawed in that it fails to adequately consider each Plaintiff's individual damages. According to Defendants, Mr. Chamberlin "presumably" relied on the report of Plaintiffs' survey expert, who based his study on a sample of only three Plaintiffs' misappropriated images.

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013).

As noted above, this Court relied in part on Mr. Chamberlin's report in ruling that Plaintiffs' had adduced proof of damages in support of their motion for summary judgment,

though concluded that Defendants' conflicting expert opinion created a material disputed fact on the valuation of Plaintiffs' damages. Inherent in the Court's ruling is a determination that Mr. Chamberlin's method of determining the fair market value of the Plaintiffs' damages is a proper measure of damages, a ruling this Court should not revisit. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *4 (S.D. Fla. July 6, 2015) (refusing to reconsider on *Daubert* challenge question of damage expert's method of measuring damages, which had already been resolved at summary judgment).

It bears noting that Defendants' attack on Mr. Chamberlin is not unique to this case; he has been identified as an expert on the valuation of damages incurred by models in multiple suits in this District and elsewhere. None of the courts have excluded Mr. Chamberlin from testifying. In a thorough opinion analyzing Mr. Chamberlin's opinions, Magistrate Judge Thomas B. McCoun III refused to strike Mr. Chamberlin's declaration based on Defendants' *Daubert* challenge. *See Edmonson et al. v. Caliente Resorts et al.*, Case No. 8:15-cv-2672-T-23 (M.D. Fla. August 31, 2017). Judge McCoun's Order, which Defendants advanced to the undersigned at oral argument, concludes that with regard to the baseline fair market value, "Mr. Chamberlin's testimony is not inherently unreliable or unduly speculative." Order at 13. The undersigned agrees. Mr. Chamberlin's report details his experience in negotiating relevant contracts, and his bases for estimating each Plaintiffs' damages, including reviewing data impacting each Plaintiff's earning capacity such as modeling contracts and agreements and earning statements. Chamberlin Report at ¶ 19. Based on each Plaintiff's experience and earning history, Mr. Chamberlin renders an opinion as to her "day rate," which he uses to estimate the amount she could have demanded for Defendants' uses of her likeness. Defendants complain that his estimate of what each Plaintiff could have commanded for use of the photos is irreconcilable

with his opinion that none of the Plaintiffs would have agreed *for any amount* of money to the Defendants' use of their photos in conjunction with the swingers' lifestyle. This is precisely the kind of "weakness" best ferreted out on cross-examination; asking the Court to exclude him on this basis would be tantamount to supplanting the jury. *See Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009).

### c.   Helpfulness

The final element turns on whether the proffered testimony "concerns matters that are beyond the understanding of the average lay person." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *2 (S.D. Fla. July 6, 2015) (quoting *Edwards v. Shanley*, 580 Fed. Appx. 816, 823 (11th Cir. 2014)). Though Defendants' motion *in limine* avers that Mr. Chamberlin's testimony fails on all three elements, including helpfulness, their motion advances no argument regarding this element. At the hearing, defense counsel argued that Mr. Chamberlin will say nothing that the Plaintiffs themselves cannot explain, as he will simply be testifying about the Plaintiffs' experience and earnings. To the contrary, Mr. Chamberlin's experience and expertise in the industry provides him a basis to testify on matters that are beyond the understanding of the average lay person, and his testimony would be helpful to the jury's determination of damages suffered by the Plaintiffs.

Mr. Chamberlin is adequately skilled; his opinion is, to a sufficient extent, explainable and grounded in verifiable facts, as well as helpful to aid the jury. Because his opinion as to the fair market value of Plaintiffs' damages satisfies Rule 702, the undersigned recommends denying Defendants' motion *in limine* to exclude his testimony.

### 2.   Mr. Chamberlin's multiplier is too speculative to present to jury.

As noted above, Mr. Chamberlin's opinion has two components and establishes a damages range: calculation of the fair market value Plaintiffs may have commanded for the use of their images by Defendants (the "low end" of the range); application of a three-times multiplier of the fair market value (the "high end" of the range). Chamberlin Report ¶ 40. Mr. Chamberlin explains his basis for the three-times multiplier in his report:

> Given the egregious nature of Velvet's conduct, the type of branded product, service or consumer experience that it seeks to promote, the obviously damaging effect of affiliation with Velvet, and the deposition testimony of Velvet's own corporate representative, on the one hand, and that each Plaintiff is a high caliber and highly successful model who has invested significant time, work and money to define her/his brand and built publicity value, on the other hand, I believe a 3x multiplier premium factor should be employed to the final fair market valuation to arrive at a realistic and fair damages figure.

Report at ¶ 48. Mr. Chamberlin's Report does not explain how he arrived at a multiplier of three; why not two, or ten? There is no basis tied to the facts in the record offered for how Mr. Chamberlin determined that the appropriate multiplier here is three. That alone renders the portion of his opinion, that a 3x multiplier should be applied, speculative and inadmissible. Putting aside the question of the size of the multiplier, Mr. Chamberlin's report fails to demonstrate a defensible basis for the application of any multiplier. As noted in the quotation above, Mr. Chamberlin opines that the multiplier is necessary to punish Velvet for its "egregious" conduct in stealing the images, and to fully compensate each Plaintiff for the reputational damage she suffered in being involuntarily associated with Velvet's "disreputable" brand. Report ¶ 46 ("The only remedy is to utilize a multiplier factor- in this case, a factor of up to 3x- in order to offset the negative impact of Velvet's misconduct."). In contrast to Mr. Chamberlin's explanation for his expertise in and basis for calculating the fair market value of the Plaintiffs' images, his opinion with respect to the application of a multiplier is not substantiated by any experience or comparable application. Moreover, in this case, the proffered

explanation for the multiplier is already taken into account in his calculation of the fair market value, or "low end" damages: because Velvet stole Plaintiffs' images, Mr. Chamberlin opined that Velvet would be required to pay "the highest day rate ever paid" to the respective Plaintiff. "Setting the required rate at anything less would be rewarding illicit behavior." Report at ¶ 45.

The trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained; or where a large analytical leap must be made between the facts and the opinion. *Edwards*, 580 Fed. Appx. at 823. In this regard, Mr. Chamberlin's opinion is imprecise and requires too great a leap between the need to compensate Plaintiffs for the reputational harm they suffered and the multiplier he opines will do so. Moreover, the asserted need to account for the egregious nature of Defendants' conduct is already reflected in Mr. Chamberlin's fair market valuation. Accordingly, it is the undersigned's recommendation that Mr. Chamberlin's opinion that a 3x multiplier be applied to calculate a high end of a damage range be excluded from presentation to the jury.

## III.    CONCLUSION

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the Parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the Parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers, in Miami, Florida, this 24th day of September,

2018.

_____

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE